# Exhibit 1

1  ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
   anthony@counselonegroup.com
2  JUSTIN KACHADOORIAN, Cal. Bar No. 260356
   justin@counselonegroup.com
3  COUNSELONE, P.C.
   9301 Wilshire Boulevard, Suite 650
4  Beverly Hills, California 90210
   Telephone: (310) 277-9945
5  Facsimile: (424) 277-3727

6  Attorneys for Plaintiff KELLY ROMERO, on behalf of
   herself and others similarly situated
7

FILED   Santa Clara Co
10/20/14   2:18pm
David H. Yamasaki
Chief Executive Offic
By: sackard DISCIVOIO
R#2014000075257
$1,435.00
TL        $1,435.00
Case: 1-14-CV-272100

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                          **COUNTY OF SANTA CLARA**

10

11                                    114CV272100

12  KELLY ROMERO, on behalf of herself and          Case No.
    others similarly situated,

13                                                   **CLASS ACTION COMPLAINT FOR:**
                    Plaintiff,
14                                                   (1) **Unlawful Business Practices (Cal.**
             v.                                          **Bus. & Prof. Code § 17200 et seq.)**
15
    FLOWERS BAKERIES, LLC, dba                       (2) **Unfair Business Practices (Cal. Bus.**
16  NATURE'S OWN, a Georgia limited                      **& Prof. Code § 17200 et seq.)**
    liability company, and DOES 1 through 50,
17  inclusive,                                       (3) **Fraudulent Business Practices (Cal.**
                                                         **Bus. & Prof. Code § 17200 et seq.)**
18                  Defendant.
                                                     (4) **Misleading Advertising (Cal. Bus. &**
19                                                       **Prof. Code § 17500 et seq.)**

20                                                   (5) **Untrue Advertising (Cal. Bus. & Prof.**
                                                         **Code § 17500 et seq.)**
21
                                                     (6) **Violation of the Consumer Legal**
22                                                       **Remedies Act, Cal. Civ. Code §§ 1750**
                                                         **et seq.**
23
                                                     (7) **Restitution Based on Quasi-Contract**
24                                                       **/ Unjust Enrichment**

25                                                   (8) **Common Law Fraud**

26                                                   (9) **Negligent Misrepresentation**

27                                                   (10) **Breach of Contract**

28                                                   **DEMAND FOR JURY TRIAL**    **By Fax**

                            CLASS ACTION COMPLAINT

1       Plaintiff KELLY ROMERO (hereinafter "Plaintiff"), on behalf of herself and all others

2 similarly situated, complains of Flowers Bakeries, LLC, dba Nature's Own, a Georgia limited

3 liability company, and DOES 1 through 50, inclusive, as follows:

4                                               **INTRODUCTION**

5       1.     Plaintiff brings this action pursuant to Code of Civil Procedure § 382 against

6 Defendant Flowers Bakeries, LLC, dba Nature's Own ("Flowers"), on behalf of all consumers in

7 the United States or, alternatively, California within four years of the filing of this lawsuit who

8 have purchased the following varieties of Flowers' Nature's Own products:

9       (a) Nature's Own Soft Variety Breads, including:

10           i.     Nature's Own Honey Wheat Bread

11           ii.    Nature's Own 100% Whole Wheat Bread

12           iii.    Nature's Own 100% Whole Grain

13           iv.    Nature's Own Honey Oat Bread

14           v.     Nature's Own Whole Grain Sugar Free Bread

15           vi.    Nature's Own 100% Whole Wheat With Honey

16           vii.    Nature's Own Double Fiber Wheat Bread

17           viii.    Nature's Own Honey 7 Grain Bread

18       (b) Nature's Own Premium Specialty Breads, including:

19           i.     Premium Specialty 100% Whole Grain Bread

20           ii.    Premium Specialty 12 Grain Bread

21           iii.    Premium Specialty Healthy Multi-Grain Bread

22           iv.    100% Whole Wheat Specialty Bread

23           v.     Honey Wheat Specialty Bread

24           vi.    Premium Specialty Double Fiber Wheat Bread

25       (c) Nature's Own Buns & Rolls, including:

26           i.     100% Whole Wheat Sandwich Rolls

27           ii.    100% Whole Wheat Hot Dog Rolls

28           iii.    Whitewheat® Bread Hamburger Buns

| | |
|---|---|
| 1 | iv. Whitewheat® Bread Hot Dog Buns |
| 2 | v. Butter Hamburger Buns |
| 3 | vi. Butter Hot Dog Buns |
| 4 | (d) Nature's Own Whitewheat® Bread |
| 5 | (e) Nature's Own Sandwich Rounds, including: |
| 6 | i. 100% Whole Wheat Sandwich Rounds |
| 7 | ii. Healthy Multi Grain Sandwich Rounds |
| 8 | iii. 100% Whole Grain Sandwich Rounds |
| 9 | (f) Nature's Own Reduced Calorie Breads, including: |
| 10 | i. 40 Calorie 9 Grain Bread |
| 11 | ii. 40 Calorie Honey Wheat Bread |
| 12 | iii. 40 Calorie Wheat Bread |
| 13 | iv. 40 Calorie White Bread |

14  2.    The foregoing products are collectively referred to in this Complaint as the

15  "Misbranded Products."

16  3.    The labels for each of these products carry representations about the ingredients or

17  alleged healthful properties of the products that are intended to induce, and have induced,

18  consumers to purchase the products.  These representations, however, are false, misleading, and

19  unlawful for the reasons alleged below.

20  4.    Plaintiff alleges that Flowers' conduct violates California's Business and

21  Professions Code sections 17200, et seq. (the Unfair Competition Law, or "UCL"), California's

22  Business and Professions Code sections 17500, et seq. (the False Advertising Law, or "FAL"), and

23  the Consumers Legal Remedies Act of the California Civil Code sections 1750, et seq. (the

24  "CLRA").  Plaintiff also alleges claims on behalf of consumers nationwide for common law fraud,

25  negligent misrepresentation, breach of contract, and restitution on the basis of quasi-

26  contract/unjust enrichment.

27  5.    Plaintiff seeks damages and restitution stemming from Flowers' false labeling and

28  advertising.  Plaintiff also seeks declaratory and injunctive relief to ensure that Flowers shall

2

CLASS ACTION COMPLAINT

1   remove any and all false or misleading labels and advertisements relating to the Misbranded

2   Products and to prevent them from making similar representations in the future.

3                                              **PARTIES**

4           6.      Nature's Own is a brand manufactured by Flowers Bakeries, LLC, a Georgia

5   limited liability company with its principal place of business in Thomasville, Georgia.  Flowers

6   Bakeries markets and sells its Nature's Own brand products throughout 79 percent of the United

7   States, with concentrations in the West, Southwest, and Southeast.  Flowers Bakeries markets and

8   sells its Nature's Own brand products through grocery and other retail stores throughout

9   California.

10          7.      The true names and capacities, whether individual, corporate, associate, or

11  whatever else, of the defendants sued herein as Does 1 to 50, inclusive, are currently unknown to

12  Plaintiff, who therefore sues these defendants by such fictitious names under Code of Civil

13  Procedure § 474.  Plaintiff is informed and believes and thereon alleges that each of the defendants

14  designated herein as Does is legally responsible in some manner for the unlawful acts referred to

15  herein.  Plaintiff will seek leave of court to amend this Complaint to reflect the true names and

16  capacities of the defendants designated herein as Does when their identities become known.  (As

17  used herein, "Defendant" refers to Flowers Bakeries, LLC, and its brand Nature's Own, and Does

18  1 to 50, inclusive.)

19          8.      Plaintiff is informed and believes and thereon alleges that each Defendant acted in

20  all respects pertinent to this action as the agent of the other Defendants, that Defendants carried

21  out a joint scheme, business plan, or policy in all respects pertinent hereto, and that the acts of

22  each Defendant are legally attributable to the other Defendants.

23          9.      Venue is proper in this judicial district pursuant to Code of Civil Procedure § 395.5

24  because the obligations giving rise to liability occurred in part in the County of Santa Clara, State

25  of California.

26                          **COMMON FACTUAL ALLEGATIONS**

27          10.     Defendants produce packaged, pre-sliced breads and other baked goods.  The

28  Misbranded Products were postured to appeal to health-conscious consumers most obviously and

                                                    3

                                    CLASS ACTION COMPLAINT

1   directly through its the brand name—"Nature's Own"—together with representations which

2   appear on the front labels that the breads contain "no artificial preservatives, colors and flavors,"

3   suggesting a product that is natural, wholesome, and healthy. (*See* photos attached hereto as

4   Exhibit A.)

5        11.    The product labels also depict stalks of wheat and pots of honey.  Additionally,

6   some of Nature's Own bread products explicitly claim to be "All Natural" on the front labels. (*See*

7   *ibid.*)  Defendant has fought trademark infringement cases to safeguard its brand name in large

8   part because it knows the power of the words "Nature's Own" on consumers in an increasingly

9   health-conscious marketplace.

10       12.    Defendants reinforce this theme by boasting on the front labels of the Misbranded

11   Products about the healthful qualities of its bread.  Throughout the class period Defendants have

12   prominently made claims on their product labels and through advertisements that the Misbranded

13   Products contain "no artificial preservatives, colors or flavors" and "no high fructose corn syrup,"

14   or statements of similar import, cultivating a wholesome and healthful image in an effort to

15   promote the sale of these products.  These claims appear prominently on the front of the packages,

16   underneath the brand name Nature's Own. (*See* photos attached hereto as Exhibit B.)

17       13.    For example, the front label of Nature's Own 100% Whole Wheat bread declares,

18   "No Artificial Preservatives, Colors or Flavors," "No High Fructose Corn Syrup," "Made with

19   Real Honey," and "14 Grams of Whole Grains per slice," and "Heart Healthy." (*See* photos

20   attached hereto as Exhibit C.)  Nature's Own Whitewheat® contains similar representations, as

21   well as the statement "Healthy White." (*See* photos attached hereto as Exhibit D.)

22       14.    Furthermore, Defendants label some of its white breads, including Honey Wheat

23   Bread and Whitewheat® Bread, as wheat breads in order to mislead consumers who are in the

24   market for whole grain wheat.  These consumers are part of a growing demographic that

25   recognizes the nutritional benefits of whole grains over refined grains that lack fiber and nutrients

26   as the result of processing.  However, Defendants deliberately take advantage of this demographic

27   by marketing these white breads as wheat and suggesting through labeling statements and

28   vignettes that they are wholesome and healthy—what consumers would associate with whole

CLASS ACTION COMPLAINT

1   wheat.  Defendants make this connection explicit for consumers.  For example, the company's

2   website proclaims, "Nature's Own Honey Wheat offers the perfect blend of wholesome wheat,

3   sweetened with a touch of honey.  A slice or two of this bread each day is a delicious way to add

4   healthy grain to your diet." [1]  But, as explained below, the reality is quite different.

5

6   **Defendants' Suggestion That the Misbranded Products Are**
     **"Nature's Own" Is False and Deceptive.**

7        15.    As alleged above, Defendants suggest through the combination of its highly

8   guarded brand name, coupled with vignettes and claims appearing on the product labels, that the

9   Misbranded Products are a natural food product, therefore connoting that the Misbranded Products

10  are somehow more healthy and wholesome, and in fact some of Defendants' products are

11  explicitly labeled "All Natural."

12       16.    Defendants' representations are false or, at best, deceptive and misleading.

13  Webster's New World Dictionary defines "natural" as "produced or existing in nature; not

14  artificial or manufactured."[2]

15       17.    Although the Food and Drug Administration ("FDA") does not directly regulate the

16  term "natural," the FDA has established a policy defining the outer boundaries of the use of that

17  term by clarifying that a product is not natural if it contains color additives, artificial flavors, or

18  synthetic substances.[3]  Specifically, the FDA states: "[T]he agency will maintain its policy (Ref.

19  32) regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all

20  color additives regardless of source) has been included in, or has been added to, a food that would

21  not normally be expected to be in the food."  58 Fed. Reg. 2302, 2407 (Jan. 6, 2003).

22       18.    This policy is consistent with consumers' understanding of the word "natural."

23  Consumers understand "natural" to exclude synthetic ingredients, food additives, or chemical

24  preservatives.  In a 2007 survey conducted by the Natural Marketing Institute (NMI) the majority

25  of respondents believed that the term "natural" in a product label meant that the product contained

26  [1] http://www.naturesownbread.com/products/VarietyBreads/HoneyWheatBread/ (last accessed May 9,
    2014).

27  [2] *Webster's New World Dictionary of the American Language*, 2nd College Ed. (Simon & Schuster, 1984),
    "natural," definition no. 2 at p.947.

28  [3] *See* http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm and
    http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.

CLASS ACTION COMPLAINT

1    100 percent natural ingredients, no artificial flavors, no artificial colors, no preservatives, no

2    chemicals, and a substantial percentage thought that it meant that the product was not highly

3    processed. The majority of consumers believe that when a food product is labeled as "natural," it

4    means that "no artificial ingredients were used" (66% of consumers) "no artificial materials were

5    used during processing" (65% of consumers), and "no GMOs were used" (64% of consumers).

6    Even more consumers believe that food product labels should reflect that no artificial ingredients

7    were used (86%), no artificial materials were used during processing (87%), and no GMOs were

8    used (85%). [4]

9            19.     Moreover, like the FDA, the United States Department of Agriculture ("USDA"),

10   which regulates the labeling of meat and poultry, has also set limits on the use of the term

11   "natural." The USDA's Food Safety and Inspection Service states that the term "natural" may be

12   used on labeling of meat and poultry products so long as "(1) the product does not contain any

13   artificial flavor or flavorings, color ingredient, or chemical preservative … or any other artificial

14   or synthetic ingredient, and (2) the product and its ingredients are not more than minimally

15   processed."

16          20.     According to the USDA, "[m]inimal processing may include:  (a) those traditional

17   processes used to make food edible or to preserve it or to make it safe for human consumption,

18   e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do

19   not fundamentally alter the raw product and/or which only separate a whole, intact food into

20   component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to

21   produce juices."[5]     However, "[r]elatively severe processes, e.g., solvent extraction, acid

22   hydrolysis, and chemical bleaching would clearly be considered more than minimal processing."[6]

23          21.     Under USDA policy, a product cannot be labeled as being "natural" if an ingredient

24   would significantly change the character of the product to the point that it could no longer be

25   [4] *See* Consumer Reports® National Research Center, Survey Research Report Food Labels Survey, 2014
     Nationally-Representative Phone Survey ,
26   http://www.greenerchoices.org/pdf/ConsumerReportsFoodLabelingSurveyJune2014.pdf.
     [5] *See* the United States Department of Agriculture Food Standards and Labeling Policy book
27   available at http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf (last
     visited December 18, 2013).
28   [6] *Ibid.*

6

CLASS ACTION COMPLAINT

1   considered a natural product.  Moreover, any product purporting to be "natural" must

2   conspicuously identify any synthetic ingredients used on the label (e.g., "all natural ingredients

3   except dextrose, modified food starch, etc.").  For example, a "turkey roast" cannot be called a

4   "natural" product if it contains beet coloring but can still bear the statement "all natural ingredients

5   modified by beet coloring."[7]  Defendants do not, however, include any such limiting language on

6   the Misbranded Products.

7        22.      The terms "synthetic" and "artificial" closely resemble each other and in common

8   parlance are taken as synonymous.  The scientific community defines "artificial" as something not

9   found in nature, whereas "synthetic" is defined as something man-made, whether it merely mimics

10  nature or is not found in nature.[8]  In the scientific community, "synthetic" includes substances that

11  are also "artificial," but a synthetic substance also can be artificial or non-artificial.[9]  However, the

12  common understanding of "artificial" resembles the scientific community's definition of

13  "synthetic."  Indeed Webster's New World Dictionary defines "artificial" as "anything made by

14  human work, especially if in intimation of something natural," whereas "synthetic" is defined as

15  "a substance that is produced by chemical synthesis and is used as a substitute for a natural

16  substance which it resembles."[10]

17       23.      Congress has defined "synthetic" to mean "a substance that is formulated or

18  manufactured by a chemical process or by a process that chemically changes a substance extracted

19  from a naturally occurring plant, animal, or mineral sources, except that such term shall not apply

20  to substances created by naturally occurring biological processes."  7 U.S.C. § 6502(21).  *See also*

21  7 C.F.R. § 205.2 (defining, in USDA's National Organic Program regulations, a "nonsynthetic" as

22  "a substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic

23  process as defined in section 6502(21) of the Act (7 U.S.C. § 6502(21)").

24  ///

---

25  [7] *Ibid.*

26  [8] Peter E. Nielsen, *Natural-synthetic-artificial!*, Artificial DNA: PNA & XNA, Volume 1, Issue 1
    (July/August/September 2010), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3109441/ (last

27  visited December 18, 2013).
    [9] *Ibid.*

28  [10] *See* Webster's New World Dictionary of the American Language, 2nd College Ed. (Simon & Schuster,
    1984), "artificial," definition SYN at p.79.

CLASS ACTION COMPLAINT

24.     The labeling of products to suggest natural origin carries implicit health benefits important to consumers—benefits that consumers are willing to pay a premium for over comparable products that are not so labeled and marketed.

25.     According to the NMI survey referenced above, 81 percent of respondents found products claiming to be "natural" very/somewhat important when purchasing food or beverage products.  Significantly, the survey also found that package labeling was by far the most important source of information influencing consumers' purchasing decisions, especially among the health-conscious segment of the population.  According to another survey, the "majority of consumers (59%)" check nutritional labels on products "to see if their food is natural."  The majority of consumers, approximately 69%, believe it is important to choose food products that do not contain artificial ingredients."[11]

26.     Defendants have cultivated and reinforced a corporate image based on the natural theme, which they have emblazoned on each and every one of the Misbranded Products.

27.     However, Defendants' representations are false owing the presence, until at least 2013, in the Misbranded Products of a highly suspect and controversial chemical additive—azodicarbonamide, or ADA, also known as the "yoga mat" chemical.

28.     Azodicarbonamide is a chemical used for rubber products—including, notably, yoga mats, shoe soles, and plastic bottles:  "The principal end use of azodicarbonamide is as a blowing agent in the rubber and plastics industries.  It is used in the expansion of a wide range of polymers, including polyvinyl chloride, polyolefins, and natural and synthetic rubbers."[12]

29.     Significantly, ADA has been linked to asthma and skin irritation:  "Evidence that azodicarbonamide can induce asthma in humans has been found from bronchial challenge studies with symptomatic individuals and from health evaluations of employees at workplaces where azodicarbonamide is manufactured or used. There are also indications that azodicarbonamide may

[11] *See* Consumer Reports® National Research Center, Survey Research Report Food Labels Survey, 2014 Nationally-Representative Phone Survey
http://www.greenerchoices.org/pdf/ConsumerReportsFoodLabelingSurveyJune2014.pdf.

[12] *See* World Health Organization, Concise International Chemical Assessment Document, Azodicarbonamide, R. Cary, S. Dobson, E. Ball at
http://www.who.int/ipcs/publications/cicad/en/cicad16.pdf (last accessed July 24, 2014).

8

CLASS ACTION COMPLAINT

1   induce skin sensitization."[13]   ADA's effects on overall human health and the effects of long term

2   exposure have not been studied:   "Data have been identified that indicate ethyl carbamate

3   formation in consumer products such as bread and beer following the addition of

4   azodicarbonamide. Exposure of the general public to azodicarbonamide could not be evaluated

5   because of the lack of available data."[14]   However, azodicarbonamide has been found to

6   completely break down to form other chemicals, including semicarbazide, or SEM, which has

7   been shown to increase the incidence of tumors in mice.  Indeed, way back in 2005, the European

8   Food Safety Authority (EFSA) assessed the risk from the use of ADA and banned its use in

9   foodstuffs.

10          30.     Bread, whether natural or not, can be made with ingredients other than

11   azodicarbonamide.  According to the FDA, the "use of [azodicarbonamide] as a whitening agent

12   and dough conditioner is not necessary to make bread and there are alternative ingredients

13   approved for use available."[15]   Nevertheless Defendants used ADA in the Misbranded Products

14   throughout the class period.

15          31.     Additionally, Defendants explicitly label some of their breads "All Natural."  (See

16   photo attached as Exhibit E.)  This representation clearly conveys to consumers that the subject

17   Misbranded Products contain absolutely no synthetic, artificial, chemical, or highly processed

18   ingredients.  Contrary to this representation, however, Defendants' "All Natural" bread actually

19   contains a host of such unnatural ingredients.

20          32.     In particular, Defendants' supposedly "All Natural" breads are made with

21   "enriched" flour.  As the ingredients list discloses, it is enriched with a number ingredients that are

22   synthetically produced, including thiamin mononitrate, riboflavin, folic acid, niacin, and reduced

23   iron.  These breads also contain soybean oil, soy lecithin, calcium sulfate, and enzymes.

24          33.     Folic acid is the synthetically-created chemical N-[4-[[(2-amino-1,4-dihydro-4-

25   oxo-6-pteridinyl)methyl]amino]benzoyl]-L-glutamic acid.  21 C.F.R. § 172.345(a).  Folic acid

26   [13] See World Health Organization, Concise International Chemical Assessment Document,
    Azodicarbonamide, R. Cary, S. Dobson, E. Ball at
27   http://www.who.int/ipcs/publications/cicad/en/cicad16.pdf.
    [14] Ibid.
28   [15] See http://www.fda.gov/downloads/food/ingredientspackaginglabeling/foodadditivesingredients/
    ucm387975.pdf (last accessed July 24, 2014).

                                            9
                                CLASS ACTION COMPLAINT

1   differs from natural folate in numerous respects, including shelf-life and bio-availability. Even the

2   molecular structure of folic acid is different from natural folate.

3       34.     Soybean oil uses unnaturally excessive processing and/or synthetic compounds or

4   pollutants to produce. Hexane is commonly used to make most oils. According to the USDA, all

5   soybean oil is processed with hexane. Whole soybeans are literally bathed in hexane to separate

6   the oils from the protein. Hexane is a byproduct of gasoline refining. It is a neurotoxin and a

7   hazardous air pollutant.[16]   It is also a synthetic substance.[17]   To produce the oils used in

8   Defendants' products, factory workers are exposed to this neurotoxin. Occupational exposure has

9   been linked to neurological disorders including polyneuropathy, optic nerve atrophy, narcosis, and

10  may contribute to the development of Leber hereditary optic neuropathy, a disease that causes loss

11  of vision. After the oil is removed from the proteins (commonly through hexane extraction), all

12  oils are further processed before they can be added as a food ingredient. *See, e.g.*, 21 C.F.R. §

13  184.1555(c)(1) (requiring all canola oil to be "fully refined, bleached, and deodorized") (emphasis

14  added).     Such processing can include bleaching, deodorization, degumming to remove

15  phosphatides, and alkali refining to remove free fatty acids, colorants, insoluble matter and gums.

16  Each of these processing steps may use additional synthetic and hazardous compounds such as

17  phosphoric acid, ferric chloride, acid activated bleaching clay, nitrogen gas saturation, sodium

18  hydroxide, and Trysil, a manufactured hydrated silica. Additionally, soy products are typically

19  made from genetically modified soybeans, which is inconsistent with the "All Natural"

20  representation.

21      35.     Thiamine mononitrate (C12H17N5O4S, CAS Reg. No. 532-43-4) is the

22  mononitrate salt of thiamine. It occurs as white crystals or a white crystalline powder and is

23  prepared from thiamine hydrochloride by dissolving the hydrochloride salt in alkaline solution

24  followed by precipitation of the nitrate half-salt with a stoichiometric amount of nitric acid. *See*

25  21 C.F.R. § 184.1878(a). Synthetically thiamin is usually marketed as thiamin hydrochloride or

26  thiamin mononitrate and is a made from Grewe diamine (a coal tar derivative) processed with

27  [16] *See* http://www.cdc.gov/niosh/topics/organsolv/ and http://www.epa.gov/ttn/atw/hlthef/hexane.html.
28  [17] *See* U.S. International Trade Commission, Synthetic Organic Chemical Index, USTIC Pub. 2933 (Nov. 1995).

CLASS ACTION COMPLAINT

1   ammonia and other chemicals.  No thiamin hydrochloride (often listed as thiamin HCL) or thiamin

2   mononitrate is naturally found in food or the body (thiamin pyrophosphate is the predominant

3   form in the body).

4          36.    Lecithin is often referred to as "soy lecithin" because it is a byproduct of soybean

5   oil (usually GMO-derived and thus not natural).  Soy lecithin is manufactured using hydrogen

6   peroxide (another synthetic chemical) and is typically used, as in the Mislabeled Products, as an

7   emulsifying or leavening agent.    Soy lecithin is defined as synthetic under 7 C.F.R. §

8   206.605(b)(31).

9          37.    Riboflavin is a synthetic compound.   U.S. International Trade Commission,

10   Synthetic Organic Chemical Index, USTIC Pub. 2933 (Nov. 1995).  It is also a food coloring

11   agent.  E101.

12          38.    Defendants also use raisin juice concentrate as a color additive in its "All Natural"

13   breads, even though the use of color additives, regardless of source, is inconsistent with the

14   labeling of a product as "natural."  *See* FDA Compliance Guide CPG Sec. 587.100 ("The use of

15   the words 'food color added,' 'natural color,' or similar words containing the term 'food' or

16   'natural' may be erroneously interpreted to mean the color is a naturally occurring constituent in

17   the food.  Since all added colors result in an artificially colored food, we would object to the

18   declaration of any added color as 'food' or 'natural.'").

19          39.    Finally, Defendants also add "enzymes" to the Misbranded Products and conceal

20   what enzyme is used, in violation of federal regulations.

21          **Defendants' Breads Are Falsely Labeled to Suggest They Are Whole Wheat.**

22          40.    The branding of Defendants' bread as "Whitewheat" or "Honey Wheat" is also

23   false and deceptive because such labels suggest that the products are whole wheat breads and

24   therefore healthier when in fact they are merely white breads.

25          41.    Since 2005 the Dietary Guidelines for Americans have advised consumers to

26   "make at least half of your grains whole" because of the increased health benefits associated with

27   whole grains, including a decreased risk of cardiovascular disease and Type 2 diabetes."[18]   In

28   [18] *USDA Dietary Guidelines for Americans 2010,*
    https://www.cnpp.usda.gov/publications/dietaryguidelines/2010/policydoc/chapter4.pdf

11

CLASS ACTION COMPLAINT

1 contrast, refined grains are considered less healthy than whole grains, and excessive consumption
2 of refined grains has been correlated with diabetes and a host of other metabolic disorders.[19]

3     42.    Not surprisingly, consumers increasingly demand whole wheat bread vis-à-vis
4 white bread, and there has been a "steep decline in demand for white bread, off 20%[.]"[20] As a
5 result, more and more whole grain products enter the market each year.[21]  By 2017, the whole
6 grain food market is expected to be worth 27.6 billion dollars.[22]

7     43.    The massive growth in demand for whole grain products stems from their
8 perceived health benefits—American consumers consider whole grains to be the healthiest
9 category of food—because of their lack of refinement.[23]  Studies show that Americans now seek to
10 live a natural lifestyle by consuming unprocessed foods.[24]

11     44.    The bread industry explicitly discussed the negative opinion of bread after the
12 Atkins era and holds that the "key to reversing the tide of public opinion about bread is clear....
13 The quicker we move to make the fresh bread category all about whole grains, the faster we will
14 be able to address the negative press we are getting from the critics of bread[.]"[25]

15     45.    The key to increasing sales generally in a culture taught to fear bread is to promote
16 whole grains—which Defendants misleadingly do through its labeling of their Honey Wheat and
17 Whitewheat Breads.

18     46.    At the same time it is difficult for consumers to determine from a product name or
19 the appearance of a product the extent to which a product contains whole grains.

20     47.    The US government advises consumers to look for breads that are at least 51
21 percent whole grain or contain at least 8 grams of whole grain per ounce.[26]

[19] USDA, Dietary Guidelines for Americans 2010 at 36, available at https://dietaryguidelines.gov
[20] Milling & Baking News, Bread Product Perspective, *Millers see opportunity for baking despite alarming sales trends*, pp. 29-30 (Feb. 21, 2012).  *See also* http://wholegraincouncil.org/newsroom/whole-grain-statistics
[21] https://www.foodnavigator-usa.com/Markets/Whole-grain-food-market-to-hit-27.6-billion-by-2017-with-US-leading-the-way
[22] *Ibid.*
[23] https://wholegraincouncil.org/newsroom/whole-grain-statistics
[24] https://events.fleishmanhillard.com/cart-to-kitchen-how-moms-navigate-the-grocery-store/
[25] Milling & Baking News, Bread Product Perspective, *Millers see opportunity for baking despite alarming sales trends*, pp. 1, 38 (Feb. 21, 2012).  *See also* http://wholegraincouncil.org/newsroom/whole-grain-statistics
[26] HHS, USDA, *Dietary Guidelines for Americans 2010*, found at http://www.cnpp.usda.gov/publications/dietaryguidelines/2010/policydoc/chapter4.pdf

12

CLASS ACTION COMPLAINT

48.     The average consumer assumes that wheat products contain large proportions of whole grains and does not know, even if he or she reads the ingredient list, that for a product to be whole wheat the term "whole wheat" must appear near the beginning of the ingredient statement.[27]

49.     Defendants deceptively label and market their Honey Wheat and Whitewheat Breads to capitalize on consumer confusion through the use of the word "wheat" in the product name.  Defendants also call their ordinary white bread "Whitewheat" in an attempt to confuse consumers who associate white wheat with a new lighter variety of whole wheat and further foster confusion by labeling it "healthy white" bread.

50.     In fact, neither Defendants' Honey Wheat nor their Whitewheat Breads are whole wheat bread or anything other than enriched white bread.

51.     Under FDA regulations, the name for bread that is composed primarily of non-whole wheat flour is simply "white bread" and not "white wheat" or "healthy white." *See* 21 C.F.R. § 136.110.

52.     If white bread contains permissible added vitamins and minerals or enriched flour, the correct name is "enriched bread." *See* 21 C.F.R. § 136.115.  All enriched breads are white breads. *See* 21 C.F.R. § 136.115.

53.     A wheat description for bread is not appropriate when the bread is composed primarily of white flour. *See* 21 C.F.R. §§ 136.11, 136.115.  The only time wheat is permitted to be used as part of the name of bread is for whole wheat bread.  *See* 21 C.F.R. § 136.180.

54.     The dough for whole wheat bread must be made entirely from whole wheat flour or bromated whole wheat flour. *See* 21 C.F.R. §136.180.  No ordinary flour is permitted to be used if the product is called whole wheat bread. *Ibid.*

55.     Defendants' Honey Wheat and Whitewheat Breads, however, are not made entirely or even predominately from whole wheat flour.  As the ingredient statement demonstrates, there is actually more sugar and honey in Defendants' Honey Wheat than whole wheat:

> Unbleached enriched flower (wheat flour, malted barley flour, niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid), water, honey, sugar, whole wheat flour, rye flour, wheat bran, yeast, contains 2% of less of the following: wheat gluten, salt, soybean oil, vinegar, cultured wheat flour, dough conditioners

---

[27] https://wholegrainscouncil.org/newsroom/2012/02/abc-news-on-whole-grain-labeling

CLASS ACTION COMPLAINT

(contains one or more of the following:  sodium stearoyl lactate, calcium stearoyl-d-lactylate, monoglycerides and/or diglycerides, azodicarbonamide), yeast, food (ammonium sulfate), monocalcium phosphate, calcium sulfate, enzymes, soy flour, soy lecithin.

56.     Similarly, Defendants claim that their Whitewheat Bread is a "Healthy White," implying that the bread is made of a variety of whole grain that is lighter in color and milder in flavor.

57.     "White wheat" refers to albino wheat, which is a whole grain.

58.     Many consumers who dislike the mealy taste of whole wheat prefer white wheat as a more nutritious alternative.[28]

59.     However, as the ingredient statement shows, Nature's Own Whitewheat actually contains no white wheat or indeed whole wheat of any kind, the primary ingredient being enriched flour:

> Unbleached enriched flour (wheat flour, malted barley flour, niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid), water, sugar, fiber (may contain soy, oat, cottonseed, and/or cellulose), wheat gluten, yeast, contains 2% or less of each of the following: calcium sulfate, soy flour, salt, calcium carbonate, soybean oil, cultured wheat flour, dough conditioners (contains one or more of the following: sodium stearoyl lactylate, calcium stearoyl lactylate, monoglycerides, mono and diglycerides, azodicarbonamide, enzymes, ascorbic acid), vinegar, guar gum, citric acid, ammonium sulfate, monocalcium phosphate, sodium citrate, soy lecithin, niacin, iron (ferrous sulfate), thiamine hydrochloride, riboflavin, folic acid, natamycin (to retard spoilage).

60.     Defendants' Honey Wheat and Whitewheat Breads are misbranded under Section 403(g) of the federal Food, Drug and Cosmetic Act because they should be named "enriched bread," the standardized name required by regulation. *See* 21 C.F.R. § 136.115.

61.     Under Federal Regulations, the proper name for bread that is composed primarily of white flour is white bread or enriched bread if enriched flour is used and/or required nutrients are added. *See* 21 C.F.R. §§ 136.11, 136.115.

62.     The names Honey Wheat Bread and Whitewheat Bread, together with images of sheaves of wheat and pots of honey, create a false impression that the products have a significant amount of whole wheat, but Defendant's Honey Wheat Bread contains more ordinary white flour,

---

[28] *See, e.g.*, https://wholegrainscouncil.org/whole-grains-101/whole-white-wheat-faq (explaining that white wheat is akin to albino wheat); *see also* Milling & Baking News, p. 6 (Feb. 21, 2012)(advertisement for Cargill's "Horizon Milling's WheatSelect white spring whole wheat flour).

14

CLASS ACTION COMPLAINT

1   water, honey, and sugar than whole wheat flour, and Defendant's Whitewheat Bread contains no

2   whole wheat at all.

3       63.     Defendants knew or should have known that the names of their Honey Wheat and

4   Whitewheat Breads are deceptive and likely to mislead reasonable consumers, who did not receive

5   the benefit of their bargain when purchasing these breads.  Nevertheless Defendants incorrectly

6   marketed these products as wheat breads to induce consumers to purchase them and have profited

7   from the deception.

8                       **Allegations as to the Named Plaintiff**

9       64.     Plaintiff is and, throughout the entire class period, was a resident of the State of

10  California.  Through the class period Plaintiff has been concerned about her health and has

11  progressively tried to consume healthier foods, including breads.  Increasingly, she tries to avoid

12  consuming foods that are not natural, such as foods containing synthetic, artificial, chemical, or

13  highly processed ingredients, and is willing to pay and has paid a premium for foods that are

14  natural and do not contain synthetic, artificial, chemical, or highly processed ingredients, and she

15  has endeavored to refrain from buying equivalent foods which are not natural and which do

16  contain artificial, chemical, or highly processed ingredients.  Although she ate white breads in the

17  past, and continues to do so on occasion, she increasingly consumes more natural, whole wheat

18  breads.

19      65.     During the class period Plaintiff purchased, among other products, Nature's Own

20  Honey Wheat Bread, Nature's Own Whitewheat® Bread, Nature's Own 100% Whole Wheat

21  Bread, and Nature's Own 100% Whole Wheat with Honey (the "Purchased Products") from

22  various markets throughout California, including but not limited to, markets in Santa Clara

23  County.

24      66.     Before purchasing the Misbranded Products, Plaintiff read the labeling

25  representations identified above.  Plaintiff relied on these representations and believed that she

26  was purchasing products that were free of synthetic, chemical, artificial, and highly processed

27  ingredients, and she believed, when purchasing Nature's Own Honey Wheat Bread and Nature's

28  Own Whitewheat® Bread, that these were wheat and not white breads.  Plaintiff not only

---

15

CLASS ACTION COMPLAINT

1    purchased these products because of the identified representations, but she also paid more money
2    than she would have had to pay for other similar products that were not natural and that contained
3    synthetic, chemical, artificial, and highly processed ingredients, artificial flavoring, and chemical
4    preservatives or that were accurately labeled as white bread.

5         67.    Indeed, had Plaintiff known that Defendants' products were not natural and
6    contained potentially dangerous chemical additives like azodicarbonamide, she would not have
7    purchased these products but would have purchased another brand that was truly natural and did
8    not contain undesirable chemicals.  Plaintiff was repulsed to learn that she repeatedly consumed
9    breads which she thought to be natural but actually contained ADA.  Similarly, Plaintiff would
10   have never bought Nature's Own Honey Wheat Bread and Nature's Own Whitewheat Bread had
11   she known that these were actually white breads, not whole wheat breads.  In this way, Plaintiff
12   did not receive the products she bargained for and has lost money as a result in the form of paying
13   a premium for Defendants' products.

14        68.    On or around May 9, 2014, Plaintiff sent a letter to Flowers Bakeries informing it
15   that it has engaged in unfair methods of competition and/or deceptive acts or practices, including
16   but not limited to violation of California Civil Code § 1770, in connection with the sale of the
17   Misbranded Products, and requested that it correct, repair, replace, or otherwise rectify its
18   unlawful conduct.  Flowers Bakeries responded by denying liability and declining to correct,
19   repair, replace, or otherwise rectify its unlawful conduct.  Because more than 30 days have elapsed
20   since the receipt of Plaintiff's letter, Plaintiff herein seeks seek actual, punitive, and statutory
21   damages as appropriate on behalf of herself and similarly situated consumers, as well as equitable
22   including injunctive relief.

23                              **CLASS ALLEGATIONS**

24        69.    Plaintiff brings this action on behalf of herself and those similarly situated as a
25   class action pursuant to Code of Civil Procedure § 382.  Plaintiff seeks to represent the following
26   classes on behalf of a California or, where stated, nationwide class of consumers:

27        (1)    All persons who purchased Nature's Own products containing azodicarbonamide
                 from four years prior to the filing of the Complaint and continuing to the present.
28

16

CLASS ACTION COMPLAINT

(2)  All persons who purchased Nature's Own Honey Wheat Bread or Whitewheat Bread from four years prior to the filing of the Complaint and continuing to the present.

(3)  All persons who purchased Nature's Own breads labeled "All Natural" from four years prior to the filing of the Complaint and continuing to the present.

70.  The class excludes counsel representing the class, governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

71.  Plaintiff reserves the right under California Rule of Court 3.765 to amend or modify the class description with greater particularity or further division into subclasses or limitation to particular issues.

72.  This action has been brought and may properly be maintained as a class action under the provisions of Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the class is easily ascertainable.

**A.    Numerosity**

73.  The potential members of the class as defined are so numerous that joinder of all members of the class is impracticable.  Although the precise number of putative class members has not been determined at this time, Plaintiff is informed and believes that the proposed class includes thousands of members.

**B.    Commonality**

74.  There are questions of law and fact common to the class that predominate over any questions affecting only individual putative class members.  These common questions of law and fact include:

a.  Whether Defendants' conduct was a "fraudulent practice" within the meaning of the Unfair Competition Law ("UCL"), Business & Professions Code § 17200, in that it was likely to mislead consumers;

///

17

CLASS ACTION COMPLAINT

1    b.   Whether Defendants' conduct was an "unfair practice" within the meaning of the

2         UCL in that it offended established public policy and is immoral, unethical,

3         oppressive, unscrupulous or substantially injurious to consumers;

4    c.   Whether Defendants' conduct was an "unlawful" practice within the meaning of

5         the UCL;

6    d.   Whether Defendants' conduct was likely to deceive a consumer acting reasonably

7         in the same circumstances;

8    e.   Whether Defendants advertise or market the Misbranded Products in a way that is

9         false or misleading;

10   f.   Whether Defendants violated California Business and Professions Code

11        § 17500, *et seq.*;

12   g.   Whether Defendants violated California Civil Code § 1750, *et seq.*;

13   h.   Whether Plaintiff and members of the putative class are entitled to restitution,

14        injunctive, declaratory and/or other equitable relief;

15   i.   Whether Defendants have been unjustly enriched through the misrepresentations

16        alleged herein;

17   j.   Whether Defendants knew or should have known that the labeling representations

18        were false;

19   k.   Whether Defendants negligently misrepresented, concealed, or omitted a material

20        fact regarding the true characteristics of the Misbranded Products;

21   l.   Whether Defendants breached their contracts with Plaintiff and members of the

22        putative class; and

23   m.   Whether Plaintiff and the members of the class sustained monetary loss.

24   **C.    Adequacy of Representation**

25   75.    Plaintiff will fairly and adequately represent and protect the interests of the class.

26   Counsel who represent Plaintiff and putative class members are experienced and competent in

27   litigating class actions.

28   ///

---

18

CLASS ACTION COMPLAINT

**D.   Superiority of Class Action**

76.   A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of putative class members is not practicable, and questions of law and fact common to putative class members predominate over any questions affecting only individual putative class members.  Each putative class member has been damaged and is entitled to recovery by reason of Defendant's illegal policies or practices.

77.   Class-action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

**FIRST CAUSE OF ACTION**
**Unlawful Business Practices in Violation of**
**Business and Professions Code § 17200, *et seq.***
***(on behalf of California consumers)***

78.   Plaintiff incorporates by reference each allegation set forth above.

79.   Defendants' conduct constitutes unlawful business acts and practices under Business & Professions Code § 17200, *et seq.*

80.   Defendants sold Misbranded Products in California during the class period.

81.   Defendant Flowers Bakeries, LLC is a corporation and, therefore, is a "person" within the meaning of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, *et seq.* (the "Sherman Law").  The Sherman Law adopts, incorporates, and is identical to the federal Food, Drug & Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FDCA").

82.   Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

83.   Defendants' business practices are unlawful under Business & Professions Code § 17200, *et seq.* by virtue of Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

84.   Defendants' business practices are unlawful under Business & Professions Code § 17200, *et seq.* by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal.

19

CLASS ACTION COMPLAINT

1  Civ. Code § 1750, *et seq.*

2      85.    Under California law, a food product that is misbranded cannot legally be

3  manufactured, advertised, distributed, held or sold. Misbranded products cannot be legally sold or

4  possessed, have no economic value, and are legally worthless. Indeed the sale, purchase or

5  possession of misbranded food is a criminal act in California and the FDA even threatens food

6  companies with seizure of misbranded products.

7      86.    Defendants sold Plaintiff and members of the putative class Misbranded Products

8  that were not capable of being sold or legally held and which had no economic value and were

9  legally worthless. Plaintiff and each putative class member paid a premium price for the

10 Misbranded Products.

11     87.    As a result of Defendants' illegal business practices, Plaintiff and the members of

12 the putative class are entitled to an order enjoining such future conduct and such other orders and

13 judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any

14 putative class member any money paid for the Misbranded Food Products.

15     88.    Defendants' unlawful business acts present a threat and reasonable continued

16 likelihood of injury to Plaintiff and each member of the putative class.

17
18                     **SECOND CAUSE OF ACTION**
          **Unfair Business Practices in Violation of**
19       **Business & Professions Code § 17200,** *et seq.*
          *(on behalf of California consumers)*

20     89.    Plaintiff incorporates by reference each allegation set forth above.

21     90.    The UCL defines unfair business competition to include any "unlawful, unfair or

22 fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.

23 Cal. Bus. & Prof. Code § 17200.

24     91.    A business act or practice is "unfair" under the UCL if the reasons, justifications,

25 and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged

26 victims.

27     92.    Defendants' conduct as set forth herein constitutes unfair business acts and

28 practices.

CLASS ACTION COMPLAINT

1    93.    Defendants sold Misbranded Products in California during the class period.

2    94.    Plaintiff and the members of the putative class suffered a substantial injury by

3    virtue of buying Defendants' Misbranded Products, which they would not have purchased absent

4    Defendants' illegal conduct.

5    95.    Defendants' deceptive marketing, advertising, packaging and labeling of their

6    Misbranded Products and their sale of unsalable Misbranded Products that were illegal to possess

7    were of no benefit to consumers, and the harm to consumers and competition is substantial.

8    96.    Defendants sold Plaintiff and the members of the putative class Misbranded

9    Products that were not capable of being legally sold or held and that had no economic value and

10   were legally worthless.  Plaintiff and the members of the putative class paid a premium price for

11   the Misbranded Products.

12   97.    Plaintiff and the members of the putative class who purchased Defendant's

13   Misbranded Products had no way of reasonably knowing that the products were misbranded and

14   were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably

15   avoided the injury each of them suffered.

16   98.    The consequences of Defendants' conduct as set forth herein outweigh any

17   justification, motive or reason therefor.  Defendants' conduct is and continues to be unlawful,

18   unscrupulous and contrary to public policy, and is substantially injurious to Plaintiff and the

19   members of the putative class.

20   99.    As a result of Defendants' conduct, Plaintiff and the members of the putative class,

21   pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

22   conduct by Defendants, and such other orders and judgments which may be necessary to disgorge

23   Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Products by

24   Plaintiff and the members of the putative class.

25
26
27
28

**THIRD CAUSE OF ACTION**
**Fraudulent Business Practices in Violation of**
**Business and Professions Code § 17200, *et seq.***
***(on behalf of California consumers)***

100.   Plaintiff incorporates by reference each allegation set forth above.

21

CLASS ACTION COMPLAINT

1      101.    Defendants' conduct as set forth herein constitutes fraudulent business practices

2 under California Business and Professions Code sections § 17200, *et seq.*

3      102.    Defendants sold Misbranded Products in California during the class period.

4      103.    Defendants' misleading marketing, advertising, packaging, and labeling of the

5 Misbranded Products and misrepresentation that the products were capable of sale, capable of

6 possession, and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff

7 and the members of the putative class were deceived.  Defendants have engaged in fraudulent

8 business acts and practices.

9      104.    Defendants' fraud and deception caused Plaintiff and the members of the putative

10 class to purchase Defendants' Misbranded Products that they would otherwise not have purchased

11 had they known the true nature of those products.

12      105.    Defendants sold Plaintiff and the members of the putative class Misbranded

13 Products that were not capable of being sold or legally held and that had no economic value and

14 were legally worthless.  Plaintiff and the members of the putative class paid a premium price for

15 the Misbranded Products.

16      106.    As a result of Defendants' conduct as set forth herein, Plaintiff and each member of

17 the putative class, pursuant to Business and Professions Code § 17203, are entitled to an order

18 enjoining such future conduct by Defendants, and such other orders and judgments which may be

19 necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants'

20 Misbranded Products by Plaintiff and the members of the putative class.

21

22                     **FOURTH CAUSE OF ACTION**
                  **Misleading Advertising in Violation of**

23             **Business and Professions Code § 17500, *et seq.***
                 *(on behalf of California consumers)*

24      107.    Plaintiff incorporates by reference each allegation set forth above.

25      108.    Plaintiff asserts this cause of action for violations of California Business and

26 Professions Code § 17500, *et seq.*, for misleading and deceptive advertising against Defendant.

27      109.    Defendants sold Misbranded Products in California during the class period.

28 Defendants engaged in a scheme of offering Defendants' Misbranded Products for sale to Plaintiff

CLASS ACTION COMPLAINT

1  and the members of the putative class by way of, *inter alia*, product packaging and labeling.

2  These materials misrepresented and/or omitted the true contents and nature of Defendants'

3  Misbranded Products.

4      110.   Defendants' advertisements and inducements were made within California and

5  come within the definition of advertising as contained in Business and Professions Code §17500,

6  *et seq.*, in that such product packaging and labeling were intended as inducements to purchase

7  Defendants' Misbranded Food Products and are statements disseminated by Defendants to

8  Plaintiff and the members of the putative class that were intended to reach the members of the

9  putative class.  Defendants knew, or in the exercise of reasonable care should have known, that

10  these statements were misleading and deceptive as set forth herein.

11      111.   In furtherance of its plan and scheme, Defendants prepared and distributed within

12  California via product packaging and labeling statements that misleadingly and deceptively

13  represented the composition and the nature of Defendants' Misbranded Products.  Plaintiff and

14  members of the putative class necessarily and reasonably relied on Defendants' material and were

15  the intended targets of such representations.

16      112.   Defendants' conduct in disseminating misleading and deceptive statements in

17  California to Plaintiff and the members of the putative class was and is likely to deceive

18  reasonable consumers by obfuscating the true composition and nature of Defendants' Misbranded

19  Products, in violation of the "misleading prong" of California Business and Professions Code §

20  17500, *et seq.*

21      113.   As a result of Defendants' violations of the "misleading prong" of California

22  Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the

23  expense of Plaintiff and the members of the putative class.  Misbranded products cannot be legally

24  sold or held and have no economic value and are legally worthless.  Plaintiff and the members of

25  each class paid a premium price for the Misbranded Products.

26      114.   Plaintiff and the members of the putative class, pursuant to Business and

27  Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants,

28  and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten

CLASS ACTION COMPLAINT

1 | gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the

2 | members of the putative class.

## FIFTH CAUSE OF ACTION
### Untrue Advertising in Violation of
### Business and Professions Code § 17500, *et seq.*
#### *(on behalf of California consumers)*

6 | 115. Plaintiff incorporates by reference each allegation set forth above.

7 | 116. Plaintiff asserts this cause of action against Defendants for violations of California

8 | Business and Professions Code § 17500, *et seq.*, regarding untrue advertising. Defendants sold

9 | Misbranded Products in California during the class period.

10 | 117. Defendant engaged in a scheme of offering Defendants' Misbranded Products for

11 | sale to Plaintiff and the members of the putative class by way of product packaging and labeling.

12 | These materials misrepresented and/or omitted the true contents and nature of Defendants'

13 | Misbranded Products. Defendants' advertisements and inducements were made in California and

14 | come within the definition of advertising as contained in Business and Professions Code §17500,

15 | *et seq.*, in that the product packaging and labeling were intended as inducements to purchase

16 | Defendants' Misbranded Products and are statements disseminated by Defendants to Plaintiff and

17 | the members of the putative class. Defendants knew, or in the exercise of reasonable care should

18 | have known, that these statements were untrue.

19 | 118. In furtherance of its plan and scheme, Defendants prepared and distributed in

20 | California via product packaging and labeling statements that falsely advertise the composition of

21 | Defendants' Misbranded Products, and falsely misrepresented the nature of those products.

22 | Plaintiff and the members of the putative class were the intended targets of such representations

23 | and would reasonably be deceived by Defendants' materials.

24 | 119. Defendants' conduct in disseminating untrue advertising throughout California

25 | deceived Plaintiff and the members of the putative class by obfuscating the contents, nature, and

26 | quality of Defendants' Misbranded Products, in violation of the "untrue prong" of California

27 | Business and Professions Code § 17500.

28 | ///

CLASS ACTION COMPLAINT

1     120.    As a result of Defendants' violations of the "untrue prong" of California Business

2   and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of

3   Plaintiff and the members of the putative class.  Misbranded products cannot be legally sold or

4   held and have no economic value and are legally worthless.  Plaintiff and the members of the

5   putative class paid a premium price for the Misbranded Products.

6     121.    Plaintiff and the members of the putative class, pursuant to Business and

7   Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants,

8   and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten

9   gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the

10  members of the putative class.

11

12                              **SIXTH CAUSE OF ACTION**
                            **Violation of the Consumers Legal Remedies Act,**
13                             **California Civil Code §§ 1750, *et seq.***
                                **(on behalf of California consumers)**

14    122.    Plaintiff incorporates by reference each allegation set forth above.

15    123.    This cause of action is brought pursuant to the Consumers Legal Remedies Act,

16  California Civil Code §§ 1750, *et seq.* (the "CLRA").

17    124.    Plaintiff and each member of the putative class are "consumers" within the

18  meaning of Civil Code § 1761(d).

19    125.    The purchases of the Defendants' Misbranded Products by consumers constitute

20  "transactions" within the meaning of Civil Code § 1761(e), and the Misbranded Products offered

21  by Defendants constitutes "goods" within the meaning of Civil Code § 1761(a).

22    126.    Defendant has violated, and continue to violate, the CLRA in at least the following

23  respects:

24        a.    In violation of Civil Code § 1770(a)(5), Defendants represented that the

25              Misbranded Products had characteristics which they did not have;

26        b.    In violation of Civil Code § 1770(a)(7), Defendants represented that the

27              Misbranded Products were of a particular standard, quality, or grade, of which

28              they were not; and

                                            25
                            _____
                                  CLASS ACTION COMPLAINT

1          c.    In violation of Civil Code § 1770(a)(9), Defendants advertised the Misbranded

2          Products with the intent not to provide what they advertised.

3      127.    As a direct and proximate cause of Defendants' violation of the CLRA as alleged

4  hereinabove, Plaintiff and members of the putative class have suffered damages, including but not

5  limited to inducing them to purchase the Misbranded Products and pay a premium therefor where

6  such products did not conform to Defendants' representations, thereby causing Plaintiff and

7  putative class members to incur a pecuniary loss.

8      128.    Pursuant to California Civil Code § 1780, Plaintiff, on behalf of herself and the

9  putative class, seeks damages, restitution, injunctive relief, punitive damages, attorneys' fees, and

10 the costs of litigation.

11 **SEVENTH CAUSE OF ACTION**
**Restitution Based on Quasi-Contract/Unjust Enrichment**

12 *(on behalf of consumers nationwide)*

13     129.    Plaintiff incorporates by reference each allegation set forth above.  Plaintiff pleads

14 this cause of action in the alternative.

15     130.    Defendants' conduct in enticing Plaintiff and putative class members to purchase

16 the Misbranded Products through their false and misleading advertising and packaging as

17 described throughout this Complaint is unlawful because the statements contained on Defendants'

18 product labels are untrue.  Defendants took monies from Plaintiff and members of the putative

19 class for products based on the identified representations, even though the Misbranded Products

20 did not conform to those representations.

21     131.    Defendants have been unjustly enriched at the expense of Plaintiff and the putative

22 class as result of Defendants' unlawful conduct alleged herein, thereby creating a quasi-

23 contractual obligation on Defendants to restore these ill-gotten gains to Plaintiff and putative class

24 members.

25     132.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and

26 putative class members are entitled to restitution or restitutionary disgorgement, in an amount to

27 be proven at trial.

28 ///

CLASS ACTION COMPLAINT

**EIGHTH CAUSE OF ACTION**
**Common Law Fraud**
*(on behalf of consumers nationwide)*

133.    Plaintiff incorporates by reference each allegation set forth above.  Plaintiff pleads this cause of action in the alternative.

134.    Defendants willfully, falsely, and knowingly misrepresented material facts relating to the character and quality of the Misbranded Products.  These misrepresentations are contained in various media advertising and packaging disseminated or caused to be disseminated by Defendants, and such misrepresentations were reiterated and disseminated by officers, agents, representatives, servants, or employees of Defendants, acting within the scope of their authority, and employed by Defendants to merchandise and market the Misbranded Products.

135.    Defendants' misrepresentations were the type of misrepresentations that are material (i.e. the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchasing decisions).

136.    Defendants knew that the misrepresentations alleged herein were false at the time they made them and/or acted recklessly in making such misrepresentations.

137.    Defendants intended that Plaintiff and members of the putative class rely on the misrepresentations alleged herein and purchase the Misbranded Products.

138.    Plaintiff and members of the putative class reasonably and justifiably relied on Defendants' misrepresentations when purchasing the Misbranded Products, were unaware of the existence of facts that Defendants suppressed and failed to disclose, and, had the facts been known, would not have purchased the Misbranded Products and/or purchased them at the prices at which they were offered.

139.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and members of the putative class have suffered and continue to suffer economic losses and other general and specific damages, including, but not necessarily limited to, the monies paid to Defendants, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

///

27

CLASS ACTION COMPLAINT

140.  Moreover, in that, at all times herein mentioned, Defendants intended to cause or acted with reckless disregard of the probability of causing damage to Plaintiff and members of the putative class, and because Defendants was guilty of oppressive, fraudulent and/or malicious conduct, Plaintiff and members of the putative class are entitled to an award of exemplary or punitive damages against Defendants in an amount adequate to deter such conduct in the future.

<div align="center">

**NINTH CAUSE OF ACTION**
**Negligent Misrepresentation**
*(on behalf of consumers nationwide)*

</div>

141.  Plaintiff incorporates by reference each allegation set forth above.  Plaintiff pleads this cause of action in the alternative to the foregoing.

142.  Defendants, directly or through its agents and employees, made false representations to Plaintiff and members of all classes.

143.  Defendants owed a duty to Plaintiff and members of all classes to disclose the material facts set forth above about the Misbranded Products.

144.  In making the representations, and in doing the acts alleged above, Defendants acted without any reasonable grounds for believing the representations were true, and intended by said representations to induce the reliance of Plaintiff and members of all classes.

145.  Plaintiff and members of all classes reasonably and justifiably relied on Defendants' misrepresentations when purchasing the Misbranded Products, were unaware of the existence of facts that Defendants suppressed and failed to disclose and, had the facts been known, would not have purchased the Misbranded Products and/or purchased them at the price at which they were offered.

146.  As a direct and proximate result of these misrepresentations, Plaintiff and members of all classes have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Misbranded Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

///

///

///

<div align="center">

28

CLASS ACTION COMPLAINT

</div>

**TENTH CAUSE OF ACTION**
**Breach of Contract**
*(on behalf of consumers nationwide)*

147.    Plaintiff incorporates in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

148.    Plaintiff and members of both classes had a valid contract, supported by sufficient consideration, pursuant to which Defendants were obligated to provide the products which did not contain azodicarbonamide or, as to the breads labeled "All Natural," any synthetic, artificial, or highly processed ingredient or color additive, and/or which were whole wheat breads, as represented by Defendants.

149.    Defendants materially breached its contract with Plaintiff and members of both classes by providing the Misbranded Products labeled "All Natural" which were not free from artificial, synthetic, highly processed ingredients and color additives and some of which in fact contained harmful chemicals, including azodicarbonamide, the "yoga mat" substance, as alleged above.   Additionally, Defendants' Honey Wheat and Whitewheat Breads are not whole wheat breads, as is represented on the product packaging..

150.    As a result of Defendants' breach, Plaintiff and members of the putative class were damaged in that they received a product with less value than one for which they paid.  Plaintiff and members of both classes have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Misbranded Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the putative class, prays as follows:

A.    For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed the class representative, and that Plaintiff's counsel be appointed counsel for the class;

///

29

CLASS ACTION COMPLAINT

1    B.    For restitution in such amount that Plaintiff and all putative class members paid to
2 purchase the Misbranded Products, or the premiums paid therefor on account of the
3 misrepresentation as alleged above, or restitutionary disgorgement of the profits Defendants have
4 obtained from those transactions;

5    C.    For compensatory damages for causes of action for which they are available;

6    D.    For statutory damages allowable under Civil Code § 1780;

7    E.    For punitive damages for causes of action for which they are available;

8    F.    For a declaration and order enjoining Defendants from advertising their products
9 misleadingly in violation of California's Sherman Food, Drug, and Cosmetic Law, and other
10 applicable laws and regulations as specified in this Complaint;

11    G.    For an order awarding reasonable attorneys' fees and the costs of suit herein;

12    H.    For an award of pre- and post-judgment interest;

13    I.    For an order requiring an accounting for, and imposition of, a constructive trust
14 upon all monies received by Defendants as a result of the unfair, misleading, fraudulent and
15 unlawful conduct alleged herein; and

16    J.    Such other and further relief as may be deemed necessary or appropriate.

17                                              Respectfully submitted,

18

19 DATED:        October 17, 2014              COUNSELONE, PC

20

21                                       By _____
22                                          Anthony J. Orshansky
                                            Justin Kachadoorian
23                                          Attorneys for Plaintiff and the Putative
                                            Class

24

25

26

27

28

CLASS ACTION COMPLAINT

1

## **JURY DEMAND**

2     Plaintiff hereby demands a jury trial on all issues so triable.

3

4   DATED:        October 17, 2014                    COUNSELONE, PC

5

6                                          By _____

7                                             Anthony J. Orshansky
                                              Justin Kachadoorian
8                                             Attorneys for Plaintiff and the Putative
                                              Class

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

31

CLASS ACTION COMPLAINT

EXHIBIT  A







Healthy White
No Artificial Preservatives, Colors or Flavors
Whitewheat
Nature's Own

EXHIBIT  B





EXHIBIT  C





**EXHIBIT  D**





EXHIBIT E





