1   Jennifer S. Romano (CSB No. 195953)
jromano@crowell.com
2   CROWELL & MORING LLP
515 South Flower St., 40th Floor
3   Los Angeles, CA 90071
Telephone: (213) 622-4750
4   Facsimile: (213) 622-2690

5   Joel D. Smith (CSB No. 244902)
jsmith@crowell.com
6   CROWELL & MORING LLP
275 Battery Street, 23rd Floor
7   San Francisco, CA  94111
Telephone: 415.986.2800
8   Facsimile: 415.986.2827

9   Attorneys for FLOWERS BAKERIES, LLC

10

11                  **UNITED STATES DISTRICT COURT**

12     **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

13   KELLY ROMERO, on behalf of herself and   Case No. 5:14-cv-05189
others similarly situated,

14                            <u>CLASS ACTION</u>
                  Plaintiff,

15                        **DEFENDANT FLOWERS BAKERIES,**
        v.                     **LLC'S NOTICE OF MOTION AND**

16                       **MOTION TO DISMISS OR STAY**
   FLOWERS BAKERIES, LLC dba      **PURSUANT TO RULE 12(b)(1) AND**

17   NATURE'S OWN, a Georgia limited     **12(b)(6)**
   liability company, and DOES 1 through 50,

18   inclusive,                       **SUPPORTING MEMORANDUM OF**
                        **POINTS AND AUTHORITIES.**

19                  Defendant.

20                        Date:        April 16, 2015
                                Time:       9 a.m.

21                        Judge:     Hon. Beth Labson Freeman

22

23

24

25

26

27

28

Crowell
& Moring LLP
Attorneys At Law

CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 2

INTRODUCTION ....................................................................................................................... 2

FACTUAL ALLEGATIONS ....................................................................................................... 4

ARGUMENT ............................................................................................................................... 6

I.  The Court Should Dismiss All Claims In Their Entirety ....................................... 6

    A.  The Court Should Dismiss The Fraud-Based Claims (Claim Nos. 1-9) For Failure To Satisfy Rule 9(b) And To Allege Justifiable Or Reasonable Reliance ............................................................................. 6

        1.  Plaintiff's Allegations Do Not Satisfy Rule 9(b) ............................ 6

        2.  Plaintiff Does Not Allege Reasonable Reliance ............................ 8

    B.  Plaintiff's Claims For Violation Of The CLRA (Claim No. 6) And Unjust Enrichment (Claim No. 7) Fail As A Matter Of Law On Additional Grounds ...................................................................................... 10

        1.  Plaintiff Did Not Comply With The CLRA's Notice And Affidavit Requirements ................................................................... 10

        2.  The Claim For Quasi-Contract/ Unjust Enrichment Is Duplicative Of Plaintiff's Statutory And Common Law Claims ........................................................................................... 11

    C.  Plaintiff Cannot State A Claim For Breach Of Contract (Claim No. 10) ........................................................................................................... 12

II.  Even If Any Claims Survive, The Court Should Partially Dismiss The Claims To The Extent They Are Based On Non-Purchased Products Or Based On Plaintiff's Wheat Allegations ............................................................... 13

    A.  Plaintiff Lacks Standing To Pursue Claims Based On Products That She Did Not Buy ...................................................................................... 14

    B.  All Claims Fail As A Matter Of Law To The Extent They Are Based On Plaintiff's Wheat Allegations .................................................. 15

CROWELL
& MORING LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**
(continued)

Page

1.  Reasonable Consumers Would Not Assume That WhiteWheat® and Honey Wheat Breads Are Whole Wheat Breads .................................................................. 15

2.  Federal Law Preempts Plaintiff's "Wheat" Claims ..................... 18

    a.  The FDCA Sets Forth Standards Of Identity For Bread ................................................................. 19

    b.  Plaintiff's "Wheat" Claims Are Preempted ..................... 20

3.  If Plaintiff's Claims Are Not Preempted, The Use Of The Word "Wheat" Falls Within The FDA's Primary Jurisdiction ............................................................... 21

    a.  The FDA Has The Expertise To Resolve Complex Food Labeling Issues And Ensure Uniformity Of Result ................................................................. 21

    b.  The FDA Should Resolve Complex Issues Regarding Wheat, Whole Wheat And Whole Grain Content And Labeling ....................................... 22

III.  The Court Should Dismiss The Request For Injunctive Relief Due To Lack Of Standing ................................................................. 24

CONCLUSION ................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ang v. Whitewave Foods Co.*,
  2013 WL 6492353 (N.D. Cal. Dec. 10, 2013) .......................................................16, 17, 19, 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................................13

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007)........................................................................................................4, 24

*Beckwith v. Dahl*,
  205 Cal. App. 4th 1039 (2012)..........................................................................................................9

*Bilodeau v. McAfee, Inc.*,
  2013 WL 3200658 (N.D. Cal. June 24, 2013) ...............................................................................13

*Brian Lichtenberg, LLC v. Alex & Chloe, Inc.*,
  2014 WL 585436 (C.D. Cal. Feb. 13, 2014)....................................................................................14

*Brod v. Sioux Honey Ass'n Co-op.*,
  895 F. Supp. 2d 972 (N.D. Cal. 2012) ....................................................................................18, 20, 21

*Brod v. Sioux Honey Ass'n, Co-op*,
  927 F. Supp. 2d 811 (N.D. Cal. 2013) .............................................................................................15

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008)............................................................................................................8

*Foster Poultry Farms v. Alkar-Rapidpack-MP Equip., Inc.*,
  2012 WL 6097105 (E.D. Cal. Dec. 7, 2012).....................................................................................9

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
  2014 WL 2451290 (N.D. Cal. June 2, 2014) ..........................................................................*passim*

*Ham v. Hain Celestial Grp., Inc.*,
  2014 WL 4965959 (N.D. Cal. Oct. 3, 2014)..............................................................................12, 24

*Hill v. Opus Corp.*,
  841 F. Supp. 2d 1070 (C.D. Cal. 2011)............................................................................................13

*Hodgers–Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir.1999)............................................................................................................24

*Hood v. Wholesoy & Co.*,
  2013 WL 3553979 (N.D. Cal. July 12, 2013).............................................................................21, 22

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
　802 F. Supp. 2d 1070 (N.D. Cal. 2011) ....................................................10, 11, 12

*In re Ford Tailgate Litig.*,
　2014 WL 3899545 (N.D. Cal. Aug. 8, 2014).....................................................10, 12

*Janney v. Mills*,
　944 F. Supp. 2d 806 (N.D. Cal. 2013) ...................................................................7

*JIPC Mgmt., Inc. v. Incredible Pizza Co., Inc.*,
　2009 WL 8591607 (C.D. Cal. July 14, 2009) .........................................................11

*Kane v. Chobani, Inc.*,
　2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ....................................................8, 14

*Kearns v. Ford Motor Co.*,
　567 F.3d 1120 (9th Cir. 2009).............................................................................7

*Leonhart v. Nature's Path Foods, Inc.*,
　2014 WL 6657809 (N.D. Cal. Nov. 21, 2014).............................................12, 14, 15

*Low v. LinkedIn Corp.*,
　900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...............................................................12

*McAfee v. Francis*,
　2011 WL 3293759 (N.D. Cal. Aug. 1, 2011) .........................................................13

*McKinniss v. Sunny Delight Bevs. Co.*,
　2007 WL 4766525 (C.D. Cal. Sept. 4, 2007)........................................................16

*Melchior v. New Line Prods., Inc.*,
　106 Cal. App. 4th 779 (2003)............................................................................12

*Miller v. Ghirardelli Chocolate Co.*,
　912 F. Supp. 2d 861 (N.D. Cal. 2012) ...............................................................3, 14

*Mills v. Giant of Maryland, LLC*,
　441 F. Supp. 2d 104 (D.D.C. 2006) ....................................................................20

*Mora v. U.S. Bank N.A.*,
　2012 WL 2061629 (N.D. Cal. June 7, 2012) .........................................................13

*Morgan v. Wallaby Yogurt Co.*,
　2014 WL 1017879 (N.D. Cal. Mar. 13, 2014)...................................................24, 25

*Mort v. United States*,
　86 F.3d 890 (9th Cir. 1992)...............................................................................11

*Pfau v. Mortenson*,
　858 F. Supp. 2d 1150 (D. Mont. 2012) .............................................................8, 12

CROWELL
& MORING LLP
*ATTORNEYS AT LAW*

*Red v. Kraft Foods, Inc.*,
    2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ..........................................................................16

*Red v. The Kroger Co.*,
    2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ....................................................................18, 21

*Reese v. Odwalla, Inc.*,
    2014 WL 1244940 (N.D. Cal. March 25, 2014) ....................................................................22

*Rooney v. Cumberland Packing Corp.*,
    2012 WL 1512106 (S.D. Cal. April 16, 2012) ............................................................15, 16, 17

*Saucier v. Countrywide Home Loans*,
    64 A.3d 428 (D.C. 2013) ........................................................................................................16

*Segalman v. Sw. Airlines*,
    913 F. Supp. 2d 941 (E.D. Cal. 2012) ....................................................................................19

*Smedt v. Hain Celestial Grp., Inc.*,
    2014 WL 2466881 (N.D. Cal. May 30, 2014) ............................................................15, 21, 22

*Stewart v. Mortg. Elec. Registration Sys., Inc.*,
    2010 WL 1054384 (D. Or. Feb. 18, 2010) ................................................................................7

*Stuart v. Cadbury Adams USA, LLC*,
    458 F. App'x. 689 (9th Cir. 2011) ..........................................................................................17

*Swearingen v. Yucatan Foods, L.P.*,
    2014 WL 2115790 (N.D. Cal. May 20, 2014) ..................................................................21, 22

*Taradejna v. Gen. Mills, Inc.*,
    909 F. Supp. 2d 1128 (D. Minn. 2012) ..................................................................................22

*Thomas v. Costco Wholesale Corp.*,
    2013 WL 1435292 (N.D. Cal. Apr. 9, 2013) ......................................................................7, 10

*Turek v. Gen. Mills, Inc.*,
    754 F. Supp. 2d 956 (N.D. Ill. 2010) ......................................................................................18

*United States v. Krumm*,
    269 F. 848 (E.D. Pa 1921) ......................................................................................................18

*Viggiano v. Hansen Natural Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................................................................16

*Weisbuch v. Cnty. of L.A.*,
    119 F.3d 778 (9th Cir. 1997) ....................................................................................................9

*Wilson v. Frito-Lay N. Am. Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..................................................................................14

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-v-    CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

**Statutes**

21 U.S.C. § 331 ................................................................................................................18

21 U.S.C. § 343 ..........................................................................................................18, 19

21 U.S.C. § 343-1 ......................................................................................................18, 20

21 U.S.C. § 393 ................................................................................................................18

Cal. Civ. Code § 1770 ...............................................................................................10, 11

Cal. Civ. Code § 1780 .....................................................................................................11

Cal. Civ. Code § 1782 .....................................................................................................10

**Rules**

Fed. R. Civ. Proc. 8 .........................................................................................................13

Fed. R. Civ. Proc. 9(b) ............................................................................................. *passim*

Fed. R. Civ. Proc 12(b)(1) ..............................................................................................14

Fed. R. Civ. Proc 12(b)(6) ..............................................................................................14

Fed. R. Evid. 408 ............................................................................................................11

**Regulations**

21 C.F.R. § 100.1 ............................................................................................................20

21 C.F.R. § 136.110 ........................................................................................................20

21 C.F.R. § 136.115 ........................................................................................................20

21 C.F.R. § 136.180 ........................................................................................................19

21 C.F.R. § 137.105 ........................................................................................................19

21 C.F.R. § 137.200 ........................................................................................................19

**Other Authorities**

77 Fed. Reg. 11547 (February 27, 2012) ........................................................................23

FDA, *The Scoop on Whole Grains* (May 6, 2009) ........................................................23

H. Rep. No. 101-538 (1990), reprinted in 1990 U.S.C.C.A.N. 3336..............................18

| | -vi- | CASE NO. CASE NO. 5:14-cv-05189 |
|---|---|---|
| | DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY | |

DCACTIVE-29833796.2

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 16, 2015, at 9 a.m., or as soon thereafter as counsel may be heard, in the United States District Court, Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California, Courtroom 3, before the Honorable Beth Labson Freeman, Defendant Flowers Bakeries, LLC ("Flowers") will move and hereby does move this Court for an order dismissing the Class Action Complaint in its entirety and with prejudice, and each cause of action labeled nos. 1-10.  Alternatively, with respect to the allegations that it is misleading to describe some of Nature's Own breads as "wheat" breads (hereinafter, the "wheat allegations") the Court should stay this case pending further guidance from the U.S. Food and Drug Administration ("FDA").

Flowers' Motion to Dismiss is made pursuant to F.R.C.P. 12(b)(6) and 12(b)(1), and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice and attached exhibits, all pleadings on file in this matter, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

## STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3))

1. Whether Plaintiff's claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), Consumers Legal Remedies Act ("CLRA"), and common law claims for unjust enrichment, fraud and negligent misrepresentation (collectively, "fraud-based claims") should be dismissed for failure to satisfy Rule 9(b).

2. Whether Plaintiff's fraud-based claims should be dismissed for failure to allege justifiable or reasonable reliance.

3. Whether the claim under the CLRA should be dismissed for failure to comply with the statutory notice and affidavit requirements.

4. Whether the Complaint fails to state a claim for quasi-contract/unjust enrichment.

5. Whether the Complaint fails to state a claim for breach of contract.

6. To the extent that any of Plaintiff's claims survive dismissal, the following issues also are raised by Flowers' motion to dismiss:

    a. Whether Plaintiff lacks standing to pursue claims based on products that she did not purchase.

b. Whether the claims under the UCL, FAL and CLRA should be dismissed to the extent that they are based on the wheat allegations, because reasonable consumers would not assume that WhiteWheat® and Honey Wheat breads are whole wheat breads.

c. Whether federal law preempts Plaintiff's claims to the extent that they are based on the wheat allegations.

d. Whether Plaintiff's claims should be dismissed or stayed pursuant to the primary jurisdiction doctrine to the extent that they are based on the wheat allegations.

e. Whether Plaintiff lacks standing to seek injunctive relief.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This case is the latest salvo in the ongoing assault on food companies taking place in this District. Plaintiff Kelly Romero contends that some of Nature's Own brand breads, such as WhiteWheat® and Honey Wheat, are "mislabeled" because the use of the word "wheat" in their names indicates that they are whole wheat breads, when in fact they are white breads (hereinafter, the "wheat allegations"). Wheat, of course, is the principal ingredient in all white breads, including Honey Wheat and WhiteWheat® breads. Moreover, Plaintiff admits that Nature's Own offers a wide variety of products, and unlike WhiteWheat® and Honey Wheat, Nature's Own whole wheat products are clearly (and accurately) identified as "100% whole wheat."

As an apparent fallback theory, Plaintiff also attempts to imitate food labeling class actions previously filed in this District by alleging that "some" of Nature's Own products are falsely labeled "all natural." All of Plaintiff's claims—whether based on the wheat allegations or "all natural" allegations—are deficient as a matter of law and should be dismissed for the following reasons:

First, Plaintiff's claims under the UCL, FAL, CLRA and her common law claims for unjust enrichment, fraud and negligent misrepresentation (in other words, all claims other than the breach of contract claim, which are hereinafter referred to as the "fraud-based claims") are premised on allegedly false product labeling, and therefore are subject to the heightened pleading requirements of Rule 9(b). Plaintiff's allegations fall far short of Rule 9(b), however, because she alleges that only "some" products are mislabeled as whole wheat, and only "some" products are

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-     CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

mislabeled as "all natural," but she does not specify which products she is challenging, and on what basis she is challenging each product.

Second, Plaintiff's fraud-based claims also should be dismissed for failure to allege reasonable or justifiable reliance.  Plaintiff does not allege how she "reasonably or justifiably" relied on the use of the word "wheat" to conclude that WhiteWheat® and Honey Wheat were whole wheat.  To the contrary, her allegations show that her purported reliance was *unreasonable*.  As for her "all natural" allegations, Plaintiff does not specify what statements by Flowers, if any, she purportedly relied on when making her purchase decision.

Third, apart from the Complaint's pleading deficiencies, Plaintiff's claims for violations of the CLRA and unjust enrichment fail on additional grounds.  The CLRA claim should be dismissed because Plaintiff failed to satisfy the statutory notice and affidavit requirements.  The unjust enrichment claim should be dismissed with prejudice because it is duplicative of Plaintiff's statutory and common law claims.

Fourth, the breach of contract claim fails as a matter of law because Plaintiff had no contractual relationship with defendant Flowers.  Even if there had been such a relationship, however, Plaintiff's cursory allegations fail to support a claim.

Fifth, even if one or more claims survive dismissal, to the extent that Plaintiff seeks to challenge products that she did not purchase, the claims should be dismissed for lack of Article III standing.  A plaintiff can challenge purchased and non-purchased products only where the pleadings establish that all of the products are "substantially similar."  *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012).  Here, however, it is clear that the products are not substantially similar because Plaintiff alleges that only "some" breads are mislabeled as wheat bread, and only "some" are mislabeled as "all natural."

Sixth, even if one or more claims survive dismissal, all of Plaintiff's claims should be dismissed to the extent that they are based on her wheat allegations (as distinguished from her "all natural" allegations).  Plaintiff's statutory claims are governed by a reasonable consumer standard, and reasonable consumers would not assume that Honey Wheat and WhiteWheat® breads are whole wheat breads.  The claims also are preempted to the extent they are based on the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-3-

CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

wheat allegations, because the federal Food, Drug & Cosmetic Act, 21 U.S.C. §§ 301, et seq. ("FDCA") and the Nutrition Labeling & Education Act ("NLEA") establish labeling requirements for bread and wheat, and expressly preempt the imposition of "non-identical" requirements. Because Plaintiff seeks to impose non-identical requirements regarding the labeling of breads— including barring the use of the word "wheat" to describe the principal ingredient in bread—the FDCA preempts her claims.  Finally, to the extent that any additional guidance is needed regarding bread names, resolution of the wheat allegations is best left to the expertise of the FDA under the primary jurisdiction doctrine.

Seventh, Plaintiff's request for injunctive relief should be dismissed for lack of standing. Under *Bates*, a plaintiff cannot obtain injunctive relief unless there is "a sufficient likelihood that [she] will again be wronged in a similar way."  *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007) (internal quotation omitted).  As numerous courts in this District have held, consumers who challenge allegedly deceptive food labels cannot seek injunctive relief because there is no danger of being misled by the labels in the future—particularly where, as here, the allegations make clear that the plaintiff does not intend to purchase the product again.

## FACTUAL ALLEGATIONS

Flowers is a Georgia-based producer of breads and other baked goods, including Nature's Own brand breads.  Compl., ¶¶ 1, 6.  Flowers sells many different kinds of baked products under the Nature's Own brand, including whole wheat bread, multi-grain bread, "specialty bread," hot dog and hamburger buns, and reduced-calorie bread.  *Id.* at ¶ 1.  Plaintiff allegedly bought four of those products:  Honey Wheat bread, WhiteWheat® bread, 100% Whole Wheat bread and 100% Whole Wheat with Honey bread.  *Id.* at ¶ 65.

On October 20, 2014, Plaintiff filed a putative class action complaint against Flowers, seeking, among other relief, injunctive relief and damages (the "Complaint").  The Complaint bases each claim on two separate and distinct allegations concerning Nature's Own products, described below as the "wheat allegations" and the "all natural" allegations:

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

**The Wheat Allegations:**

Plaintiff alleges that "some" of Nature's Own products, including WhiteWheat® and Honey Wheat breads, are deceptive because, in her view, the use of the word "wheat" in the product name suggests that they are whole wheat breads, when in fact they are white breads. *Id.* at ¶ 14.  Plaintiff concedes, however, that wheat is a principal ingredient in both WhiteWheat® and Honey Wheat (as is typical with any white bread). *See id.* at ¶¶ 55, 59.  Nonetheless, based on the allegation that WhiteWheat®, Honey Wheat and other unidentified white breads are "misbranded" as whole wheat breads, Plaintiff alleges the following fraud-based claims:  (1) unlawful business practices under the UCL; (2) unfair business practices under the UCL; (3) fraudulent business practices under the UCL; (4) misleading advertising under the FAL; (5) untrue advertising under the FAL; (6) violation of the CLRA; (7) restitution based on quasi-contract/unjust enrichment; (8) common law fraud; and (9) negligent misrepresentation.

Similarly, in her tenth claim, Plaintiff alleges that Flowers breached a purported "contract" with her because WhiteWheat® and Honey Wheat breads are not whole wheat breads. *Id.* at ¶¶ 148-149.  Plaintiff does not allege that she and Flowers entered into any transaction (or had any dealings with each other), but instead alleges that she purchased her bread from various third-party markets. *Id.* ¶ 65.  Plaintiff also does not allege how the purported contract was formed, its essential terms, how the parties construed the term "wheat," or that she performed her own obligations under the contract. *See id.* at ¶¶ 148-149.

Notwithstanding her allegations of deception and breach of contract, Plaintiff's allegations establish that Flowers labels its Nature's Own white breads and whole wheat breads very differently.  Unlike Honey Wheat or WhiteWheat®, Flowers expressly labels Nature's Own whole wheat breads—including breads that Plaintiff purchased—as "*100% whole wheat*," and Plaintiff does not allege that those products are falsely labeled as whole wheat breads. *See id.* at ¶¶ 1, 14, 40, 55.  What is more, Plaintiff alleges that "all enriched breads are white breads," and therefore (according to Plaintiff) products such WhiteWheat® and Honey Wheat should be labeled "enriched bread" in order to alert consumers that the bread is white bread. *Id.* at ¶¶ 52, 60-61.  And yet, the front packaging of WhiteWheat® and Honey Wheat is properly labeled in

CROWELL
& MORING LLP
*Attorneys At Law*

-5-                                      CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

capitalized letters "ENRICHED BREAD."  *Id.* at Ex. D; *see also* Exs. 1-2 to concurrently-filed Request for Judicial Notice ("RJN").  WhiteWheat® bread also has the words "Healthy White" in large letters on the front of the package, further distinguishing that bread from breads labeled "100% whole wheat."  Compl., Ex. D; Ex. 1 to RJN.

### The "All Natural" Allegations:

Plaintiff also bases all of her fraud claims on the allegation that "some" of Nature's Own products are mislabeled "all natural," when (according to Plaintiff) they contain artificial ingredients. *Id.* at ¶¶ 11,15, 31, 149.  Likewise, in her tenth claim, Plaintiff alleges that Flowers breached a purported contract by including artificial ingredients in products labeled "all natural." *Id.* at ¶¶ 148-49.

Similar to her "wheat" allegations, however, Plaintiff does not identify in her Complaint which products are labeled "all natural," or provide specific allegations about why each product is mislabeled.  Nor does she allege that she specifically relied on alleged "all natural" labeling when she purchased Nature's Own products.  *See id.* ¶¶ 15-39, 65-66.  Instead, she simply alleges that she "believed" that the products she purchased lacked any artificial ingredients, without explaining what prompted that belief.  *See id.*

### ARGUMENT

## I.     The Court Should Dismiss All Claims In Their Entirety.

### A.     The Court Should Dismiss The Fraud-Based Claims (Claim Nos. 1-9) For Failure To Satisfy Rule 9(b) And To Allege Justifiable Or Reasonable Reliance.

Plaintiff premises her claims under the UCL (Claim Nos. 1-3), FAL (Claim Nos. 4-5), CLRA (Claim No. 6), and common law clams for unjust enrichment, fraud and negligent misrepresentation (Claim Nos. 7-9, respectively) on allegedly misleading and fraudulent product labeling.  *See* Compl., ¶¶ 3, 5, 80, 95, 101-102, 109, 117, 126, 130, 134, 142.  As set forth below, the Court should dismiss these claims for:  (1) failure to satisfy Rule 9(b)'s heightened pleading requirements; and (2) failure to allege reasonable or justifiable reliance.

#### 1.     Plaintiff's Allegations Do Not Satisfy Rule 9(b).

Rule 9(b) applies to all claims—including claims under the CLRA, FAL and UCL—that

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-6-     CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

are "grounded in fraud" or that "sound in fraud."[1]  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  To satisfy Rule 9(b), a pleading must identify "the who, what, when, where and how of the misconduct charged."  *Id.* at 1124 (internal quotation omitted).

In the context of food mislabeling claims, it is well-settled that a complaint "must make specific allegations regarding each product, and attaching only a selection of labels will not suffice under Rule 9(b)."  *Janney v. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013).  The complaint must "unambiguously specify the particular products that have violated particular labeling requirements, [and which] allegedly unlawful representations . . . were on which products."  *Thomas v. Costco Wholesale Corp.*, 2013 WL 1435292, at *6 (N.D. Cal. Apr. 9, 2013).  As the court held in *Thomas*, Rule 9(b)'s specificity requirement bars plaintiffs from lumping various products under the term "Misbranded Products" and then making generalized allegations concerning those products.  *See id.* at *6 (generalized allegations about "Misbranded Food Products" failed to satisfy Rule 9(b)).

Here, the allegations in the Complaint violate Rule 9(b) because it is impossible to discern which products Plaintiff challenges, and for which representations.  Plaintiff alleges that the challenged products "include" a list of twenty-eight specific products (Compl., at ¶ 1), but the use of the word "include" suggests that there are other, unspecified products that Plaintiff also seeks to challenge but did not disclose.  *See Thomas*, 2013 WL 1435292, at *8 ("the use of the term 'such as' indicates that these references [to specific products] are only used as an example of one of the apparently many products" challenged by the plaintiffs).  And, as in *Thomas*, the Complaint improperly lumps all of the challenged products (whether specifically identified in the Complaint or not) under the term "Misbranded Products," without making specific allegations as to each product.  *E.g.,* Compl., at ¶¶ 2, 10, 15.

Moreover, it is clear from the Complaint that the products are not labeled in the same way

---

[1] Unjust enrichment claims also are subject to Rule 9(b) where, as here, they are based on fraud.  *See Janney v. Mills*, 944 F. Supp. 2d 806, 817 (N.D. Cal. 2013) (applying Rule 9(b) to unjust enrichment claim based on fraud); *Stewart v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 1054384, at *11 (D. Or. Feb. 18, 2010) ("To the extent that Stewart's unjust enrichment claim can be construed as fraud, it fails to satisfy the heightened pleading standards of Rule 9(b)").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-7-

CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

and that generalized allegations concerning "Misbranded Products" are hopelessly vague.

Plaintiff alleges that only "some" products are identified as "all natural," but she does not identify

those products or allege why the "all natural" label is misleading for each product. *E.g.*, *id.* at ¶¶

11, 15.  Plaintiff also alleges that different products had different ingredients, and that ingredients

were not consistent over time, further confirming that generalized allegations about Nature's Own

products violate Rule 9(b).  *See id.* at ¶¶ 27, 32, 55, 59.

Plaintiff's "wheat" allegations are equally deficient.  Here again, she alleges that only

"some" white breads are misleadingly labeled with the word "wheat," but only identifies two

examples, Honey Wheat and WhiteWheat®.  *Id.* at ¶ 14.  Moreover, Plaintiff acknowledges that

the word "wheat" is used in different contexts—or not at all—among different products, but she

does not allege why the use of the word "wheat" is deceptive with respect to each product.  *Id.* at

¶ 1.  Plaintiff does not allege, for example, that products labeled "100% whole wheat" are not

made with 100% whole wheat, nor does she explain how products that do not contain the word

"wheat" in the product name (such as "Butter Hamburger Buns" or "40 Calorie White Bread") are

misleadingly marketed as whole wheat bread.

## 2.  Plaintiff Does Not Allege Reasonable Reliance.

Reliance is an "essential" element of any claim based on fraud or misrepresentation,

including claims brought under California's consumer protection statutes.[2]  *Clark v. Time Warner*

*Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008); *see*, *e.g.*, *Kane v. Chobani, Inc.*, 2013 WL 5289253,

at *6 (N.D. Cal. Sept. 19, 2013) (reliance is required under all three prongs of the UCL if the

claims are based on alleged misrepresentations).  To satisfy pleading requirements, "there must be

more pled than a simple statement plaintiff justifiably relied on the statements.  The complaint

must contain allegations of facts showing that the actual inducement of plaintiffs . . . was

---

[2] Although Plaintiff's unjust enrichment claim fails as a matter of law (see Section I(B)(2) below (p. 12)), to the extent that she can pursue such a claim, reliance is required because the claim is premised on alleged fraud.  *See*, *e.g.*, *Pfau v. Mortenson*, 858 F. Supp. 2d 1150, 1162 (D. Mont. 2012) (dismissing unjust enrichment claim based on an alleged misrepresentation for lack of reliance).  A contrary rule would allow a plaintiff to evade the reliance requirement simply by characterizing a fraud claim as a claim for "unjust enrichment," as Plaintiff has attempted to do here.  *See* Compl. ¶¶ 130-131 (alleging that Flowers was unjustly enriched as a result of its "false and misleading advertising").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-8-                    CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

1    justifiable or reasonable." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1066 (2012) (internal

2    citation and quotation omitted).  "A mere conclusory allegation that the plaintiff relied on the

3    misrepresentation is insufficient." *Foster Poultry Farms v. Alkar-Rapidpack-MP Equip., Inc.*,

4    2012 WL 6097105, at *7 (E.D. Cal. Dec. 7, 2012) (following *Beckwith*).  Plaintiff's allegations

5    are deficient with respect to both the wheat allegations and "all natural" allegations.

6          First, Plaintiff contends that the use of the word "wheat" in the names Honey Wheat and

7    WhiteWheat® misled her into believing that they were "whole wheat" breads, but she does not

8    allege facts showing that her belief was justifiable or reasonable.  Under *Beckwith*, her simple

9    statement that she saw and relied on packaging referring to "wheat" does not suffice.

10         Moreover, the Court should not grant leave to amend to add further allegations concerning

11   the wheat allegations.  "A plaintiff may plead herself out of court" if she "plead[s] . . . facts which

12   establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778,

13   783 n.1 (9th Cir. 1997) (internal citation and quotation omitted).  That principle applies here

14   because Plaintiff's allegations confirm that any purported reliance was unreasonable:

15   - Plaintiff could not have reasonably assumed that "WhiteWheat®" was not white bread
16     given the word "white" in its name.  Compl., Ex. D; *see also* Ex. 1 to RJN.

17   - Plaintiff alleges that "all enriched breads are white breads," and therefore WhiteWheat®
       and Honey Wheat "should be named 'enriched bread.'"  Compl., ¶¶ 52, 60.  Both products
18     are properly labeled in capitalized letters "ENRICHED BREAD" on the front of their
       respective packages.  Compl., Ex. D; *see also* Exs. 1-2 to RJN.  Thus, Plaintiff's own
19     allegations establish that she had notice that WhiteWheat® and Honey Wheat are white
       breads, making any purported reliance on her part unreasonable.
20

21   - Plaintiff acknowledges that she bought other Nature's Own products which (unlike Honey
       Wheat and WhiteWheat®) were explicitly labeled "100% Whole Wheat," and which she
22     does not allege were mislabeled.  Compl., ¶ 65.  For example, she bought Honey Wheat
       and a different bread called "100% Whole Wheat with Honey."  *Id.*  She cannot plausibly
23     allege that she reasonably relied on the supposed implication that "wheat" necessarily
       means "whole wheat" when only certain products were labeled "whole wheat."
24

25         Second, Plaintiff has not properly alleged reliance with respect to the "all natural"

26   allegations.  Plaintiff concedes that only "some" products were labeled "all natural," but she does

27   not unambiguously allege that she saw and relied on the labeling of those products, nor does she

28   specify which particular representations led her to believe that the products she purchased were

|  | -9- | CASE NO. CASE NO. 5:14-cv-05189 |
|---|---|---|
|  | DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY | |

1   all natural, as she is required to do.  *See, e.g.*, *Thomas*, 2013 WL 1435292 at *6 (the complaint

2   must "unambiguously specify . . . the particular statements Plaintiffs allegedly relied on when

3   making their purchases").  Instead, Plaintiff apparently tries to artfully plead around the issue by

4   alleging that she saw and relied on the word "wheat" and that she "believed" that Nature's Own

5   products contained no artificial ingredients.  *See* Compl., ¶¶ 65-66.  The word "wheat," however,

6   has no bearing on whether the breads that Plaintiff purchased contained allegedly artificial

7   ingredients, or whether the products that she purchased were mislabeled "all natural."  Because

8   Plaintiff has failed to allege reliance on "all natural" labeling, her fraud-based claims should be

9   dismissed.

**B.      Plaintiff's Claims For Violation Of The CLRA (Claim No. 6) And Unjust Enrichment (Claim No. 7) Fail As A Matter Of Law On Additional Grounds.**

**1.      Plaintiff Did Not Comply With The CLRA's Notice And Affidavit Requirements.**

13          In addition to the pleading deficiencies described in Section I(A) above (pp. 6-10), the

14  Court should also dismiss Plaintiff's claim under the CLRA for failure to comply with the

15  CLRA's notice and affidavit requirements.[3]  First, under § 1782(a) of the CLRA, a plaintiff who

16  seeks to recover damages under the statute must provide a defendant with thirty days' notice of

17  violation before commencing an action for damages.  Cal. Civ. Code § 1782(a).  The notice must

18  be sent by "certified or registered mail," and must identify the "particular" § 1770 violations that

19  the plaintiff is alleging.  *In re Ford Tailgate Litig.*, 2014 WL 3899545, at *5 (N.D. Cal. Aug. 8,

20  2014) ("*In re Ford*").  The notice requirements are "strict," and failure to comply with those

21  requirements requires dismissal.  *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F.

22  Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("*In re iPad*") (dismissing CLRA claim without prejudice

23  for deficient notice).

24          Here, Plaintiff seeks damages under the CLRA and alleges that she served a notice of

25  violation letter on approximately May 9, 2014.  Compl., ¶¶ 68, 128.  That letter, however, is

---

26
27          [3] As shown in Section II(B)(1) below (pp. 15-18), Plaintiff's CLRA claim also fails as a matter of law to the extent that it is based on the wheat allegations because reasonable consumers would not assume that Honey Wheat or WhiteWheat® bread are whole wheat breads.
28

1   defective on several grounds.  Styled as a purported "settlement communication," the letter makes

2   only a passing reference to the CLRA without identifying the particular § 1770 violations that

3   Plaintiff contends that Flowers violated.[4]  *See* Notice of Violation, at 4 (Ex. 3 to RJN) ("My client

4   is prepared to file a class action for . . . violations of the [CLRA], among other causes of action").

5   Other than Honey Wheat and WhiteWheat® bread, the letter identifies none of the products at

6   issue in the Complaint.  *Compare id.* at 1 *with* Compl., ¶ 1.  And, as indicated on the first page of

7   the letter, it was not sent by certified or registered mail.  Ex. 3 to RJN, at 1.

8        Second, §1780(d) of the CLRA provides that "[i]n any action . . . concurrently with the

9   filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has

10  been commenced in a county described in this section as a proper place for the trial of the action."

11  Cal. Civ. Code § 1780(d).  If "a plaintiff fails to file the affidavit required by this section, the

12  court shall, upon its own motion or upon motion of any party, dismiss the action without

13  prejudice."  *Id.*  Here, dismissal is required because Plaintiff did not file the required affidavit

14  with her Complaint.  *See*, *e.g.*, *In re iPad*, 802 F. Supp. 2d at 1077 (dismissing CLRA claim for

15  failure to comply with § 1780(d)).

16        **2.    The Claim For Quasi-Contract/ Unjust Enrichment Is Duplicative Of
                Plaintiff's Statutory And Common Law Claims.**

17

18        In addition to the pleading deficiencies described in Section I(A) above, the Court should

19  dismiss Plaintiff's claim for "restitution based on quasi contract/unjust enrichment" because it is

20  duplicative of her common law and statutory claims.  As the Ninth Circuit held in *Mort*, it is a

21  "basic doctrine" of law that there can be no equitable relief where a plaintiff has an adequate

22  remedy at law.  *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1992).  For that reason,

23  "plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort

24  ─────────────
     [4] Plaintiff cannot evade judicial review of the notice of violation letter by styling it as a
25  "settlement communication" covered by Federal Rule of Evidence 408.  Rule 408 permits
     admission of evidence for any purpose other than disproving the validity of the claim or
26  impeaching a party, and thus does not bar the Court from determining whether the letter complies
     with procedural notice requirements.  *See* Fed. R. Evid. 408.  Moreover, even if Rule 408 applied,
27  Plaintiff waived the rule by placing the May 9, 2014 letter at issue in her complaint.  *See JIPC
     Mgmt., Inc. v. Incredible Pizza Co., Inc.*, 2009 WL 8591607, at *27 (C.D. Cal. July 14, 2009)
28  (party waived Rule 408 confidentiality by relying on purportedly confidential statement in
     counterclaim).

CROWELL
& MORING LLP
*ATTORNEYS AT LAW*

-11-                          CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

claims," even if they are purportedly pled in the alternative.  *In re iPad*, 802 F. Supp. 2d at 1077; *see also, e.g.*, *Garrison v. Whole Foods Mkt. Grp., Inc.* 2014 WL 2451290, at *6 (N.D. Cal. June 2, 2014) (dismissing unjust enrichment claim under *In re iPad* and similar authorities); *In re Ford*, 2014 WL 3899545, at *3 (an unjust enrichment claim that relies on the same facts as legal causes of action "is not a true alternative theory of relief" and must be dismissed).  Indeed, consistent with this principal, in *Nature's Path*, this Court recently dismissed with prejudice an unjust enrichment claim because it was duplicative of the plaintiff's claims for restitution under the UCL and CLRA.  *See Leonhart v. Nature's Path Foods, Inc.*, 2014 WL 6657809, at *7 (N.D. Cal. Nov. 21, 2014).

Here, Plaintiff bases all of the claims for relief on allegations that Flowers misled her into believing that some breads were either "all natural" or whole wheat.  The unjust enrichment claim is simply a rehash of Plaintiff's statutory and common law claims, and (as in *Nature's Path*) seeks restitutionary relief that is duplicative of her claims for restitution under the UCL and CLRA.  *Compare* Complaint ¶¶ 129-132 with *e.g., id.* at ¶¶ 78-128, 133-150.[5]

### C.    Plaintiff Cannot State A Claim For Breach Of Contract (Claim No. 10).

Plaintiff's claim for breach of contract fails as a matter of law for two reasons.  First, where, as here, the plaintiff purchased a product from a third-party retailer rather than directly from the defendant manufacturer, there is no privity of contract between the parties.  *See Ham v. Hain Celestial Grp., Inc.*, 2014 WL 4965959, at *5 (N.D. Cal. Oct. 3, 2014) (dismissing retail customer's breach of contract claim against a food manufacturer for lack of privity); *Pfau*, 858 F. Supp. 2d at 1161 (dismissing retail customer's breach of contract claim against a book publisher for lack of privity); *see also Garrison*, 2014 WL 2451290,  at *6 n. 5 (expressing doubt that a

---

[5] The unjust enrichment claim also should be dismissed because numerous courts hold that "there is no cause of action in California for unjust enrichment" or quasi-contract.  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 794 (2003); *see, e.g., Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (collecting cases holding that there is no cause of action for unjust enrichment).  Flowers, acknowledges, however, that this Court has adopted the view that an unjust enrichment claim may in some circumstances be construed as a claim for restitution—but not where, as here, it is duplicative of legal claims for restitution.  *Nature's Path*, 2014 WL 6657809, at *7.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-12-

DCACTIVE-29833796.2

1   label on a food product is a contract between the purchaser and food manufacturer).  Here,

2   Plaintiff admits that she purchased Nature's Own products from "various markets," and not from

3   Flowers.  Compl., ¶ 65.  Indeed, she does not allege any transaction between herself and Flowers,

4   because there was none.  Hence, Plaintiff has no legal basis to pursue a breach of contract claim.

5        Second, Plaintiff's allegations fail to satisfy Rule 8 because they are little more than a

6   "formulaic recitation of the elements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

7   quotation omitted).  To properly plead a claim for breach of contract, the complaint must allege

8   the "essential terms" of the contract, and "specific allegations of breach."  *McAfee v. Francis*,

9   2011 WL 3293759, at *2 (N.D. Cal. Aug. 1, 2011); *see also Mora v. U.S. Bank N.A.*, 2012 WL

10  2061629, at *6 (N.D. Cal. June 7, 2012) (dismissing breach of contract claim for failure to plead

11  the "basics of contract formation," "what the terms of the contract were," and the circumstances

12  of breach).  Here, Plaintiff does not allege the terms of the alleged contract, whether it was oral or

13  written, or when it was formed.  *See* Compl. ¶ 147-150.  Nor does she identify which products

14  were purportedly required to be "all natural" or to be "whole wheat," or how the parties

15  purportedly agreed to construe those terms.  Without the essential terms of the alleged agreement

16  and more specific allegations as to breach, Plaintiff fails to state a viable claim.[6]

17  **II.    Even If Any Claims Survive, The Court Should Partially Dismiss The Claims To The**

18  **        Extent They Are Based On Non-Purchased Products Or Based On Plaintiff's Wheat**
    **        Allegations.**

19        A court may dismiss part of a claim if some of the allegations in support of the claim fail

20  as a matter of law.  *See, e.g.*, *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1081-82 (C.D. Cal. 2011).

21  Thus, to the extent that any claims survive dismissal, as set forth below, the Court can and should

22  dismiss the claims in part to the extent that:  (A) they are based on products that Plaintiff did not

23  purchase; or (B) they are based on Plaintiff's wheat allegations (as opposed to her "all natural"

24  allegations).

25

26

27        [6] Plaintiff also fails to allege in her complaint that she performed under the contract, as is
    necessary to state a claim.  *See Bilodeau v. McAfee, Inc.*, 2013 WL 3200658, at *12 (N.D. Cal.
    June 24, 2013) (listing elements of breach of contract claim).

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.      Plaintiff Lacks Standing To Pursue Claims Based On Products That She Did Not Buy.**

Plaintiff purports to challenge at least twenty-eight different Nature's Own products, including various soft breads, "specialty breads," hot dog and hamburger buns, and reduced calorie breads.  Compl. at ¶ 1.  Plaintiff, however, only has standing (if at all) to challenge the four products that she allegedly purchased:  Honey Wheat bread, WhiteWheat® bread, 100% Whole Wheat bread, and 100% Whole Wheat with Honey bread.  Compl. at ¶ 65.

As explained in *Miller*, "the majority of courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."[7]  *Miller*, 912 F. Supp. 2d. at 869 (emphasis added); *accord, e.g.*, *Kane*, 2013 WL 5289253, at *10.  Factors courts consider include "whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling."  *Wilson v. Frito-Lay N. Am. Inc.*, 961 F. Supp. 2d 1134, 1141 (N.D. Cal. 2013).

To have standing to pursue claims based on non-purchased products, the plaintiff must allege facts sufficient to establish that similarities between purchased and non-purchased products are "substantial," and not merely superficial.  In *Wilson*, for example, the plaintiff challenged a long list of "all natural" potato chips, corn chips and puffed corn products, most of which the plaintiff did not buy.  *Id.* at 1141.  The court held that the plaintiff lacked standing to pursue claims based on non-purchased products because, like here, the complaint provided scant details about the non-purchased products and only a few examples of labels, and thus the court could not "assume that every one of the Non-Purchased Products' labels is actionable in the same way."  *Id.* at 1141-42.  This Court reached a similar result in *Nature's Path*, where it held that the plaintiff failed to sufficiently allege that the non-purchased products were "substantially similar" to

---

[7] A plaintiff's lack of standing is properly addressed under Rule 12(b)(1).  *See Miller*, 912 F. Supp. 2d at 867-68.  "Where a motion under Rule 12(b)(1) attacks the allegations of the complaint, the court applies the same standard as under Rule 12(b)(6)."  *Brian Lichtenberg, LLC v. Alex & Chloe, Inc.*, 2014 WL 585436, at *2 (C.D. Cal. Feb. 13, 2014).

CROWELL
& MORING LLP
*ATTORNEYS AT LAW*

DCACTIVE-29833796.2

-14-      CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

1   purchased products because the complaint included little or no details about each product's

2   ingredients and labeling. *Nature's Path*, 2014 WL 6657809, at *3; *see also Smedt v. Hain*

3   *Celestial Grp., Inc.*, 2014 WL 2466881, at *7 (N.D. Cal. May 30, 2014) (plaintiff lacked standing

4   to challenge non-purchased products where she failed to identify ingredients and labeling of

5   products being challenged).

6        Here, Plaintiff does not identify in her complaint the allegedly offending ingredients and

7   packaging for each challenged product.  What is more, Plaintiff cannot legitimately argue that all

8   of the products at issue are substantially similar after alleging that only "some" of them use the

9   term "all natural," and only "some" of them are white breads that are misleadingly marketed as

10  "wheat" bread.  *Id.* at ¶ 11 ("some of Nature's Own bread products explicitly claim to be "All

11  Natural" on the front labels); *Id.* at ¶ 14 ("Defendants label some of its white breads, including

12  Honey Wheat Bread and WhiteWheat® Bread, as wheat breads in order to mislead consumers . .

13  .").  Indeed, the Complaint confirms that the ingredients in the challenged products are not the

14  same.  *See id.* at ¶¶ 27, 55, 59.  Hence, Plaintiff's allegations conclusively establish that she lacks

15  standing to challenge products that she did not buy.

16       **B.     All Claims Fail As A Matter Of Law To The Extent They Are Based On**
              **Plaintiff's Wheat Allegations.**
17

18            **1.     Reasonable Consumers Would Not Assume That WhiteWheat® and**
                     **Honey Wheat Breads Are Whole Wheat Breads.**

19       To state a valid claim for misrepresentation under California's consumer protection laws,

20  "a plaintiff must show that a 'reasonable consumer' is 'likely to be deceived' by the allegedly

21  misleading statement." *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal.

22  2013) (internal quotations omitted).  "'Likely to deceive' implies more than a mere possibility

23  that the advertisement might conceivably be misunderstood by some few consumers viewing it in

24  an unreasonable manner." *Id.*  Instead, the "reasonable consumer" standard requires a probability

25  "that a significant portion of the general consuming public or of target consumers, acting

26  reasonably under the circumstances, could be misled." *Rooney v. Cumberland Packing Corp.*,

27  2012 WL 1512106, at *3 (S.D. Cal. April 16, 2012).  Plaintiff's allegations establish that her

28

CROWELL
& MORING LLP
*ATTORNEYS AT LAW*

-15-                    CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

1    claims fail the reasonable consumer standard.

2          First, it is not reasonable for consumers to be misled by accurate statements on a product

3    label.  As the court explained in *Viggiano*, if "a product's front label is accurate and consistent

4    with the statement of ingredients, courts routinely hold that no reasonable consumer could be

5    misled by the label, because a review of the statement of ingredients makes the composition of

6    the food or drink clear."  *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 892, n. 38

7    (C.D. Cal. 2013); *see also*, *e.g.*, *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C.

8    2013) ("a reasonable consumer generally would not deem an accurate statement to be misleading,

9    and hence, such statements generally would not be actionable").

10         Consistent with that principle, a claim cannot be premised on the theory that "a consumer

11   will read a true statement on a package and will then disregard 'well-known facts of life' and

12   assume things about the products other than what the statement actually says."  *Red v. Kraft*

13   *Foods, Inc.*, 2012 WL 5504011 *3 (C.D. Cal. Oct. 25, 2012).  In *Rooney*, for example, the district

14   court granted a motion to dismiss because no reasonable consumer would assume that Sugar in

15   the Raw contains unprocessed and unrefined sugar when the box clearly indicated that the

16   product contained "pure natural cane turbinado sugar" and did not state that it was "unprocessed"

17   or "unrefined."[8]  *Rooney*, 2012 WL 1512106 at *4.  Similarly, in *Ang*, the court granted a motion

18   to dismiss because no reasonable consumer would assume that soy milk and almond milk were

19   regular milk simply because both used the term "milk."  *Ang v. Whitewave Foods Co.*, 2013 WL

20   6492353, at *4 (N.D. Cal. Dec. 10, 2013); s*ee also McKinniss v. Sunny Delight Bevs. Co.*, 2007

21   WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) (no reasonable consumer would conclude that

22   defendant's SunnyD beverages contain significant quantities of fruit or fruit juice where the label

23   does not identify the product as "fruit juice").

24         Here, Plaintiff does not allege that Flowers misrepresents that Honey Wheat and

25   ──────────────────

26         [8] The *Rooney* court also distinguished the trademarked brand name from the rest of the
     product's packaging, stating that "[a]side from the brand name, the word raw does not appear on
     the packaging. . . . Rather, the product is repeatedly described as turbinado sugar."  *Id.* at *6.

27   Similarly, the term "white wheat" only appears on the Whitewheat® brand name; the remainder
     of the packaging identifies the bread as "enriched bread" and/or "healthy white."

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-16-                    CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

1   WhiteWheat® are whole wheat breads. Instead, similar to *Rooney* and *Ang*, the thrust of her

2   claims is that consumers will <u>assume</u> that the breads are whole wheat merely because of the use

3   of the word "wheat" in the products' names. And yet Plaintiff's allegations confirm that the word

4   "wheat" is accurate because (like virtually any other white bread) it is the primary ingredient in

5   those breads. *See* Compl., ¶¶ 55, 59 (listing ingredients of Honey Wheat and WhiteWheat®).

6   Hence, the use of the word "wheat" cannot be misleading to a reasonable consumer.

7       Second, claims that "defy common sense" or strain credulity likewise cannot satisfy the

8   reasonable consumer standard. *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x. 689, 690-91

9   (9th Cir. 2011) (no reasonable consumer would believe that tooth whitening gum is a substitute

10  for regular oral hygiene). As shown in Section I(A)(2) above (pp. 9-10), Plaintiff's allegations

11  that she (or other consumers) confused WhiteWheat® and Honey Wheat for whole wheat bread

12  are unreasonable given that she acknowledges that different breads are labeled differently, with

13  whole wheat breads identified by name as "100% whole wheat." Compl., ¶ 1. Consumers face a

14  variety of choices to meet their tastes and preferences, and Plaintiff's own pleadings reinforces

15  that each loaf of bread is distinguishable by the choice of words used to describe the product:

16  wheat is different from whole wheat, which is different from whole grain.[9] *See id.*

17      Plaintiff's claims are further unreasonable because there is a clear and defined distinction

18  between wheat and *whole* wheat, a distinction recognized by FDA regulation, common usage, and

19  common law. As discussed below, the FDA plainly distinguishes between wheat and *whole*

20  wheat. *See* Section II(B)(2) below (pp. 18-21). The common dictionary also distinguishes

21  between "wheat" and "whole wheat." "Wheat" is "a kind of grain that is used to make flour for

22  breads, cookies, etc." and a "cereal grain that yields a fine white flour used chiefly in breads,

23  baked goods (as cake and crackers), and pasta (as macaroni and spaghetti)." "Whole wheat," in

24  contrast, is "made from wheat from which no part (such as the bran) has been removed." (Ex. 4

25  to RJN). Indeed, as one court has acknowledged, the distinction between wheat flour and whole

26  ────────────

    [9] And, as shown in Section I(A)(2) above (pp. 9-10), as if the word "white" in
27  "WhiteWheat®" were not enough to alert consumers that WhiteWheat® is white bread, the
    packaging prominently says "Healthy White" and "ENRICHED BREAD," both of which indicate
28  that the bread is not whole wheat.

CROWELL
& MORING LLP
*Attorneys At Law*

-17-                    CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

1    wheat flour is a "matter of common knowledge." *United States v. Krumm*, 269 F. 848, 850 (E.D.

2    Pa 1921).

3                   **2.      Federal Law Preempts Plaintiff's "Wheat" Claims.**

4          The FDCA, codified at 21 U.S.C. §§ 301 *et seq.*, sets forth a regime governing food

5    labeling and related claims.  The FDA is responsible for implementing the FDCA to ensure that

6    "foods are safe, wholesome, sanitary, and properly labeled."  *See* 21 U.S.C. § 393(b)(2)(A).

7    Section 331 expressly sets forth "prohibited acts," including the misbranding of food in interstate

8    commerce, *see* 21 U.S.C. §§ 331(a)-(c), (k), and Section 343 sets forth circumstances under

9    which food is to be deemed "misbranded," *see* 21 U.S.C. § 343.  The NLEA amended the FDCA

10   to impose additional food labeling requirements.  *See Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d

11   956, 958 (N.D. Ill. 2010).  Congress enacted the NLEA to "establish uniform national standards

12   for the nutritional claims and the required nutrient information displayed on food labels."  H. Rep.

13   No. 101-538 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3342.

14         To ensure uniform national standards, the NLEA expressly preempts state laws to the

15   extent they impose labeling requirements that are not identical to federal requirements.  *See Brod*

16   *v. Sioux Honey Ass'n Co-op.*, 895 F. Supp. 2d 972, 979 (N.D. Cal. 2012); *see also Red v. The*

17   *Kroger Co.*, 2010 WL 4262037, at *3 (C.D. Cal. Sept. 2, 2010) ("With regard to NLEA,

18   Congress set out to create uniform national standards regarding the labeling of food and to

19   prevent states from adopting inconsistent requirements with respect to the labeling of nutrients.").

20   As part of this regime, the NLEA states that "no State or political subdivision of a State may

21   directly or indirectly establish under any authority . . . any requirement for a food which is the

22   subject of a standard of identity established under section 341 of this title that is not *identical to*

23   such standard of identity or that is not identical to the requirement of section 343(g) of this title."

24   21 U.S.C. § 343-1(a)(1) (emphasis added).  "Requirements" include common-law duties and

25   judge-made rules in addition to statutes, and thus a judicial decision affecting labeling would

26   impose a requirement for purposes of the NLEA preemption. *Turek*, 754 F. Supp. 2d at 958-59;

27   *see also Kroger*, 2010 WL 4262037, at *7.  Express preemption occurs where, as here, "language

28   in the federal statute [] reveals an explicit congressional intent to pre-empt state law." *Segalman*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-18-                          CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

1    *v. Sw. Airlines*, 913 F. Supp. 2d 941, 948 (E.D. Cal. 2012).

2                    **a.      The FDCA Sets Forth Standards Of Identity For Bread.**

3          The FDA governs the labeling of breads, rolls, and buns.  The FDCA and its

4    implementing regulations establish standards of identity, which are "requirement[s] that

5    determine[] what a food product must contain to be marketed under a certain name."  *Ang*, 2013

6    WL 6492353, at *3.  A food that is labeled pursuant to a standard of identity must meet the

7    prescribed standard, or the FDCA deems the food misbranded.  *See* 21 U.S.C. § 343(g).  FDA

8    regulations set forth standards of identity for wheat flour (a synonym of flour) and *whole* wheat

9    bread, and clearly distinguish the terms "wheat" and "whole wheat."[10]  Contrary to Plaintiff's

10   claim that the term "wheat" can be used as part of the name of bread only if the bread is whole

11   wheat bread (and "white wheat" if the bread is "whole white wheat"), Compl. ¶¶ 51, 53, 57, 60,

12   the FDCA establishes that "wheat" is to be used as Flowers has used it: as a synonym for flour.

13   21 C.F.R. § 137.105; *see also* FDA Draft Guidance for Industry and Staff:  Whole Grain Label

14   Statements (2006) ("FDA Guidance"), at 6 (Ex. 5 to RJN) ("We note that wheat flour should not

15   be labeled as a whole grain flour because wheat flour is a synonym of flour (§ 137.105), and thus,

16   the bran and germ have been removed").  Indeed, according to the FDCA, "whole wheat bread"

17   cannot contain wheat flour; it can only contain *whole* wheat flour.  21 C.F.R. § 136.180.

18         In accordance with the FDA's regulatory scheme, Flowers properly names its breads to

19   accurately reflect the breads' ingredients: Whitewheat® brand bread is made of wheat flour and

20   Honey Wheat is made of honey and wheat flour.  Compl. ¶¶ 55, 59.  Plaintiff does not allege that

21   Flowers labeled its Whitewheat® or Honey Wheat breads as "*whole* wheat bread" (nor could

22   Flowers do so, since the products are not made from 100% whole wheat flour).[11]

23         _____

24         [10] "Whole wheat bread" must be made entirely from whole wheat flour; "[n]o flour,
     bromated flour, or phosphate flour is used."  21 C.F.R. § 136.180.  In "whole wheat flour," "[t]he
25   proportions of the natural constituents of such wheat, other than moisture, remain unaltered."  *See*
     21 C.F.R. § 137.200.  In contrast, "wheat flour," is a synonym of "flour"; both terms refer to "the
26   food prepared by grinding and bolting cleaned wheat."  *See* 21 C.F.R. § 137.105.  In "wheat
     flour," "[t]he flour is freed from bran coat, or bran coat and germ."  *Id.*

27         [11] Plaintiff erroneously cites 21 C.F.R. §§ 136.110 and 136.115 for the proposition that
     bread not containing whole wheat flour must be labeled "white bread" or "enriched bread,"
28   Compl. ¶¶ 51-54, 60-61.  Those provisions set forth the required or permitted ingredients in
     (Continued…)

CROWELL
& MORING LLP
*ATTORNEYS AT LAW*

DCACTIVE-29833796.2

-19-        CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

1

**b.      Plaintiff's "Wheat" Claims Are Preempted.**

2       All of Plaintiff's claims are preempted to the extent they are based on the wheat

3   allegations because they seek to impose requirements that are "not identical" to those required by

4   the FDCA.  The FDCA expressly states that no state can: (1) establish any "requirement for a

5   food which is the subject of a standard of identity" that is (2) "not identical" to those required by

6   the FDCA.  21 U.S.C. § 343-1(a)(1).  Plaintiff's claims seek to do exactly that.

7       First, Plaintiff asks this Court to require Flowers to change its labeling.  Compl., Prayer

8   for Relief.  Second, the labeling requested by Plaintiff imposes requirements that are different

9   from those imposed by the FDA under its standards of identity.  Any "[s]tate requirement [that]

10  directly or indirectly imposes obligations or contains provisions concerning the composition or

11  labeling of food" that are "not imposed by or contained in the applicable provision[s]" or "[d]iffer

12  from those specifically imposed by or contained in the applicable provision[s]" imposes a

13  requirement that is not identical to those required by the FDCA.  21 C.F.R. § 100.1(c)(4); *Sioux*

14  *Honey*, 895 F. Supp. 2d at 979.

15      Plaintiff premises her Complaint on the notion that *any* use of the term "wheat" misleads

16  consumers into believing that they are purchasing a *whole* wheat product.  Compl. ¶¶ 40, 49, 53,

17  55, 59, 60, 62.  As a result, Plaintiff seeks to require Flowers to change the names of its products

18  to eliminate the word "wheat."  Compl., Prayer for Relief at 30.  In essence, Plaintiff's claims

19  require finding that the "mandated information in the standard of identity" is insufficient, and

20  Plaintiff therefore "seek[s] to supplement the standard of identity's labeling, not enforce

21  compliance with existing requirements."  *Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104,

22  108 n.5 (D.D.C. 2006).  The comprehensive federal regulations do not impose the requirements

23  that Plaintiff seeks to impose, and thus, Plaintiff's claims relating to Flowers' use of the term

24

25

26   _____

27  "bread, white bread, and rolls, white rolls, or buns, and white buns" and "enriched" bread, rolls
and buns.  Neither provision, however, prohibits the use of the term "wheat" in labeling a bread
product when wheat flour is used.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-20-                    CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

1    "wheat" are preempted.[12]

2        **3.    If Plaintiff's Claims Are Not Preempted, The Use Of The Word "Wheat" Falls Within The FDA's Primary Jurisdiction.**

3

4        If the Court concludes that Plaintiff's claims are not preempted to the extent they are

5    based on her wheat allegations, dismissal is still warranted under the primary jurisdiction

6    doctrine.  "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a

7    complaint without prejudice pending the resolution of an issue within the special competence of

8    an administrative agency."  *Smedt*, 2014 WL 2466881, at *3 (internal quotations omitted).  A

9    court should invoke the doctrine if a claim "involves an issue of first impression or a particularly

10   complicated issue Congress has committed to a regulatory agency."  *Hood v. Wholesoy & Co.*,

11   2013 WL 3553979, at *4 (N.D. Cal. July 12, 2013).  As explained below, the Court should defer

12   Plaintiff's claims regarding Flowers' use of the term "wheat" to the FDA's expertise and dismiss

     this action.

13
          **a.    The FDA Has The Expertise To Resolve Complex Food Labeling Issues And Ensure Uniformity Of Result.**
14

15       The FDA has primary jurisdiction over how a manufacturer can name and label its food

16   products.  Indeed, courts have recognized that issues regarding food labeling are sufficiently

17   complex that they should be deferred to the FDA prior to judicial review.  *Hood*, 2013 WL

18   3553979, at * 5 ("Food labeling enforcement is a matter that Congress has indicated requires the

19   FDA's expertise and uniformity in administration.").  In determining whether to defer to an

20   agency's primary jurisdiction, a court weighs: "(1) [a] need to resolve an issue that (2) has been

21   placed by Congress within the jurisdiction of an administrative body having regulatory authority

22   (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory

23   authority that (4) requires expertise or uniformity in administration."  *Swearingen v. Yucatan*

24   ───────────────

25       [12] *See Kroger*, 2010 WL 4262037, at *4, 7 (dismissing claims as preempted where defendants' representations complied with FDA's specific definitions of "cholesterol free" and "0g trans fat"); *Ang*, 2013 WL 6492353, at *4 (preempting plaintiff's milk claims because

26   "soymilk," "almond milk," and "coconut milk" met FDA requirements that a product  be identified by its "common or usual name"); *Sioux Honey*, 895 F. Supp. 2d at 981 (preempting

27   state law which prohibited defendant from labeling product as "honey" because federal law required it to be labeled with its common name, "honey").

28

CROWELL
& MORING LLP
*ATTORNEYS AT LAW*

DCACTIVE-29833796.2

1   *Foods, L.P.*, 2014 WL 2115790, at *1-2 (N.D. Cal. May 20, 2014) (internal quotations omitted);

2   *see also Taradejna v. Gen. Mills, Inc.*, 909 F. Supp. 2d 1128, 1134 (D. Minn. 2012) ("[a]gency

3   expertise is the most common reason that courts apply the doctrine").

4         Courts routinely defer to FDA expertise under the doctrine of primary jurisdiction when

5   the case involves allegations regarding a food's labeling, is best resolved by the FDA's expertise,

6   and judicial decision-making could result in inconsistent standards.  *See, e.g.*, *Reese v. Odwalla,*

7   *Inc.*, 2014 WL 1244940, at *5 (N.D. Cal. March 25, 2014) (meaning of the term "evaporated cane

8   juice" deferred to FDA when the "FDA's position on the lawfulness of the use of that term is . . .

9   'not settled'" and any decision by the FDA on the issue would impact the current litigation);

10   *Swearingen*, 2014 WL 2115790, at *1-2 (deferring to the FDA for guidance on the use of the term

11   "evaporated cane juice" because "[t]he question of evaporated cane juice labeling presents a host

12   of technical issues uniquely within the agency's expertise" and having the FDA resolve the issue

13   would "enhance decision-making and efficiency") (internal citations omitted).

14         In *Hood*, for example, the court deferred to the FDA to set rules governing "soy yogurt"

15   because the FDA had not spoken on the subject of "whether 'soy yogurt' should be subject to the

16   same standards as dairy yogurt" and there was a compelling need for a "comprehensive

17   approach" for the numerous products containing soy.  *Hood*, 2013 WL 3553979, at *6, 7.

18   Similarly, earlier this year in *Smedt*, the court dismissed plaintiff's claims alleging that

19   defendant's products were mislabeled because use of the term "evaporated cane juice" was

20   unlawful and/or misleading.  *Smedt*, 2014 WL 2466881, at *1, 4.  The court reasoned that the

21   "FDA [was] engaged in active rulemaking on the issue" and deferring to the FDA would "ensure

22   uniformity in administration of the regulations regarding [evaporated cane juice]."  *Id.* at *4, 5.

23                 **b.**    **The FDA Should Resolve Complex Issues Regarding Wheat,**
                    **Whole Wheat And Whole Grain Content And Labeling.**

24         If the Court concludes that the FDCA and its comprehensive implementing regulations do

25   not preempt Plaintiff's claims, the FDA is best equipped to determine whether any further

26   distinctions are required between "wheat" and "whole wheat" in bread labeling, and how "whole

27   grain" products should be labeled.  The FDA has regulated extensively regarding wheat flour and

28

CROWELL
& MORING LLP
*ATTORNEYS AT LAW*

-22-

CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2

1   whole wheat bread, as shown in Section II(B)(2) above (pp. 18-21).

2           Moreover, the FDA continues to evaluate and provide guidance regarding whole grain

3   labeling.  In 2006, the agency released guidance that addressed whole grain content and related

4   label statements, and answered questions relating to whole wheat content and labeling.  *See* FDA

5   Guidance (Ex. 5 to RJN).  Companies and organizations have been actively posting comments

6   regarding the labeling guidance, with the most recent comment filed in January 2014.[13]  In 2009,

7   the FDA published "The Scoop on Whole Grains," a document that discusses the FDA's role in

8   labeling, clarifies requirements for breads or pastas to be labeled as "whole grain," and provides

9   examples of whole grains, including "whole wheat."  *See* FDA, *The Scoop on Whole Grains*

10  (May 6, 2009) (Ex. 6 to RJN).  And in 2012, the FDA commissioned a study regarding consumer

11  responses to whole grain labeling statements on food packaging in order to evaluate "consumers'

12  understanding of different whole-grain labeling statements," and proposed to study "consumer

13  interpretations of different terms and statements," including "100% Whole Wheat."  *See*

14  Experimental Study on Consumer Responses to Whole Grain Labeling Statements on Food

15  Packaging, 77 Fed. Reg. 11547, 11547-49 (February 27, 2012) (Ex. 8 to RJN).

16          Deferring to the FDA will also ensure uniformity and consistency.  At least one other

17  lawsuit regarding bread labeling has been filed against Flowers, and two other cases have been

18  filed against other defendants.[14]  All of these cases raise similar issues regarding bread labeling

19  and whole wheat and whole grain content.  These cases have been assigned to different judges

20  and may well result in different outcomes regarding the standards for bread labeling.  This factor

21  is particularly important to a company like Flowers, whose products are sold across the United

22
23          [13] *See* Whole Grains Council comments, *available at*
    http://www.regulations.gov/#!documentDetail;D=FDA-2006-D-0298-0031,  (Ex. 7 to RJN).

24          [14] *See The Nat'l Consumers League v. Flowers Bakeries, LLC*, No. 2013-CA-006550 B
    (D.C. Super. Ct.); *NCL v. Bimbo Bakeries USA*, No. 2013 CA 006548 B (D.C. Super. Ct.); *NCL
25  v. Doctor's Assocs. Inc.*, No. 2013 CA 006549 B (D.C. Super. Ct.).  Although the Superior Court
    in *Doctors Associates* held that the claims were not preempted, that decision is distinguishable
26  because the preemption challenge here is based on FDCA and FDA regulations establishing
    standards of identity, including the standards of identify for wheat flour and whole wheat bread.
27  These regulations were not addressed or at issue in the court's opinion in *Doctor's Associates*.
    The Superior Court's denial of Flowers' motion to dismiss in the *NCL v. Flowers Bakeries* case
    was based entirely on the court's ruling in *Doctor's Associates*.

28

| | -23- | CASE NO. CASE NO. 5:14-cv-05189 |
|---|---|---|
| | DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY | |

1   States.  It would be overly burdensome and expensive to require Flowers to adjust its label to fit

2   judicial decisions rendered separately – and likely differently – in different states.

3        As shown above, the Court can and should dismiss the action in its entirety to the extent

4   that it is premised on Plaintiff's wheat allegations.  However, if the Court declines to dismiss the

5   case at this stage, Flowers respectfully requests that the Court stay the action for the FDA to

6   determine whether any further distinctions are required between "wheat" and "whole wheat" in

7   bread labeling, and how "whole grain" products should be labeled.

### III.    The Court Should Dismiss The Request For Injunctive Relief Due To Lack Of Standing.

8

9

10       To have standing under Article III, plaintiffs seeking injunctive relief from a federal court

11  must allege that there is "a sufficient likelihood that [they] will again be wronged in a similar

12  way." *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007) (citation and internal

13  quotation marks omitted).  In a class action, "[u]nless the named plaintiffs are themselves entitled

14  to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers–Durgin v.*

15  *de la Vina,* 199 F.3d 1037, 1045 (9th Cir.1999).  Obviously, a consumer who contends that a

16  defendant's food labeling is deceptive is aware of the alleged deception.  Hence, "[c]onsumers

17  who were misled by deceptive food labels lack standing for injunctive relief because there is 'no

18  danger they will be misled in the future.'"[15]  *Ham*, 2014 WL 4965959, at *5 (quoting and

19  following *Garrison*, 2014 WL 2451290, at *5); *accord, e.g., Morgan v. Wallaby Yogurt Co.*,

20  2014 WL 1017879, at *5-6 (N.D. Cal. Mar. 13, 2014).

21       Although some courts have carved out an exception to this rule if the plaintiff plausibly

22  alleges that she intends to purchase the product again in the future (*see, e.g., Morgan*, 2014 WL

23  _____

    [15] Courts have rejected arguments that enforcing Article III standing will do away with
24  injunctive relief in mislabeling claims.  As explained in *Garrison*, even if California's consumer
    protection statutes would best be served by injunctive relief, "the power of federal courts is
25  limited, and that power does not expand to accommodate the policy objectives underlying state
    law." *Garrison*, 2014 WL 2451290, at *5; *accord Ham*, 2014 WL 2451290 at *6 n.11.
26  Moreover, although there is a minority of earlier, contrary decisions permitting injunctive relief,
    at least one of the authors of those decisions, Judge Illston, recently reconsidered that position and
27  joined the weight of authority holding that a plaintiff who does not intend to purchase the product
    again cannot seek injunctive relief.  *See Morgan*, 2014 WL 1017879, at *6 (explaining decisions
28  in this District addressing standing and injunctive relief).

| | -24- | CASE NO. CASE NO. 5:14-cv-05189 |
| --- | --- | --- |
| | DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY | |

1    1017879 at *6), Plaintiff makes no such allegation here.  Moreover, it is improper to grant leave

2    to amend to add such allegations where, as here, the plaintiff has already made clear that she will

3    not purchase the product again.  In *Morgan*, for example, the court dismissed a claim for

4    injunctive relief with prejudice because the plaintiffs unambiguously alleged that they never

5    would have bought yogurt containing evaporated cane juice if they had known that cane juice was

6    a form of added sugar.  *Id*.  Thus, they could not plausibly amend the complaint to allege that they

7    would purchase the challenged products in the future.  *Id.*  Here, as in *Morgan*, Plaintiff alleges

8    that had she known that the products at issue were not whole wheat or not "all natural," she would

9    not have bought them.  Compl. ¶ 67.  Indeed, she alleges that she is "repulsed" by Nature's Own

10   products, confirming that she never intends to buy them again and is in no danger of being misled

11   in the future.  *Id*.  Hence, she has no standing to seek injunctive relief.

12                                   **CONCLUSION**

13          For the foregoing reasons, Flowers respectfully requests that the Court dismiss this case.

14   Alternatively, if the Court declines to dismiss the case with respect to Plaintiff's wheat

15   allegations, Flowers requests that the Court apply the doctrine of primary jurisdiction and defer to

16   the FDA's expertise on the subject of bread labeling.

17   Dated:  January 2, 2015                          CROWELL & MORING, LLP

18                                                By:   /s/ Joel D. Smith

19                                                     Joel D. Smith
                                                     Attorneys for Defendant
20                                                   Flowers Bakeries, LLC

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-25-                          CASE NO. CASE NO. 5:14-cv-05189

DEFENDANT FLOWERS' MOTION TO DISMISS OR STAY

DCACTIVE-29833796.2