1  ANTHONY J. ORSHANSKY, Cal. Bar No.199364
   anthony@counselonegroup.com
2  JUSTIN KACHADOORIAN, Cal. Bar No. 260356
   justin@counselonegroup.com
3  COUNSELONE, P.C.
   9301 Wilshire Boulevard, Suite 650
4  Beverly Hills, California 90210
   Telephone: (310) 277-9945
5  Facsimile: (424) 277-3727
6
7  Attorneys for Plaintiff KELLY ROMERO,
   on behalf of herself and others similarly situated
8
9
10              UNITED STATES DISTRICT COURT
11      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
12
13  KELLY ROMERO, on behalf of herself and    )  Case No. 5:14-cv-05189
    others similarly situated,                )
14                                            )
                                              )
15              Plaintiff,                    )  RESPONSE IN OPPOSITION TO
                                              )  DEFENDANT'S MOTION TO DISMISS
16      v.                                    )  OR STAY PLAINTIFF'S COMPLAINT
                                              )
17  FLOWERS BAKERIES, LLC dba                 )
    NATURE'S OWN, a Georgia limited liability )
18  company, and DOES 1 through 50, inclusive,)
                                              )  Date:      April 16, 2015
19              Defendant.                    )  Time:      9:00 a.m.
                                              )  Judge:     Hon. Beth Labson Freeman
20                                            )
                                              )
21                                            )
                                              )
22                                            )
                                              )
23  _____  )
24
25
26
27
28

## Table of Contents

I.    INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF FACTS ................................................................................ 2

III.  ARGUMENT ...................................................................................................... 3

   A. Plaintiff's Allegations Satisfy Rule 9(b) ................................................. 3

   B. Plaintiff Has Alleged Reasonable Reliance on Defendant's Misleading Statements .......... 6

   C. Plaintiff Has Satisfied the Procedural Prerequisites Under the CLRA ............................. 10

   D. Plaintiff's Cause of Action for Quasi-Contract/Unjust Enrichment Presents
      an Alternative Theory of Recovery and Should Not Be Dismissed ................................ 11

   E. The Complaint States a Cause of Action for Breach of Contract ..................................... 12

   F. Plaintiff Has Standing to Pursue Claims for Products That Are Substantially
      Similar to the Ones She Bought ........................................................................ 13

   G. Defendant's "Wheat" Representations Deceive Reasonable Consumers ........................ 14

   H. Federal Law Does Not Preempt Plaintiff's "Wheat" Claims ........................................... 18

         1. Section 343-1 Does Not Preempt Plaintiff's Claims ................................................. 18

         2. No Standards of Identity Are at Issue ......................................................................... 19

         3. Plaintiff's Claims Are Identical to Federal Law and Are Not Preempted ................ 20

   I. The Court Should Not Defer Adjudication of Plaintiff's "Wheat" Claims under the
      Doctrine of Primary Jurisdiction ....................................................................... 22

   J. The Court Should Not Dismiss Plaintiff's Claim for Injunctive Relief ............................ 24

   K. Alternatively, Leave to Amend Should Be Granted ........................................................ 25

IV.  CONCLUSION ................................................................................................ 25

**Table of Authorities**

**Cases**                                                                                          **Page(s)**

*Ackerman v. Coca-Cola Co.,*
    2010 WL2925955 (E.D.N.Y. Jul. 21, 2010)……………………..………………....16

*Ang v. Bimbo Bakeries USA, Inc.,*
    2013 WL5407039 (N.D. Cal. Sept. 25, 2013)………………………………….…4

*Ang v. Whitewave Foods Company,*
    WL 6492353 (N.D. Cal. Dec. 10, 2013)…………..………………..………….....17, 22

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001)………………………………………….…..….....14

*Astiana v. Ben & Jerry's Homemade, Inc.*
    2011 WL 2111796 (N.D. Cal. May 26, 2011)……………………….....................4

*Berger v. Home Depot USA, Inc.,*
    741 F.3d 1061 (9th Cir. 2014)…………………………………………..……….11

*Bohac v. General Mills, Inc.,*
    2013 WL 5587924 (N.D. Cal. Oct. 10, 2014)……………………………………22

*Brazil v. Dole Food Co.,*
    2013 WL 5312418 (N.D. Cal. Sep. 23, 2013)…………..………………...……....13, 14

*Brown v. Hain Celestial, Inc.,*
    913 F.Supp.2d 881 (N.D. Cal. 2012)…………..………………………....16

*CDF Firefighters v. Maldonado,*
    158 Cal. App. 4th 1226 (2008)………………………………………..……….12

*Chacanaca v. Quaker Oats Co., Inc.,*
    752 F.Supp.2d 1111 (N.D. Cal. Sept. 16, 2013)………………………………….23

*Clemens v. DaimlerChrysler Corp,*
    534 F.3d 1017 (9th Cir. 2008)…………………………………………..…….13

*Colgan v. Leatherman Tool Group, Inc.,*
    135 Cal. App.4th 663 (2006)……………………………………………..…15

*Colucci v. ZonePerfect Nutrition Co.,*
    2012 WL 6737800 (N.D. Cal. Dec. 28, 2012)…………………………………....12

-ii-

*Delacruz v. Cytosport, Inc.*,
    2012 U.S. Dist. LEXIS 90847 (N.D. Cal. June 28, 2012)………………………………………23

*FTC v. Cyberspace.Com LLC*,
    453 F.3d 1196 (9th Cir. 2006)……………………………………………..……8

*Garrison v. Whole Foods Market Group, Inc.*,
    2014 WL 2451290 (N.D. Cal. Jun. 2, 2014)……………………………………....13, 21, 23

*Gitson v. Trader Joe's Co.*,
    2013 WL5513711 (N.D. Cal. Oct. 4, 2013)…………………..………………....15

*Gitson v. Trader Joe's Co.*,
    2014 WL1048640 (N.D. Cal. Mar. 14, 2014)…………………………..…….4, 5

*Goldemberg v. Johnson & Johnson Consumer Co., Inc.*,
    2014 WL1285137 (S.D.N.Y. Mar. 27, 2014)…………………..……………….....16

*Guido v. L'Oreal*,
    2013 WL 3353857 (C.D. Cal. 2013)………………………………………………..15

*Gustavson v. Wrigley Sales*,
    2013 WL 5201190 (N.D. Cal. Sept. 15, 2013)…………………………………23

*Ham v. Hain Celestial Grp., Inc.*,
    2014 WL 4965959 (N.D. Cal. Oct. 3, 2014)……………………………………5, 13

*Hood v. Wholesoy & Co.*,
    2013 WL 3553979 (N.D. Cal. July 13, 2013)……………………...………….....24

*In re Apple and AT&T iPad Unlimited Data Plan Litigation*,
    802 F.Supp.2d 1070 (N.D. Cal.  Jul. 18, 2011)…………………………….....11

*In re Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (2008)……………………………...…………20, 21

*Janney v. Mills*,
    944 F.Supp.2d 806 (N.D. Cal. May 10, 2013)……………………………..…….5

*Jou v. Kimberly-Clark Corp.*,
    2013 WL 6491158 (N.D. Cal. Dec. 10, 2013)………………………………….8, 25

*Kasky v. Nike, Inc.*,
    27 Cal.4th 939 (2002)……………………………………..…….15, 16

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Case No. 5:14-CV-05189

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Lafferty v. Wells Fargo Bank,*
   213 Cal.App.4th 545 (2013)……………………………………………..…………11

*Lanovaz v. Twinings North America, Inc.,*
   2013 WL 2285221 (N.D. Cal. May 23, 2013)…………………………………….13

*Leonhart v. Nature's Path Foods, Inc.,*
   2014 WL 6657809 (N.D. Cal. Nov. 21, 2014)………………………....….…..12

*Kosta v. Del Monte Corp.,*
   2013 U.S. Dist. LEXIS 69319 (N.D. Cal. 2013)…………………………………..…20

*Kumar v. Salov,*
   2015 WL 457692 (N.D. Cal. Feb. 3, 2015)…………………..……………….....25

*Machlan v. P&G Co.,*
   2015 WL 106385 (N.D. Cal. 2015)……………………………………………....25

*Malcolm v. JPMorgan Chase Bank, N.A.,*
   2010 WL 934252 (N.D. Cal. Mar. 15, 2010)…………………………………….8

*Mason v. Nature's Innovation,*
   2013 WL 1969957 (S.D. Cal. May 13, 2013)……………………………….....25

*McKinniss v. Sunny Delight Bev. Co.,*
   2007 WL 4766525 (C.D. Cal. Sept. 4, 2007)………..…………………………..17

*Meister v. Mensinger,*
   230 Cal.App.4th 381………………………………………………..…………12

*Miller v. Ghirardelli Chocolate Co.,*
   912 F.Supp.2d 861 (N.D. Cal. 2012)…………..……………..…………………...17

*Mills v. Giant of Md., LLC,*
   441 F. Supp. 2d 104 (D.D.C. 2006)……………………………………………22

*Morales v. Unilever United States, Inc.,*
   2014 WL1389613 (E.D. Cal. Apr. 9, 2014)…………………………….....7, 16

*Morgan v. AT & T Wireless Services, Inc.,*
   177 Cal.App.4th 1235 (2009)……………………………………………..…...11

*Ortega v. Natural Balance Inc.,*
   2013 WL 6596792 (C.D. Cal. Dec. 15, 2013)…………………………………11

*Outboard Marine Corp. v. Superior Court,*
    52 Cal. App. 3d 30 (1975)………………………………………...……...…10

*People v. JTH Tax, Inc.,*
    212 Cal.App.4th 1219 (2013)……………………………………....……….8

*Ramona Manor v. Care Enters.,*
    177 Cal.App.3d 1120 (1986)…………………………………………....….12

*Red v. The Kroger Co.,*
    2010 WL 4262037 (C.D. Cal. Sept. 2, 2010)……………………….....…22

*Rooney v. Cumberland Packing Corp.,*
    2012 WL 1512106 (S.D. Cal. April 16, 2012)……………………………...17

*Samet v. Procter & Gamble Co.,*
    2013 WL 3124647 (N.D. Cal. June 18, 2013)……………………...……...…8, 23

*Smajlaj v. Campbell Soup Co.,*
    782 F. Supp.2d 84 (D.N.J. 2011)………………………………………….8

*Southland Sod Farms v. Stover Seed Co.,*
    108 F.3d 1134 (9th Cir. 1997)………………………………………….8

*Stearns v. Ticketmaster Corp.,*
    655 F.3d 1013 (9th Cir. 2011)……………………………………...……11

*Tardejna v. General Mills, Inc.,*
    909 F. Supp. 2d 1128 (D. Minn. 2012)……………………………...……24

*Thomas v. Costco Wholesale Corp.,*
    2013 WL 1435292 (N.D. Cal. Apr. 9, 2013)……………………………...…5

*Turek v. Gen. Mills, Inc.,*
    754 F. Supp. 2d 956 (N.D. Ill. 2010)……………………………...……22

*US v. Krumm,*
    69 F. 848 (D.C. Pa. 1921)………….………………………....……...17

*Viggiano v. Hansen Natural Corp.,*
    944 F. Supp. 2d 877 (C.D. Cal. 2013)………………………………….17

*Williams v. Gerber Products Co.,*
    523 F.3d 934 (9th Cir. 2008)……………………………….………...……8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Statutes

Bus. & Prof. Code §§ 17200, et seq. ("UCL")…………………………………………3, 12, 15

Cal. Civ. Code §§ 1750, et seq. ("CLRA")………………………………………..2, 10, 11

Cal. Health & Safety Code § 109875 ("Sherman Law")…………………………………15, 20

## Rules & Regulations

21 CFR § 136.110…………………………………………………………………………passim

21 CFR § 136.111……………………………………………………………....………7, 16

21 CFR § 136.115……………………………………………………………………………passim

21 CFR § 136.180……………………………………………………………………………passim

21 CFR § 137.105……………………………………………………………………....…19

21 USC § 301, et seq. ("FDCA")…………………………………………18, 20, 21, 22

21 CFR § 341, et seq. ("NLEA")…..………………………………………………..18, 20

Fed. R. Civ. P. 8……………………………………………………..………………………..3

Fed. R. Civ. P. 9(b)………………………………………………………..…………3, 4, 5, 9

Fed. R. Civ. P. 15(a)…………………………………………………………………………25

## Other Authorities

Experimental Study on Consumer Responses to Whole Grain Labeling Statements on Food
    Packaging, 77 Fed. Reg. 11547, 11547-49 (February 27, 2012)…………………………20

FDA Draft Guidance for Industry and Staff: Whole Grain Label Statements
    (2006)………………………………………………………………………..19, 20, 23

*Pom Wonderful v. The Coca-Cola Co.*, FDA Amicus Brief…………………………..…………23

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Case No. 5:14-CV-05189

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiff has pled her causes of action with particularity under FRCP 9(b) where she has alleged "who, what, when, where, and how" of the alleged deception.

2. Whether Plaintiff's reliance on Defendant's labeling representations was reasonable where her understanding is consistent with FDA regulations and policy guidance, as well as common usage of the relevant terms.

3. Whether Plaintiff has complied with the procedural requisites to bringing a claim under the CLRA where she sent her pre-lawsuit notice to Defendant more than five months before filing the Complaint.

4. Whether Plaintiff has stated a claim for unjust enrichment where she has pled it in the alternative and does not otherwise have an adequate remedy at law.

5. Whether Plaintiff has stated a claim for breach of contract within one of the well-established exceptions to the privity requirement.

6. Whether Plaintiff has standing to pursue claims on behalf of consumers who purchased substantially similar products to the ones she purchased.

7. Whether federal law preempts Plaintiff's wheat claims which do not impose requirements that are different from the FDA.

8. Whether the Court should cede jurisdiction of Plaintiff's wheat claims where the FDA has expressed no intent to act with respect to the key terms in this case.

9. Whether the Court should dismiss Plaintiff's claim for injunctive relief where Plaintiff would encounter the same challenged statements during future purchases.

# I.   INTRODUCTION

This lawsuit arises from Defendant Flowers Bakeries' ("Defendant") attempt to boost sales by overstating the quality of its breads.   Defendant touts its breads as being "Nature's Own" and, through deceptive labeling and marketing, conveys that they are natural products, despite the presence of a host of artificial ingredients, including the suspect chemical azodicarbonamide.   In like manner, Defendant markets and sells "wheat" bread that contains little or no whole wheat flour.   Defendant's obvious intent is to bolster its sales by palming off inferior products as healthy and wholesome.   Plaintiff Kelly Romero ("Plaintiff") alleges claims arising from these unlawful and deceptive marketing practices.

In a classic example of the kitchen-sink style of litigation, Defendant throws everything it has at Plaintiff in a desperate attempt to get her claims dismissed or stayed.   But Defendant's arguments are as superficial as the contested representations.   Indeed, Defendant's principal arguments depend on a willful misreading of the Complaint, which clearly delineates three sets of misrepresentations and proposes certification of three classes corresponding to them.

The Complaint's allegations are detailed and sufficient to withstand Defendant's challenge.   Plaintiff has standing to represent consumers of each of the alleged classes, who all purchased substantially similar products. Moreover, Plaintiff may assert her claim for injunctive relief because she is likely to encounter the same challenged statements in the future without knowing whether they are true.   Plaintiff has shown that reasonable consumers could construe Defendant's labeling representations in the same way she did in light of the FDA's regulations and policy statements, as well as common usage governing the relevant terms.

None of Plaintiff's wheat claims are preempted by federal law, nor should the Court wait for administrative action.   Plaintiff's claims involve Defendant's false representations to consumers that its bread contains whole grains—a question that courts are well qualified to handle.   Moreover, Plaintiff's claims impose no requirements different from federal law; the federal regulations are clear about what Defendant's breads may and may not be called.

Defendant's remaining scattershot arguments are equally without merit.   Numerous courts in this District hold that unjust enrichment remains a viable claim.   Moreover, Plaintiff

-1-

1    has stated a claim for breach of contract falling into the well-established exceptions to the

2    privity requirement.  Finally, Plaintiff satisfied notice requirements under the CLRA by giving

3    Defendant more than five months to correct its violations before filing her complaint.

4    Accordingly, the Court should deny Defendant's motions to dismiss or stay.

## II.  STATEMENT OF FACTS

6        Defendant markets and sells a variety of bread products intended to appeal to health-

7    conscious consumers, most obviously and directly through its the brand name—"Nature's

8    Own"—together with representations on the labels and in promotional materials that its bread

9    contains "no artificial preservatives, colors and flavors" and "no high fructose corn syrup," and

10   that "[a]nything artificial is against our nature," all of which suggest that its breads are natural,

11   wholesome, and healthy.  (Compl. ¶¶ 1, 10.)  The product labels also depict stalks of wheat and

12   pots of honey and carry statements touting "wholesome" and "healthy" ingredients.  (*Id.* at ¶¶

13   11-14, Exs. A-E.)  Reinforcing this theme, Defendant explicitly labels some of its bread "All

14   Natural" or "100% Natural."  (Compl. ¶ 11, 15, 31, Ex. E.)

15       Defendant also markets and sells two types of "wheat" breads:  Honey Wheat and

16   Whitewheat.  (Compl. ¶¶ 14, 40-63.)  The product labels for these products show stalks of

17   wheat and carry statements that they contain "healthy grains" and "wholesome wheat" and are

18   important to a healthy diet.  (*Id.* at ¶ 14, Exs. A, D, E.)  Defendant's Whitewheat bread is

19   explicitly labeled "Healthy White."  (*Id.* at ¶¶ 13, 49, 56.)

20       Plaintiff alleges that Defendant's representations are unlawful, false, misleading, and

21   deceptive because, despite representations that Nature's Own bread is natural and without

22   artificial ingredients, the bread in fact contained a highly controversial and suspect chemical

23   called azodicarbonamide, also known as the "yoga mat chemical."  (*Id.* at ¶¶ 27-30.)

24   Moreover, Defendant's breads explicitly labeled "All Natural" contain a host of synthetic

25   ingredients at odds with that representation.  (*Id.* at ¶¶ 32-39.)  Finally, Plaintiff contends that

26   Defendant's use of the word "wheat" in its product names is deceptive because the subject

27   breads contain little or no whole wheat flour.  (*Id.* at ¶¶ 40-63.)  Accordingly, Plaintiff proposes

28   three classes of consumers corresponding to each of her claims:

(1) **Azodicarbonamide Class**:   Consumers who purchased Defendant's breads containing the chemical azodicarbonamide (*id.* at ¶¶ 1, 27-30, 69);

(2) **All Natural Class**:   Consumers who purchased Defendant's breads labeled "All Natural" containing specified artificial ingredients (*id.* at ¶¶ 1, 31-39, 69); and

(3) **Wheat Class**:   Consumers who purchased Defendant's Honey Wheat or Whitewheat breads (*id.* at ¶¶ 40-63, 69).

## III. ARGUMENT

### A. Plaintiff's Allegations Satisfy Rule 9(b).

Plaintiff's claims under the "unlawful" prong of the UCL (i.e., her first cause of action) are not subject to Rule 9(b)'s heightened pleading standard but rather Rule 8 notice pleading. Regardless, Plaintiff has pled causes of action 1-9 with particularity.

As with much of its motion, Defendant's argument that Plaintiff has not pled with sufficient particularity under Rule 9(b) results from conflating the distinct classes alleged in the Complaint.  As described above, Plaintiff proposes three classes of consumers each of which purchased a different category of products that make a different set of representations which was false for a different reason.  (Compl. ¶ 69.)

The **<u>first class</u>** consists only of consumers who purchased Nature's Own breads containing the suspect chemical azodicarbonamide, the presence of which is inconsistent with Defendant's labeling representations suggesting that these breads are natural, including its guarded brand name "Nature's Own," coupled with vignettes of nature and claims appearing on the product labels indicating the absence of artificial ingredients and connoting that the bread is somehow healthy and wholesome.  (Compl. ¶¶ 15, 27-30, 69(1).)  A **<u>second class</u>** consists only of those consumers who purchased Nature's Own bread explicitly labeled "All Natural" despite the presence of specific artificial ingredients that are inconsistent with common understandings of that term.  (Compl. ¶¶ 15, 31-39, 69(3).)  And a **<u>third class</u>** consists only of those consumers who purchased Nature's Own Honey Wheat Bread or Whitewheat Bread.  The labels of both these breads suggest through their use of the word "wheat" in the product names, as well as the tagline "Healthy White" on the label of Nature's Own Whitewheat Bread, that they consist

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Case No. 5:14-CV-05189

largely of whole wheat flour when in fact they are really white breads.  (*Id.* at ¶¶ 40, 49, 50, 55, 56, 59, 62, 69(2).)

The claims of each of these classes are pled in compliance with the particularity requirement found in Fed. R. Civ. P. 9(b) because the "who," "what," "when," "where," and "how" of the alleged fraud are set forth in detail in the Complaint.  *See Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *4 (N.D. Cal. May 26, 2011).[1]  So too here, Plaintiff alleges the "who," Defendant (Compl. ¶¶ 1, 6); the "what," three categories of Defendant's labeling representations, i.e., (1) Defendant's guarded "Nature's Own" brand name, coupled with vignettes and claims appearing on the product labels suggesting that the breads are natural, (2) more explicit statements made on certain labels that the breads are "All Natural," and (3) Defendant's "wheat" representations; (*id.* at ¶¶ 10-15, 40); the "when," "from four years prior to the filing of the Complaint and continuing to the present" (*id.* at ¶ 69); the "where," on Defendant's product labels and in its promotional materials; and the "how," including the suspect chemical ingredient azodicarbonamide in breads labeled "Nature's Own" and making representations evoking the breads' natural properties despite the inclusion of this ingredient; including a host of synthetic ingredients in breads labeled "All Natural"; and failing to include any whole wheat in breads labeled "wheat" breads.

Defendant demands greater particularity by suggesting that Plaintiff must attach each and every label of the challenged products.  (Mem. 7:5-6.)  Defendant is incorrect.  This District in *Ang* specifically found that the plaintiffs need not identify the exact version of the labels relied on because they identified the specific representations themselves.  *Ang*, *supra*, at *4.  What is necessary is that the plaintiff should describe the alleged misrepresentations in detail.  *See Gitson v. Trader Joe's Co.*, 2014 WL 1048640, at *5 (N.D. Cal. Mar. 14, 2014) (concluding that complaint pled with particularity where plaintiffs alleged the specific names of the misbranded products and identified the misrepresentations made on them).

Where, as here, the plaintiff has described the misrepresentations in detail (*see*, *e.g.*, Compl. ¶¶ 15, 27-30, 31-39, 40, 49, 50, 55, 56, 59, 62), she need not attach to her complaint an

---

[1] *See also Gitson*, *supra*, at *5 (same); *Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL5407039, at *2-4 (N.D. Cal. Sept. 25, 2013) (same, citing multiple cases).

image of each and every label bearing the alleged misrepresentations.   In *Gitson*, the court found the allegations sufficient without product labels of each and every one of the labels.   *Id.* at *2, 5.   In some instances—for example when the advertisement is no longer available— requiring a copy of the label or advertisement may be tantamount to foreclosing a meritorious claim.   Also, Defendant is in possession of all relevant labels.

This case is unlike both *Janney v. Mills*, 944 F.Supp.2d 806, 818 (N.D. Cal. May 10, 2013) and *Thomas v. Costco Wholesale Corp.*, 2013 WL 1435292 (N.D. Cal. Apr. 9, 2013), on which Defendant relies.   In those cases, the plaintiffs asserted claims for products that were never identified.   *See Thomas* at *6 ("Rather than consisting of finite and particular products, this term [*i.e.*, "or food products distributed or sold by Defendant"] purports to encapsulate a general, non-particularized class of food products"); *Janney* at 818 (dismissing claims as to "'unidentified products'—the products other than the Named Products specifically identified in the FAC").   Here, in contrast, Plaintiff has identified every allegedly misbranded product (*see* Compl. ¶ 1) and this list, contrary to Defendant's assumption (Mem. 7: 15-18), is exhaustive.

The mere use of the term "Misbranded Products" does not render a complaint deficient where, as here, the plaintiff clearly identifies the products and the allegedly false labeling representations at issue.   In *Ham v. Hain Celestial Grp., Inc.*, 2014 WL 4965959 (N.D. Cal. Oct. 3, 2014), the court denied the defendant's motion to dismiss for lack of particularity under Rule 9(b) even though the complaint did not list "every single product which is allegedly mislabeled" where the complaint specified that products at issue were food products that were labeled "All Natural" yet contained SAPP.   *See Ham* at *4.   The court ruled that the defendant could "easily determine which products are at issue."   So too here, Plaintiff has identified the products at issue based on the three categories of misrepresentations:   "Nature's Own" breads containing azodicarbonamide, "All Natural" breads containing specific artificial ingredients, and "wheat" breads not composed primarily of whole wheat flour.

Defendant conflates two of the proposed classes, the Azodicarbonamide Class and the All Natural Class (*see* Mem. 8:2-3) and assumes that the Wheat Class includes consumers of products other than the two varieties specifically named (Honey Wheat and Whitewheat) (*see*

1   *id.* at 8:7-9, 12-15), which it does not; the Wheat Class consists only of consumers of those two

2   product lines.  (Compl. ¶ 69(2).)   Defendant also feigns confusion by contending that the

3   Complaint alleges that the bread products contain different ingredients which changed over

4   time (Mem. 8:4-6), but this again misreads the Complaint, which asserts claims on behalf of

5   one   class   of   bread   purchasers   who   bought   products   containing   the   ingredient

6   azodicarbonamide, and on behalf of another class of bread purchasers who bought products

7   purporting to be "All Natural" but containing one or more of the specified artificial ingredients.

8   (*See* Compl. ¶¶ 32-39.)   Finally, the Complaint clearly specifies that the specified "wheat"

9   breads are mislabeled "because such labels suggest that the products are whole wheat breads

10  and therefore healthier when in fact they are merely white breads."  (*Id.* at ¶ 40.)

11      **B.  Plaintiff Has Alleged Reasonable Reliance on Defendant's Misleading Statements.**

12          In arguing that Plaintiff fails to adequately plead reliance, Defendant ignores the

13  allegations of the Complaint and mischaracterizes the facts alleged and the applicable law.

14  Plaintiff has alleged that she is "concerned about her health and has progressively tried to

15  consume healthier foods, including breads."  (Compl. ¶ 64.)  As a result, she has increasingly

16  opted to consume "more natural, whole wheat breads," and especially breads that "do not

17  contain synthetic, artificial, chemical, or highly processed ingredients."  (*Ibid.*)

18          Plaintiff specifically alleged that she understood that Defendant's "wheat" bread meant

19  bread with large amounts of whole wheat as opposed to white bread.   (*Id.* at ¶ 66 ("[S]he

20  believed,  when  purchasing  Nature's  Own  Honey  Wheat  Bread  and  Nature's  Own

21  Whitewheat® Bread, that these were wheat and not white breads."), ¶ 67 ("Plaintiff would have

22  never bought Nature's Own Honey Wheat Bread and Nature's Own Whitewheat Bread had she

23  known that these were actually white breads, not whole wheat breads.").)  Plaintiff also alleged

24  that she understood that Defendant's breads were "free of synthetic, artificial, chemical, or

25  highly processed ingredients."  (*Id.* at ¶¶ 64, 66 67.)

26          Plaintiff specifically alleged that she read and relied on the "wheat" representations in

27  the brand names and the natural representations made on the product labels in deciding to

28  purchase the specified products.  (*Id.* at ¶¶ 65, 66.)  This reliance was reasonable because, as

-6-

1    discussed at length (*id.* at ¶¶ 40-63), consumers as a group understand the term "wheat" in a

2    product name just as Plaintiff understands it, i.e., composed primarily of whole wheat flour.

3    (*Id.* at ¶ 48 ("The average consumer assumes that wheat products contain large proportions of

4    whole grains and does not know, even if he or she reads the ingredient list, that for a product to

5    be whole wheat the term 'whole wheat' must appear near the beginning of the ingredient

6    statement.") (citing article from the Whole Grains Council).   Plaintiff's reliance is also

7    reasonable in light of the relevant FDA regulations requiring breads containing non-whole

8    wheat flour to be called "white bread," not "white wheat" or "healthy white," and that the only

9    time "wheat" is permitted to be used as part of the name of bread is for whole wheat bread.

10   (Compl. ¶¶ 51-54 (citing 21 C.F.R. § 136.110, 136.111, 136.115, 136.180).)

11           Plaintiff has also made allegations showing she reasonably relied on Defendant's

12   natural representations.  She has cited numerous definitions of the word "natural" from a major

13   dictionary, the FDA, and the USDA that are consistent with her understanding of that the term

14   means.   (Compl. ¶¶ 15-17, 19-23.)   She also cites a study finding that the majority of

15   consumers understand the term similarly, that they attach importance to natural products, and

16   that they rely primarily on labeling representations when making their purchasing decisions.

17   (*Id.* at ¶¶ 18, 25.)   Whether Plaintiff's reliance and that of other consumers is actually

18   reasonable is a factual question that cannot be decided at the pleading stage.  *See Morales v.*

19   *Unilever United States, Inc.*, 2014 WL1389613, at *7 (E.D. Cal. Apr. 9, 2014) (citing cases).

20           Defendant contends that Plaintiff's reliance was unreasonable because the word "white"

21   in the product name "Whitewheat" should have tipped her off to the fact that the bread was not

22   wheat bread.  (Mem. 9:15-16.)  Of course, the word "wheat" is also in the product name, and as

23   Plaintiff specifically alleged, "[w]hite wheat" refers to albino wheat, which is a whole grain

24   preferred by some who dislike the mealy taste of whole wheat.  (Compl. ¶¶ 57, 58.)  Moreover,

25   the "Whitewheat" product name appears adjacent to the claim "Healthy White," *see* Compl. ¶¶

26   13, 49, which lends credence to Plaintiff's belief that Whitewheat was not your run-of-the-mill

27   white bread, which, based on its ingredients, is exactly what it is.  (*Id.* at ¶ 51.)

28           Defendant also contends that Plaintiff's reliance was not reasonable because the words

                                                   -7-

1    "enriched bread" appear on some (but not all) of the product labels.  (Mem. 9:17-20; Compl.,

2    Exh. D.)  This is neither here nor there.  Plaintiff has alleged that "white" bread or "enriched

3    bread" cannot be called "wheat" bread under the federal regulations, and that is exactly what

4    Defendant called it.  (Compl. ¶ 53.)  The contested bread is not called "enriched bread"

5    consistent with the federal regulations; rather, this statement is placed on some labels as a

6    footnote, not as the name of the bread, which explicitly includes the deceptively chosen word

7    "wheat."  The inclusion of the statement "enriched bread," which typically appears in small

8    font at the bottom of the bag, does not indicate to consumers that the product is white bread;

9    moreover, to the extent the statement suggests that the bread is "white" bread, it contradicts the

10   word "wheat" which is more prominently displayed in the product name.

11         Under California's consumer protection statutes the relevant standard is whether the

12   labels are likely to deceive the consuming public, not whether the statements they contain are

13   technically true or false.  *See Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008).

14   Courts routinely hold that a plaintiff states a claim where truthful information is suppressed or

15   obscured.  *See ibid.* (holding consumer could plausibly be deceived by misrepresentations

16   notwithstanding disclosures made elsewhere); *Samet v. Procter & Gamble Co.*, 2013 WL

17   3124647, at *8 (N. D. Cal. June 18, 2013) ("[A] label could disclose all truthful information,

18   but hide the most relevant information in infinitesimal print, and thus as a whole be misleading

19   to the reader."); *Smajlaj*, *supra*, 782 F.Supp.2d. at 97, fn. 6 (finding that a footnote identifying

20   reference food did not save the nutrient content claim from being deceptive).[2]

21         Defendant also contends that because Plaintiff purchased some of Defendant's 100

22   percent whole wheat breads, she could not reasonably believe that "wheat" in the product name

23   means whole wheat.  (Mem. 9:21-24.)  But Plaintiff does not claim that Defendant's 100

24   percent whole wheat breads are falsely labeled, only that its Whitewheat and Honey Wheat are.

---

25   [2] *See also People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1253 (defendant liable where advertisements

26   "were in a very small font" and were "plainly designed to be overlooked by consumers"); *FTC v. Cyberspace.Com
     LLC* (9th Cir. 2006) 453 F.3d 1196, 1200 (deception not cured merely by the inclusion of disclaimers in small

27   print); *Southland Sod Farms v. Stover Seed Co.* (9th Cir. 1997) 108 F.3d 1134, 1145 (disclaimer and literal truth
     insufficient to cure deceptive advertisement); *Jou v. Kimberly-Clark Corp.,* 2013 WL 6491158, at *8-9 (N.D. Cal.

28   Dec. 10, 2013) ("Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that
     any misrepresentation on the front of the packaging is excused.").

-8-

1   (Compl. ¶ 69(2).)  Plaintiff does not claim to be an expert on Nature's Own breads and does not

2   expend energy thinking about the company's various lines of bread and various representations

3   and what they may connote across labels when making a purchase.   Rather, like most

4   consumers, Plaintiff makes representations based on the product before her, so the appropriate

5   question is whether the two alleged product lines are mislabeled.  Moreover, it is reasonable for

6   consumers like Plaintiff to believe that "wheat" bread contains a substantial amount of whole

7   wheat, though perhaps not 100 percent whole wheat.  This understanding is consistent with the

8   federal regulations, which prohibit the term "whole wheat" in the product name if the bread

9   contains anything other than whole wheat flour.  21 C.F.R. § 136.180(b).  In other words, a

10  bread that contains some whole wheat flour and some enriched flour could never use the term

11  "whole wheat" in the product name.  But a reasonable consumer could understand the term

12  "wheat" in the product name, especially in light of references elsewhere on the product labels

13  to "wholesome wheat" and "healthy grains" (Compl. ¶ 14), to signify the presence of whole

14  wheat flour.[3]  But the fact is that Defendant's wheat bread contains no whole wheat at all.

15        Defendant's argument that Plaintiff has not pled reasonable reliance with respect to the

16  natural representations is a regurgitation of its argument under Rule 9(b) and again based on a

17  willful misapprehension of Plaintiff's claims.   The natural representations fall into two

18  categories, which correspond to two distinct classes:  the Azodicarbonamide Class and the All

19  Natural Class.   (Compl. ¶ 69.)   The Complaint clearly alleges the basis for the

20  misrepresentations giving rise to the claims asserted on behalf of both classes.   Defendant's

21  confusion and assertions that the Complaint lacks specificity stems from failing to appreciate

22  the distinction between these separately alleged classes.[4]

---

[3]  Defendant's supposition seems to be that reasonable consumers would expect bread containing some whole wheat to be labeled "whole wheat" though not "100% whole wheat."  But this supposition, which in any event would require an evidentiary determination not appropriate for a motion to dismiss, is foreclosed by the federal regulations, under which any use of the term "whole wheat" in the product name means 100 percent whole wheat. 21 C.F.R. § 136.180(b).

[4]  Plaintiff alleges that the use of a potentially dangerous chemical, azodicarbonamide, is inconsistent with Defendant's highly guarded brand name "Nature's Own," which, coupled with vignettes of symbols of nature and related claims appearing on the product labels (e.g., "no artificial preservatives, colors or flavors," "no high fructose corn syrup"), falsely suggests to the consumer that the product is natural or at the very least does not contain suspect chemical ingredients.  (Compl. ¶¶ 12-13.)  Plaintiff *also* alleges some of Defendant's breads made this connection more explicit and actually claim to be "all natural," a representation that is false owing to the

-9-

In light of the alleged facts, Defendant's attempt to muddle the wheat class and the natural classes does not convince.  (Mem. 10:3-9.)   Contrary to Defendant's suggestion, Plaintiff does not seek to "artfully" plead her wheat allegations in such a way as to somehow bolster or obscure her natural allegations; the two claims, and classes corresponding to those claims, are separate.  Indeed the allegations cited by Defendant (Mem. 10:5) explicitly keep these two claims separate. (Compl. ¶ 66 ("[1] Plaintiff … believed that she was purchasing products that were free of synthetic, chemical, artificial, and highly processed ingredients, and [2] she believed, *when purchasing Nature's Own Honey Wheat Bread and Nature's Own Whitewheat® Bread*, that these were wheat and not white breads.")(emphasis added).)[5]

**C. Plaintiff Has Satisfied the Procedural Prerequisites under the CLRA.**

Plaintiff sent a letter to Defendant on May 9, 2014, describing in detail her claims and requesting Defendant to correct the asserted violations.  (Def's RNJ, Ex. 3.)  After sending this letter, Plaintiff's counsel had numerous telephonic discussions with defense counsel regarding the asserted claims and exchanged email correspondence.  (Orshansky Dec. ¶¶ 3-8.)  Plaintiff also sent defense counsel a draft of the Complaint. (*Id.* at ¶ 6.)  The Complaint of course discussed in detail Defendant's alleged violations of the CLRA.  (Compl. ¶¶ 122-128.) Defendant failed to take corrective action, and Plaintiff filed the instant lawsuit in state superior court on October 20, 2014.  *That means Defendant had more than five months to take corrective action but did nothing*, despite Plaintiff's repeated requests.

Section 1782(a)'s notice requirement is meant to provide a potential defendant with sufficient notice of its violations under the CLRA to allow for appropriate corrections and to facilitate cooperative resolutions.  *See Outboard Marine Corp. v. Superior Court*, 52 Cal. App.

---

artificial ingredients identified in the Complaint, some of which are believed to be produced using genetic engineering or through petrochemical extraction.  (*Id.* at ¶¶ 33-39.) Plaintiff proposes to represent two classes corresponding to these claims:  one consisting of consumers who were duped by defendant's representations of naturalness to purchase a product with the highly suspect chemical azodicarbonamide, and another class of consumers who were more directly duped by explicit "all natural" representations.

[5]  *See also* Compl. ¶ 67 ("Indeed, had Plaintiff known that Defendants' products were not natural and contained potentially dangerous chemical additives like azodicarbonamide, she would not have purchased these products but would have purchased another brand that was truly natural and did not contain undesirable chemicals. … *Similarly, Plaintiff would have never bought Nature's Own Honey Wheat Bread and Nature's Own Whitewheat Bread had she known that these were actually white breads, not whole wheat breads.*")(Emphasis added.)

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Case No. 5:14-CV-05189

3d 30, 41 (1975).   Here, Plaintiff sent Defendant substantial pre-lawsuit correspondence detailing her legal claims.  *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1023 (9th Cir. 2011) (finding pre-lawsuit notice sufficient to satisfy statutory prerequisites where it expressly set forth the nature of the dispute and stated that damages would be sought if defendant did not take corrective action); *Lafferty v. Wells Fargo Bank*, 213 Cal.App.4th 545, 566 (2013) (finding pre-notice sufficient even though specific CLRA sections were not invoked).  Defendant had ample opportunity to correct or cure the alleged violations but did not.[6]

Defendant also faults Plaintiff for not filing an "affidavit stating facts showing that the action has been commenced in the appropriate county" under Cal. Civ. Code § 1780(d).  But Plaintiff has substantially complied with § 1780(d) by alleging that some of the transactions at issue occurred in Santa Clara County.  (*See* Compl. ¶ 65.)  And in an abundance of caution she submits concurrently herewith an affidavit testifying that the subject transactions occurred in part in Santa Clara County.  (Romero Dec. ¶¶ 1, 2.)  *See Morgan v. AT & T Wireless Services, Inc.*, 177 Cal.App.4th 1235, 1242 fn. 2 (2009) (denying motion to dismiss where plaintiff subsequently filed an affidavit).[7]

Finally, any dismissal on either of the technical grounds advanced by Defendant must be without prejudice.  *See* Cal. Civ. Code § 1780(d); *Morgan v. AT & T Wireless Services, Inc.*, 177 Cal.App.4th 1235, 1261 (2009) (recognizing that failure to comply with the CLRA's notice requirement merely requires dismissal without prejudice of the claim for 30 days after the plaintiff complies with the notice requirement before the plaintiff can re-assert the claim).

**D. Plaintiff's Cause of Action for Quasi-Contract/Unjust Enrichment Presents an Alternative Theory of Recovery and Should Not Be Dismissed.**

The Ninth Circuit recently recognized unjust enrichment as an independent cause of action.  *See Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014).  Numerous courts in this District have denied motions to dismiss unjust-enrichment claims in food-mislabeling cases where it is pled in the alternative to tort or contractual theories of recovery.

---

[6] In *In re Apple and AT&T iPad Unlimited Data Plan Litigation*, 802 F.Supp.2d 1070 (N.D. Cal. Jul. 18, 2011), cited by Defendant, the plaintiffs failed any pre-lawsuit notice at all to one of the named defendants.  *Id.* at 1077.

[7] *See also Ortega v. Natural Balance Inc.*, 2013 WL 6596792, at *3 (C.D. Cal. Dec. 16, 2013)("Plaintiffs cured their noncompliance by filing the appropriate venue affidavits, thereby mooting this basis for the motion.").

1     *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL6737800, at *10 (N.D. Cal. Dec. 28, 2012). [8]

2         Plaintiff's unjust-enrichment claim is specifically pled in the alternative (Compl. ¶ 129),

3 *see Malcolm v. JPMorgan Chase Bank, N.A.*, 2010 WL 934252, at *7 (N.D. Cal. Mar. 15,

4 2010) (holding unjust enrichment may be pled in the alternative), and it may proceed as a cause

5 of action independent of her statutory claims where Plaintiff is found to have suffered no loss

6 (e.g., because there was no true premium paid for the misbranded products) but Defendant still

7 realized a benefit from Plaintiff, who purchased bread from Defendant rather than some other

8 manufacturer. *See Meister v. Mensinger,* 230 Cal.App. 4th 381, 398 (2014) (unjust enrichment

9 is not duplicative when "a benefit has been received by the defendant but the plaintiff has not

10 suffered a corresponding loss or, in some cases, any loss").  Because, arguably, Plaintiff in such

11 a circumstance would have no adequate remedy at law (e.g., if she paid no premium, she

12 wouldn't have standing under the UCL), she may then pursue her equitable claim for unjust

13 enrichment. *See Ramona Manor v. Care Enters.,* 177 Cal.App.3d 1120, 1140 (1986).

14    **E.  The Complaint States a Cause of Action for Breach of Contract.**

15         Plaintiff has sufficiently alleged a breach of contract.[9]  First, "Plaintiff and members of

16 both classes had a valid contract, supported by sufficient consideration, pursuant to which

17 Defendants were obligated to provide the products which did not contain azodicarbonamide or,

18 as to the breads labeled 'All Natural,' any synthetic, artificial, or highly processed ingredient or

19 color additive, and which were whole wheat breads, as represented by Defendants." (Compl. ¶

20 148.)  Second, Plaintiff performed by purchasing the products at issue.  (Compl. ¶¶ 65, 66.)

21 Third, "Defendants materially breached its contract with Plaintiff and members of both classes

22 by providing the Misbranded Products labeled 'All Natural' which were not free from artificial,

23 synthetic, highly processed ingredients and color additives and some of which in fact contained

24 harmful chemicals, including azodicarbonamide, the 'yoga mat' substance, ….  Additionally,

25

26 [8]  This Court's ruling in *Leonhart v. Nature's Path Foods, Inc.*, 2014 WL 6657809, at *7 (N.D. Cal. Nov. 21, 2014) is not to the contrary because there the "Plaintiff simply ignored Judge Davila's ruling [on the previous

27 motion to dismiss] and re-alleged the claim."  Plaintiff here advances several bases upon which unjust enrichment is pled as a true alternative legal theory.

28 [9]  "A cause of action for breach of contract requires proof of the following elements:  (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  *See CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

1   Defendants' Honey Wheat and Whitewheat Breads are not whole wheat breads, as is

2   represented on the product packaging." (Compl. ¶ 149.) Fourth, "As a result of Defendant['s]

3   breach, Plaintiff and members of the putative class were damaged[.]" (Compl. ¶ 149.)

4       Moreover, the form of the contract is obvious from the Complaint, which is for

5   mislabeling violations.  Defendant is wrong that Plaintiff fails to identify how the parties

6   understood terms like "all natural" and "wheat," *see* Mem. 13:13-15, because the Complaint

7   discusses at length to how these terms are understood.  (Compl. ¶¶ 16-24, 48-63.)[10]

8       Finally, there are two long-standing exceptions to the privity rule, both of which apply

9   here.  Privity need not be established if the end consumer relied on written labels and

10  advertisements of a manufacturer.  *Clemens v. DaimlerChrysler Corp*, 534 F.3d 1017, 1023

11  (9th Cir. 2008).  (Compl. ¶ 66.)  And privity is not required for a breach of contract claim when

12  the products at issue are foodstuffs—such as bread.  *Ibid*.[11]

13  **F. Plaintiff Has Standing to Pursue Claims for Products That Are Substantially**

14  **Similar to the Ones She Bought.**

15      It is well established that the plaintiff in a mislabeling case has standing to assert claims

16  not only for products she purchased but also "substantially similar products."  *Lanovaz v.*

17  *Twinings North America, Inc.*, 2013 WL 2285221, at *2 (N.D. Cal. May 23, 2013).  The critical

18  question is whether consumers of products that the plaintiff did not purchase suffered injuries

19  similar to those suffered by the plaintiff.  *Brazil v. Dole Food Company, Inc.*, 2013 WL

20  5312418, at *7 (N.D. Cal. Sept. 23, 2013).  Significantly, "the definition of the plaintiff's

21  'injury' is not so narrow as to encompass only the exact set of circumstances that led to the

22  plaintiff's suit."  *Ibid*.  And courts "should not be too rigid in applying standing requirements to

23  proposed classes."  *Lanovaz* at *2.  "When evaluating whether a plaintiff has standing to sue on

---

24  [10]  Moreover, to extent that the subject terms are at all ambiguous, their meaning "may not be decided as a matter

25  of law by a judge, but rather must be determined by a jury, based on 'credible evidence concerning the parties'
    intentions.'"  *Garrison v. Whole Foods Market Group, Inc.*, 2014 WL 2451290, at *6 (N.D. Cal. Jun. 2, 2014)

26  (denying motion to dismiss breach of contract claim in mislabeling class action alleging that "all natural"
    representation was false owing to the presence of a synthetic ingredient in bread products).

27  [11]  This case is distinguishable from *Ham* at *5 (N.D. Cal. Oct. 3, 2014), relied on by Defendant, because there the
    court noted that the "foodstuffs" exception applies to food that is not fit for human consumption, and here Plaintiff

28  has specifically alleged that a chemical used in some of the Misbranded Products—azodicarbonamide, also known
    as the "yoga mat chemical"—could result adversely affect consumers' health.  (Compl. ¶¶ 27-30.)

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Case No. 5:14-CV-05189

behalf of others who have suffered similar, but not identical injuries, the Ninth Circuit has held that in 'determining what constitutes the same type of relief or the same kind of injury, we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry.'" *Brazil*, *supra*, 2013 WL 5312418, at *8 (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001)).

Defendant's argument that Plaintiff lacks standing to assert claims for products she did not purchase once again depends on a willful misreading of the Complaint in a calculated attempt to obscure matters for the Court. Plaintiff proposes to represent three classes of consumers, with each class defined according to the products purchased. (*See* § II, *supra*.) Plaintiff purchased bread products falling into each of the above classifications and was injured thereby. (Compl. ¶¶ 64-67.) To the extent that the Complaint encompasses bread products that Plaintiff did not purchase, Plaintiff has standing to assert claims on behalf of consumers of those products because those products are substantially similar in all material respects. *Indeed the classes—by definition—are limited to products that make the same labeling representations and contain the same offending ingredients.* Consumers of these products were therefore injured in the same way that Plaintiff was. Plaintiff, like every other class member, purchased bread products claims claiming to be "All Natural" containing the specified synthetic ingredients. Plaintiff, like every other class member, purchased bread products purporting to be "Nature's Own" that actually contained the dangerous and controversial chemical azodicarbonamide. And Plaintiff actually did purchase both varieties of the misbranded "wheat" bread that are at issue in this case. Because Plaintiff seeks to represent "only those individuals who have suffered essentially the same injury as the plaintiff," *Brazil*, *supra*, 2013 WL 5312418, at *7, she has standing to assert claims on behalf of consumers who purchased substantially similar products.

### G. Defendant's "Wheat" Representations Deceive Reasonable Consumers.

Defendant asserts that Plaintiff cannot state a claim for Defendant's "wheat" representations because reasonable consumers would not think "wheat" in the product name

-14-

1    means or suggests whole wheat.  (Mem., p. 15.)  Defendant is wrong on several accounts.

2          First, Defendant's argument is not applicable to Plaintiff's first cause of action for

3    unlawful business practices under the UCL, for which Plaintiff need not show that the

4    reasonable consumer would be misled.  *See*, *e.g.*, *Gitson v. Trader Joe's Co.*, 2013

5    WL5513711, at *6 fn.5, 9-10 (N.D. Cal. Oct. 4, 2013) (acknowledging that "the reasonable

6    consumer test does not apply to the plaintiffs' claims under the unlawful prong of the UCL

7    predicated on Sherman Law violations.")  Under the unlawful prong of the UCL, Plaintiff need

8    only allege and prove that Defendant's representations were unlawful and that she lost money

9    or property in making her purchases.  Plaintiff has done so.  (*See* Compl. ¶¶ 67, 79-88.)

10         Second, whether Defendant's labels and advertisements would mislead the reasonable

11   consumer is a factual question not appropriate for a motion to dismiss because it involves

12   contested factual issues.  *See Williams v. Gerber Products*, 552 F.3d 934, 938 (9th Cir. 2008).

13         Next, a reasonable consumer is an "ordinary consumer acting reasonably under the

14   circumstances who is not versed in the art of inspecting and judging a product, in the process of

15   its preparation or manufacture."  *Colgan v. Leatherman Tool Group, Inc.* (2006) 135

16   Cal.App.4th 663, 682.  The reasonable-consumer test is objective and focuses on the nature of

17   the advertising and labeling, "not whether each and every class member would be deceived

18   given their actual level of sophistication."  *Guido v. L'Oreal*, 2013 WL 3353857, *11 (C.D.

19   Cal. 2013).  "[T]hese laws prohibit not only advertising which is false, but also advertising

20   which, although true, is either actually misleading or which has a capacity, likelihood or

21   tendency to deceive or confuse the public."  *Kasky v. Nike, Inc.* 27 Cal.4th 939, 951 (2002).

22         Plaintiff alleges that consumers understand that "wheat" in the name of the bread

23   product denotes whole wheat and that wheat breads are composed primarily of whole wheat

24   flour.  (Compl. ¶ 48 ("The average consumer assumes that wheat products contain large

25   proportions of whole grains and does not know, even if he or she reads the ingredient list, that

26   for a product to be whole wheat the term 'whole wheat' must appear near the beginning of the

27   ingredient statement.") (citing article from the Whole Grains Council).)  The basis for this

28   understanding is discussed at length in the Complaint.  (*Id.* at ¶¶ 40-63.)  In particular, the fact

that the federal regulations require bread that is not primarily composed of whole wheat flour to be called "white" or "enriched" bread shows that reasonable consumers would be deceived by Defendant's labels and conclude that "wheat" bread contains a substantial amount of whole wheat flour. (*See* Compl. ¶¶ 51-54 (citing 21 C.F.R. § 136.110, 136.111, 136.115, 136.180).) The labels also reinforce this understanding by calling the Whitewheat bread "Healthy White" (Compl. ¶¶ 13, 49, 56), as well as by the inclusion of images of sheaves of wheat and pots of honey, all of which creates a false impression that the products have a significant amount of whole wheat, when they do not.  (Compl. ¶ 62.)[12]

Again, whether this understanding is reasonable is a factual question that cannot be determined on a motion to dismiss.  But at this stage Defendant cannot show that consumers' understanding of so-called wheat bread is one of "well-known facts of life" entitling it to a dismissal of Plaintiff's claims, especially where this "wheat" bread should actually be called nothing more than "white" or "enriched" bread.  (Mem. 16:10-12, 17:7-8.)

Defendant states that "it is not reasonable for consumers to be misled by accurate statements on a product label."  (Mem. 16:2-3.)  Of course, Plaintiff explicitly alleges that Defendant's labels bear *inaccurate* statements (Compl. ¶¶ 40, 45, 46, 49, 50, 60, 61, 62, 63), and to the extent its labels could be construed as being technically accurate, they are nevertheless actionable under California law because they convey the false impression that they are whole wheat rather than white breads.  *See Kasky*, *supra*, 27 Cal.4th at 951.

First, Defendant's contention that the FDA distinguishes between wheat and whole wheat (Mem. 17:19-20) is evident; the issue in this case is whether the manufacturer may call bread that is not composed primarily of whole wheat flour, and the regulations clearly require such bread to be called "white bread" or "enriched bread" rather than "wheat" bread.  *See* 21

---

[12] Contrary to Defendant's suggestion (*see* Mem. 16, fn. 8), brand names may give rise to false-advertising claims. *See Brown v. Hain Celestial, Inc.*, 913 F.Supp.2d 881, 895 (N.D. Cal. 2012) (holding that plaintiff stated a claim arising from the defendant's alleged mislabeling of its products with the name "Avalon Organics"); *Morales v. Unilever United States, Inc.*, 2014 WL 1389613, at *7 (E.D. Cal. Apr. 9, 2014) (holding that plaintiff stated a claim where the defendant used a derivative of the word "natural" in the brand name); *Goldemberg v. Johnson & Johnson Consumer Co., Inc.*, 2014 WL1285137, at *9 (S.D.N.Y. Mar. 27, 2014) (holding claim involving brand name "Active Naturals" actionable); *Ackerman v. Coca-Cola Co.* (E.D.N.Y. Jul. 21, 2010), 2010 WL2925955, at *12-13, 16 (holding "vitaminwater" claims actionable).

1    C.F.R. §§ 136.110(e)(1), 136.115(b); 136.180(b).

2          Next, Defendant proffers dictionary definitions of "wheat" and "whole wheat" (Mem.

3    17:20-24), but these definitions do not provide the clarity Defendant suggests.  The primary

4    dictionary definition of "wheat" is simply "a kind of grain that is used to make flour for breads,

5    cookies, etc.," and the second is "bread that is made from wheat flour."[13]  (*See* Def's RJN,

6    Exh. 4.)  These definitions confirm that "wheat" is a general term that consumers have come to

7    understand, partially as a result of the regulations governing bread, to contain whole wheat

8    flour.  Defendant's own dictionary separately defines "white wheat" as being a specific variety

9    of wheat "with white or pale white yellow kernels" and "wheat bread" as being "a bread made

10   of a combination of white and whole wheat flours as distinguished from bread made entirely of

11   whole wheat flour or white flour[.]"[14]  (*See* Pl's RJN, Ex. 1.)[15]

12         Defendant also regurgitates its argument about reasonable reliance that consumers

13   would not understand "wheat" to mean whole wheat because Defendant also sells "100%

14   whole wheat" bread.  (Mem. 17:10-13, fn. 9.)  But again, this argument fails for the same

15   reasons discussed in Section III.B, *supra*.  Defendant relies on cases that say nothing about

16   whether reasonable consumers understand "wheat" in a product name to mean white or whole

17   wheat.[16]  This case is more alike to *Miller v. Ghirardelli Chocolate Co.*, 912 F.Supp.2d 861

18

19   [13]  Similarly, the primary definition given in the Oxford English Dictionary is simply "[t]he grain of a cereal … ,

20   furnishing a meal or flour which constitutes the chief breadstuff in temperate countries[,]" without any indication
     of its being used to make refined, white flour.  (*See* Pl's RJN, Ex. 1.)

21   [14]  Defendant's proffered definition "whole wheat" is of limited use because it mentions neither bread nor flour.
     (*See* Def's RJN, Exh. 4.)

22   [15]  Defendant's citation to an elder case, *US v. Krumm*, 69 F. 848 (D.C. Pa. 1921), also does not convince
     inasmuch as *Krumm* did not involve bread at all but macaroni and was decided long before the regulations

23   governing brand names were enacted, in 1977.  This Court should look to recent cases that are similar to this
     one—including a currently pending case against Defendant involving the same claims—where courts have found
     that plaintiffs could state a claim where white breads were deceptively called wheat bread.  (Pl's RJN, Exs. 2, 3.)

24   [16]  Mem. 16:3-6, 13-23.  *See Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877, 892 n.39 (C.D. Cal. 2013)
     (consumers would not understand no artificial *flavors* to mean no artificial *ingredients*); *Rooney v. Cumberland*

25   *Packing Corp.*, 2012 WL 1512106, *4 (S.D. Cal. April 16, 2012) (consumers not deceived because the sugar
     product at issue actually was "raw" cane sugar); *McKinniss v Sunny Delight Bevs. Co.*, 2007 WL 4766525, at *4

26   (C.D. Cal. Sept. 4, 2007) (finding depictions of fruit on label did not signify that product contains fruit where FDA
     permits such illustrations of characterizing flavor).  Even less apposite is *Ang v. Whitewave Foods Company*, 2013

27   WL 6492353 (N.D. Cal. Dec. 10, 2013), where the court concluded that reasonable consumers would not mistake
     soymilk or almond milk with dairy milk from a cow because "[t]he first words in the products' names should be

28   obvious enough to even the least discerning of consumers."  *Id.* at *4.  Far from being confused, many consumers
     buy almond milk and soymilk expressly because these products are not dairy milk. Here in contrast, the word

-17-

1   (N.D. Cal. 2012), where the court refused to dismiss claims that the defendant misbranded it

2   products with the name "white chocolate" when they did not in fact contain white chocolate

3   under the federal regulations or common understanding of that term.  *Id.* at 864, 874.

4   **H. Federal Law Does Not Preempt Plaintiff's "Wheat" Claims.**

5         **1. Section 343-1 Does Not Preempt Plaintiff's Claims.**

6         Plaintiff's claims are viable and not preempted by the Nutrition Labeling and Education

7   Act ("NLEA"), 21 U.S.C. § 341.  To support a preemption argument, Defendant recasts

8   Plaintiff's claims as attempts to "impose[] requirements that are different from those imposed

9   by the FDA under its standards of identity."  (Mem. 20:9-10.)  Those are not Plaintiff's claims.

10  Instead, Plaintiff is concerned with false and misleading marketing representations in the form

11  of bread names and labeling representations.  Those representations are independent of FDA

12  standards of identity requirements and in no way implicate the FDCA's preemption provisions.

13        The Federal Food Drug and Cosmetic Act's ("FDCA") preemption provision, 21

14  U.S.C. § 343-l(a), states that various subsections of 21 U.S.C.§ 343 preempt state laws, but

15  only to the extent that state laws impose requirements above and beyond the FDCA.

16  According to Defendant, the source of the purported differences between Plaintiff's claims and

17  the NLEA is found in 21 U.S.C. § 343-1(a)(l), which sets forth that states may not establish

18  "any requirement for a food which is the subject of a standard of identity established under

19  section 341 of this title that is not identical to such  standard of identity or that is not identical

20  to the requirement of section 343(g) of this title."  But here, the Court need not consider any

21  FDA standard of identity to reach Plaintiff's claims of false and misleading marketing.

22  Notably, subsection 403(a) of the FDCA prohibits false or misleading labeling in general, 21

23  U.S.C. § 343(a), and no part of 21 U.S.C. § 341-1 purports to preempt that subsection.

24  Therefore Plaintiff's claims of misleading labeling under state law are not preempted.

25        In a recent ruling involving consumer-protection claims over food marketing and

26  labeling of bread products, the court held that the plaintiff's claims are not preempted.  *See*

27

28  ------------------------------------------------

"wheat" in the product name does not convey that the products are in fact white breads.  The very names Honey
Wheat and Whitewheat convey the presence of significant amounts of whole wheat, which is not true.

1    Pl.'s RJN, Ex. 2.   And in a similar action involving Defendant's bread labeling, the court

2    denied a motion to dismiss on preemption grounds.   *See id.* at Ex. 3.

3            **2.    No Standards of Identity Are at Issue.**

4            Standards of identity are provisions that specify which ingredients may be used for—

5    and designate permissible names for—standardized products.   Plaintiff's claims are not about

6    which ingredients may be used for, nor the legal product or ingredient name for, any

7    standardized product, such as flour or white bread.   Rather, this suit is about four methods used

8    by Defendant to deceptively convey that its breads contain far more whole wheat than is

9    actually the case:   (1) using the term "Whitewheat" to convey that breads have the whole grain

10   known as white wheat, when it does not; (2) using the descriptive term "wheat" on Nature's

11   Own Honey Wheat Bread and Whitewheat Bread when it has minimal whole wheat; (3) the

12   accompanying promotional statements about the health benefits of whole wheat; and (4) the

13   depictions of sheaves of wheat.

14           Defendant argues that it can highlight the word "wheat" on its product labels because

15   that single word accurately describes the type of flour used in the bread, i.e., flour that is not

16   whole wheat flour as defined in 21 C.F.R.§ 137.105. (Mem. 19:9-22.)   This argument misses

17   the point.   The Complaint concerns Defendant's false representations to consumers that its

18   bread contained whole grains.   Either the bread contains a significant amount of whole grain or

19   it does not, and the overall representations of the packaging indicate that the breads do contain

20   significant amounts of whole grain when they do not.   Plaintiff alleges that the term "wheat"

21   does not merely describe the type of flour (indeed almost all bread in a supermarket is made

22   from some type of wheat) but instead describes the whole grain content of the bread.

23           Second, the term "wheat" is not even used properly by Defendant.   Defendant contends

24   that the single word "wheat" is listed as a synonym for flour in that standard of identity.

25   (Mem. 19:9-16.)   But that standard provides that *flour*, if made from wheat, is to be called

26   either "[f]lour, white flour, *wheat flour* [or] plain flour."   21 C.F.R. § 137.105 (emphasis

27   added).   The word "wheat" alone is not among the permissible synonyms for "flour."

28   Similarly, Defendant's reference to the FDA's Draft Guidance for Industry and Staff: Whole

-19-

Grain Label Statements (2006) ("2006 Draft Guidance") is unavailing because the statement quoted by Defendant (Mem. 19:13-16) refers to the nomenclature for *flour* but does not in any way address the propriety of calling *bread* made with flour "wheat" bread.[17] Whether "wheat flour is a synonym of flour" has no bearing on whether Defendant may call it breads "wheat" breads.  Defendant is purposefully confusing terms to avoid the clear language of the regulations that require *breads* composed of wheat flour or enriched wheat flour to be called only "white" bread or "enriched" bread respectively.  *See* 21 C.F.R. § 136.110(e)(1)("The name of the food is 'bread', 'white bread', 'rolls', 'white rolls', 'white tolls', 'buns', 'white buns', as applicable."); *id.* at § 136.115(b) ("The name of the food is 'enriched bread', 'enriched rolls', or 'enriched buns', as applicable.").

Nature's Own Honey Wheat package features a sheaf of wheat, not a cup of flour. (Compl. ¶ 62, Ex. A.)  Indeed, Defendant specifically claims, "A slice or two of this bread each day is a delicious way to add *healthy grains* to your diet."  Compl. ¶ 14.  Pl's RJN, Ex. 6.s  But as the USDA Dietary Guidelines—which Defendant references on its package—explain, healthy grains are whole grains.[18]  It is irrelevant that flour could come from "wheat."  Given that the primary ingredient in virtually all bread is flour derived in some way from wheat, there is no reason to emphasize the presence of "wheat" on Defendant's breads—other than to deceive consumers into thinking they are getting a substantial amount of whole grains.

### 3. Plaintiff's Claims Are Identical to Federal Law and Are Not Preempted.

Even if the Court decides that Plaintiff's claims somehow implicate any FDA standards of identity, they would only do so in a manner consistent with the NLEA.  And because NLEA only preempts claims that impose non-identical requirements, there can be no preemption.  21 U.S.C. § 343-1(a)(1).  Plaintiff's claims are based on violations of California's Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, et seq. ("Sherman Law"), which incorporates and is identical to the federal FDCA.  (Compl. ¶ 81).  *See*, *e.g.*, *Kosta v. Del Monte Corp.*, 2013 U.S. Dist. LEXIS 69319, at *29 (N.D. Cal. 2013); *In re Farm Raised*

---

[17] The Draft Guidance is avowedly not about what constitutes "wheat" bread but rather "what the industry considers to be 'whole grains'"—an issue not relevant to the instant motion.
[18] USDA, HHS, Dietary Guidelines for Americans 2010 at 33.

-20-

*Salmon Cases* (2008) 42 Cal. 4th 1077, 1084 fn. 5.

If any standard of identity applies to Defendant's bread, it is the standard for enriched (white) bread.  Indeed, Defendant's use of the food name "enriched bread" on most of the products at issue here is a tacit admission that the products are subject to the standard of identity for "[e]nriched bread, rolls, and buns" (hereinafter, "Enriched Bread"), 21 C.F.R. §136.115, as well as the standard of identity for "[b]read, buns, and rolls" (hereinafter, "Bread"), which is incorporated by reference.  *See* 21 C.F.R. § 136.110.  Remarkably, Defendant fails to acknowledge that these regulations govern not simply how a bread is labeled but importantly what the bread may actually be called—i.e., "the name of the food." 21 C.F.R. §§ 136.110(e)(1); 136.115(b).[19]  That is because these standards prohibit use of the term "wheat" to name or describe products that are made totally or primarily with wheat flour, i.e., flour that is not whole wheat.  21 C.F.R. § 136.115.

The Bread standard states, "The name of the food [made from flour] is 'bread', 'white bread', 'rolls', 'white rolls', 'buns', 'white buns'[.]" 21 C.F.R. § 136.110(e)(1).  Similarly, the Enriched Bread standard provides that the name of the food is "'enriched bread', 'enriched rolls', and 'enriched buns'[.]"  In neither case is the word "wheat" in the list of permissible names.  By contrast, use of the word "wheat" is permitted only if whole wheat flour is used. 21 C.F.R. § 136.180.  And importantly, the standards of identity for Bread and Enriched Bread do not permit the naming of ingredients contained in the bread outside of the ingredient listing unless specified (as with egg or milk bread).  *See* 21 C.F.R. § 136.110; 21 C.F.R. § 136.115.

Plaintiff's claims in this case are similar to those in *Garrison v. Whole Foods Mkt. Grp., Inc.*, 2014 WL 2451290 (N.D. Cal. June 2, 2014).  In *Garrison*, the court observed,

> To survive a preemption challenge ... a state-law food labeling claim must thread a narrow gap:  The plaintiff must be suing for conduct that violates the FDCA (or else [the] claim is expressly preempted ....), but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted ...).

---

[19]  Thus, whether Defendant's assertion that the labels say "enriched bread"—which cannot be verified as to all bread products on a motion to dismiss (*see* Pl's Opp'n. to Def's RJN filed concurrently herewith)—misses the point because the breads must actually be called "enriched bread."

*Id.* at *1 (internal quotation marks omitted).  In other words, a plaintiff needs to state a claim that is viable under some other law that does not conflict with the FDCA.  Recognizing that "[t]he FDCA generally prohibits misleading labeling," the court reasoned that

> [t]he conduct Plaintiffs allege—that Whole Foods misled customers by labeling as "All Natural" food products that contain SAPP, a synthetic ingredient—thus violates the FDCA.  Plaintiffs have not, however, sued because the conduct violates the FDCA.  Rather, their claims are based on California statutes as well as the common law, law that could exist even if the FDCA were never passed.

*Ibid.* (internal quotation marks omitted).  Although Defendant's conduct could also violate the FDCA because it constitutes misleading labeling, Plaintiff's claims could exist "even if the FDCA were never passed."  *Ibid.*[20]

## I.  The Court Should Not Defer Adjudication of Plaintiff's "Wheat" Claims under the Doctrine of Primary Jurisdiction.

Defendant's primary-jurisdiction argument wrongly assumes both that the FDA (1) has primary jurisdiction over Plaintiff's consumer-protection claims and (2) will take immediate action.  First, Plaintiff's claims concern misleading marketing representations in the form of name and labeling combinations of Defendant's breads.  No administrative rule or finding the FDA could make, or is likely to make, could impact this case.  The Ninth Circuit has made clear that not "all claims within an agency's purview [must] be decided by the agency."  *See Bohac v. Gen. Mills, Inc.*, 2013 WL 5587924, *4 (N.D. Cal. Oct. 10, 2014) (declining to apply doctrine of primary jurisdiction in food-mislabeling case).  The "FDA's expertise … is not necessary to determine whether the labels are misleading [and] the reasonable consumer

---

[20]  The authority cited by Defendant is not to the contrary.  Some of Defendant's citations deal with provisions of the FDCA not implicated here.  (*See* Mem. 18:10-11, 16-17).  In *Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 958-62 (N.D. Ill. 2010) and *Red v. The Kroger Co.*, 2010 WL 4262037, *5-7 (C.D. Cal. Sept. 2, 2010), the courts evaluated whether the plaintiff's claims constituted nutrient content claims preempted by 21 U.S.C. § 343-1(a)(4-5) and not standards of identity arguments raised by Defendant.  The cases Defendant cites that do deal with standards of identity are equally unhelpful to its argument, as they, unlike here, all involve attempts to go beyond FDA standards of identity.  *See Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 108 (D.D.C. 2006) (plaintiffs' claims necessitated addition of a warning about lactose intolerance on milk labels); *Ang. v. Whitewave Foods Co.*, 2013 WL 6492353, *3-4 (N.D. Cal. Dec. 10, 2013) (plaintiffs invoked a regulation that "pertain[ed] to what milk is, rather than what it is not," and sought to go beyond FDA standards of identity).  Here, in contrast, Plaintiff merely brings claims of false and misleading advertising and labeling.  To the extent her claims implicate standard of identity at all, Plaintiff merely seeks consistency with what the FDA permits.

-22-

determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve." *Garrison* at *2.[21]

Indeed, the FDA itself has consistently supported private enforcement. On request from several courts evaluating food-related fraud claims, the FDA just last year issued a letter stating that it is very unlikely to devote agency resources to defining the term "natural," using reasoning that applies equally to the issues here. (*See* Pl's RJN, Ex. 4, Ex. A, Ltr. from L. Kux, FDA Assistant Commissioner for Policy. The FDA recently argued to the Supreme Court that it is not equipped to have exclusive responsibility for policing false food labels. *Pom Wonderful v. The Coca-Cola Co.*, FDA Amicus Brief, Pl's RJN as Ex. 5, at 7 ("Eliminating private enforcement efforts would have profoundly negative implications for consumers of food products and beverages throughout the Nation."), at 9 ("[T]he FDA's primary focus is on pharmaceuticals and medical devices, not food."), at 11 ("[S]evere limitations mean that the FDA cannot serve as the exclusive entity with responsibility for food labeling.").

Second, the FDA has not expressed any intent to address the central issue in this case, and therefore no there is no "resolution of [the] issue" pending before the agency to which the Court could defer. *See Garrison* at *2. Again, the 2006 Draft Guidance focuses on the terms "whole grain" and "whole wheat" and provides no guidance regarding use of the terms at issue in this case: "wheat," "whitewheat, or "honey wheat." This paper also admonishes, "Contains Nonbinding Recommendations" and "Draft—Not for Implementation."[22] Moreover, the 2012 *Federal Register* notice seeking permission to conduct an Experimental Study on Consumer Responses to Whole Grain Labeling if or when conducted would only evaluate the terms "Made with Whole Grain," "Multi-Grain," and "100% Whole Wheat," which differ from the terms at issue here. 77 FR 11547, 11547 (Feb. 27, 2012). Finally, as Defendant admits, the

---

[21] *See also Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1124 (N.D. Cal.2010); *Gustavson v. Wrigley Sales*, 2013 WL 5201190, *17 (N.D. Cal. Sept. 16, 2013) (declining to apply primary jurisdiction where the regulations were reasonably clear and FDA was not actively engaged in revising relevant regulations); *Delacruz v. Cytosport, Inc.*, No. C 11- 3532 CW, 2012 U.S. Dist. LEXIS 90847, at *23-24 (N.D. Cal. June 28, 2012) ("FDA's expertise … is not needed to determine whether the labels are misleading."); *Samet v. P&G*, No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) (deceptive labeling allegations do not require FDA expertise as "every day courts decide whether conduct is misleading.").

[22] Available at http://www.fda.gov/ohrms/dockets/98fr/06d-0066-gdl0001.pdf (last accessed February 5, 2015).

-23-

1  2009 "The Scoop on Whole Grains" only discusses the circumstances in which bread or pasta

2  could be labeled "whole grain" and does not deal with the terms at issue here.  (Def's RJN, Ex.

3  6.)  Because the FDA is unlikely to act soon with respect to the terms at issue here,[23] this Court

4  can and should rule on Plaintiff's false advertising claim now.

5       Defendant's authorities are not to the contrary.  Defendant references cases that provide

6  little or no support for its argument and ignores the FDA's recent statements on primary

7  jurisdiction.  In *Smedt, Swearingen, Reese*, the courts dismissed three cases involving claims

8  regarding evaporated cane juice (ECJ) on primary-jurisdiction grounds where the FDA had

9  reopened the comment period for a draft definition of ECJ mere weeks or months prior to the

10 dismissal.  But the FDA is not engaged in active ruling-making of the relevant terms here.[24]

11 **J.  The Court Should Not Dismiss Plaintiff's Claim for Injunctive Relief.**

12      Defendant contends that Plaintiff lacks standing to assert her claim for injunctive relief.

13 But Defendant is wrong to assume that there is zero likelihood that Plaintiff will purchase

14 Nature's Own products again.  The Complaint and concurrently filed declaration demonstrate

15 that Plaintiff has purchased numerous varieties of the breads over the last four years, a

16 purchasing history that evidences a preference or at least likelihood for purchasing the

17 products.  Plaintiff nowhere alleges that she would never purchase Nature's Own bread again.

18 Contrary to Defendant's representation, Plaintiff did not allege that she was repulsed by

19 Nature's Own, but rather that by the use of a chemical called azodicarbonamide that was used

20 in some bread.  *See* Compl. ¶ 67.  Plaintiff believes that at least some of Nature's Own breads

21

22 [23]  The last time FDA actively dealt with a situation even somewhat analogous to the one before the Court was in
1993, when FDA sent warning letters to two companies that expressly highlighted the whole wheat content of their
23 products on labels when the predominant ingredient in each product was white flour and there was a small amount
of whole wheat.  As a result of FDA warning letters, the product labels were modified to indicate that the products
24 contained both enriched flour and whole wheat flour.  *See* Pl's RJN, Letter from FDA Commissioner Dr. David
Kessler to Michael Jacobson, Ph.D., Nov. 1, 1993. In that letter, Dr. Kessler also promised to evaluate labeling
25 claims implying significant whole wheat content, including "wheat bread" claims and the deceptive use of pictures
of sheaves of wheat.  *Ibid.* Twenty-one years later, FDA still has not addressed claims concerning "wheat bread"
or the deception created by depictions of sheaves of wheat.
26 [24]  *Tardejna v. General Mills, Inc.*, 909 F. Supp. 2d 1128 (D. Minn. 2012) involved yogurt, a topic on which the
FDA had issued a proposed rule but had not yet finalized or held a public hearing, and the court premised its
27 decision on the fact that the FDA could still be regulating.  *Id.* at 1134-35.  *Hood v. Wholesoy & Co.*, 2013 WL
3553979, *4-5 (N.D. Cal. July 13, 2013) involved FDA warning letters to companies regarding use of the term
28 "yogurt," thus indicating its active involvement.  *Hood* was also premised on the Ninth Circuit's overruled opinion
in *POM Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1176-79 (9th Cir 2012).  *Hood* at *4, 6.

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Case No. 5:14-CV-05189

1   no longer include this ingredient.  *See Ben & Jerry's*, U.S. Dist. LEXIS 57348, *34 (holding

2   that claim for injunctive relief cannot be determined until factual record is developed).

3          In any event, it is premature to determine whether Plaintiff has standing at the pleading

4   stage, before any discovery has been conducted.  Some of Defendant's products not at issue in

5   this lawsuit are not mislabeled, and as noted even some of the mislabeled products have

6   undergone reformulation.   Injunctive relief in this action will ensure Plaintiff and other

7   consumers can confidently rely on Defendant's labeling representations when deciding whether

8   to buy Nature's Own products so that she is not deceived in the same way again when

9   purchasing Nature's Own bread.  *See*, e.g.*, Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at

10  *13 (N.D. Cal. Dec. 10, 2013) (observing that standing exists under Article III where the

11  "consumer would be interested in purchasing the products at issue if they were labeled

12  correctly."); *Mason v. Nature's Innovation,* 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013).

13         In similar mislabeling cases courts in this circuit have declined to dismiss claims for

14  injunctive relief.  *See*, *e.g.*, *Kumar v. Salov*, 2015 WL 457692, *3 (N.D. Cal. Feb. 3, 2015)

15  (denying motion to dismiss injunctive-relief claims because challenged labeling statements are

16  "no less false in the future than they were when Kumar read them.  The possibility of future

17  injury is alleged sufficiently if the plaintiff would encounter the same statements today and

18  could not be any more confident that they were true.").  But if the Court finds that Plaintiff

19  lacks Article III standing to prosecute her claim for injunctive relief, it should partially remand

20  the matter to state court.  *See Machlan v. P&G Co.*, 2015 WL 106385, *4 (N.D. Cal. 2015).

21         **K.  Alternatively, Leave to Amend Should Be Granted.**

22         Should the Court find the Complaint deficient, Plaintiff requests that he be given leave

23  to file an amended complaint to cure any defects in the Complaint.  Fed. R. Civ. P. 15 (a).

24                          **IV. CONCLUSION**

25         Plaintiff respectfully requests that Defendant's motion to dismiss or stay denied.

26  DATED: February 6, 2015                     Respectfully submitted,

27                                      By:  ___*/s/ Anthony J. Orshansky*_____

28                                          Anthony J. Orshansky
                                            Justin Kachadoorian
                                            Attorneys for Plaintiff KELLY ROMERO

                                    -25-