UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KELLY ROMERO,<br><br>   Plaintiff,<br><br>  v.<br><br>FLOWERS BAKERIES, LLC,<br><br>   Defendant. | Case No. 14-cv-05189-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, WITH LEAVE TO AMEND**<br><br>[Re: ECF 13] |

This is a case about bread labeling and what a reasonable consumer would expect to be in her dough-based foodstuff when she purchases, among other things, Nature's Own brand Honey Wheat Bread. Before the Court is the Motion to Dismiss by defendant Flowers Bakeries, LLC ("Defendant") challenging the smorgasbord of claims that plaintiff Kelly Romero ("Plaintiff") asserts on behalf of herself and a putative class of consumers who have purchased Defendant's Nature's Own bread products. The Court heard oral argument on April 16, 2015 and thereafter took the matter under submission. Having carefully considered the parties' respective written submissions, the oral argument of counsel, and the ever growing body of case authority (particularly in this judicial district) surrounding food labeling, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss, with leave to amend.

**I. BACKGROUND**

Defendant, doing business as "Nature's Own," produces numerous bread products ranging from sliced bread and hot dog rolls to "sandwich rounds" and reduced calorie breads. *See* Compl. ¶ 1 (listing six categories and identifying 27 specific products). Plaintiff alleges that these bread products are "misbranded" because their labels "suggest" a variety of false things to consumers.

Specifically, Plaintiff asserts that through the brand name "Nature's Own," coupled with

"representations which appear on the front labels that the breads contain 'no artificial preservatives, colors and flavors" and product labels that "depict stalks of wheat and pots of honey," Defendant "suggests" to consumers that its bread products are "a natural food product, therefore connoting that [the products] are somehow more healthy and wholesome." *Id.* ¶¶ 10-11, 15. Defendant allegedly "reinforces this theme by boasting on the front labels of the [bread products] about the healthful qualities of its bread," such as the aforementioned lack of artificial preservatives, as well as "no high fructose corn syrup." *Id.* ¶ 12. Plaintiff alleges that despite "suggesting" that the bread products are natural and healthy, they contain, among other things, the chemical azodicarbonamide ("ADA"), which is known as the "'yoga mat' chemical" and is used in many rubber products. *Id.* ¶¶ 27-28. ADA is used as a whitening agent in bread, though alternative ingredients are approved by the Food and Drug Administration ("FDA"). *Id.* ¶ 30.

Secondarily, Plaintiff alleges that some of Defendant's bread products are also explicitly labeled "all natural." *Id.* ¶ 15. These "all natural" products, Plaintiff alleges, are deceptively labeled because they contain flour "enriched" with a number of synthetically produced ingredients such as thiamin mononitrate, riboflavin, folic acid, niacin, and reduced iron, as well as excessively processed soybean oil, soy lecithin, calcium sulfate, and enzymes. *Id.* ¶¶ 32-39. Plaintiff asserts that a consumer's concept of "all natural" would not include such synthetic ingredients or food additives. *Id.* ¶ 18.

Separate from the "natural" representations, Plaintiff alleges that Defendant's Honey Wheat and Whitewheat breads are mislabeled to "suggest that the products are whole wheat breads and therefore healthier when in fact they are merely white breads." *Id.* ¶¶ 40, 45. Plaintiff alleges that Defendant "capitalize[s] on consumer confusion through the use of the word 'wheat' in the product," even though neither "Honey Wheat nor [] Whitewheat bread are whole wheat bread or anything other than enriched white bread." *Id.* ¶¶ 49-50. Plaintiff moreover asserts that this use of the term "wheat" is contrary to governing regulations promulgated by the FDA. *Id.* ¶¶ 51-62.

Plaintiff purchased four of Defendant's products: Nature's Own Honey Wheat Bread, Nature's Own Whitewheat Bread, Nature's Own 100% Whole Wheat Bread, and Nature's Own 100% Whole Wheat with Honey. *Id.* ¶ 65. She alleges that before purchasing each product, she

"read the labeling representations identified [throughout the complaint]" and "relied on these representations and believed that she was purchasing products that were free of synthetic, chemical, artificial, and highly processed ingredients, and she believed, when purchasing Nature's Own Honey Wheat Bread and Nature's Own Whitewheat® Bread, that these were wheat and not white breads." *Id.* ¶ 66.

Based on these allegations, Plaintiff asserts claims against Defendant on behalf of a putative nationwide class of consumers as well as a subclass of California consumers. Specifically, Plaintiff seeks to represent California consumers on claims against Defendant for: unlawful, unfair, and fraudulent business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* (First, Second, and Third Causes of Action, or "COA"); false and misleading advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.* (Fourth and Fifth COAs); violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.* (Sixth COA). Plaintiff seeks to represent a broader nationwide class of consumers on claims for: restitution based on quasi-contract/unjust enrichment (Seventh COA); common law fraud (Eighth COA); negligent misrepresentation (Ninth COA); and breach of contract (Tenth COA). This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).

## II. REQUESTS FOR JUDICIAL NOTICE

Both parties have requested that the Court take judicial notice of myriad documents in support of their respective briefing. Def.'s Request for Judicial Notice ("RJN"), ECF 14; Pl.'s RJN, ECF 23; Pl.'s Supp. RJN, ECF 27.

Defendant's RJN Exhibits 1-3 and Plaintiff's RJN Exhibit 6 shall be considered because they are incorporated by reference into the Complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (2005). Defendant's RJN Exhibits 4-8, as well as Plaintiff's RJN Exhibits 1-5 and Supplemental RJN Exhibit 7 are all properly subject to judicial notice. Dictionary meanings, guidance from and public records of the FDA, and court filings are all matters not subject to reasonable dispute. Fed. R. Evid. 201(b). Because the parties have requested that the Court take notice of these documents, it must take notice, though the documents may be immaterial to the issues addressed in this Order.

3

*Id.* 201(c)(2). Additionally, though the Court may take judicial notice of public records, Defendant's RJN Exhibits 5-8 and Plaintiff's RJN Exhibits 2-5 and Supplemental RJN Exhibit 7 will not be noticed "for the truth of the matter asserted therein." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010); *see also M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983).

### III.  SUFFICIENCY OF THE PLEADINGS

#### A.  Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of that statement. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A claim alleging fraud is subject to a heightened pleading standard wherein the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, the pleader must generally set forth the "who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

If a motion to dismiss is granted, a court should normally grant leave to amend, "even if no request to amend the pleading was made," unless amendment would be futile. *Lopez v. Smith*, 203

4

1  F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotations omitted).

### B. Plaintiff's Claims Are Not Pled With Particularity

Defendant argues that Plaintiff's First through Ninth Causes of Action are based in fraud and must accordingly be dismissed because they are not pled with sufficient particularity to satisfy Rule 9(b). Def.'s Mot. 6-8, ECF 13. Most notably, Defendant contends that it is "impossible to discern which products Plaintiff challenges, and for which representation." *Id.* at 7.

Plaintiff asserts that Defendant merely misunderstands the three "classes" of products—each with their own category of products and different set of misrepresentations—that she alleges in the Complaint. Pl.'s Opp. 3, ECF 22. These three "classes" consist of consumers that purchased: (1) Nature's Own bread products that contain ADA ("ADA Class"), Compl.¶ 69(a); (2) Nature's Own bread products that are explicitly labeled "all natural" despite containing artificial ingredients ("All Natural Class"), *id.* ¶ 69(3); and (3) Nature's Own Honey Wheat and Whitewheat breads that misleadingly suggest they "consist largely of whole wheat flour" ("Wheat Class"), *id.* ¶ 69(2). *See* Pl.'s Opp. 3. Plaintiff moreover contends that her claims under the "unlawful" prong of the UCL need not be pled with particularity, but nevertheless contends that all of her allegations satisfy Rule 9(b). *Id.* at 3-10.

As an initial matter, the Court agrees with Defendant that all of Plaintiff's claims sound in fraud. Even to the extent Plaintiff asserts that Defendant's products are "unlawful" because they are considered "misbranded" under the Federal Food, Drug, and Cosmetic Act ("FDCA"), that claim also depends on assertions of fraud because Plaintiff is alleging that Defendant's labeling misleadingly "suggests" that its products are natural, and not that the labeling violates any standard of identity promulgated by the FDA. *See* 21 U.S.C. § 343(a)(1), (g). Indeed, although it is not apparent from the Complaint, Plaintiff asserts in her opposition brief that even her wheat claims "are not about which ingredients may be used for, nor the legal product or ingredient name for, any standardized product, such as flour or wheat bread." Pl.'s Opp. 19. Rather, they are about Defendant's methods of "*deceptively* convey[ing] that its bread contain[s] far more whole wheat than is actually the case." *Id.* (emphasis added). This Court—along with other courts in this District—has rejected the notion that "misbranding" under the "unlawful" prong of the UCL

5

excuses a plaintiff's obligation to plead fraud with particularity. *See Leonhart v. Nature's Path Foods, Inc.*, No. 13-CV-00492-BLF, 2014 WL 6657809, at *4 (N.D. Cal. Nov. 21, 2014) ("*Leonhart II*"); *see also Figy v. Frito-Lay N. Am., Inc.*, ---F. Supp. 3d---, No. 13-3988 SC, 2014 WL 3953755, at *8 (N.D. Cal. Aug. 12, 2014); *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1129-31 (N.D. Cal. 2014) (Proposition 64 standing under the UCL require allegations of reliance when a claim brought under the "unlawful" prong of the UCL is grounded in fraud). As such, the Court reviews Plaintiff's allegations for compliance with Rule 9(b).

The Court also agrees with Defendant that the allegations in the Complaint are far from a model of clarity. Accepting Plaintiff's assertion that she is pursuing three distinct theories of misbranding, the Court cannot readily discern what specific representations she perceived on each purchased product, what she interpreted those representations to mean, and how those representations were false. Instead, Plaintiff makes generalized assertions of exemplary misrepresentations across a range of products that do not suffice to place Defendant on notice of the misconduct charged. *Thomas v. Costco Wholesale Corp.*, No. 5:12-CV-02908 EJD, 2013 WL 1435292, at *6-9 (N.D. Cal. Apr. 9, 2013). Moreover, the allegations—because they are so generalized—fail to link the products that Plaintiff purchased to the three classes of products on which she asserts claims.

Related to Plaintiff's failure to plead particular misrepresentations is her failure to plead her actual reliance on those misrepresentations. Actual reliance is a required element of standing to pursue claims under the California consumer protection statutes that Plaintiff invokes. *Kane*, 973 F. Supp. 2d at 1129. It is also an element of common law fraud. 5 Witkin, Summary of California Law (10th), Torts § 772.[1] As outlined in *Kane*, Plaintiff must articulate a plausible theory of reliance, explaining what representations she relied upon and why. *Kane*, 973 F. Supp. 2d at 1132-36. Plaintiff's vague allegation that she relied upon labeling representations alleged throughout the Complaint and believed that she was "purchasing products that were free of synthetic, chemical, artificial, and highly processed ingredients" and products that were "wheat

---

[1] As addressed below, the Court assumes, without deciding, that reference to California law is appropriate despite Plaintiff's assertion of a nationwide class for her common law fraud claim.

6

1  and not white breads" is neither sufficiently particular nor particularly plausible.  *See* Compl. ¶ 66.
2  For example, even in her opposition brief, Plaintiff appears to be asserting that she believed three
3  *different* things about Honey Wheat and Whitewheat: (1) that the breads were "wheat"; (2) that the
4  breads were "whole wheat"; and that the breads contained "large amounts of whole wheat."  *See*
5  Pl.'s Opp. 6 (citing Compl. ¶¶ 66-67).  It is thus unclear what Plaintiff actually thought she was
6  buying when she purchased Defendant's Honey Wheat and Whitewheat breads.  As such, the
7  present allegations do not sufficiently demonstrate the reliance required under California's UCL,
8  FAL, CLRA, and common law of fraud.
9        In summary, Plaintiff cannot simply identify a list of products, allege a slew of problems
10  with Defendant's labeling of those products, and then ask Defendant and the Court to mix and
11  match.  It is not the task of the Court or of Defendant to diagram the intersection between the
12  challenged products and the mislabeling allegations.  *See McHenry v. Renne*, 84 F.3d 1172, 1178
13  (9th Cir. 1996).  As presently pled, the undifferentiated allegations of misrepresentations and
14  mislabeling made across purchased and unpurchased products amount to an omnibus assertion that
15  Defendant generally acted wrongly.  That is insufficient under Rule 9(b).  *See Kearns v. Ford*
16  *Motor Co.*, 567 F.3d 1120, 1124-27 (9th Cir. 2009); *Thomas*, 2013 WL 1435292, at *6; *Kane*, 973
17  F. Supp. 2d at 1129.
18        Defendant's Motion to Dismiss is accordingly GRANTED, with leave to amend, as to
19  Plaintiff's First through Ninth Causes of Action.
20      **C.**    **Plaintiff Does Not Properly Allege Standing With Respect to Unpurchased Products**
21
22        Defendant challenges Plaintiff's standing to assert claims regarding products that she did
23  not purchase.  Def.'s Mot. 14-15.  It is clear that Plaintiff has standing to assert claims in her
24  Wheat Class because she purchased both the Honey Wheat and Whitewheat products.  It is less
25  clear whether Plaintiff has adequately alleged standing with respect to unpurchased products in the
26  ADA and All Natural classes.
27        Courts in this District have written volumes on the standing analysis for unpurchased
28  products in consumer class actions.  This Court follows the middle ground approach requiring a

plaintiff to allege facts establishing that unpurchased products "are so substantially similar" to purchased products "as to satisfy Article III requirements." *Leonhart II*, 2014 WL 6657809, at *3. In considering whether unpurchased products are sufficiently similar to purchased products to satisfy Article III, the Court considers factors that include "whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Wilson v. Frito–Lay North America, Inc.*, 961 F. Supp. 2d 1134, 1141 (N.D. Cal. 2013). Plaintiff may thus assert claims regarding unpurchased products in the ADA and All Natural classes that are "substantially similar" to the products she actually bought only if she has adequately alleged those similarities. She has not.

Here, all of the products—purchased and unpurchased—are of the same kind: bread. While bread typically contains certain standard ingredients (such as flour), that general proposition is insufficient here because Plaintiff's claims are based upon the presence of undesirable ingredients in Defendant's bread. In particular, Plaintiff does not allege which among the four products she purchased contained ADA. Similarly, it is not clear which (if any) of the four products that Plaintiff purchased was labeled "all natural." Absent any allegations that Plaintiff actually purchased bread within the proposed ADA and All Natural classes, Plaintiff cannot represent absent consumers that purchased products within those classes. Moreover, Plaintiff's allegations with respect to the proposed ADA Class do not sufficiently demonstrate that all of the challenged products bear the same alleged mislabeling or misrepresentations. Plaintiff refers generally to the combination of Defendant's "highly guarded brand name," "vignettes" of wheat and honey, and "claims appearing on the product labels" without referring to specific products or demonstrating that all of the products bear essentially the same combination of claims and images. *See* Compl. ¶¶ 10-13, 15. As discussed above, the principal problem with Plaintiff's allegations is that she essentially invites the Court to pick and choose among them to concoct a workable combination. There is nothing linking the identified products to the alleged misrepresentations, nor anything delimiting the "classes" of products and the misrepresentations to which they pertain. Thus, the allegations at present do not demonstrate that Plaintiff has Article III standing to assert claims regarding products that she did not purchase.

1  Defendant's Motion to Dismiss is accordingly GRANTED, with leave to amend, with
2  regard to Plaintiff's claims concerning unpurchased products.

### IV. PREEMPTION AND PRIMARY JURISDICTION WITH RESPECT TO WHEAT CLAIMS

Defendant argues that Plaintiff's Wheat Class claims based upon the alleged mislabeling of Defendant's Honey Wheat and Whitewheat breads are expressly preempted by the FDCA. Def.'s Mot. 18-20. In the alternative, Defendant requests that this Court dismiss or stay those claims under the prudential doctrine of "primary jurisdiction." *Id.* at 21-24.

In analyzing express preemption, a court "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Astiana v. Hain Celestial Grp., Inc.*, ---F.3d---, No. 12-17596, 2015 WL 1600205, at *2 (9th Cir. Apr. 10, 2015) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). The Nutrition Labeling and Education Act ("NLEA") amendments to the FDCA contain such an explicit preemption clause: under the FDCA, as amended by the NLEA, no state can establish "any requirement for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity." 21 U.S.C. § 343-1(a)(1). The preemption clause, however, is silent on a state's ability to provide remedies for violations of federal law. Under such circumstances, a court must inquire into what requirements a plaintiff seeks to impose on a food manufacturer through her claims. "Where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010); *see also Leonhart v. Nature's Path Foods, Inc.*, No. 5:13-CV-0492-EJD, 2014 WL 1338161, at *6 (N.D. Cal. Mar. 31, 2014) ("*Leonhart I*").

Because Plaintiff's wheat claims are not adequately pled, the Court cannot determine, at this stage, whether those claims are preempted. Plaintiff's claim rests on the allegedly "misleading marketing representations" in Defendant's packaging, Pl.'s Opp. 22, and not in its failure to adhere to the FDA's standards of identity. At least part of her theory, however, appears

9

to depend on a misreading of the applicable standards of identity to conclude that "[a] wheat description for bread is not appropriate when the bread is composed primarily of white flour" and that "[t]he only time wheat is permitted to be used as part of the name of bread is for whole wheat bread." Compl. ¶ 53; *see* 21 C.F.R. §§ 136.11, 136.115, 136.180. Moreover, and as discussed above, Plaintiff alleges three different interpretations of "Honey Wheat" and "Whitewheat" without identifying what she believed those terms meant in connection with the bread products she purchased. Thus, to the extent Plaintiff's theory is that the challenged products simply and overtly misstate the amount of whole wheat in each product, that straightforward claim of misrepresentation is unlikely to be preempted. However, if Plaintiff's theory of misrepresentation would require Defendant to, for example, correct any misunderstanding garnered from its use of "Honey Wheat" and "Whitewheat" by affirmatively stating that the products do not contain "whole wheat," that claim would be preempted as seeking to impose a labeling requirement different from what is required under federal law.[2]

Likewise, the Court cannot determine at this juncture whether Plaintiff's wheat claim presents a question of first impression or implicates technical and policy questions better committed the FDA. *See Astiana*, 2015 WL 1600205, at *5 ("the [primary jurisdiction] doctrine is reserved for a 'limited set of circumstances' that 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). The Court notes only that "even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Id.* Under Ninth Circuit precedent, "efficiency is the deciding factor in whether to invoke primary jurisdiction," *id.* (quoting *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007) (internal quotation marks omitted), and a court must assess whether invoking primary jurisdiction would needlessly delay the resolution of claims.

---

[2] Moreover, while the Court will not foreclose the possibility that Plaintiff can allege a plausible claim that is not preempted, the Court observes that in an era where consumers are increasingly gluten conscious, prohibiting a bread manufacturer from prominently noting that its products contain wheat may be unworkable.

Here, the FDA has already promulgated standards of identity pertaining to the terms that food manufacturers can use in describing bread products. The interpretation of regulations is well within the bailiwick of a federal district court. *Chacanaca*, 752 F. Supp. 2d at 1124. There is furthermore no evidence that additional guidance from the FDA is forthcoming. To be sure, Plaintiff's claims lie at the interstices of the existing regulations, as the FDA has not provided specific guidance on labeling requirements regarding the whole wheat or whole grain *content* of bread. As such, to the extent Plaintiff's theory of misrepresentation, once clarified, would implicate complex technical or policy questions regarding when it is appropriate for a food manufacturer to use the word "wheat" in describing or advertising its products, that may be a question better addressed, in the first instance, by the FDA. A straightforward assertion that Defendant "has violated FDA regulations and marketed a product that could mislead a reasonable consumer," however, would not require invocation of primary jurisdiction. *Id.*

The Court accordingly is unable to address Defendant's preemption and primary jurisdiction arguments until Plaintiff has amended her wheat allegations to clarify her theory of misrepresentation. Thus, this ground for relief is DENIED without prejudice.

## V. DEFENDANT'S OTHER ARGUMENTS

### A. Standing to Pursue Injunctive Relief

In addition to other forms of relief, Plaintiff requests in her Complaint that this Court "enjoin[] Defendants from advertising their products misleadingly in violation of California's Sherman Food, Drug, and Cosmetic Law, and other applicable laws and regulations as specified in this Complaint." Compl. at p. 30. Defendant contends that Plaintiff lacks standing to seek this form of injunctive relief. Def.'s Mot. 24-25. In order for this Court to grant injunctive relief, Plaintiff must establish standing that satisfies Article III of the Constitution. Plaintiff has not done so here.

Generally, "[p]ast exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Article III requires that a plaintiff show that she faces a "real or immediate threat . . . that [she] will again be wronged in a similar

11

way" in order to obtain injunctive relief. *Id.* (quoting *City of Los Angeles v. Lyons*, 465 U.S. 95, 111 (1983)). In the context of a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

      Here, Plaintiff has alleged that she is "concerned about her health and has progressively tried to consume healthier foods, including breads." She is "willing to pay and has paid a premium for foods that are natural," and she "has endeavored to refrain from buying equivalent foods which are not natural." Moreover, she "increasingly consumes more natural, whole wheat breads." Compl. ¶ 64. When Plaintiff discovered that Defendant's Nature's Own bread products were not as natural or as wholesome as she believed them to have been described, she "was repulsed." Had she known that Defendant's products "were not natural," "she would not have purchased these products but would have purchased another brand that was truly natural and did not contain undesirable chemicals." Similarly, had Plaintiff known that the wheat breads she purchased were "not whole wheat breads," she "would never have bought them." *Id.* ¶ 67. Now that she has been clued into these alleged misrepresentations, it is unlikely, based upon her own allegations, that Plaintiff would again suffer the same harm.

      Plaintiff attempts to argue that she is likely to be injured again because Defendant has reformulated some of its products and because "[i]njunctive relief in this action will ensure Plaintiff and the other consumers can confidently rely on Defendant's labeling representations when deciding whether to buy Nature's Own products so that she is not deceived in the same way again." Pl.'s Opp. 25. Plaintiff's is an argument aimed at redressability, but the harm she alleges is not simply the misleading nature of Defendant's labeling, but rather that the alleged misrepresentations induced her into purchasing a product with ingredients she did not want. Any injunctive relief the Court could grant would pertain only to Defendant's labeling practice, and not to the ingredients that Defendant uses. Now that Plaintiff is aware that Defendant's bread contains undesirable chemicals and processed wheat, given her endeavor "to refrain from buying equivalent foods which are not natural" or are not whole wheat, there is no likelihood that Plaintiff will purchase Defendant's products again. *See, e.g.*, *Anderson v. The Hain Celestial Grp., Inc.*, ---F.

12

Supp. 3d---, No. 5:14-CV-03895-EJD, 2015 WL 1744279, at *5-6 (N.D. Cal. Apr. 8, 2015); *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-CV-05222-VC, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014).

The courts in this District are admittedly split on this issue. *Anderson*, 2015 WL 1744279, at *5 (collecting cases). The courts that have found standing to pursue injunctive relief generally rely on the remedial intent behind California's consumer protection statutes. *See, e.g.*, *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 534 (N.D. Cal. 2012). Although California courts, unbound by the limitations of Article III standing, robustly enforce California consumer protection laws by granting injunctive relief to enforce important state interests, the federal courts must require plaintiffs to demonstrate constitutional standing as a prerequisite to pursuing injunctive relief. Having failed to demonstrate that she is entitled to seek injunctive relief—in fact, to the contrary, having shown that she won't be fooled again by Defendant's representations of "all natural" and "wheat"—Plaintiff has not, nor can she, establish "a real and immediate threat of repeated injury." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 496 (1974)) (internal quotation marks omitted); *Anderson*, 2015 WL 1744279, at *6. Thus, Plaintiff will be limited to seeking damages. As the *Anderson* court observed, this outcome may cause Plaintiff to pursue parallel relief in state court, but she may not seek injunctive relief in this action. *Anderson*, 2015 WL 1744279, at *6.

As it stands, the Court perceives no reason to permit Plaintiff to amend around her own allegations. Defendant's Motion to Dismiss is therefore GRANTED, without leave to amend, with respect to Plaintiff's request for injunctive relief.

**B.   CLRA**

California Civil Code § 1782 provides that a claim for damages under the CLRA may not proceed unless a plaintiff notifies the defendant of the "particular alleged violations of Section 1770" before commencing suit. *Id.* § 1782(a). The notice must be set forth in writing and sent by certified or registered mail. *Id.* Moreover, "[i]n any action [under the CLRA], concurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the

13

1  action." Cal. Civ.Code § 1780(d). If "a plaintiff fails to file the affidavit required by this section,
2  the court shall, upon its own motion or upon motion of any party, dismiss the action without
3  prejudice." *Id.* These requirements do not apply to claims for injunctive relief. "The CLRA's
4  notice requirement is not jurisdictional, but compliance with the requirement is necessary to state a
5  claim." *Wehlage v. EmpRes Healthcare Inc.*, No. C 10-5839 CW, 2012 WL 380364, at *7 (N.D.
6  Cal. Feb. 6, 2012) (citing *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40-41
7  (1975)). "[T]he clear intent of the [CLRA] is to provide and facilitate pre-complaint settlements
8  of consumer actions wherever possible and to establish a limited period during which such
9  settlement may be accomplished." *Outboard Marine*, 52 Cal. App. 3d at 41.

10  Here, Plaintiff alleges that she complied with the CLRA notice requirement by sending
11  Defendant a letter on May 9, 2014. Compl. ¶ 68. She does not allege that this letter was sent by
12  certified or registered mail. Defendant contends that the letter, titled "Notice of Violation" but
13  styled as a "settlement communication" is deficient because it does not identify the particular
14  provisions of the CLRA alleged to be violated, nor was it sent by certified or registered mail.
15  Def.'s Mot. 11; Def.'s RJN Exh. 3. Moreover, Plaintiff failed to attach the affidavit required be §
16  1780(d) to her Complaint, though she later provided one in connection with her opposition brief.
17  *Id.*; *see also* Decl. of Kelly Romero, ECF 25.

18  The Court agrees with Defendant that Plaintiff's CLRA notice letter was deficient. As
19  with her pleadings, Plaintiff's notice letter merely sets forth her substantive allegations and invites
20  Defendant to figure out which provisions of the CLRA are applicable. That does not facilitate pre-
21  complaint settlement, nor does it serve to place Defendant on notice of what is required to redress
22  Plaintiff's complaint. However, neither Plaintiff's partial compliance with the CLRA nor her
23  failure to attach the affidavit required by § 1780(d) warrants dismissal with prejudice. Courts in
24  this District have determined that it is consistent with California law and with the purposes of the
25  statute to dismiss a CLRA claim for damages without prejudice to amending once a plaintiff can
26  demonstrate compliance with the notice requirements. *Wehlage*, 2012 WL 380364, at *6-8; *see*
27  *also Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355 JCS, 2013 WL 1632697, at *23-24
28  (N.D. Cal. Apr. 16, 2013). As such, Defendant's Motion to Dismiss is GRANTED with respect to

14

1  Plaintiff's CLRA claim, but she shall have leave to amend once she can demonstrate full
2  compliance with the CLRA's notice and affidavit requirements.

### C. Unjust Enrichment

The Court has determined that Plaintiff's claim for unjust enrichment must be dismissed for failure to satisfy Rule 9(b). Defendant contends additionally that even if Plaintiff can adequately allege her claims grounded in fraud, she cannot pursue her claim for restitution based upon unjust enrichment/quasi-contract because the claim is duplicative of her other statutory state law claims. Def.'s Mot. 12-13. Fortunately, the Ninth Circuit recently spoke on this issue: "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana*, 2015 WL 1600205, at *7. However, because restitution is a recognized "theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request,'" *id.* (quoting 55 Cal. Jur. 3d Restitution § 2), the remedy for which is "typically sought in a quasi-contract cause of action," *id.*, "a court may 'construe the cause of action [for unjust enrichment] as a quasi-contract claim seeking restitution,'" *id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). Moreover, that an unjust enrichment claim may be "nonsensical because it was duplicative of or superfluous to" a plaintiff's other claims is not grounds for dismiss. *Id.* (citing and quoting Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.")).

Plaintiff's Seventh COA is a claim for "Restitution Based on Quasi-Contract/Unjust Enrichment," wherein she pleads that Defendant "entic[ed]" Plaintiff and putative class members to purchase the products at issue through "false and misleading" packaging and labels, and that Defendant was "unjustly enriched" thereby. Compl. ¶¶ 130-31. That is sufficient to state a quasi-contract cause of action. *Astiana*, 2015 WL 1600205, at *7. That the claim may be duplicative of Plaintiff's statutory claims under the UCL, FAL, and CLRA is not a proper ground for dismissal at this stage of the litigation, particularly as Plaintiff seeks to represent a nationwide class on her

claim for quasi-contract.³ *Id.* The Court accordingly DENIES Defendant's Motion to Dismiss on this alternative ground for dismissing Plaintiff's unjust enrichment claim.

### D. Breach of Contract

Plaintiff's breach of contract claim is creative but unpersuasive. To survive Defendant's motion, Plaintiff relies principally upon *Garrison v. Whole Foods*, wherein Judge Chhabria questioned the legal viability of such a claim: "[i]t is not clear to the Court that the label on a food product constitutes a contract between a purchaser and the manufacturer of that product." 2014 WL 2451290, at *6 n.5. In *Garrison*, the court noted that the defendant had not contested the plaintiff's characterization of the claim and as such, the court assumed its accuracy. Here, Defendant specifically challenges the propriety of the contract claim on the ground that there is no privity between Defendant—the product manufacturer—and Plaintiff—the end consumer. Def.'s Mot. 12-13. Plaintiff attempts to argue that her breach of contract claim may proceed under certain exceptions to the privity requirement found in implied warranty case law. Pl.'s Opp. 12-13. As Defendant points out, those arguments were rejected by the court in *Ham v. Hain Celestial Grp., Inc.*, ---F. Supp. 3d---, No. 14-CV-02044-WHO, 2014 WL 4965959, at *5 (N.D. Cal. Oct. 3, 2014), and Plaintiff has not identified a single case—other than *Garrison*—in which a court has accepted such a breach of contract theory on the merits. Def.'s Reply 8-9, ECF 28. This Court agrees with the conclusion of the *Ham* court. Plaintiff does not allege that she purchased the challenged products directly from Defendant, nor does she suggest that she can so allege. It thus appears that it would be futile to permit amendment on this claim.

As such, Defendant's Motion to Dismiss is GRANTED, without leave to amend, as to

---

³ Of course, the Court is here following Ninth Circuit precedent applying California law, and the parties have only addressed their arguments to California law. The Court observes, however, that Plaintiff seeks to represent a *nationwide* class on her fraud and unjust enrichment claims and it is unclear which states' laws should apply. *See Garrison*, 2014 WL 2451290, at *6 (observing same problem). Indeed, other courts confronting the issue have noted differences among the unjust enrichment laws of different states, particularly with respect to the requirement of direct benefit to the defendant. *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 279-80, 286-87 (D. Mass. 2004). Nonetheless, the unjust enrichment claim that the Ninth Circuit permitted to proceed past the pleading stage also appears to have been asserted on behalf of a putative nationwide class and Defendant has not argued that the Court should parse the claim in any other way at this stage. *See Astiana*, 2015 WL 1600205, at *1, *7.

16

Plaintiffs breach of contract claim (Tenth COA).

**VI.   ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART:

1. Plaintiff's First through Ninth Causes of Action are DISMISSED with leave to amend in a manner consistent with this Order;
2. Plaintiff's Tenth Cause of Action is DISMISSED without leave to amend;
3. Plaintiff's claim for injunctive relief is DISMISSED without leave to amend.

Any amended pleading shall be filed **by no later than June 5, 2015.**

**IT IS SO ORDERED.**

Dated: May 6, 2015

BETH LABSON FREEMAN
United States District Judge