1    Jennifer S. Romano (CSB No. 195953)
     jromano@crowell.com
2    CROWELL & MORING LLP
     515 South Flower St., 40th Floor
3    Los Angeles, CA 90071
     Telephone: (213) 622-4750
4    Facsimile: (213) 622-2690

5    Joel D. Smith (CSB No. 244902)
     jsmith@crowell.com
6    Rebecca M. Suarez (CSB No. 284853)
     rsuarez@crowell.com
7    CROWELL & MORING LLP
     275 Battery Street, 23rd Floor
8    San Francisco, CA  94111
     Telephone: 415.986.2800
9    Facsimile: 415.986.2827

10
     Attorneys for FLOWERS BAKERIES, LLC
11

12              UNITED STATES DISTRICT COURT

13      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

14
     KELLY ROMERO, on behalf of herself and        Case No. 5:14-cv-05189
15   others similarly situated,
                                                    CLASS ACTION
16                        Plaintiff,
                                                    DEFENDANT FLOWERS BAKERIES,
17           v.                                     LLC'S NOTICE OF MOTION AND
                                                    MOTION TO DISMISS OR STAY FIRST
18   FLOWERS BAKERIES, LLC dba                      AMENDED COMPLAINT
     NATURE'S OWN, a Georgia limited
19   liability company, and DOES 1 through 50,      SUPPORTING MEMORANDUM OF
     inclusive,                                     POINTS AND AUTHORITIES.
20
                          Defendant.                Date:      December 3, 2015
21                                                  Time:      9 a.m.
22                                                  Judge:     Hon. Beth Labson Freeman

23

24

25

26

27

28

| | | Case No. 5:14-cv-05189 |
|---|---|---|

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ...................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 3

    INTRODUCTION .......................................................................... 3

    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND ......................... 5

    ARGUMENT ................................................................................. 8

        I.    The Court Should Dismiss All Claims In Their Entirety ............................ 8

            A.    Each Of Plaintiff's Wheat, All-Natural, And AZO Allegations Fail As A Matter Of Law ............................................. 8

                1.    All Claims Should Be Dismissed To The Extent That They Are Based On The Wheat Allegations .............. 9

                    a.    Plaintiff's Reliance Theory Fails As A Matter Of Law With Respect To The Wheat Allegations ................................................ 9

                    b.    The Wheat Allegations Do Not Meet The Reasonable Consumer Standard ............................ 12

                    c.    The Wheat Allegations Are Preempted ................ 13

                2.    All Claims Should Be Dismissed To The Extent That They Are Based On The All-Natural Or AZO Allegations ....................................................... 15

                    a.    The All-Natural And AZO Allegations Do Not Satisfy Rule 9(b) ............................................. 15

                    b.    Plaintiff's AZO And All-Natural Allegations Fail To Support Standing With Respect To Non-Purchased Products ...................................... 18

                    c.    The All-Natural Allegations Also Should Be Dismissed For Failure To Allege Reliance .......... 19

            B.    With Respect To All Three Types Of Allegations, The Unjust Enrichment, Fraud, Negligent Misrepresentation And Breach Of Warranty Claims Should Be Dismissed For Failure To Specify Which State Law Governs The Claims ......... 20

CROWELL
& MORING LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**
(continued)

Page

II.   Alternatively, If Any Claims Survive Dismissal, This Case Should
Be Stayed Pending Resolution Of The Ninth Circuit Appeals In
*Brazil* And *Jones* .................................................................................. 22

A.   Staying The Litigation Will Not Damage Plaintiff ...................... 23

B.   Hardship To Both Parties Will Result If This Litigation Is
Not Stayed .................................................................................... 23

C.   A Stay Of This Case Will Promote The Orderly Course Of
Justice .......................................................................................... 24

CONCLUSION ............................................................................................................... 24

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alvarez v. T-Mobile USA, Inc.*,
    2010 WL 5092971 (E.D. Cal. Dec. 7, 2010)................................................................24

6

*American Title Ins. Co. v. Lacelaw Corp*
    861 F.2d 224 (9th Cir. 1988)...................................................................................10

7

8

*Ang v. Whitewave Foods Co.*,
    2013 WL 6492353 (N.D. Cal. Dec. 10, 2013) ...........................................................13

9

*Astiana v. Hain Celestial Grp, Inc.*,
    783 F. 3d 753 (9th Cir. 2015).................................................................................13

10

*Bauer v. Tacey Goss, P.S.*,
    2012 WL 2838834 (N.D. Cal. July 10, 2012) ...........................................................11

12

*Brazil v. Dole*,
    2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ..........................................................22

13

*Brod v. Sioux Honey Ass'n, Co-op*,
    927 F. Supp. 2d 811 (N.D.Cal. 2013) .....................................................................12

15

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Servs., Inc.*,
    911 F.2d 242 (9th Cir. 1990)................................................................................9, 10

17

*Dei Rossi v. Whirlpool Corp.*,
    2015 WL 1932484 (E.D. Cal. Apr. 28, 2015) ...........................................................9

18

*Figy v. Amy's Kitchen, Inc.*,
    2013 WL 6169503 (N.D. Cal. Nov. 25, 2013) ..........................................................19

20

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*,
    2012 WL 6097105 (E.D. Cal. Dec. 7, 2012)...........................................................4, 15

22

*Gitson v. Trader Joe's Co.*,
    2014 WL 1048640 (N.D. Cal. March 14, 2014) ........................................................18

23

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003)..................................................................................10

25

*Gustavson v. Mars, Inc.*,
    2014 WL 6986421 (N.D. Cal. Dec. 10, 2014) ........................................................23, 24

26

*Hudson v. Capital Mgmt. Intern., Inc.*,
    565 F. Supp. 615 (N.D. Cal. 1983) .........................................................................21

*Janney v. Mills,*
    944 F. Supp. 2d 806 (N.D. Cal. 2013) ..................................................................15

*Jones v. ConAgra Foods, Inc.,*
    912 F. Supp. 2d 889 (N.D. Cal. 2012) ................................................................22

*Kane v. Chobani, Inc.,*
    973 F. Supp. 2d 1120 (N.D. Cal. 2014) ................................................................9

*Kennedy v. Jackson Nat. Life Ins. Co.,*
    2010 WL 2524360 (N.D. Cal. June 23, 2010) .......................................................9

*Landis v. North Am. Co.,*
    299 U.S. 248 (1936) .............................................................................................22

*Lanovaz v. Twinings N. Am., Inc.,*
    2013 WL 2285221 (N.D. Cal. May 23, 2013) .....................................................18

*Leonhart v. Nature's Path Foods, Inc.,*
    2015 WL 3548212 (N.D. Cal. June 5, 2015) .............................................. *passim*

*McKinniss v. Sunny Delight Bevs. Co.,*
    2007 WL 4766525 (C.D. Cal. Sept. 4, 2007)......................................................13

*Mills v. Giant of Maryland, LLC,*
    441 F. Supp. 2d 104 (D.D.C. 2006) ....................................................................15

*Pardini v. Unilever U.S.,*
    2015 WL 1744340 (N.D. Cal. Apr. 15, 2015) ...............................................23, 24

*Parker v. J. M. Smucker Co.,*
    No. 13-cv-00690-SC (N.D. Cal. Dec. 18, 2014)............................................23, 24

*Periguerra v. Meridas Capital, Inc.,*
    2010 WL 395932 (N.D. Cal. Feb. 1, 2010)........................................................16

*Pfau v. Mortenson,*
    858 F. Supp. 2d 1150 (D. Mont. 2012) .................................................................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,*
    631 F.3d 436 (7th Cir. 2011)..........................................................................15, 16

*Poulos v. Ceasars World, Inc.,*
    379 F.3d 654 (9th Cir. 2004)..................................................................................9

*Red v. Kraft Foods, Inc.,*
    2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ...............................................10, 13

*U.S. ex rel. Riley v. Alpha Therapeutic Corp.,*
    1997 WL 818593 (N.D. Cal. Nov. 10, 1997).......................................................16

CROWELL
& MORING LLP
ATTORNEYS AT LAW

iii

Case No. 5:14-cv-05189

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rooney v. Cumberland Packing Corp.*,
    2012 WL 1512106 (S.D. Cal. April 16, 2012).............................................................10, 12, 13

*Sanders v. Robinson Humphrey/American Express, Inc.*,
    634 F.Supp. 1048 (N.D. Ga. 1986) ......................................................................................21

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d. 1035 (9th Cir. 2010)............................................................................................10

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) .................................................................................20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    781 F. Supp. 2d 955 (N.D. Cal. 2011) .............................................................................4, 20

*Thomas v. Costco Wholesale Corp.*,
    2013 WL 1435292 (N.D. Cal. Apr. 9, 2013) .................................................................17, 19

*Viggiano v. Hansen Natural Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013)..................................................................................13

*Weisbuch v. Cnty. of L.A.*,
    119 F.3d 778 (9th Cir. 1997)................................................................................................11

*Wilson v. Frito-Lay N. Am., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ...............................................................................18

*Young v. Wells Fargo & Co.*,
    671 F. Supp. 2d 1006 (S.D. Iowa 2009)...............................................................................21

**Statutes**

21 U.S.C. § 343-1(a)(1).................................................................................................................13

**Regulations**

21 C.F.R. § 136.110(c)(1) ............................................................................................................14

21 C.F.R. § 136.110(e)(1) ............................................................................................................14

**Rules**

Fed. R. Civ. Proc. 9(b) .......................................................................................................... *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 3, 2015, at 9 a.m., or as soon thereafter as counsel may be heard, in the United States District Court, Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California, Courtroom 3, before the Honorable Beth Labson Freeman, Defendant Flowers Bakeries, LLC ("Flowers") will move and hereby does move this Court for an order dismissing the First Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Alternatively, in the event the complaint is not dismissed in its entirety, Flowers will and hereby does move for an order staying this case pending the Ninth Circuit's resolution of *Jones v. ConAgra Foods, Inc.*, No. 14-16327 (9th Cir. filed July 14, 2014) and *Brazil v. Dole Packaged Foods*, No. 14-17480 (9th Cir. filed Dec. 17, 2014), which will address many of the same legal issues this Court will face in this litigation, including with respect to Plaintiff's anticipated motion for class certification.  The motion to stay is made pursuant to the Court's inherent power to stay a case pending resolution of independent proceedings that may bear on the case pending before the Court.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, all pleadings on file in this matter, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

Dated:  August 6, 2015

CROWELL & MORING, LLP

By:  ___/s/ Joel D. Smith_____

Joel D. Smith
Attorneys for Defendant
Flowers Bakeries, LLC

-1-                                                            Case No. 5:14-cv-05189

MOTION TO DISMISS FIRST AMENDED COMPLAINT

## STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3))

1.  Whether all of Plaintiff's claims should be dismissed to the extent that they are based on allegations that certain Nature's Own products are misleadingly labeled as having a "significant" amount of whole wheat in them (the "wheat allegations"), for any of the following reasons:

    a.  Plaintiff fails to allege reasonable and justifiable reliance with respect to the wheat allegations.

    b.  The wheat allegations fail to satisfy the reasonable consumer standard applicable to Plaintiff's statutory claims.

    c.  All claims are preempted to the extent that they are based on the wheat allegations.

2.  Whether all of Plaintiff's claims should be dismissed to the extent that they are based on allegations that certain Nature's Own products are misleadingly labeled "all natural" or "no artificial preservatives, colors or flavors," (the "all-natural allegations" and "AZO allegations," respectively), for any of the following reasons:

    a.  The all-natural and AZO allegations fail to satisfy Rule 9(b).

    b.  The all-natural and AZO allegations fail to support standing with respect to non-purchased products.

    c.  With respect to her all-natural allegations, Plaintiff fails to allege reasonable and justifiable reliance.

3.  Whether Plaintiff's common law claims (unjust enrichment, fraud, negligent misrepresentation, and breach of warranty) should be dismissed for failure to specify which state's laws govern the claims.

4.  To the extent that any of Plaintiff's claims survive dismissal, whether the Court should stay this case pending resolution of two Ninth Circuit appeals which will clarify several issues in this case, as the Court recently did in a similar food labeling case, *Leonhart v. Nature's Path Foods, Inc.*, 2015 WL 3548212 (N.D. Cal. June 5, 2015).

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3       This is Plaintiff's second attempt to plead claims alleging that the labeling on Flowers'

4   Nature's Own brand bread products is false and misleading.  The Court previously dismissed

5   Plaintiff's original complaint because, among other reasons, Plaintiff alleged a scattershot of

6   vague and inconsistent allegations that amounted to no more than an "omnibus assertion that

7   [Flowers] acted wrongly." May 6, 2015 Order, p. 7:14-15 (Doc. No. 35).

8       The changes to the allegations in the First Amended Complaint are largely cosmetic and

9   have done little to cure the defects of the original complaint.  Rather than narrowing and

10  clarifying her allegations, Plaintiff has made them broader by challenging a wider range of

11  products, and making largely the same allegations that she made before.  Specifically, Plaintiff

12  persists with her theory that it is unlawful to use the word "wheat" in the product names Honey

13  Wheat and Whitewheat® (even though it is the primary ingredient in those products), because it

14  falsely implies that the products contain a "significant" amount of whole wheat (the "wheat

15  allegations").  Likewise, as in her original complaint, Plaintiff continues to erroneously allege that

16  "some" other products were purportedly falsely labeled either as (1) containing no "artificial

17  preservatives, colors and flavors," or (2) being "all natural" (the "AZO allegations" and "all-

18  natural allegations," respectively).  According to Plaintiff, these products contained "one or

19  more" ingredients that she considers to be contrary to the labeling, including but not limited to

20  azodicarbonamide ("AZO").

21      Because Plaintiff has failed to cure many of the defects that were present in the original

22  complaint, Flowers respectfully asks the Court to dismiss the claims in their entirety and with

23  prejudice; or, to the extent that any claims survive dismissal, to stay the case pending resolution

24  of two similar food labeling claims before the Ninth Circuit, for the following reasons:

25      First, all claims should be dismissed to the extent that they are based on Plaintiff's

26  defective wheat allegations.  As a matter of law, Plaintiff cannot establish reasonable reliance

27  based on a theory that the word "wheat" in the product names Honey Wheat and Whitewheat®,

28  combined with vague and generic references to the healthy qualities of those products, misled her

1   into believing that the breads contained a "significant" amount of whole wheat.  For the same

2   reason, her wheat allegations cannot satisfy the "reasonable consumer" standard applicable to her

3   statutory claims.  Finally, Plaintiff's claims are preempted to the extent that they are based on her

4   wheat allegations because Plaintiff does not (and cannot) allege that Nature's Own misrepresents

5   the amount of whole wheat in Honey Wheat and Whitewheat®.  Instead, she essentially is

6   seeking to impose labeling requirements which would serve no purpose other than to correct her

7   own purported misunderstanding about the nature of the breads, notwithstanding that the breads

8   are already properly identified as enriched breads pursuant to federal regulations.

9       <u>Second</u>, Plaintiff's claims also should be dismissed to the extent that they are based on her

10   AZO or all-natural allegations.  Rule 9(b) requires a plaintiff to "identify the complete set of facts

11   supporting a fraud claim before alleging fraud in a complaint:  allegations of fraud may not

12   depend on facts to be uncovered in discovery."  *Foster Poultry Farms v. Alkar-Rapidpak-MP*

13   *Equip., Inc.*, 2012 WL 6097105, at *6 (E.D. Cal. Dec. 7, 2012).  Both the AZO and all-natural

14   allegations defy this rule because Plaintiff alleges that she seeks to challenge unspecified products

15   or unspecified ingredients depending upon what, if anything, she uncovers in discovery.

16   Likewise, with respect to the AZO and all-natural allegations, Plaintiff lacks standing to challenge

17   products that she did not purchase because she fails to properly allege that they are substantially

18   similar to the products that she purchased.  Finally, the all-natural allegations fail for the

19   additional reason that Plaintiff (once again) fails to allege that she saw and relied on Nature's

20   Own all-natural labeling when making her purchase decision.

21       <u>Third</u>, Plaintiff's common law claims of unjust enrichment, fraud, negligent

22   misrepresentation and breach of warranty should be dismissed in their entirety because Plaintiff

23   does not allege under which state's laws she intends to assert those claims.  Many courts in this

24   district have held that due to variances among state laws, failure to allege which state law governs

25   an unjust enrichment claim is ground for dismissal.  *E.g.*, *In re TFT-LCD (Flat Panel) Antitrust*

26   *Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011) ("Several other courts in this district have

27   similarly held that a plaintiff must specify the state under which it brings an unjust enrichment

1  claim").  The rationale for dismissing unjust enrichment claims applies equally to Plaintiff's

2  common law claims of fraud, negligent misrepresentation and breach of warranty.

3      Fourth, many courts in this district—including this Court in *Leonhart*—have stayed food

4  labeling cases like this one pending resolution of two similar food labeling cases now before the

5  Ninth Circuit, *Brazil* and *Jones*.  The rulings in *Brazil* and *Jones* will clarify several issues

6  regarding food labeling claims that will arise in this litigation, including (1) ascertainability

7  requirements for class certification, (2) class-wide proof of damages, (3) class-wide presumptions

8  of reliance and materiality, and (4) whether unjust enrichment claims are duplicative of California

9  statutory actions.  As in *Leonhart*, if any claims in this action survive dismissal, staying this

10 action pending resolution of *Brazil* and *Jones* will benefit the Court and both parties by

11 conserving time and resources.

12 <h2 style="text-align:center">FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND</h2>

13     Flowers is a Georgia-based producer of breads and other baked goods, including Nature's

14 Own brand breads.  First Amended Complaint ("FAC"), ¶ 4.  Flowers sells many different kinds

15 of baked products under the Nature's Own brand, including whole wheat bread, multi-grain

16 bread, hot dog and hamburger buns, bagels, and reduced-calorie bread.  *Id.* at ¶ 11.  Plaintiff

17 allegedly bought four of those products:  Honey Wheat enriched bread, Whitewheat® enriched

18 bread, 100% Whole Wheat bread and 100% Whole Wheat with Honey bread.  Declaration of

19 Kelly Romero, at ¶ 2 (attached to FAC) ("Romero Decl.").

20     On October 20, 2014, Plaintiff filed a putative class action complaint against Flowers,

21 seeking, among other relief, injunctive relief and damages.  She alleged statutory claims under

22 California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), Consumers

23 Legal Remedies Act ("CLRA"), and common law claims of unjust enrichment, fraud, negligent

24 misrepresentation and breach of contract.  The original complaint challenged dozens of Nature's

25 Own products, and made a wide array of vague and inconsistent allegations concerning allegedly

26 misleading labeling on Nature's Own breads.

27     On January 2, 2015, Flowers moved to dismiss the original complaint, and on May 6,

28 2015, the Court granted in part and denied in part Flowers' motion.  May 6, 2015 Order (Doc. No.

35).  The Court dismissed Plaintiff's breach of contract claim and request for injunctive relief with prejudice.  The Court held that all of the remaining claims sounded in fraud, and dismissed those claims with leave to amend because (among other grounds), the allegations failed to satisfy Rule 9(b) and failed to "articulate a plausible theory of reliance."  *Id.* at 5:3-7:8.

On July 6, 2015, Plaintiff filed her FAC, in which Plaintiff continues to challenge dozens of Nature's Own products.  The claims alleged are the same as in the original complaint, except that the claim for breach of contract has been replaced with a common law claim for breach of express warranty.  Her allegations fall under the three general categories described below:

**The Wheat Allegations:**

Plaintiff contends that Whitewheat® and Honey Wheat enriched breads, rolls, buns and bagels are deceptively labeled in a manner to suggest that they contain a "significant amount of whole wheat" (hereinafter, the "wheat allegations").  FAC, ¶ 64.  Plaintiff does not, however, allege that the products say anything about "whole wheat" on the challenged labeling, and the color photographs of the packaging attached to the complaint confirm that there are no such statements.  Ex. B to FAC.  Instead, as in her original complaint, the primary allegation is that the mere use of the word "wheat" in the product names suggests the presence of a "significant" amount of whole wheat (although Plaintiff does not allege how much whole wheat is necessary to qualify, in her view, as a "significant" amount of whole wheat).  *Id.* at ¶¶ 65, 75.  Plaintiff attempts to bolster her theory by alleging that Flowers makes two additional misleading statements that are intended to draw an "explicit" connection to whole wheat.  *Id.* at ¶ 82.

First, as to Whitewheat® products, Plaintiff alleges that the inclusion of the words "Healthy White" on the packaging misleadingly implies the presence of a "significant" amount of whole wheat.  *Id.* at ¶ 83.  And yet, the front packaging of Whitewheat® bread includes in capitalized and bold letters the words "White Bread."  Ex. B to FAC.  Further contradicting her theory that the word "healthy" necessarily refers to whole wheat, Plaintiff also alleges that Whitewheat® is an enriched bread product "with added vitamins and minerals," and that enriched breads are a form of white bread.  *See id.* at ¶¶ 65, 68, Ex. B to FAC (depicting "ENRICHED BREAD" label on packaging).  And while Plaintiff speculates that some consumers might

1   confuse the name Whitewheat® with albino whole wheat, she does not allege that was her belief

2   when she purchased the product, or that she knew what albino wheat was when she made her

3   purchase decision.  *Id.* at ¶¶ 84, 89.

4        Second, as to Honey Wheat products, Plaintiff alleges that, in addition to the use of the

5   word "wheat" in the product name, the labeling is misleading because the back packaging

6   contains a generic reference to the health benefits of wheat and grains, which she believes

7   reinforces the notion that Honey Wheat products contain a "significant" amount of whole wheat.

8   *Id.* at ¶ 85.  Plaintiff acknowledges, however, that the allegedly misleading statements indicate

9   only that the Honey Wheat breads contain a "blend" of wholesome "wheat" (not a "significant"

10  amount of "whole wheat"), and the allegations in the FAC and the original complaint demonstrate

11  that the statement is true:   Honey Wheat breads are made from a blend of enriched flour, whole

12  wheat, rye flour and wheat bran.  *Id.* at ¶ 85-86, 88; *see also* Original Complaint, ¶ 55 (Doc. No.

13  1-1) (listing ingredients of Honey Wheat bread).

14       **The All-Natural Allegations:**

15       As in her original complaint, Plaintiff alleges that "some" of Nature's Own products were

16  improperly labeled "all natural" because they were made with enriched flour, which she contends

17  contains synthetically produced ingredients (hereinafter, the "all-natural" allegations).  FAC,

18  ¶¶ 32, 46, 54.  Plaintiff alleges that the improperly labeled products "include but are not limited

19  to" six products that she identifies in the FAC, and that she intends to amend the FAC later to

20  identify further challenged products after discovery.  *Id.* at ¶ 54; *see also id.* at ¶ 33.  Similarly,

21  rather than specifying, for each product, the ingredient that she contends is inconsistent with the

22  "all natural" label, she generally alleges that the "all natural" breads contained "one or more"

23  listed ingredients.  *Id.* at ¶ 54.

24       Additionally, Plaintiff changed her allegations by alleging for the first time that two of the

25  products that she purchased, Nature's Own 100% Whole Wheat and Honey Wheat breads, were

26  in fact called "All Natural 100% Whole Wheat" and "All Natural Honey Wheat."  *Compare* FAC

27  at ¶ 33 *with* Original Complaint, ¶ 65 (Doc. No. 1-1) (emphasis added.)  However, unlike her

28  "wheat" and "AZO" allegations, Plaintiff does not expressly allege that she saw and relied on the

1  "all natural" label on Nature's Own products when she made her purchase decision.  *Compare*

2  FAC, at ¶¶ 13, 89 *with id.* at ¶¶ 33-35.

3      **AZO Allegations:**

4      Plaintiff alleges that the packaging on certain Nature's Own products states that the

5  products contain "no artificial preservatives, colors or flavors," which Plaintiff alleges is false due

6  to the presence of a dough conditioner called azodicarbonamide ("AZO") (hereinafter, the "AZO

7  allegations").  FAC, ¶¶ 10-15.  However, similar to her "all natural" allegations, Plaintiff also

8  alleges "on information and belief" that other, <u>unidentified products</u> contain either AZO or some

9  other artificial ingredient, "such as" citric acid, sodium citrate, "and/or" ascorbic acid.  *Id.* at ¶¶

10 11, 28.  Hence, Plaintiff purports to challenge other products or ingredients in connection with her

11 AZO allegations, to be determined "after being afforded an opportunity to conduct sufficient

12 discovery."  *Id.* at ¶ 11.

13      **ARGUMENT**

14 **I.   The Court Should Dismiss All Claims In Their Entirety.**

15   **A.   Each Of Plaintiff's Wheat, All-Natural, And AZO Allegations Fail As A
           Matter Of Law.**

16
17      Each of Plaintiff's three principal allegations (*i.e.*, the wheat, all-natural, and AZO

18 allegations) have defects that apply to all of Plaintiff's claims.[1]  As set forth below, all of the

19 claims should be dismissed to the extent that they are based on the wheat allegations because, as

20 to those allegations, plaintiff cannot establish reasonable reliance, cannot meet the reasonable

21 consumer standard, and the allegations are preempted.  Likewise, the all-natural and AZO

22 allegations fail to satisfy Rule 9(b) and fail to support standing to challenge non-purchased

23 products; and the all-natural allegations are defective for the additional reason that Plaintiff has

24 failed to properly allege reliance.

25      [1] Flowers assumes for purposes of this motion that California law governs Plaintiff's
26 common law claims of unjust enrichment, fraud, negligent misrepresentation and breach of
   warranty.  However, as shown in Section I(B) below (pp. 20-21), Plaintiff seeks to represent a
27 nationwide class but fails to specify which state's laws she intends to govern her common law
   claims, and her failure to do so furnishes ground for dismissal of the common law claims.
28

**1.     All Claims Should Be Dismissed To The Extent That They Are Based On The <u>Wheat Allegations</u>.**

     **a.     Plaintiff's Reliance Theory Fails As A Matter Of Law With Respect To The Wheat Allegations.**

To sustain a fraud-based claim or warranty claim, Plaintiff must allege a "coherent, plausible theory of reliance."[2]  *See Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1132 (N.D. Cal. 2014) (dismissing food mislabeling claims for failure to adequately allege reliance).  Here, Plaintiff's wheat allegations are premised on the theory that she and other consumers erroneously assume that Honey Wheat and Whitewheat® enriched breads have a "significant" amount of whole wheat, despite the fact that the challenged labeling says <u>nothing</u> about whole wheat.  FAC, ¶ 64.  Instead, Plaintiff's reliance theory is based solely on the following three allegations:

1. The word "wheat" is included in the product names.  *Id.* at ¶¶ 65, 75.

2. Whitewheat® packaging contains the words "Healthy White."  *Id.* at ¶ 83.

3. Two sentences in the back label of Honey Wheat enriched bread and on Flowers' website state that Honey Wheat bread is a "healthy" and "wholesome" "blend" of "wheat" (<u>not</u> "whole wheat").  *Id.* at ¶¶ 85-86.

Accordingly, as to her whole wheat allegations, Plaintiff fails to properly allege justifiable and reasonable reliance for four separate and independent reasons:

<u>First</u>, it is well-settled that vague or generalized statements about a product cannot support a fraud-based claim.  *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Servs., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) ("*Cook*") (affirming dismissal of false advertising claim because vague

---

[2] Reasonable reliance is required to support a breach of express warranty claim, where, as here, there is no privity between the parties. *E.g.*, *Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484, at *9 (E.D. Cal. Apr. 28, 2015).  Reliance also is required for the unjust enrichment claim because it is based on allegedly "false and misleading" packaging. FAC, ¶ 152.  Where an unjust enrichment claim is premised on a misrepresentation, proof of reliance is required because it provides a "key causal link" between the unjust conduct and resulting harm or enrichment. *See Kennedy v. Jackson Nat. Life Ins. Co.*, 2010 WL 2524360, at *8 (N.D. Cal. June 23, 2010) ("Although reliance is not a component of a RICO claim, it provides 'a key causal link between' defendant's alleged misrepresentation and omissions and the class members' injury") (quoting and following *Poulos v. Ceasars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004)); *see also Pfau v. Mortenson*, 858 F. Supp. 2d 1150, 1162 (D. Mont. 2012) (dismissing unjust enrichment claim based on an alleged misrepresentation due to lack of reliance).

Case No. 5:14-cv-05189

MOTION TO DISMISS FIRST AMENDED COMPLAINT

and general statements about the services at issue could not support a claim); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379-80 (9th Cir. 2003) ("generalized, vague and unspecific assertions" failed to support fraud and negligent misrepresentation claims).  Instead, as the Ninth Circuit held in *Shroyer*, there must be a "concrete" statement on which the plaintiff and other consumers can reasonably rely.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d. 1035, 1043 (9th Cir. 2010).

Applying these principles in the context of a similar food mislabeling action, the court in *Red* held that the fact that the product name referred to vegetables and depicted vegetables on the packaging did not "suggest[] that the product is healthy and contained a significant amount of vegetables."  *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012). Similarly, in *Rooney*, the district court followed the Ninth Circuit's decision in *Cook* when it concluded that, as a matter of law, the product name "Sugar in the Raw" was too vague to imply that the product was made from unprocessed or unrefined sugar.  *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106, at *3-4 (S.D. Cal. April 16, 2012).

The same outcome is warranted here because the mere reference to "wheat" in the product names, or statements suggesting that the products are healthful, are too vague and general to support Plaintiff's theory that she reasonably and justifiably assumed that the breads contain a "significant" amount of whole wheat.  Moreover, as the court in *Red* explained, liability cannot be premised on a theory that the plaintiff will read true statements on the package "and assume things about the products other than what the statement actually says."  *See Red*, 2012 WL 5504011, at *3 (emphasis omitted).  But that is the crux of Plaintiff's wheat allegations here because the word "wheat" is a true statement of the nature of the breads.  Plaintiff acknowledges that wheat is the primary ingredient in all bread, and that the average consumer understands that fact.  *See* FAC ¶¶ 73-74.[3]  Likewise, she does not allege that the statements referring to the

---

[3] *See also* Plaintiff's Opposition to Motion to Dismiss Original Complaint, at 20:16-17 ("the primary ingredient in virtually all bread is flour derived in some way from wheat"); *see also American Title Ins. Co. v. Lacelaw Corp* 861 F.2d 224, 227 (9th Cir. 1988) (statements of fact contained in a brief may be considered judicial admissions).

1   healthy qualities of Honey Wheat and Whitewheat® enriched breads are false; she alleges only

2   that whole wheat breads are "healthier." *Id.* at ¶ 64.

3        Second, the wheat allegations in the FAC are implausible and unreasonable in light of

4   admissions made in Plaintiff's original complaint. "A plaintiff may plead herself out of court" if

5   she "plead[s] . . . facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v.*

6   *Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal citation and quotation omitted).

7   Allegations in an original complaint may be deemed judicial admissions that support dismissal of

8   an amended complaint. *See*, *e.g.*, *Bauer v. Tacey Goss, P.S.*, 2012 WL 2838834, at *3 (N.D. Cal.

9   July 10, 2012) (admissions made in original complaint were judicial admissions that supported

10  dismissal of amended complaint).

11       These principles support dismissal here because in her original complaint, Plaintiff alleged

12  that "all enriched breads are white breads," and therefore, according to Plaintiff, Whitewheat®

13  and Honey Wheat "should be named 'enriched bread'" pursuant to federal regulations. *See*

14  Original Complaint, ¶¶ 52, 60 (Doc. No. 1-1). As the color photographs attached to the FAC

15  demonstrate, the front packaging of Honey Wheat and Whitewheat® breads includes in

16  capitalized letters the words "ENRICHED BREAD." Ex. B to FAC. Thus, Plaintiff's own

17  allegations establish that she had notice that Whitewheat® and Honey Wheat are white breads,

18  and she does not allege in her FAC how her purported belief that the breads contained a

19  "significant" amount of whole wheat was reasonable in light of her prior admission.

20       Third, as to Whitewheat® bread, Plaintiff's reliance theory fails because the FAC

21  establishes that the bread is prominently labeled "Healthy White" and "White Bread," and the

22  color photographs attached to the FAC confirm that Whitewheat® bread does not look anything

23  like the whole wheat breads that Plaintiff also allegedly purchased. FAC, at ¶ 83, Ex. B to FAC;

24  *see also* Ex. A to FAC. The theory that she reasonably believed that the word "healthy"

25  necessarily indicated a significant amount of whole wheat makes no sense given that the word

26  "healthy" is attached to the word "white," an obvious reference to the type of bread. Further, the

27

28

1  word "healthy" is consistent with the allegation that the Whitewheat® bread is enriched bread,[4]

2  and thus, as a matter of law, it is not reasonable or justifiable to assume that the word can only

3  refer to whole wheat, particularly given that the bread is prominently identified as enriched white

4  bread on the front of the label. *See id.* at ¶ 68.

5       <u>Fourth</u>, Plaintiff alleges that she bought Honey Wheat and <u>another</u> Nature's Own Honey

6  Wheat product called "100% Whole Wheat with Honey Bread." *See* FAC, at ¶ 13.  The notion

7  that she reasonably and justifiably assumed that the word "wheat" necessarily suggests "whole

8  wheat" is unreasonable and implausible given that her own allegations demonstrate that Honey

9  Wheat and Whitewheat® breads are distinguishable from other Nature's Own products that were

10  clearly labeled "whole wheat."

## b.    The Wheat Allegations Do Not Meet The Reasonable Consumer Standard.

12       To state a valid claim for misrepresentation under California's consumer protection laws,

13  "a plaintiff must show that a 'reasonable consumer' is 'likely to be deceived' by the allegedly

14  misleading statement." *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal.

15  2013).  "'Likely to deceive' implies more than a mere possibility that the advertisement might

16  conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."

17  *Id.*  Instead, the "reasonable consumer" standard requires a probability "that a significant portion

18  of the general consuming public or of target consumers, acting reasonably under the

19  circumstances, could be misled." *Rooney*, 2012 WL 1512106, at *3.

20       Here, just as it is unreasonable for Plaintiff to assume that Honey Wheat and

21  Whitewheat® products contain a "significant" amount of whole wheat based solely on accurate

22  references to "wheat" and the healthful qualities of those products (see Section I(A)(1)(a) above,

23  pp. 9-10), so too is it unreasonable for other consumers to do so.  As the court explained in

24  *Viggiano*, if "a product's front label is accurate and consistent with the statement of ingredients,

---

[4] As alluded to in the FAC, enriched bread is bread that has had nutrients that were lost during the milling process returned to it, such as iron, riboflavin and niacin. *See* FAC, at ¶¶ 46, 68.

1  courts routinely hold that no reasonable consumer could be misled by the label, because a review

2  of the statement of ingredients makes the composition of the food or drink clear." *Viggiano v.*

3  *Hansen Natural Corp.*, 944 F. Supp. 2d 877, 892 n. 38 (C.D. Cal. 2013).

4  　　　Food mislabeling claims do not meet the reasonable consumer standard where, as here, the

5  thrust of the claim is that the plaintiff was "misled" because she assumed that a generic statement

6  meant something other than what it said.  *See Ang v. Whitewave Foods Co.*, 2013 WL 6492353, at

7  *4 (N.D. Cal. Dec. 10, 2013) (no reasonable consumer would assume that soy milk and almond

8  milk were regular milk simply because both used the term "milk"); *McKinniss v. Sunny Delight*

9  *Bevs. Co.*, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) (no reasonable consumer would

10  conclude that defendant's SunnyD beverages contain significant quantities of fruit or fruit juice

11  where the label does not identify the product as "fruit juice"); *accord Red*, 2012 WL 5504011, at

12  *3 (C.D. Cal. Oct. 25, 2012); *Rooney*, 2012 WL 1512106, at *3-4.  Thus, to the extent that the

13  statutory claims are based on the wheat allegations, the Court can and should dismiss the claims

14  for failing to meet the reasonable consumer standard.

15  　　　　　　　　　**c.**　　**The Wheat Allegations Are Preempted.**

16  　　　All of Plaintiff's claims are preempted to the extent they are based on the wheat

17  allegations because they seek to impose requirements that are "not identical" to those required by

18  the Federal Food, Drug, and Cosmetic Act ("FDCA").  The Nutrition Labeling and Education Act

19  ("NLEA") amendments to the FDCA explicitly provide that no state can:  (1) establish any

20  "requirement for a food which is the subject of a standard of identity" that is (2) "not identical" to

21  those required by the FDCA.  21 U.S.C. § 343-1(a)(1).  The FDCA therefore "bars states from

22  imposing new or additional labeling 'requirements.'" *Astiana v. Hain Celestial Grp, Inc.*, 783 F.

23  3d 753, 757 (9th Cir. 2015).

24  　　　In its Order dismissing Plaintiff's original complaint, this Court cited *Astiana* and

25  explained that to the extent "Plaintiff's theory is that the challenged products simply and overtly

26  misstate the amount of whole wheat in each product, that straightforward claim of

27  misrepresentation is unlikely to be preempted."  May 6, 2015 Order, p. 10:7-9 (Doc. No. 35).  In

28  contrast, this Court explained that if Plaintiff's theory of misrepresentation would require Flowers

to "correct any misunderstanding garnered from its use of 'Honey Wheat' and 'Whitewheat' by affirmatively stating that the products do not contain 'whole wheat,' that claim would be preempted." *Id.*, at p. 10:9-13.  The wheat allegations are preempted under the analysis set forth in this Court's May 6, 2015 Order.

First, in her FAC, Plaintiff does not (because she cannot) make a "straightforward" allegation that Flowers "simply and overtly" misrepresents the amount of whole wheat in its products.  Indeed, as shown in Section I(A)(1)(a) above (pp. 9-10), the challenged statements on the Honey Wheat and Whitewheat packaging make no reference to the words "whole wheat" at all, much less an overt statement about the amount of whole wheat in the products.  Nor does the FAC contain any viable allegation of misstatements that violate federal regulations regarding the use of the term "wheat."  Although Plaintiff alleges that Flowers violates 21 C.F.R. § 136.110(c)(1) and (e)(1) by using the term "wheat" in some of its product names, this Court rejected that argument when it dismissed Plaintiff's original complaint.[5]  Specifically, this Court rejected Plaintiff's theory that (1) "a wheat description for bread is not appropriate when the bread is composed primarily of white flour" and (2) that the "only time wheat is permitted to be used as part of the name of bread is for whole wheat bread," and further explained that Plaintiff's theory depends entirely "on a misreading of the applicable [federal] standards of identity."  May 6, 2015 Order, pp. 9:28-10:4 (Doc. No. 35) (internal quotations omitted).

Second, it is clear that the wheat allegations fall within the category of allegations that this Court explained would be preempted.  The allegations are not premised on a straightforward misrepresentation, but instead a perceived need to correct any misunderstanding arising from the use of the word "wheat."  Plaintiff thus seeks to impose a new labeling requirement that would

---

[5] 21 C.F.R. § 136.110(c)(1) states, "The following optional ingredients are provided for: (1) Flour, bromated flour, phosphate flour, or a combination of two or more of these.  The potassium bromate in any bromated flour used and the monocalcium phosphate in any phosphated flour used are deemed to be additional optional ingredients in the bread, rolls, or buns.  All ingredients in any flour, bromated flour, or phosphated flour used are deemed to be optional ingredients of the bread, rolls, or buns prepared therefrom."  And 21 C.F.R. § 136.110(e)(1) states, "The name of the food is 'bread', 'white bread', 'rolls', 'white rolls', 'buns', 'white buns', as applicable."

| | 14 | | Case No. 5:14-cv-05189 |
|---|---|---|---|
| | MOTION TO DISMISS FIRST AMENDED COMPLAINT | | |

either (1) restrict the ability of Flowers or other bread makers from referring to the primary ingredient of bread on product packaging (wheat),[6] or (2) require Flowers to affirmatively clarify that "wheat" does not mean "whole wheat" in order to avoid the alleged potential for misunderstanding.

Moreover, in *Mills*, the court held that claims are preempted if they in effect seek "to supplement . . . not enforce compliance with the existing [federal] requirements." *Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104, 108 n.5 (D.D.C. 2006). That is what Plaintiff seeks to do here. As shown above (p. 11), Plaintiff has alleged that federal regulations governing the standard of identity require that Honey Wheat and Whitewheat® breads be properly labeled and identified as "enriched bread," which, according to Plaintiff's allegations, she understands to be a form of white bread. *See also* FAC, ¶¶ 68-69. The wheat allegations, however, are necessarily premised on the notion that the required labeling identifying the nature of the bread (i.e., enriched bread) is inadequate and requires supplementation to prevent consumer confusion. In short, under this Court's May 6, 2015 Order and under *Mills*, all claims should be dismissed on preemption grounds to the extent they are based on the wheat allegations.

### 2. All Claims Should Be Dismissed To The Extent That They Are Based On The All-Natural Or AZO Allegations.

#### a. The All-Natural And AZO Allegations Do Not Satisfy Rule 9(b).

In the context of food mislabeling claims, it is well-settled that a complaint "must make specific allegations regarding each product" being challenged, and identifying only a selection of challenged products does not suffice. *Janney v. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013) (emphasis added). Equally important, "a plaintiff must identify the complete facts supporting a fraud claim before alleging fraud in a complaint: allegations of fraud may not depend on facts to be uncovered in discovery." *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 2012 WL 6097105, at *6 (E.D. Cal. Dec. 7, 2012); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits*

---

[6] In its Order, this Court also noted that a rule prohibiting bread manufacturers from labeling breads with the term wheat" might be "unworkable" due to consumers' increasing consciousness about the effects of gluten. May 6, 2015 Order, at 10 n.2.

1  *Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) ("*Pirelli*") ("the particularity

2  requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy").

3  Rule 9(b) pleadings generally cannot be based on "information and belief." *E.g.*, *Pirelli*, 631 F.3d

4  at 442-43.  Thus, an allegation or argument by plaintiff that further discovery is needed to flesh

5  out a fraud claim is "directly contrary to the purpose of Rule 9(b)," and furnishes ground for

6  dismissal.  *U.S. ex rel. Riley v. Alpha Therapeutic Corp.*, 1997 WL 818593, at *4, n.1 (N.D. Cal.

7  Nov. 10, 1997); *see* also *Periguerra v. Meridas Capital, Inc.*, 2010 WL 395932, at *5 (N.D. Cal.

8  Feb. 1, 2010) (dismissing fraud claim where plaintiffs argued they should be allowed to conduct

9  discovery in order to plead additional facts in support of their fraud claim).

10         In her FAC, Plaintiff itemizes a list of products that she contends are associated with her

11  AZO and "all natural" allegations.  But, it is clear from her allegations that Plaintiff has not

12  provided the "complete facts" concerning each product being challenged, because she alleges that

13  she also seeks to challenge additional unidentified products and/or ingredients, depending on

14  what she uncovers in discovery.  This defect is evident from Paragraphs 11, 28, 32 and 54 of the

15  FAC:

16   •  **Paragraph 11 ( pertaining to "AZO allegations")**:  Plaintiff alleges that she "believes

17      that Flowers <u>may have</u> produced <u>other bread</u> products purporting to contain 'no artificial,

18      preservatives, colors and flavors' but which contained the chemical ingredients [AZO],

19      citric acid, sodium citrate, and/or ascorbic acid." FAC, ¶ 11, at 3:14-16.  She further

20      alleges that she will seek leave to amend in order to challenge additional unidentified

21      products "<u>after being afforded the opportunity to conduct sufficient discovery</u>." *Id.* at

22      ¶ 11, 3:14-18 (emphasis added).  Thus, contrary to Rule 9(b), the FAC purports to

23      challenge unidentified products in addition to those listed in Paragraph 11.

24   •  **Paragraph 28 ( pertaining to "AZO Allegations")**:  Plaintiff alleges that, apart from

25      AZO, Flowers uses "other chemical preservatives in the subject products . . . <u>such as</u> citric

26      acid, sodium citrate and ascorbic acid . . . ." *Id.* at ¶ 28, 6:8-10 (emphasis added).  Thus,

27      the complaint indicates that the "AZO allegations" are not limited to AZO, but instead are

28      based on other unspecified ingredients.  References to citric acid, sodium citrate and

1    ascorbic acid do not satisfy Rule 9(b) because the use of the term "such as" in Paragraph

2    28 indicates that they are only examples of the ingredients that Plaintiff seeks to

3    challenge.  *See Thomas v. Costco Wholesale Corp.*, 2013 WL 1435292, at *8 (N.D. Cal.

4    Apr. 9, 2013) ("the use of the term 'such as' indicates that these references [to defendant's

5    products] are only used as an example of one of the apparently many products" that

6    plaintiff sought to challenge).  In short, the FAC is unspecific as to which ingredients are

7    purportedly at issue in this action (as well as which products contain those ingredients).

8    • **Paragraphs 32 and 54 (pertaining to "all-natural" allegations):**  In Paragraph 32,

9    Plaintiff alleges that "some" of Nature's Own bread products are labeled "all-natural," and

10   that a "sample of labels" are attached to the complaint.  *Id.* at ¶ 32, 6:26-7:1; *see also* Ex.

11   C to FAC.  Similarly, in Paragraph 54, Plaintiff improperly alleges on "information and

12   belief" that "some of [Flowers'] other bread products are falsely labeled "all-natural,"

13   "including but not limited to" four different products.  *Id.* at ¶ 54, 12:4-9.  She goes on to

14   allege that Nature's Own "all-natural" products (whether identified or unidentified in the

15   FAC) contain "one or more" ingredients that she contends are inconsistent with the "all

16   natural" label.  *Id.* at 12:8.  Finally, Plaintiff contends that she will amend her allegations

17   to add additional unspecified products "after being afforded the opportunity to conduct

18   sufficient discovery."  *Id.* 12:9-11.  Thus, as with her AZO allegations, the FAC is vague

19   and unspecific as to which products or ingredients are at issue with respect to the "all-

20   natural" allegations.

21   In short, contrary to Rule 9(b), the lists of challenged products and ingredients in the FAC

22   are intended only to provide examples of those that are being challenged here, and Plaintiff is

23   improperly relying on discovery to flesh out her fraud allegations.   Flowers is entitled to specific

24   notice concerning which ingredients are at issue because an obvious central dispute in this case

25   will be whether a given ingredient is artificial, or falls under the category of a "preservative,"

26   "color" or "flavor."  Moreover, Plaintiff has no basis to argue that additional discovery is

27   necessary in order to flesh out her fraud allegations because this case is about product labeling

28   and ingredients lists, and thus necessarily involves facts that are in the public domain and within

her reach.

### b. Plaintiff's AZO And All-Natural Allegations Fail To Support Standing With Respect To Non-Purchased Products.

As this Court held when ruling on Flowers' motion to dismiss the original complaint, Plaintiff must allege facts establishing that all non-purchased products that she challenges are "substantially similar" to products that she purchased, considering such factors as whether the products are of the same kind, have the same ingredients, and bear the same labeling.  March 6, 2015 Order, at pp. 7:28-8:9 (citing *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1141 (N.D. Cal. 2013)).  Here, as to the all-natural and AZO allegations, Plaintiff fails to allege standing to challenge non-purchased products for two reasons.

<u>First</u>, given the Rule 9(b) pleading defects described in Section I(A)(2)(a) above, Plaintiff cannot legitimately argue that she has adequately alleged substantial similarity between purchased and non-purchased products.  Obviously, there would be no basis for her to argue substantial similarity with respect to the unidentified products that Plaintiff seeks to challenge after discovery, as there are no allegations concerning those products.  Likewise, even as to the products identified in the FAC, Plaintiff has not adequately alleged substantial similarity because, as shown in Section I(A)(2)(a) above, the FAC is vague as to which ingredient or ingredients are being challenged with respect to each product.

<u>Second</u>, with respect to the AZO allegations, Plaintiff seeks to challenge a wide variety of products that bear no resemblance to the bread loaves that she purchased, such as hot dog buns, cinnamon raisin bagels, English muffins, and low-calorie white bread.  FAC, at ¶ 11.  The fact that these products can be loosely categorized as baked goods is not enough to establish substantial similarity, even if they allegedly had the same labeling.  *See Lanovaz v. Twinings N. Am., Inc.*, 2013 WL 2285221, at *1-2 (N.D. Cal. May 23, 2013) (fact that unpurchased and purchased products were all tea products with "the exact same labeling" insufficient to establish substantial similarity where they were made with different types of tea leaves).  Thus, irrespective of her Rule 9(b) pleading deficiencies, Plaintiff cannot challenge non-purchased products based on her AZO allegations.

### c.      The All-Natural Allegations Also Should Be Dismissed For Failure To Allege Reliance.

To properly allege reliance, a complaint must "unambiguously specify . . . the particular statements [p]laintiffs allegedly relied on when making their purchases." *Thomas*, 2013 WL 1435292, at *6.  In the context of a food mislabeling claim, an allegation that the plaintiff purchased a product is not enough to support reliance; instead, the allegations must include a statement that the plaintiff actually "saw the representation at issue." *Gitson v. Trader Joe's Co.*, 2014 WL 1048640, at *8 (N.D. Cal. March 14, 2014); *see Figy v. Amy's Kitchen, Inc.*, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) ("[P]laintiff does not allege that prior to purchasing the products, he read the ingredients labels and saw the term 'evaporated cane juice.'  Therefore, plaintiff has failed to allege sufficient facts establishing that he relied on the alleged misbranding in purchasing the products").

Here, Plaintiff alleges that: (a) she bought products with the "all natural" label; (b) she understood the term "all natural" to be free of artificial ingredients; and (c) that she would not have purchased certain Nature's Own products if she had known they contained allegedly artificial ingredients.  FAC, ¶¶ 33-35.  Conspicuously missing, however, is an "unambiguous" allegation that Plaintiff actually <u>saw</u> and <u>relied</u> on an "all-natural" label on <u>Nature's Own packaging</u> in making her purchase decision.  Under *Thomas*, *Gitson* and *Figy*, allegations that merely imply reliance do not suffice.

Moreover, this is the second time that Plaintiff has failed to unambiguously allege reliance with respect to her all-natural allegations even though it would be a simple matter to include such allegations <u>if</u> they could be made in good faith and consistent with Rule 11.  There are several aspects of Plaintiff's pleadings that suggest she cannot in good faith allege reliance with respect to the all-natural allegations:

- In contrast to the all-natural allegations, Plaintiff expressly alleges that she saw and relied on labeling in connection with her wheat and AZO allegations.  (*Compare* FAC ¶¶ 13, 89 *with id.* at ¶¶ 33-35.)  There is no similar allegation that she saw "all-natural" labeling.

- Plaintiff's declaration attached to the FAC (and signed under penalty of perjury) itemizes

1    the products that Plaintiff allegedly purchased and does <u>not</u> refer to purchasing all-natural

2    products.  Romero Decl., at ¶ 2.

3    • Plaintiff attached photographs to the FAC that purportedly depict the packaging of Honey

4      Wheat bread that she allegedly purchased (and which ¶ 33 of the FAC now alleges was

5      actually "all-natural" Honey Wheat).[7]  None of those photographs show the presence of an

6      "all-natural" label, or make any other reference to being an "all-natural" product, and none

7      of the other photographs attached to the FAC depict "all-natural" Honey Wheat bread.

8        Accordingly, given that Plaintiff failed to allege reliance in her original complaint and

9    failed to cure that defect in the FAC, Flowers respectfully submits that all claims should be

10   dismissed with prejudice for lack of reliance to the extent that they are based on the all-natural

11   allegations.

12       **B.    With Respect To All Three Types Of Allegations, The Unjust Enrichment,**
13   **Fraud, Negligent Misrepresentation And Breach Of Warranty Claims Should**
     **Be Dismissed For Failure To Specify Which State Law Governs The Claims.**

14       Plaintiff seeks to represent a nationwide class in connection with her common law claims

15   for unjust enrichment, fraud, negligent misrepresentation and breach of warranty.  FAC, at ¶¶ 3,

16   151-73.  Plaintiff does not, however, specify in her FAC which state's laws should apply to these

17   claims.  As such, each of the common law claims should be dismissed for two reasons.

18       <u>First</u>, as to the unjust enrichment claim, numerous courts in this district have held that

19   an unjust enrichment claim should be dismissed where, as here, a plaintiff fails to allege which

20   state law governs the claim.  *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F.

21   Supp. 2d 896, 910 (N.D. Cal. 2008) ("*In re SRAM Litig.*") (dismissing unjust enrichment claim);

22   *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011) ("Several

23   other courts in this district have similarly held that a plaintiff must specify the state under which it

24   brings an unjust enrichment claim").  The reason for this rule is that unjust enrichment claims

25

26       [7] *Compare* Ex. D to FAC (showing Honey Wheat packaging) *with* Plaintiff's Request for
     Judicial Notice In Support of Opposition to Motion to Dismiss Original Complaint ("RJN") [Doc.
27   No. 23], at 2:13-14 and Ex. 6 to RJN (attaching same photographs and contending that they depict
     the packaging from bread purchased by Plaintiff).

28

vary substantially among the states, and thus, unless a complaint specifies which state law governs an unjust enrichment claim, "the court cannot assess whether the claim has been adequately pled." *In re SRAM Litig.*, 580 F. Supp. 2d at 910.  Dismissal of the unjust enrichment claim is therefore warranted under these authorities because Plaintiff did not specify which state law she intends to govern the claim.[8]  *See* FAC, ¶¶ 151-54.

        Second, the same reasoning described above should apply equally to Plaintiff's common law claims for fraud, negligent misrepresentation and breach of warranty.  Numerous courts have held that the law governing claims for fraud, negligent misrepresentation and breach of warranty varies significantly from state to state.  *See, e.g¸ Hudson v. Capital Mgmt. Intern., Inc.*, 565 F. Supp. 615, 630 (N.D. Cal. 1983) ("The elements of common law fraud [and] negligent misrepresentation . . . vary, of course, from state to state."); *Sanders v. Robinson Humphrey/American Express, Inc.*, 634 F.Supp. 1048, 1067-69 (N.D. Ga. 1986) (discussing variations in knowledge, intent and justifiable reliance standards regarding common law fraud); *Ford Motor Co. Ignition Switch Prods. Liability Litig.*, 174 F.R.D. 332, 351 (D.N.J. 1997) (explaining that there are "a multitude" of differences among states' laws with regard to breach of warranty claims).  And, like a claim for unjust enrichment, a court may properly hold that these claims are inadequately pled if the complaint fails to specify which state's laws govern the claims.  *Cf. Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1016 (S.D. Iowa 2009) (granting motion for more definite statement where plaintiff failed to plead which state law or laws governed a misrepresentation claim).  Accordingly, the Court can and should dismiss all of the common law claims, irrespective of whether they are based on the wheat, AZO or all-natural allegations.

---

        [8] In addition, although the Court previously rejected Flowers' argument that the unjust enrichment claim must be dismissed for being duplicative of Plaintiff's legal claims, as shown in Section II (pp. 22-24), that issue is one of several issues currently pending before the Ninth Circuit in *Brazil v. Dole Packaged Foods, LLC*, Case No. 14-17480, thus furnishing further support for a stay of this case if any claims survive dismissal.

**II.    Alternatively, If Any Claims Survive Dismissal, This Case Should Be Stayed Pending Resolution Of The Ninth Circuit Appeals In *Brazil* And *Jones*.**

In the event the Court does not dismiss the complaint in its entirety, this litigation should be stayed for reasons similar to those in *Leonhart v. Nature's Path Foods, Inc.*, 2015 WL 3548212 (N.D. Cal. June 5, 2015).  This Court stayed the food mislabeling litigation in *Leonhart* pending the Ninth Circuit's resolution of *Jones v. ConAgra Foods, Inc.*, No. 14-16327 (9th Cir. filed July 14, 2014) and *Brazil v. Dole Packaged Foods*, No. 14-17480 (9th Cir. filed Dec. 17, 2014), because it found those appeals would address many of the same legal issues that would arise in *Leonhart*.  In *Jones*, similar to here, plaintiffs allege that the "100% Natural" labels for ConAgra's food products (namely cooking spray, canned tomatoes, and cocoa) are unlawful and misleading because the products contain allegedly artificial ingredients.  *See Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 893 (N.D. Cal. 2012) (describing allegations).  Similarly, in *Brazil*, plaintiff alleges that Dole's "all natural fruit" food product labels are unlawful and misleading because the products contain two artificial and synthetic ingredients.  *See Brazil v. Dole*, 2013 WL 5312418 *2 (N.D. Cal. Sept. 23, 2013) (describing allegations).

As this Court explained in *Leonhart*, the *Brazil* plaintiff appealed the district court's grant of summary judgment for the defendant, including challenging the district court's dismissal of his unjust enrichment claim as duplicative of his statutory claims, application of the standing requirements under California's UCL, and rejection of his damages model.  *Leonhart* , at *3.  Similarly, the *Jones* plaintiffs appealed the district court's denial of their motion for certification of three separate classes asserting food labeling claims.  In particular, the *Jones* plaintiffs challenge the district court's application of the ascertainability and predominance requirements for class certification and the standing requirements of California's UCL, FAL and CLRA.

As this Court explained in *Leonhart*, courts weigh the following three factors drawn from the Supreme Court's decision in *Landis v. North Am. Co.*, 299 U.S. 248 (1936), when considering whether a stay is appropriate:  (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues,

1    proof, and questions of law which could be expected to result from a stay.  *Leonhart*, at *3;

2    *accord Gustavson v. Mars, Inc.*, 2014 WL 6986421, at *2 (N.D. Cal. Dec. 10, 2014).  Weighing

3    all three *Landis* factors, this Court stayed the food mislabeling litigation in *Leonhart*.  *Leonhart*,

4    at *3-4.  Similarly, at least three other Northern District courts have stayed food mislabeling cases

5    pending the resolution of the Ninth Circuit appeals in *Jones* and *Brazil*.  Judge Koh stayed

6    *Gustavson v. Mars Inc.*, before the plaintiff's motion for class certification was filed.  2014 WL

7    6986421 (N.D. Cal. Dec. 10, 2014).  Judge Conti stayed *Parker v. J. M. Smucker Co.*, No. 13-cv-

8    00690-SC, before making a decision on the plaintiff's pending class certification motion.  Slip op.

9    (N.D. Cal. Dec. 18, 2014) (Doc. No. 74); *see also Pardini v. Unilever U.S.*, 2015 WL 1744340, at

10   *3 (N.D. Cal. Apr. 15, 2015) (granting motion to stay pending resolution of *Jones*).  As in

11   *Leonhart*, *Gustavson*, *Parker*, and *Pardini*, the *Landis* factors warrant a stay here.

12           **C.      Staying The Litigation Will Not Damage Plaintiff**

13           Both parties would benefit from a stay because the Ninth Circuit is likely to provide

14   substantial guidance—and potentially new law—when it rules on *Jones* and *Brazil*.  These rulings

15   will clarify Ninth Circuit law on a number of issues that would be material to a class certification

16   decision in this case, such as (1) if and how the ascertainability requirement for class certification

17   can be met in food misbranding cases; (2) how to measure damages in food mislabeling cases; (3)

18   whether reliance on and materiality of food labels can be presumed; and (4) whether unjust

19   enrichment claims are duplicative of statutory claims under California's UCL, FAL, and CLRA.

20   *See Gustavson*, 2014 WL 6986421, at *3; *Parker*; slip op. at 2.  If the Court does not dismiss the

21   FAC in its entirety, these same issues will soon be before the Court in Plaintiff's motion for class

22   certification (or potentially a later motion seeking dismissal of the unjust enrichment claim).  Far

23   from causing harm, a stay will allow both the parties to conserve their resources until Ninth

24   Circuit law on these issues is settled.

25           **D.      Hardship To Both Parties Will Result If This Litigation Is Not Stayed**

26           Staying this litigation will not impose a hardship on either party.   In fact, because the

27   *Jones* and *Brazil* rulings are likely to clarify the law and standards for the parties' respective

28   claims and defenses, hardship will result only if the litigation is not stayed.  As the court in

1   *Gustavson* explained, the Ninth Circuit's rulings are "likely to prompt further briefing as to

2   whether any certified class should be decertified, or whether a class should be newly certified"

3   because the issues identified—ascertainability, predominance, and standing—are central to class

4   certification.  *Gustavson*, at *3.  The parties would thus suffer significant and potentially

5   unnecessary hardships if compelled to proceed.  *See id.*; *see also Parker*, slip op. at 2; *Alvarez v.*

6   *T-Mobile USA, Inc.*, 2010 WL 5092971, at *2 (E.D. Cal. Dec. 7, 2010) ("[i]t would be

7   burdensome for both parties to spend time, energy, and resources on pretrial and discovery issues,

8   only to find those issues moot within less than a year").

9           **E.       A Stay Of This Case Will Promote The Orderly Course Of Justice**

10          Staying this litigation will (i) conserve the Court's time and the parties' resources and (ii)

11  enable a more efficient resolution of Plaintiff's claims.  The Ninth Circuit's decisions in *Jones*

12  and *Brazil* may change the applicable law and factual requirements that must be developed at the

13  class certification stage for food labeling cases.  If this litigation were to go forward prior to the

14  resolution of those appeals, both parties would expend significant time and resources pursuing

15  discovery to build the factual record needed to succeed before any change in applicable Ninth

16  Circuit law.  Both parties would also expend considerable resources briefing and arguing the class

17  certification motion.  Absent a stay the parties would likely be forced to repeat various tasks after

18  a decision in *Jones* or *Brazil*, such as re-opening discovery, re-deposing witnesses, and re-briefing

19  class certification.  *See Leonhart*, at *3.  Thus, as in *Leonhart*, *Gustavson*, and *Parker*, the *Landis*

20  factors weigh in favor of staying this litigation pending the disposition of *Jones* and *Brazil*.

21                                  **CONCLUSION**

22          For the foregoing reasons, Flowers respectfully requests that the Court dismiss this case

23  with prejudice and in its entirety.  Alternatively, if any claims and allegations survive dismissal,

24  Flowers respectfully requests that the Court exercise its discretion to stay the case pending the

25  Ninth Circuit's resolution of *Jones v. ConAgra Foods, Inc.*, No. 14-16327 (9th Cir. filed July 14,

26  2014) and *Brazil v. Dole Packaged Foods*, No. 14-17480 (9th Cir. filed Dec. 17, 2014).

27

28

1   Dated:  August 6, 2015                         CROWELL & MORING, LLP

2                               By:    /s/ Joel D. Smith

3                                    Joel D. Smith
                                Attorneys for Defendant
4                                Flowers Bakeries, LLC

6   DCACTIVE-32624120.3

25

Case No. 5:14-cv-05189

MOTION TO DISMISS FIRST AMENDED COMPLAINT