1   ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
    anthony@counselonegroup.com
2   ALEXANDRIA R. KACHADOORIAN, Cal. Bar No. 240601
    alexandria@counselonegroup.com
3   JUSTIN KACHADOORIAN, Cal. Bar No. 260356
    justin@counselonegroup.com
4   COUNSELONE, P.C.
5   9301 Wilshire Boulevard, Suite 650
    Beverly Hills, California 90210
6   Telephone: (310) 277-9945
7   Facsimile: (424) 277-3727

8   Attorneys for Plaintiff KELLY ROMERO,
9   on behalf of herself and others similarly situated

10

11                    UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

13

14   KELLY ROMERO, on behalf of herself and    )   Case No. 5:14-cv-05189
15   others similarly situated,                 )
                                                 )
16                    Plaintiff,                 )   **PLAINTIFF'S RESPONSE IN**
                                                 )   **OPPOSITION TO DEFENDANT'S**
17             v.                                )   **MOTION TO DISMISS OR STAY**
                                                 )   **PLAINTIFF'S FIRST AMENDED**
18   FLOWERS BAKERIES, LLC dba                  )   **COMPLAINT**
     NATURE'S OWN, a Georgia limited liability  )
19   company,                                    )
                                                 )
20                                               )
                      Defendant.                 )
21                                               )   Date:      December 3, 2015
                                                 )   Time:      9:00 a.m.
22                                               )   Judge:     Hon. Beth Labson Freeman
                                                 )
23                                               )
                                                 )
24   _____  )

25

26

27

28

## Table of Contents

INTRODUCTION ................................................................................................................. 1

FACTS AND PROCEDURAL POSTURE ............................................................................ 2

ARGUMENT ........................................................................................................................ 3

I.   The Amended Complaint Addresses Each of the Points Raised by the Court in Its Ruling on Defendant's Motion to Dismiss the Original Complaint .................................................... 3

A. Plaintiff Has Pled Her Claims with Particularity Pursuant to the Court's Order .................. 3

1. Misbranded No Artificial Preservatives or Colors Products Class ................................. 3

2. Misbranded Wheat Products Class .................................................................................. 4

3. Misbranded All-Natural Products Class .......................................................................... 5

B. Plaintiff Has Properly Alleged Standing with Respect to the Unpurchased Products Pursuant to the Court's Order .................................................................................................... 5

II.   The Court Should Reject Defendant's Recycled Arguments for Dismissal. ........................ 6

A. The FAC States a Claim with Regard to the Misbranded Wheat Products ......................... 6

1. Defendant Already Litigated—and Lost—Its Arguments Regarding Preemption, Reliance, and the Reasonable-Consumer Standard. ............................................................ 6

2. Plaintiff Alleges Reasonable Reliance on Defendant's Wheat Claims. ........................ 10

3. Plaintiff Has Alleged That Reasonable Consumers Would Be Misled by Defendant's Wheat Representations. ...................................................................................................... 14

4. Plaintiff's Wheat Claims Are Not Preempted. .............................................................. 15

B. The FAC States a Claim with Regard to the Misbranded No Artificial Preservatives and Colors Products Class and the Misbranded All Natural Products Class. ............................ 18

1. Plaintiff Has Satisfied Rule 9(b). .................................................................................. 18

2. Plaintiff Has Standing to Assert Claims on Behalf of Consumers of Unpurchased Products. ............................................................................................................................ 20

3. Defendant's Argument That Plaintiff Has Not Alleged Reliance with Regard to the Misbranded All-Natural Products Is Ridiculous. .............................................................. 21

III.   Defendant's Choice-of-Law Argument Is Premature. ....................................................... 22

IV.   The Court Should Not Stay This Action Pending *Brazil* and *Jones* ................................. 23

CONCLUSION .................................................................................................................... 25

1

### Table of Authorities

2

<u>**Cases**</u>                                                                                      <u>**Page(s)**</u>

3

*Ackerman v. Coca-Cola Co.,*
4          2010 WL2925955 (E.D.N.Y. Jul. 21, 2010)……………………………...……12

5

*Anderson v. The Hain Celestial Grp., Inc.,*
6          2015 WL 1744279 (N.D. Cal. Apr. 8, 2015)……………………….……………….……10

7

*Ang v. Bimbo Bakeries USA, Inc.,*
8          2013 WL5407039 (N.D. Cal. Sept. 25, 2013)……………….……………....…22

9

*Ang v. Bimbo Bakeries US, Inc.,*
          2014 WL 1024182 (N.D. Cal. Mar. 13, 2014)…………………………………….…21
10

11

*Ang v. Whitewave Foods Company,*
          2013 WL 6492353 (N.D. Cal. Dec. 10, 2013)……………………………………….15
12

13

*Appling v. State Farm Mut. Auto. Ins. Co.,*
          340 F.3d 769 (9th Cir. 2003)…………………………………………………….7
14

15

*Armstrong v. Davis,*
          275 F.3d 849 (9th Cir. 2001)……………………………………………….20
16

17

*Astiana v. Ben & Jerry's Homemade, Inc.,*
          2011 WL 2111796 (N.D. Cal. May 26, 2011)…………………….……………..…18, 19
18

19

*ASUSTek Computer Inc. v. Ricoh, Co.,*
          2007 WL 4190689 (N.D. Cal. 2007)…………………………………………….……23
20

21

*Bell Atl. Corp. v. Twombly,*
          550 U.S. 544 (2007)……………………………………………………....…….19
22

23

*Brazil v. Dole Food Company, Inc.,*
          2013 WL 5312418 (N.D. Cal. Sept. 23, 2013)………………………………….....…20
24

25

*Brazil v. Dole Packaged Foods, LLC,*
          2014 WL 6901867 (N.D. Cal. Dec. 8, 2014)………………………………….....…23, 24, 25
26

27

*Brazil v. Dole Packaged Foods,*
          No. 14-17480 (9th Cir. Dec. 17, 2014)…………………………………..…….……….1
28

*Bronco Wine Co. v. Jolly,*
          129 Cal.App.4th 988 (2005)………………………………………………..………….12

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Plaintiff's First Amended Complaint
Case No. 5:14-CV-05189

*Brown v. Hain Celestial, Inc.*,
913 F.Supp.2d 881 (N.D. Cal. 2012)………………………………………..……12

*Bruton v. Gerber Products Co.*,
961 F. Supp. 2d 1062 (N.D. Cal. 2013)………………………………………….....16

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962)………………………………………………………….23

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal. App.4th 663 (2006)……………………………………………………..…14

*Colucci v. ZonePerfect Nutrition Co.*,
2012 WL 6737800 (N.D. Cal. Dec. 28, 2012)…………………………………..…21

*Davis v. Davis*,
663 A.2d 499 (D.C. Ct. App. 1995)…………………………………………......…7, 8

*Dependable Highway Exp. v. Navigators Ins. Co.*,
498 F. 3d 1059 (9th Cir. 2007)……………………………………………………….25

*Farm Raised Salmon Cases*,
42 Cal.4th 1077 (2008)………………………………………………....………16

*Forcellati v. Hyland's*,
876 F.Supp. 2d 1155 (C.D. Cal. 2012)……………………………………….....22, 23

*FTC v. Brown & Williamson Tobacco Corp.*,
778 F.2d 35 (D.C.Cir.1985)……………………………………………………….13

*FTC v. Cyberspace.Com LLC*,
453 F.3d 1196 (9th Cir. 2006)…………………………………………………….13

*Gitson v. Trader Joe's Co.*,
2013 WL5513711 (N.D. Cal. Oct. 4, 2013)…………………………….……......17

*Gitson v. Trader Joe's Co.*,
2014 WL1048640 (N.D. Cal. Mar. 14, 2014)……………………………....…….22

*Goldemberg v. Johnson & Johnson Consumer Co., Inc.*,
2014 WL1285137 (S.D.N.Y. Mar. 27, 2014)…………………………………….12

*Guido v. L'Oreal, USA, Inc.*,
2013 WL 3353857 (C.D. Cal. Jul. 1, 2013)……………………………....……14

-iii-

*Ham v. Hain Celestial Grp., Inc.*,
  2014 WL 4965959 (N.D. Cal. Oct. 3, 2014)……………………………………..18

*Henderson v. J.M. Smucker Co.*,
  2011 WL 1050637 (C.D. Cal. Mar. 17, 2011)……………………………...……10

*Hendricks v. StarKist Co.*,
  30 F. Supp. 3d 917 (N.D. Cal. 2014)……………………………………………..17

*In re Clorox Consumer Litig.*,
  894 F. Supp. 2d 1224 (N.D. Cal. 2012)…………………………………………..22

*In re ConAgra Foods, Inc.*,
  2015 WL 1062756 (C.D. Cal. Feb 23, 2015)………………………………….2, 24

*In re DirecTV Early Cancellation Litig.*,
  738 F. Supp. 2d 1062 (C.D. Cal. 2010)……………………………………...……9

*Janney v. Mills*,
  944 F.Supp.2d 806 (N.D. Cal. May 10, 2013)…………………………………..20

*JMP Securities LLP v. Altair Nanotechnologies Inc.*,
  880 F. Supp. 2d 1029 (N.D. Cal. 2012)…………………………….…........……23

*Jones v. ConAgra Foods, Inc.*,
  2014 WL 2702726 (N.D. Cal. Jun. 13, 2014)……………………………….....24, 25

*Jones v. ConAgra Foods, Inc.*,
  No. 14-16327 (9th Cir. July 14, 2014)………………………….…….............……1

*Jou v. Kimberly-Clark Corp.*,
  2013 WL 6491158 (N.D. Cal. Dec. 10, 2013)………………………….…..12, 13

*Kasky v. Nike, Inc.*,
  27 Cal.4th 939 (2002)………………………….……………...........……10

*Khasin v. Hersey Co.*,
  2012 WL5471153 (N.D. Cal. Nov. 9, 2012)……………………………………..18

*Kosta v. Del Monte Corp.*,
  2013 WL 2147413 (N.D. Cal. May 15, 2013)…………………………………..18

*Landis v. North American Co.*,
  299 U.S. 248 (1936)………………………….………………...……23, 25

-iv-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lanovaz v. Twinings N. Am., Inc.*,
  2013 WL 2285221 (N.D. Cal. May 23, 2015)……………………………………………21

*Leonhart v. Nature's Path*,
  2014 WL 1338161 (N.D. Cal. Mar. 31, 2014)………………………………………17

*Leonhart v. Nature's Path Foods, Inc.*,
  2015 WL 3548212 (N.D. Cal. Jun. 5, 2014)…………………………………....25

*McKinniss v. Sunny Delight Bevs. Co.*,
  2007 WL 4766525 (C.D. Cal. Sept. 4, 2007)…………………………………..15

*Miller v. Ghirardelli Chocolate Co.*,
  912 F.Supp.2d 861 (N.D. Cal. 2012)………………………………………....12

*Mills v. Giant of Maryland, LLC*,
  441 F. Supp. 2d 104 (D.D.C. 2006)…………………………………………17

*Morales v. Unilever United States, Inc.*,
  2014 WL1389613 (E.D. Cal. Apr. 9, 2014)………………………….……….10, 12

*Morgan v. Wallaby Yogurt Co., Inc.*,
  2013 WL 5514563 (N.D. Cal. Oct. 4, 2013)………………………………...17

*Morgan v. Wallaby Yogurt Co., Inc.*,
  2014 WL 1017879 (N.D. Cal. 2014)………………………………………...19

*Ogden v. Bumble Bee Foods, LLC*,
  292 F.R.D. 620 (N.D. Cal. 2013)…………………………………………19

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979)……………..………………………..…………..7

*People v. JTH Tax, Inc.*,
  212 Cal.App.4th 1219 (2013)………………………………………….…13

*Perron v. Hewlett-Packard Co.*,
  2011 WL 1344221 (N.D. Cal. Apr. 8, 2011)…………………………….....23

*Readylink Healthcare, Inc. v. State Compensation Ins. Fund*,
  754 F.3d 754 (9th Cir. 2014)………………..……………..……..6, 7

*Red v. Kraft Foods, Inc.*,
  2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)……………………………….11

-v-

*Rooney v. Cumberland Packing Corp.*,
  2012 WL 1512106 (S.D. Cal. April 16, 2012)……………………………………………12

*Rosen v. Unilever U.S., Inc.*,
  2010 WL 4807100 (N.D. Cal. May 3, 2010)……………………….………………...……15

*Samet v. Procter & Gamble Co.*,
  2013 WL 3124647 (N.D. Cal. June 18, 2013)……………………………………………13

*Smajlaj v. Campbell Soup Co.*,
  782 F. Supp.2d 84 (D.N.J. 2011)………………………………………………….…13

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997)…………………………………………...…………..13

*The National Consumers League v. Flowers Bakeries, LLC*,
  Case No. 2013-CA-006550 B, District of Columbia Superior Court…………...……6, 7, 8, 9

*Thomas v. Costco Wholesale Corp.*,
  2013 WL 1435292 (N.D. Cal. Apr. 9, 2013)……………………………………………....20

*Valencia v. Volkswagen*,
  2015 WL 4760707 (N.D. Cal. 2015)……………………………………………...……22

*Victor v. R.C. Bigelow, Inc.*,
  2014 WL 1028881 (N.D. Cal. Mar. 14, 2014)……………………………………………17

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013)………………………………………...…..15

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008)……………………………………………...…10, 12

*Yong v. INS*,
  208 F. 3d 1116 (9th Cir. 2000)………………………………………………...…..23

**Statutes**

Bus. & Prof. Code §§ 17200, et seq. ("UCL")……………………………………...……15

Bus. & Prof. Code §§ 17500, et seq. ("FAL")……………………………………………15, 16

Cal. Civ. Code §§ 1750, et seq. ("CLRA")…………………………………………3, 16, 22

Cal. Civ. Code § 1780(d)……………………………………………………………….……22

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Plaintiff's First Amended Complaint
Case No. 5:14-CV-05189

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rules & Regulations**

21 CFR § 136.180(b)…………………………………………………………..14

21 USC § 301, et seq. ("FDCA")…………………………………….………16, 17

28 U.S.C. § 1738…………………………………………………………..…………7

District of Columbia Rule of Civil Procedure 9(b)…………………………….……..7

District of Columbia Rule of Civil Procedure 12(b)(6)……………………………….10

Fed. R. Civ. P. 9(b)…………………………………………..……..……..7, 18

Fed. R. Civ. P. 12(b)(6)……………………………………………….………..10

**Other Authorities**

Justus, Michael.  "Your Trademark Could Be a False Advertisement,"
     Law 360, Jun. 2, 2015……………………………………….…………..…..10

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Plaintiff's First Amended Complaint
Case No. 5:14-CV-05189

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Defendant is barred from re-litigating its preemption, reliance, and the reasonable-consumer arguments when it has already raised and lost those arguments in similar litigation over its so-called wheat bread.

2. Whether Plaintiff has pled her claims with particularity where she identifies three specific classes of products, describes the labeling representations pertaining to each class, and explains why those representations are false and deceptive.

3. Whether Plaintiff has pled reasonable reliance with regard to Defendant's Honey Wheat and Whitewheat breads where the labels taken as a whole—the product names, taglines, text, and images—connote that these breads contain significant amounts of whole grains when they do not, and whether reasonable consumers would be similarly misled.

4. Whether Plaintiff has standing to assert claims on behalf of consumers who purchased bread products with the same misrepresentations and the same contested ingredients.

5. Whether Plaintiff has pled reliance with regard to Defendant's all-natural breads where she specifically alleges what she understood Defendant's all-natural claim to mean and further alleges that she would not have purchased Defendant's all-natural breads or paid as much for them had she known the truth.

6. Whether it is premature to address choice of law on a motion to dismiss.

7. Whether this action should be stayed for an indefinite period pending appeals in two other actions where the Ninth Circuit's opinions will not affect the course of this litigation.

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Plaintiff's First Amended Complaint
Case No. 5:14-CV-05189

1

**INTRODUCTION**

At the hearing on Defendant Flowers Bakeries, LLC's ("Defendant") motion to dismiss the original complaint, this Court observed that the deficiencies in the pleading could likely be cured. After diligently addressing each of the Court's points, Plaintiff Kelly Romero ("Plaintiff") filed her First Amended Complaint. In response, Defendant recycles its former arguments and again moves to dismiss the complaint. The Court should deny this motion.

The FAC alleges separate and distinct facts as to each of the three classes, identifies which products Plaintiff purchased, identifies which products are included in each class and how they are substantially similar to the products purchased by Plaintiff, and explains what Plaintiff understood by the challenged representations, why that understanding is reasonable, and how Defendant's labeling representations were false.

In particular, Plaintiff alleges that the labels for specifically identified bread products are deceptive because although they claim to contain "no artificial preservatives, colors and flavors," the breads do actually contain artificial preservatives or artificial colors—namely, a highly controversial chemical called azodicarbonamide (ADA).[1] Plaintiff further alleges that a different, also specifically identified class of bread products was mislabeled and therefore deceptive to consumers because although these products claimed to be "All Natural" they actually contained specifically identified artificial, synthetic, or highly processed ingredients. Finally, Plaintiff alleges that a third class of bread products is mislabeled because the labels imply that the products contain significant amounts of whole wheat when they do not.

Defendant's motion to stay the action pending the resolution of the appeals in *Jones v. ConAgra Foods, Inc.*, No. 14-16327 (9th Cir. filed July 14, 2014) and *Brazil v. Dole Packaged Foods*, No. 14-17480 (9th Cir. filed Dec. 17, 2014) should also be denied. The plaintiffs in both of those cases submitted virtually no actual evidence supporting reliance or damages.

---

[1]  Defendant's whimsical abbreviation of the word (i.e., AZO) finds no support in scientific literature—which refer to azodicarbonamide as ADA—but is little more than a puerile attempt to poke fun at and belittle Plaintiff and trivialize the serious issues she raises. The Court should reject Defendant's proposed usage.

-1-

1  Here Plaintiff intends to introduce evidence sufficient to prove classwide reliance and damages

2  even assuming the district courts' rulings in *Jones* and *Brazil* are upheld on appeal.  Plaintiff's

3  evidentiary showing would be similar to the one proffered in *In re ConAgra Foods, Inc.*, 2015

4  WL 1062756 (C.D. Cal. Feb. 23, 2015) (certifying "All Natural" consumer class action where

5  plaintiffs' evidence included conjoint and hedonic regression analyses), absent promulgation of

6  a more lenient standard by the Ninth Circuit.

7         Accordingly, Defendant's motions to dismiss or stay should be denied.   In the

8  alternative, leave to amend should be granted

9                              **FACTS AND PROCEDURAL POSTURE**

10        The FAC alleges three classes of consumers based on the products they purchased, the

11  labeling representations to which they were exposed, and the ingredients contained:

12        (1)    **Misbranded No Artificial Preservatives or Colors Class:**  This class consists

13  of all consumers who purchased one or more of Defendant's products claiming to contain no

14  artificial preservatives or colors but which contained one or more of the chemical ingredients

15  azodicarbonamide, citric acid, sodium citrate, and/or ascorbic acid.  (FAC ¶¶ 11-12.)  A list of

16  these products appears in paragraph 11 of the FAC.  Plaintiff alleges that the inclusion of the

17  identified ingredients is inconsistent with Defendant's representation that the products have no

18  artificial preservatives or colors because each is an artificial preservative or color.  (*Id.* at ¶¶ 15,

19  21-26, 28.)  Plaintiff alleges that she and reasonable consumers would not expect products

20  claiming not to contain artificial preservatives or flavors to include these ingredients and

21  therefore would not have bought them or paid as much for them.  (*Id.* at ¶¶ 14, 15, 28.)

22        (2)    **Misbranded Wheat Products**:   This class consists of all consumers who

23  purchased one or more of Defendant's "wheat" breads.  A list of these products appears in

24  paragraph 63 of the FAC.  Plaintiff alleges that these breads are deceptively labeled to imply

25  they contain significant amounts whole wheat when they do not.  (FAC ¶¶ 64, 88.)  Taken as a

26  whole, the labels convey this message through the use of the word "wheat" in the product

27  names (e.g., Honey Wheat, Whitewheat) and representations that the wheat used in the breads

28  is "healthy" or "wholesome," terms which consumers understand refer to whole grains.  (*Id.* at

-2-

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Plaintiff's First Amended Complaint
Case No. 5:14-CV-05189

1    ¶¶ 65-87.)  These representations are material to consumers like Plaintiff, who was induced to

2    buy the products or pay more for them because of the labeling representations.  (*Id.* at ¶ 89.)

3          (3)     **Misbranded All-Natural Products**:  This class consists of all consumers who

4    purchased one or more of Defendant's breads with an "All Natural" or "100% Natural" label

5    but contained specified artificial ingredients.  (FAC ¶¶ 32-54.)  A list of these products appears

6    in paragraph 54 of the FAC.  The FAC describes why consumers like Plaintiff would not

7    reasonably understand the contested ingredients as being natural, and alleges that Plaintiff

8    purchased the products in reliance on the natural claims made on the labels.  (FAC ¶ 34-53.)

9                                  **ARGUMENT**

10   **I.  The Amended Complaint Addresses Each of the Points Raised by the Court in Its**

11   **Ruling on Defendant's Motion to Dismiss the Original Complaint.**

12         Plaintiff's amended complaint tracks the Court's May 6, 2015 order granting in part and

13   denying in part Defendant's motion to dismiss the complaint.  Following the Court's guidance,

14   Plaintiff removed entirely all claims for injunctive relief and breach of contract, complied with

15   the CLRA procedural prerequisites to the letter, and, apropos of the instant motion, added

16   numerous allegations to respond to the Court's points regarding particularity and standing to

17   assert claims on behalf of consumers of products Plaintiff did not purchase.

18   **A.  Plaintiff Has Pled Her Claims with Particularity Pursuant to the Court's Order.**

19         In its May 6, 2015 order, this Court concluded that Plaintiff had not pled her claims

20   with particularity because "the Court cannot readily discern what specific representations she

21   perceived on each purchased product, what she interpreted those representations to mean, and

22   how those representations were false."  (Order 6:10-12.)  The FAC addresses these points with

23   regard to each of the three alleged classes.

24                 **1.  Misbranded No Artificial Preservatives or Colors Products Class**

25         ***What Plaintiff Perceived.***  With regard to the Misbranded No Artificial Preservatives or

26   Colors Class, Plaintiff has alleged that she purchased Nature's Own Honey Wheat Bread,

27   Nature's Own Whitewheat® Bread, Nature's Own 100% Whole Wheat Bread, and Nature's

28   Own 100% Whole Wheat with Honey Bread, and on each of these statements she alleges that

-3-

she perceived the statement "no artificial preservatives, colors and flavors" on the front and side display panels, along with the "Nature's Own" brand name next to images depicting stalks of wheat and pots of honey.  (FAC ¶¶ 12, 13.)

***What She Interpreted These Statements to Mean.***  Plaintiff alleges that she understood that "no artificial preservatives, colors and flavors" representations and images to mean that the product contained no artificial preservatives, colors, or flavors.  (FAC ¶ 13.)  Specifically, "Plaintiff understood 'no artificial preservatives' to mean that the products did not contain any manmade substances such as those chemically synthesized in a laboratory, as opposed to those actually found in nature, the purpose of which was to protect against deterioration or discoloration of the product.  She understood 'no artificial colors' to mean that the products contained no substances intended to impart color to the product." (*Id.*)

***How These Representations Were False.***  Finally, Plaintiff alleges that these representations were false and "deceived Plaintiff and other reasonable consumers because during the class period they actually contained artificial preservatives and colors, namely, azodicarbonamide, also known as the 'yoga mat' chemical." (*Id.* at ¶ 15; *see also* ¶¶ 16-28.)

### 2.   Misbranded Wheat Products Class

***What Plaintiff Perceived.***   The FAC alleges that Plaintiff purchased Defendant's Nature's Own Honey Wheat and Whitewheat breads during the class period.  (*Id.* at ¶ 62.)  Plaintiff also alleges that she read the product names referencing wheat and read that "Nature's Own Honey Wheat offers the perfect blend of wholesome wheat and a touch of sweet honey. A slice or two of this bread each day is a delicious way to add healthy grains to your diet[]" and saw the reference to the USDA's Dietary Guidelines for Americans, which promotes "a healthy diet." (*Id.* at ¶¶ 85, 89.)

***What She Interpreted These Statements to Mean.***  Plaintiff alleges that she understood these statements to mean that the breads contained a significant amount of whole grain.  (*Id.* at ¶¶ 75, 89.)   This understanding is reasonable because it is consistent with the federal regulations, which regulate the appropriate "*name* of the food" as either simply "bread," "white bread," or "enriched bread" (*id.* at ¶¶ 65-69; emphasis added); consumers' understanding of the

-4-

term "wheat bread" (*id.* at ¶¶ 70-73); consumers' recognition that white wheat or albino wheat is different from refined white flour (*id.* at ¶¶ 83, 84); consumers' shopping experience (*id.* at ¶¶ 73, 74, 81); the absence of any legitimate reason to highlight the existence of wheat in the products, all of which must contain wheat (*id.* at ¶¶ 73-80); labeling statements explicitly claiming the wheat used is "healthy" and "wholesome" (*id.* at ¶¶ 82-86); and reference to the USDA's *Dietary Guidelines*, which define healthy grains as whole grains (*id.* at ¶¶ 85, 87).

***How These Representations Were False.***  Plaintiff alleges that Defendant's implication that the Misbranded Bread Products contain significant amounts of whole wheat is false because these products do not contain substantial amounts of whole wheat flour.  (*Id.* at ¶ 88.)

### 3.   Misbranded All-Natural Products Class

***What Plaintiff Perceived.***  Plaintiff alleges that she purchased Nature's Own All Natural 100% Whole Wheat and Nature's Own All Natural Honey Wheat and saw the statements "All Natural" and "100% Natural," which appeared on the front label proximate to the name of the breads.  (*Id.* at ¶¶ 32, 33.)

***What She Interpreted These Statements to Mean.***  Plaintiff also alleged what she understands these terms to mean—containing only ingredients that are "produced or existing in nature; not artificial or manufactured[]"—and further alleges that "she believed that the "All Natural" claim meant that she was purchasing a product that was free of artificial, synthetic, or highly processed ingredients." (*Id.* at ¶ 34.)

***How These Representations Were False.***  Plaintiff alleges that "Defendant's 'All Natural' representations are false and deceptive because its bread products actually contain a host of unnatural ingredients."  (*Id.* at ¶ 45.)  Paragraphs 46 through 53 of the FAC describe why the identified ingredients are not natural.

### B.   Plaintiff Has Properly Alleged Standing with Respect to the Unpurchased Products Pursuant to the Court's Order.

In the Court's May 6, 2015 order, the Court ruled that Plaintiff did not have standing to assert claims for products she did not purchase with regard to the ADA and All-Natural classes. (Order 7:22-23.)  "In particular, Plaintiff does not allege which among the four products she

-5-

1   purchased contained ADA.  Similarly, it is not clear which (if any) of the four products that

2   Plaintiff's purchased was labeled 'all natural.'  Absent any allegations that Plaintiff actually

3   purchased bread within the proposed ADA and All Natural classes, Plaintiff cannot represent

4   absent class members that purchased products within those classes."  (*Id.* at 8:13-17.)

5          The FAC has corrected this deficiency.  Plaintiff alleges which of the products she

6   purchased contained ADA (and other artificial preservatives and colors), *see* FAC ¶¶ 13, 15,

7   28, and which were labeled "All Natural" or "100% Natural."  (*Id.* at ¶¶ 33.)  She also alleges

8   that all of the Misbranded "No Artificial Preservatives and Colors" Products bear the same

9   alleged misrepresentations, again pursuant to the Court's directive.  (Order 8:17-19.)

10          Plaintiff has standing to assert claims not only as to the specifically identified products

11   she purchased but also as to substantially similar products.  As the Court observed, all of the

12   products are of the same kind (i.e., bread), all have the same labeling representations as the

13   purchased products, and all have the same contested ingredients or, with regard to the

14   Mislabeled Wheat Products, absence of a key ingredient.  (Order 8:3-5.)

15   **II. The Court Should Reject Defendant's Recycled Arguments for Dismissal.**

16          Notwithstanding Plaintiff's sedulous compliance with the Court's directives, Defendant

17   levels many of the same arguments at the FAC.  The additional clarity afforded by amendment

18   demonstrates all the more clearly that Defendant's arguments lack merit.

19          **A. The FAC States a Claim with Regard to the Misbranded Wheat Products.**

20                **1.   Defendant Already Litigated—and Lost—Its Arguments Regarding**

21                **Preemption, Reliance, and the Reasonable-Consumer Standard.**

22          "Issue preclusion bars successive litigation of an issue of fact or law actually litigated

23   and resolved in a valid court determination essential to the prior judgment, even if the issue

24   recurs in the context of a different claim."  *Readylink Healthcare, Inc. v. State Compensation*

25   *Ins. Fund*, 754 F.3d 754, 760 (9th Cir.  2014).

26          Issue preclusion bars Defendant's arguments regarding preemption, reliance, and the

27   reasonable consumer standard.  (Mot., pp. 8-14.)  In a similar putative class action, *The*

28   *National Consumers League v. Flowers Bakeries, LLC*, Case No. 2013-CA-006550 B, District

-6-

of Columbia Superior Court, Defendant faced nearly identical allegations regarding its use of wheat representations on its bread products, the same representations and products that are at issue here.  Indeed, the instant complaint draws largely upon the complaint in the NCL action. Defendant filed a motion to dismiss the plaintiff's first amended complaint in the NCL action. (*See* Pl's RJN, filed herewith, Ex. C.)  In its motion to dismiss, Defendant's core challenge to the complaint, to which the parties devoted many pages of briefing, was the same preemption assertions that Defendant makes here.   (*Id.* at pp. 8-12.)    Another key component of Defendant's motion to dismiss and on which the parties spent significant briefing was a challenge to the plaintiff's reliance on Defendant's representations and whether it satisfied that jurisdiction's fraud standard, analogous to Federal Rule of Civil Procedure 9(b)'s standard, and the reasonable consumer standard.  (RJN, Ex. C, pp. 12-16.)[2]

Plaintiff may use the ruling in the NCL action to preclude re-litigation by Defendant of preemption, reliance, and reasonable consumer issues in this action.   "Offensive non-mutual collateral estoppel is a version of the doctrine that arises when a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost against another plaintiff."  *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, (1979)).  "Offensive non-mutual collateral estoppel applies where (1) the issue sought to be litigated is sufficiently similar to the issue presented in an earlier proceeding and sufficiently material in both actions to justify invoking the doctrine, (2) the issue was actually litigated in the first case, and (3) the issue was necessarily decided in the first case."  *Id.*[3]

---

[2] *Cf.* District of Columbia Rule of Civil Procedure 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."); *with* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

[3] The District of Columbia courts would similarly give preclusive effect to the order here.  *See Readylink*, 754 F. 3d at 760) ("We determine the preclusive effect of a state court judgment by applying that state's preclusion principles."); 28 U.S.C. § 1738.  The District of Columbia standard and California's standard are nearly identical.  *See*, *e.g.*, *Davis v. Davis*, 663 A.2d 499, 501 (D.C. Ct. App. 1995) ("Collateral estoppel, or issue preclusion, renders conclusive in the same or a

Here, each element of issue preclusion is satisfied.  First, Defendant had a full and fair opportunity to litigate preemption, reliance, and the reasonable-consumer standard in the NCL action.  Just as it does here, Defendant raised the preemption defense in its motion to dismiss the first amended complaint in National Consumers Union.  (*See* RJN, Ex. C, pp. 8-16; Ex. E, pp. 6-10.)  Defendant made the identical legal and factual arguments in its briefs there that it makes here.  (*Id.*)  Defendant, as the moving party, had the opportunity to devote as much attention as it desired to the issue.  It also had the incentive to do so because it faced and costly and publicly embarrassing private attorney general action.

Second, Defendant's preemption, reliance, and the reasonable-consumer arguments actually was litigated and decided in the NCL action.  (*Id.*; *see also* RJN, Ex. D, pp. 1-7; Ex. E. pp. 6-7; Ex. F, p. 1.)  Again, Defendant raised these arguments by way of motion to dismiss the plaintiff's first amended complaint, and it thoroughly briefed the issues.  *Id.*  The D.C. court heard oral argument following the close of briefing and issued a written order determining the preemption issue against Defendant.  Third, the issues were necessarily decided in the NCL action.  The D.C. court was required to make a determination of Defendant's motion to dismiss the NCL's complaint.  In determining whether dismissal was appropriate, the D.C. court addressed Defendant's assertion that preemption required the complaint's dismissal and its

---

subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.").  Here, the preemption, reliance, and reasonable-consumer issues were fully briefed and determined on Defendant's motion to dismiss; the litigation involved the same Defendant as this action against a similar class of consumers alleging the same claims as here; the determination of these issues was essential to the order, because in deciding whether to dismiss the NCL complaint or not, the court was faced with having to determine Defendant's preemption, reliance, and reasonable-consumer arguments in its motion to dismiss there; and the NCL action has resulted in a final  conclusion.  Following the loss of its arguments on the motion to dismiss, Defendant chose to forego any appeal or further litigation and to voluntarily settle the action, resulting in its dismissal.  Defendant could have appealed following trial or summary judgment, or taken an interlocutory appeal but chose to terminate the case through settlement.  *See Davis*, *supra*, 663 A.2d at 502 (holding that although "order denying the motion" was not final in this sense because it left other issues unresolved, "when the other requirements for collateral estoppel have been established, a party who voluntarily dismisses the action and thereby prevents a previous determination of an issue from becoming embodied in a valid, final judgment on the merits may be estopped from re-litigating that issue").

1   argument that a reasonable consumer would not be deceived by its wheat claims.  In making its

2   decision, the D.C. court issued an order on Defendant's motion on dismiss foreclosing its

3   pursuit of the preemption defense and ruled in favor of the plaintiff with regard to Defendant's

4   reliance and reasonable-consumer arguments.  (*See* RJN, Ex. G.)  Fourth, Defendant Flowers

5   Bakeries, LLC was the defendant in the NCL action.

6       In *In re DirecTV Early Cancellation Litig*., 738 F. Supp. 2d 1062, 1078 (C.D. Cal.

7   2010) ("*DirecTV*") the court found the defendant was precluded from re-litigating an issue

8   decided in a previous action.  There the defendant had a "full and fair opportunity to litigate the

9   identical issue" prior class litigation where "out-of-state plaintiffs sought to apply California

10  law to the enforceability of the exact same Arbitration Clause and Class Action Waiver at issue

11  in this case." *Id.*  The "issue was fully litigated before Judge Cooper and again in the Ninth

12  Circuit." *Id.*  The issue "was decided in a final judgment," because this "element requires only

13  that 'the court's decision on the issue as to which preclusion is sought is final.'" *Id.*  The

14  plaintiffs raised preclusion promptly and did not "wait and see" the outcome of the prior case.

15  *Id.*  The defendant also "had every incentive to defend against the prior action with "full vigor"

16  because it "involved nationwide consumer class actions, giving DirecTV ample incentive to

17  aggressively litigate the cases."  There existed "no prior judgment from a California action"

18  issuing a contrary ruling on the issue.  The *DirecTV* court further held that "even if, as DirecTV

19  argues, the issues were not 'identical' because the [prior class action] plaintiffs came from

20  different states than the Plaintiffs here, the analysis comes to the same result." *Id.* at 1079-80.

21      Here, Plaintiff did not wait and see what would happen in the NCL action, as the motion

22  to dismiss there was resolved long before the motion to dismiss here.  Second, Defendant

23  vigorously litigated the issues in NCL action.  Defendant faced a private attorney general action

24  led by a national consumer organization regarding Defendant's purportedly wheat bread

25  products.  Faced with this action, Defendant had every reason to vigorously assert its defense.

26  But Defendant lost on its preemption, reliance, and reasonable-consumer arguments.  The D.C.

27  court's determination regarding the legal issue of preemption is therefore entitled to preclusive

28  effect.   Third, Plaintiff is unaware of inconsistent rulings regarding preemption, reliance, and

-9-

1   the reasonable-consumer standard regarding Defendant's bread products.  Finally, there are no

2   unique opportunities here because in both cases Defendant asserted the issues in a motion to

3   dismiss the complaint under analogous legal standards regarding pleading challenges.[4]

4        Notwithstanding the fact that Defendant is precluded from re-litigating its challenges to

5   Plaintiff's wheat claims, its arguments also fail for the reasons discussed below.

6        **2.   Plaintiff Alleges Reasonable Reliance on Defendant's Wheat Claims.**

7        The Court should resist Defendant's attempt to atomize the contested labeling

8   statements. (Mot. 9:11-14.)  Defendant's labels must be considered in context of the label as a

9   whole.  In *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939, fn. 3 (9th Cir. 2008), the court

10  held that although the statement that snacks are "nutritious," standing on its own, could

11  constitute puffery, the complaint should not have been dismissed because the statement

12  "contributes to the deceptive packaging as a whole." *See also Henderson v. J.M. Smucker Co.*,

13  2011 WL 1050637, *1, 4 (C.D. Cal. Mar. 17, 2011) ("even if certain statements would be non-

14  actionable on their own, where there are multiple statements at issue, we must consider the

15  packaging as a whole.").  Importantly, "[a] true representation can mislead a reasonable

16  consumer if it is actually misleading or has the capacity, likelihood or tendency to deceive or

17  confuse members of the public." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002).

18       Whether Plaintiff's reliance and that of other consumers is actually reasonable is a

19  factual question that cannot be decided at the pleading stage except in "rare" cases.  *See*

20  *Morales v. Unilever U.S., Inc.*, 2014 WL1389613, at *7 (E.D. Cal. Apr. 9, 2014) (citing cases);

21  *Anderson v. The Hain Celestial Grp., Inc.*, 2015 WL 1744279, at *7 (N.D. Cal. Apr. 8, 2015)

22  (reasonable reliance is "a question of fact incapable of resolution on a motion to dismiss").

23       Here, Defendant contends that Plaintiff's wheat allegations are too vague to support her

24  claim that the breads contained a significant amount of whole wheat, *see* Mot. 10:15-18, but

25  ───────────────

26  [4] *Cf.* District of Columbia Rule of Civil Procedure 12(b)(6) ("Every defense, in law or fact, to a claim for relief in any pleading … shall be asserted in the responsive pleading …, except that the

27  following defenses may at the option of the pleader be made by motion: … failure to state a claim upon which relief can be granted"), *with* Fed. R. Civ. P. 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading[.] ... But a party may assert the

28  following defenses by motion: … failure to state a claim upon which relief can be granted.").

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Plaintiff's First Amended Complaint
Case No. 5:14-CV-05189

1    just as in *Gerber* all of the labeling statements, taken as a whole, support that interpretation.

2    Plaintiff alleges that the only appropriate "name of the food" under the federal regulations is

3    "enriched bread" or simply "bread," *see* FAC ¶¶ 66-69, and because wheat is a legally required

4    ingredient in all breads, there would be no reason for Defendant to highlight the presence of

5    wheat in the product name other than to imply the presence of whole grains.  (*Id.* at ¶¶ 73-80.)

6    Plaintiff alleges that consumers understand the term "wheat bread" to contain a large or

7    significant amount of whole wheat and that this understanding is so prevalent that a standard

8    dictionary has recorded it as common usage.  (*Id.* at ¶¶ 71, 72.)

9         Moreover, the names given by Defendant to these breads appear alongside images of

10   stalks of wheat, not bags of refined flour, *see* FAC, Ex. A, B, and labeling statements claiming

11   the grains used in the product are "healthy" or "wholesome."  (*Id.* at ¶¶ 82-87.)  The entire

12   thrust of Defendant's labels is that the bread contains significant amounts of whole wheat.

13        Contrary to Defendant's suggestion, *see* Mot. 10:24-11:2, the labeling statements

14   invoking health and wholesomeness do not refer to the bread itself (although that would be

15   deceptive enough) but to the grains—"wholesome *wheat*," "healthy *grains*"—and the tagline

16   "Healthy White" always appears adjacent to, and thus modifies, Defendant's product name

17   "Whitewheat" so as to convey that the product contains "a different, healthier kind" of wheat.

18   (*Id.* at ¶¶ 83, 84.)  But the grains in Defendant's breads are not what consumers understanding

19   to be healthy or wholesome grains but merely refined white wheat flour.  (*Id.* at ¶¶ 55-59.)

20        The cases on which Defendant relies (Mem. 16:3-6, 13-23) say nothing about whether

21   reasonable consumers understand "wheat" in a product name to mean white or whole wheat.

22   *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3-4 (C.D. Cal. Oct. 25, 2012) is one of those

23   rare, odd-ball cases that was dismissed simply because it defied common sense.  The plaintiff

24   alleged that the product contained a large amount of real vegetables because the label stated

25   "made with real vegetables," but as the court concluded this interpretation strained credulity

26   because the product was—a box of crackers.  *Id.*  "[A] reasonable consumer will be familiar

27   with the fact of life that a cracker is not composed of primarily fresh vegetables."  *Id.*  Here, the

28   reasonable consumer knows that breads can contain whole grains, which they understand to be

1  healthy or wholesome grains.  (FAC ¶¶ 55-61.)  And in *Rooney v. Cumberland Packing Corp.*,

2  2012 WL 1512106 (S.D. Cal. April 16, 2012), the plaintiff failed to state a claim because

3  according to industry standards and the plaintiff's own definition, the sugar product at issue

4  actually was in fact "raw" cane sugar.  *Id.* at *4.  *See Jou v. Kimberly-Clark Corp.,* 2013 WL

5  6491158, at *8 (N.D. Cal. Dec. 10, 2013) (distinguishing *Rooney* on this basis).

6      This case is more akin to *Miller v. Ghirardelli Chocolate Co.*, 912 F.Supp.2d 861 (N.D.

7  Cal. 2012), where the court denied a motion to dismiss claims that the defendant misbranded it

8  products with the name "white chocolate" when they did not in fact contain white chocolate

9  under the federal regulations or common understanding of that term.   *Id.* at 864, 874.

10  Moreover, courts routinely hold that products names may be actionable where they falsely

11  imply or characterize product attributes.[5]

12      Defendant also argues that Plaintiff's understanding that the Mislabeled Wheat Products

13  contained significant amounts of whole wheat is unreasonable because some packages of bread

14  state "Enriched Bread" on the Honey Wheat and "Healthy White" on the Whitewheat.  (Mot.

15  11:3-4:4.)  The statement "Enriched Bread" appears, if at all, in small font—much smaller than

16  the name of the breads "Whitewheat" and "Honey Wheat"—and the words do not accompany

17  the name of the bread each time its appears on the product label.  (*See* FAC, Exs. A, B.)

18      Under California's consumer protection statutes the relevant standard is whether the

19  labels are likely to deceive the consuming public, not whether the statements they contain are

20  technically true or false.  *See Williams*, *supra*, 552 F.3d at 938.  Courts routinely hold that a

21  plaintiff states a claim where truthful information is suppressed or obscured.  *See id.* (holding

22  consumer could plausibly be deceived by misrepresentations notwithstanding disclosures made

---

23  [5] *Brown v. Hain Celestial, Inc.*, 913 F.Supp.2d 881, 895 (N.D. Cal. 2012) (denying motion to

24  dismiss where brand name "Avalon Organics" alleged deceptive); *Morales*, *supra*, 2014 WL

1389613, at *7 (same, where defendant used a derivative of "natural" in the brand name);

25  *Goldemberg v. Johnson & Johnson Consumer Co., Inc.*, 2014 WL1285137, at *9 (S.D.N.Y. Mar.

26  27, 2014) (same, where product contained synthetic ingredients despite brand name "Active

Naturals"); *Ackerman v. Coca-Cola Co.* (E.D.N.Y. Jul. 21, 2010), 2010 WL2925955, at *12-13, 16

27  (same, where brand name "vitaminwater" suggested that the product contained only vitamins and

water); *Bronco Wine Co. v. Jolly*, 129 Cal.App.4th 988, 1006 (2005) (geographical brand names

28  containing word "Napa" may be "inherently misleading").   *See also* Michael Justus, "Your

Trademark Could Be a False Advertisement," Law360, Jun. 2, 2015.

elsewhere); *Samet v. Procter & Gamble Co.*, 2013 WL 3124647, at *8 (N.D. Cal. June 18, 2013) ("[A] label could disclose all truthful information, but hide the most relevant information in infinitesimal print, and thus as a whole be misleading to the reader."); *Smajlaj*, *supra*, 782 F.Supp.2d. at 97, fn. 6 (finding that a footnote identifying reference food did not save the nutrient content claim from being deceptive); *Jou*, *supra*, 2013 WL 6491158, at *8-9.[6]

Here, reasonable consumers are likely to overlook the words "enriched bread" in light of the outsize product names or construe them as being consistent with the representations that the breads contain significant amounts of whole wheat.  Even less credible is Defendant's suggestion that its Whitewheat bread is correctly labeled because of the tagline "Healthy White." (Mot. 11:20-12:4.)  As alleged, this tagline always appears adjacent to and modifies the name Whitewheat, thus connoting that the bread is made from a healthier type of white called white wheat or albino wheat, which is lighter in texture and milder in flavor.  (FAC ¶¶ 83, 84.)  Nor does it make sense why a bread that Defendant contends is properly labeled "enriched bread" would also be labeled "white" bread, because under the regulations the bread must be labeled either one or the other but not both.  (*Id.* at ¶ 68 (quoting federal regulations).)  Finally, Defendant's assertion that Whitewheat bread "does not look anything like whole wheat breads[,]" *see* Mot. 11:20-23, is not borne out by the proffered exhibits, especially in light of the allegation that white wheat is a lighter-colored kind of whole wheat (*Id.* at ¶ 84.)

Finally, Defendant's argument that because Plaintiff also bought Defendant's 100% whole wheat bread she must have understood Honey Wheat and Whitewheat to mean refined white bread is ridiculous.  (*See* Mot. 12:5-10.)  It is reasonable for consumers like Plaintiff to understand that "wheat" bread contains a substantial amount of whole wheat, though perhaps not 100 percent.  This understanding is consistent with the federal regulations, which prohibit

---

[6] *See also People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1253 (affirming award of civil penalties for false advertising where mandatory disclaimers contained in these advertisements "were in a very small font" and were "plainly designed to be overlooked by consumers"); *FTC v. Cyberspace.Com LLC* (9th Cir. 2006) 453 F.3d 1196, 1200 (deception may not be sufficiently cured merely by the inclusion of disclaimers in small print); *Southland Sod Farms v. Stover Seed Co.* (9th Cir. 1997) 108 F.3d 1134, 1145 (finding disclaimer and literal truth insufficient to cure deceptive advertisement); *FTC v. Brown & Williamson Tobacco Corp.* (D.C.Cir.1985) 778 F.2d 35, 42-43 (finding ad deceptive even though fine print in the corner contained truthful information).

the term "whole wheat" in the product name if the bread contains anything other than whole wheat flour.  21 C.F.R. § 136.180(b).  In other words, a bread that contains some whole wheat flour and some enriched flour could never use the term "whole wheat" in the product name, but a reasonable consumer could understand the term "wheat" in the product name, especially in light of references elsewhere on the product labels to "wholesome wheat" and "healthy grains," to signify the presence of whole wheat flour.[7]  (FAC ¶¶ 71, 72.)  But Defendant's wheat bread contains little to no whole wheat.  (*Id.* at ¶ 88.)  Moreover, Plaintiff does not claim to be an expert on Nature's Own breads and does not expend energy thinking about the company's various lines of bread and various representations and what they may connote across labels when making a purchase.  Rather, like most consumers, Plaintiff makes purchases based on the products before her, so the proper question is whether the two product lines are mislabeled.

### 3.   Plaintiff Has Alleged That Reasonable Consumers Would Be Misled by Defendant's Wheat Representations.

To be a reasonable consumer one need not scrutinize the fine print on product labels before each purchase, as Defendant suggests.  (Mot. 12:24-13:3.)  Rather, the reasonable consumer is an "ordinary consumer acting reasonably under the circumstances who is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture."  *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 682.  The reasonable-consumer test is objective and focuses on the nature of the advertising and labeling, "not whether each and every class member would be deceived given their actual level of sophistication."  *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, *11 (C.D. Cal. Jul. 1, 2013).

Given the allegations of the FAC discussed above, Plaintiff's reliance on Defendant's wheat representations was reasonable, as no facts distinguish her from the average consumer.  To the contrary, the FAC specifically alleges that Plaintiff's purchasing habits, motivations, and understanding of the wheat representations are similar to those of consumers at large.

---

[7]  Defendant's supposition seems to be that reasonable consumers would expect bread containing some whole wheat to be labeled "whole wheat" though not "100% whole wheat."  But this supposition, which in any event would require an evidentiary determination not appropriate for a motion to dismiss, is foreclosed by the federal regulations, under which any use of the term "whole wheat" in the product name means 100 percent whole wheat.  21 C.F.R. § 136.180(b).

-14-

1   (FAC ¶¶ 55, 58-61, 71, 72, 84, 87.)   Thus Plaintiff has alleged facts showing that Defendant's

2   labels would have deceived the reasonable consumer.

3       The authority on which Defendant relies is inapposite.  In *Viggiano v. Hansen Natural*

4   *Corp.,* 944 F.Supp.2d 877, 892 n.39 (C.D. Cal. 2013), the court merely ruled that consumers

5   would not be deceived by a label stating "all natural flavors" when the product in fact contained

6   no artificial *flavors* as defined by the federal regulations but only artificial *ingredients*.  And in

7   *McKinniss v. Sunny Delight Bevs. Co.*, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007), the court

8   found that the plaintiffs could not state a claim because "the depiction of fruit on a product

9   label is not a specific affirmation that a product contains *any fruit at all*.  FDA regulations

10  permit illustrations of fruit on product labels to indicate that product's 'characterizing flavor,'

11  even where the product contains no ingredients derived from the depicted fruit."  *Id.* at *4.

12      Even less apposite is *Ang v. Whitewave Foods Company*, 2013 WL 6492353 (N.D. Cal.

13  Dec. 10, 2013), where the court concluded that reasonable consumers would not mistake

14  soymilk or almond milk with dairy milk from a cow because "[t]he first words in the products'

15  names should be obvious enough to even the least discerning of consumers."  *Id.* at *4.  The

16  court found it improbable that consumers would "disregard the first words in the names, and

17  assume that the beverages came from cows."  *Id.*  Indeed, far from being confused, many

18  consumers buy almond milk and soymilk expressly because these products are not dairy milk.

19      Here in contrast, the word "wheat" in the product name does not convey to reasonable

20  consumers that the products are in fact white breads.  On the contrary, the names Honey Wheat

21  and Whitewheat, along with other labeling statements and images, convey to consumers that

22  these products contain significant amounts of whole wheat, which is not true.  Taken as a

23  whole, the product labels convey the unmistakable message that the wheat ingredient is what

24  makes the breads healthy and wholesome, and reasonable consumers understand healthy and

25  wholesome wheat to mean whole wheat.  (*Id.* at ¶¶ 55-59, 64, 70-72, 82, 84-87.)

26          **4.   Plaintiff's Wheat Claims Are Not Preempted.**

27      There is a presumption against preemption.  *Rosen v. Unilever U.S., Inc.*, 2010 WL

28  4807100, at *2 (N.D. Cal. May 3, 2010).  "[C]onsumer protection laws such as the UCL, false

-15-

1   advertising law, and CLRA, are within the states' historic police powers and therefore are

2   subject to the presumption against preemption.  Laws regulating the proper marketing of food,

3   including the prevention of deceptive sales practices, are likewise within states' historic police

4   powers." *Farm Raised Salmon Cases,* 42 Cal.4th at 1088; *Bruton v. Gerber Products Co.*, 961

5   F. Supp. 2d 1062, 1084 (N.D. Cal. 2013).

6          Contrary to Defendant's representation, *see* Mot. 13:16-23, Plaintiff's wheat claims do

7   not impose requirements that are not identical to federal law.  Plaintiff asserts claims of false

8   and misleading labeling under California law, the remedies for which do not make it impossible

9   to simultaneously comply with the FDCA's labeling requirements.  Again, taken as a whole,

10  Defendant's labels are deceptive because they repeatedly invoke the wholesome and

11  healthiness of the wheat in the breads through labeling statements and images of stalks of

12  wheat, and consumer understand these reference to connote a bread that is high in whole wheat.

13         Although it is true that Plaintiff also alleges that Defendant's product names contribute

14  to the deception, Plaintiff does not ask the Court to consider the names in isolation but in

15  context.  Hence Plaintiff is not demanding that Defendant correct any misunderstanding

16  garnered from its use of the names "Honey Wheat" and "Whitewheat" by affirmatively stating

17  that the products do not contain whole wheat, *see* Order 10:9-13, but merely that she and other

18  consumers are entitled to restitution because the entire context of the label connotes the

19  significant presence of whole wheat in the product, which is inaccurate.  She is not requesting

20  that the Court order anything "supplemental" to the product labels, as Defendant suggests.  (*See*

21  Mot. 15:5-13.)  Defendant could comply with the letter of the federal regulations simply by

22  calling the breads "bread," "white bread," or "enriched bread," *see* FAC ¶ 68 (quoting

23  applicable federal regulations), without supplementing the labels at all.

24         Even assuming that Defendant were permitted use the word "wheat" in the product

25  names, it certainly was not required to do so.  The only words Defendant was required to use

26  were "bread," "white bread," or "enriched bread," *see* FAC ¶ 68 (quoting applicable federal

27  regulations).  It was not required to call its breads Honey Wheat or Whitewheat.  Defendant had

28  the choice to insert "wheat" into the product names, and its decision to do so, whether legal or

-16-

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Plaintiff's First Amended Complaint
Case No. 5:14-CV-05189

not, conveys certain information to consumers, especially given the other labeling statements and images.  (FAC ¶¶ 71, 72, 82-87.)

As an aside, though by no means necessary to rejecting Defendant's preemption argument, the Court's prior ruling that the standard of identity permits manufacturers from using the word "wheat" as part of the product name is inconsistent with the federal regulations, which state that "the name of the food" must be "bread" or "white bread" or, if the bread is enriched with added vitamins and minerals, "enriched bread."  (FAC ¶ 67 (quoting federal regulations).)  By insisting on the nomenclature "bread," "white bread," or "enriched bread" and none other, Plaintiff relies on a standard of identity for the challenged products that is consistent with, and indeed identical to, the FDCA standard.  *See Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 926 (N.D. Cal. 2014) (holding plaintiff's claims were not preempted because they relied on standard of identity that was consistent with the FDCA); *Morgan v. Wallaby Yogurt Co., Inc.*, 2013 WL 5514563, at *5 (N.D. Cal. Oct. 4, 2013) (holding state-law claims based on defendant's alleged violation of federal standard of identity were not preempted).[8]

Defendant appears to acknowledge the federal standard of identity because it uses the terms "enriched bread," "white bread," or simply "bread" on some of its product labels.  (*See* FAC, Exs. A, B.)  If these identifiers are indeed the names of the breads, as Defendant suggests, *see* Mot. 11:20-12:4, then the brand names Honey Wheat and Whitewheat are simply additional labeling representations, which are deceptive to consumers who understand those terms to connote whole wheat.  Hence these terms are not "requirements for a food which is the subject of a standard of identity[.]"  *Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104, 107 (D.D.C. 2006).  In other words, to the extent that the Court concludes that Defendant satisfies its compliance with the standard of identity by referencing "enriched bread," "bread," or "Healthy White" on its product labels, these terms do not even fall within the scope of the FDCA's preemption clause.  *Id.* at 108.  The terms Whitewheat and Honey White would therefore be supernumerary, and nothing would prevent the Court from ruling that they are

---

[8] *See also Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *10 (N.D. Cal. Mar. 14, 2014) (no preemption under FDCA); *Leonhart v. Nature's Path*, 2014 WL 1338161, at *6 (N.D. Cal. Mar. 31, 2014) (same); *Gitson v. Trader Joe's*, 2013 WL 5513711, at *8 (N.D. Cal. Oct. 4, 2013) (same).

1  deceptive, whether individually or in context.

2      In sum, either the standard of identity requires use of the terms "bread," "white bread,"

3  or "enriched bread" and none other, in which case the names Whitewheat and Honey Wheat

4  violate the standard of identity, or Defendant complies with the standard of identity but

5  includes misleading brand names that, along with the other labeling statements and images,

6  contribute to the overall deception that the breads contain significant amounts of whole wheat.

7  **B. The FAC States a Claim with Regard to the Misbranded No Artificial**

8  **Preservatives and Colors Products Class and the Misbranded All Natural Products**

9  **Class.**

10      **1.      Plaintiff Has Satisfied Rule 9(b).**

11      In a further attempt to atomize the complaint, Defendant demands an exhaustive list of

12  all products at issue containing artificial preservative or colors or that claim to be all natural.

13  The Court will recall that in dismissing the original complaint, it concluded, "There is nothing

14  linking the identified products to the alleged misrepresentations, nor anything delimiting the

15  'classes' of products and the misrepresentations to which they pertain." (Order 8:25-26.)  The

16  FAC remedied this deficiency by clearly linking each class of products to the specifically

17  contested representations.  This is sufficient at the pleading stage.

18      In *Ham v. Hain Celestial Grp., Inc.*, 2014 WL 4965959 (N.D. Cal. Oct. 3, 2014), at *4,

19  the court denied a motion to dismiss for lack of particularity under Rule 9(b) even though the

20  complaint did not list "every single product which is allegedly mislabeled" where the complaint

21  specified that the products at issue were all labeled "All Natural" yet contained a synthetic

22  ingredient (SAPP).  Given that allegation, the court ruled that the defendant could "easily

23  determine which products are at issue."  *See also id.* at *4 fn. 8 ("The inclusion of 'such as' in

24  one sentence of the factual section of the complaint does not change the fact that the products at

25  issue are those that are labeled 'All Natural yet contained [SAPP].'").[9]

26  _____

27  [9] *Kosta v. Del Monte Corp.*, 2013 WL 2147413, *14–15 (N.D. Cal. May 15, 2013) (denying motion
   to dismiss with respect to five claims made regarding "three broad categories" fruit and vegetable

28  products); *Khasin v. Hershey Co.*, 2012 WL 5471153, *8 (N.D. Cal. Nov. 9, 2012) (same, with
   respect to seven claims made regarding "several products" on defendant's labels); *Astiana v. Ben &*

-18-

1    So too here, Plaintiff has identified the products at issue based on the three categories of

2    misrepresentations:  Nature's Own breads containing artificial preservatives or colors despite

3    claiming to be free of them; "All Natural" breads containing specific artificial, synthetic, or

4    highly processed ingredients; and "wheat" breads not containing significant amounts of whole

5    wheat flour.  Based on this categorization, Defendant can easily determine which products are

6    at issue.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (pleading sufficient where it

7    gives defendant "fair notice of what the ... claim is and the grounds upon which it rests[.]").

8    Plaintiff has also amended her complaint by providing lengthy lists of products that fall

9    into delimited classes.  (*See* FAC ¶¶ 11, 54.)  It is true that these lists may not represent every

10   similarly mislabeled product, for Plaintiff believes that all of Defendant's breads (perhaps with

11   the exception of the allegedly all-natural breads) contained ADA throughout much of the class

12   period, but public searches of Defendant's products reveals labels and ingredient statements

13   only for the large but possibly not exhaustive list provided in paragraph 11.  The same is true

14   for the artificial preservatives other than ADA: Plaintiff believes that all of Defendant's

15   products (except perhaps the purportedly all-natural breads) contained one or more of the

16   identified artificial preservatives ascorbic acid, citric acid, and sodium citrate, and again

17   Defendant is in possession of documents (i.e., product labels), the immediate reference to

18   which will reveal whether additional products should be included in the delimited class of

19   products identified in the FAC.  This is not a case where Plaintiff must fish around for facts to

20   complete her claim, as Defendant suggests, *see* Mot. 16:11-14, 22-23, but rather one in which

21   something concrete and identifiable is immediately within Defendant's grasp.  *See Ogden v.*

22   *Bumble Bee Foods, LLC*, 292 F.R.D. 620 (N.D. Cal. 2013) (permitting class discovery relating

23   to any products that were similarly labeled or had similar ingredients).

24   Finally, the identified synthetic, artificial, and highly processed ingredients that render

25   Defendant's "All Natural" claim inaccurate (FAC ¶¶ 46-53) are not representative but

26   ───────────────────────────────────────────

27   *Jerry's Homemade, Inc.*, 2011 WL 2111796, *5-6 (N.D. Cal. 2011) (same, as to claims of "all
     natural" on different brands of ice cream); *Morgan v. Wallaby Yogurt Co., Inc.*, 2014 WL 1017879,
28   at *8 (N.D. Cal. 2014) (rejecting defendant's concern about the scope of the challenged products,
     "Plaintiffs are challenging the same basic mislabeling practice across different product flavors.").

-19-

1    exhaustive; Plaintiff is informed and believes that all of the identified "All Natural" products

2    (FAC ¶ 54) contained one or more of these ingredients, the inclusion of any one of which

3    contradicts the "All Natural" claim.  Again, although the list provided in paragraph 54 may not

4    be exhaustive, the class of products has been delimited pursuant to the Court's order based on

5    the labeling claim and contested ingredients such that any additional products belonging to this

6    class may be identified readily using objective criteria.[10]

7        **2.    Plaintiff Has Standing to Assert Claims on Behalf of Consumers of**

8            **Unpurchased Products.**

9            This Court recognizes that Plaintiff may assert claims on behalf of consumers who

10   purchased products that are substantially similar to the ones she purchased.  (Order 7:28-89.)

11   The critical question is whether consumers of products that the plaintiff did not purchase

12   suffered injuries similar to those suffered by the plaintiff.  *Brazil v. Dole Food Company, Inc.*,

13   2013 WL 5312418, at *7 (N.D. Cal. Sept. 23, 2013).  Significantly, "the definition of the

14   plaintiff's 'injury' is not so narrow as to encompass only the exact set of circumstances that led

15   to the plaintiff's suit."  *Id.*  The Ninth Circuit has held that in "determining what constitutes the

16   same type of relief or the same kind of injury, we must be careful not to employ too narrow or

17   technical an approach.  Rather, we must examine the questions realistically:  we must reject the

18   temptation to parse too finely, and consider instead the context of the inquiry."  *Armstrong v.*

19   *Davis*, 275 F.3d 849, 867 (9th Cir. 2001).

20           Courts in this district routinely hold that a plaintiff has standing to assert claim on

21   behalf of consumers of products she did not purchase where the products carry the same

22   mislabeling representations and contain the same contested ingredients across product lines

23   _____

24   [10] This case is unlike both *Janney v. Mills*, 944 F.Supp.2d 806, 818 (N.D. Cal. May 10, 2013) and *Thomas v. Costco Wholesale Corp.*, 2013 WL 1435292 (N.D. Cal. Apr. 9, 2013), on which
25   Defendant relies.  In those cases, the plaintiffs asserted claims for classes of products that were never even identified.  *See Thomas* at *6 ("Rather than consisting of finite and particular products,
26   this term [*i.e.*, "or food products distributed or sold by Defendant"] purports to encapsulate a general, non-particularized class of food products"); *Janney* at 818 (dismissing claims as to
27   unidentified products owing to plaintiffs' "vague description of the products they contend are at issue").  Here, in contrast, Plaintiff has identified particularized classes of products carrying same
28   misrepresentations and containing the same offending ingredients.

1    even if there are physical dissimilarities among products.  *See e.g.*, *Ang v. Bimbo Bakeries US,*

2    *Inc.*, 2014 WL 1024182, at *6 (N.D. Cal. Mar. 13, 2014) (discussing numerous cases finding

3    standing where unpurchased products made similar labeling representations).

4         In Section I(B) above, Plaintiff specified which products she purchased within each of

5    the three alleged classes, and has further alleged that all of the products in each class bear the

6    same labeling statements which are deceptive for the same reasons.  Consumers who purchased

7    products in each of these classes were exposed to the same labeling statements and hence were

8    injured in the same way Plaintiff was, so Plaintiff has standing to assert claims on their behalf.

9         Defendant contends that the Misbranded No Artificial Preservatives or Colors Products

10   are dissimilar because they encompass a supposedly wide variety of baked goods, *see* Mot. 18

11   19-27, but as the Court recognizes "all of the products—purchased and unpurchased—are of

12   the same kind:  bread."  (Order 8:10.)  Moreover, this case is unlike *Lanovaz v. Twinings N.*

13   *Am., Inc.*, 2013 WL 2285221 (N.D. Cal. May 23, 2015), cited by Defendant, because there the

14   type of tea leaves had a material bearing on the plaintiff's claim relating to the antioxidant

15   properties of the tea.  *Id.* at *3.  *See Ang*, *supra*, 2014 WL 1024182 at *6 (distinguishing

16   *Lanovaz* on this basis).  But here, notwithstanding the differences in the types of breads, all of

17   them carry the same misrepresentations on their labels and contain the same contested

18   ingredients.   In other words, whatever differences exist are immaterial in light of these

19   similarities.  *See*, *e.g.*, *Colucci v. ZonePerfect Nutrition Co.*, 2012 U.S. Dist. LEXIS 183050

20   (N.D. Cal. Dec. 28, 2012) (finding standing as to unpurchased products where labels carried the

21   same misrepresentation and products contained contested ingredients).

22        **3.    Defendant's Argument That Plaintiff Has Not Alleged Reliance with**

23        **Regard to the Misbranded All-Natural Products Is Ridiculous.**

24        Defendant takes issue with the FAC because Plaintiff has not incanted the word

25   "reliance" with regard to her purchase of the Misbranded All-Natural Products identified in

26   paragraph 33.  (Mot. 19:1-20:11.)  Defendant is clutching at straws.  In paragraph 34 Plaintiff

27   states that "[s]he believed that the 'All Natural' claim meant that she was purchasing a product

28   that was free of artificial, synthetic, or highly processed ingredients[,]" and this of course refers

-21-

Plaintiff's Response in Opposition to Motion to Dismiss or Stay
Plaintiff's First Amended Complaint
Case No. 5:14-CV-05189

1   to the "All Natural" claim on the products she purchased. The FAC clearly alleges not only

2   that she saw this representation on the label but explains what she understood it to mean and

3   alleges that she would not have bought the products or paid as much for them had she known

4   the representation was false. (*Id.* at ¶¶ 33-35.)

5          From this elemental misreading, Defendant then concocts a fable that Plaintiff did not

6   actually purchase the products she said she did because her CLRA declaration does not itemize

7   them and she did not attach photographs of them.[11]  Part of the trouble Defendant is having is

8   with nomenclature.  The FAC understands Honey Wheat or 100% Whole Wheat to be two

9   varieties of Nature's Own bread on certain labels of which Defendant has placed the "All

10  Natural" representation. Plaintiff purchased Honey Wheat bread with and without the all-

11  natural statement.  Plaintiff has attached representative photographs of the Misbranded All-

12  Natural Products in Exhibit C of the FAC, but Defendant's Honey Wheat bearing the all-

13  natural label is not included.  A photograph of each and every label is not required.  *See*, *e.g.*,

14  *Ang v. Bimbo Bakeries*, 2013 WL5407039, at *4 (N.D. Cal. Sept. 25, 2013)(where alleged

15  misrepresentation described in detail, production of labels not required); *Gitson v. Trader Joe's*

16  *Co.*, 2014 WL 1048640, at *2, 5 (N.D. Cal. Mar. 14, 2014) (in case involving more than 177

17  products, finding allegations describing misrepresentations sufficient without product labels).

18  **III.  Defendant's Choice-of-Law Argument Is Premature.**

19         It is premature to address choice of law at the motion to dismiss stage.  "Whether

20  California law differs from the laws of other states in a way that is material to this litigation is

21  not a proper inquiry at the pleading stage.  Such a deeply factual inquiry is more appropriately

22  addressed at the class certification stage[.]"  *Valencia v. Volkswagen*, 2015 WL 4760707, at *1

23  (N.D. Cal. 2015); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012)

24  ("Since the parties have yet to develop a factual record, it is unclear whether applying different

25  state consumer protection statutes could have a material impact on the viability of Plaintiffs

26  claims"); *Forcellati v. Hyland's*, 876 F.Supp. 2d 1155, 1159-60 (C.D. Cal. 2012) ("Courts

27

28

---

[11]  Note that Plaintiff submits this declaration pursuant to statute for venue purposes only, not as an exhaustive list of products she purchased.  *See* Cal. Civ. Code § 1780(d).

1   rarely undertake choice-of-law analysis to strike class claims at this early stage in litigation.").

2   At class certification Plaintiff will show that the standards applicable to class members'

3   common law claims does not differ materially between jurisdictions.  However, this is not the

4   appropriate time for such analysis to occur.  Moreover, Defendant has not suggested that the

5   law of a jurisdiction other than California should apply to the common law claims.  If

6   Defendant does not claim that the law of another jurisdiction applies, then there is no reason

7   why the Court should not apply California law.  "In the absence of an effective choice-of-law

8   agreement, California choice-of-law rules permit a court to apply the decisional rules of its

9   forum state 'unless a party litigant timely invokes the law of a foreign state.'" *JMP Securities*

10  *LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1037 (N.D. Cal. 2012).

11  **IV.     The Court Should Not Stay This Action Pending *Brazil* and *Jones*.**

12  Stays pending an appeal are disfavored.  "[T]he Ninth Circuit has acknowledged that a

13  stay pending appeal is of dubious character and may result in indefinite delay."  *ASUSTek*

14  *Computer Inc. v. Ricoh Co.,* 2007 WL 4190689, at *3 (N.D. Cal. 2007).  "Accordingly, district

15  courts frequently deny requests for a stay pending appeal of a separate, but related, action."

16  *Perron v. Hewlett-Packard Co.*, 2011 WL 1344221, at *2 (N.D. Cal. Apr. 8, 2011).

17  "A party seeking a stay must make out a clear case of hardship or inequity in being

18  required to go forward … Only in rare circumstances will a litigant in one cause be compelled

19  to stand aside while a litigant in another settles the rule of law that will define the rights of

20  both."  *Landis*, 299 U.S. at 255; *accord CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

21  Moreover, if the proposed stay will be especially long or for an indefinite term, then "a greater

22  showing" is require to justify it.  *Yong v. INS*, 208 F. 3d 1116, 1119 (9th Cir. 2000).

23  Courts weigh three factors in determining whether or not to grant a stay:  "[1] the

24  possible damage which may result from the granting of a stay, [2] the hardship or inequity

25  which a party may suffer in being required to go forward, and [3] the orderly course of justice

26  measured in terms of the simplifying or complicating of issues, proof, and questions of law

27  which could be expected to result from a stay."  *CMAX*, *supra*, 300 F.2d at 268.

28  Nothing is to be gained from staying this action, as neither *Brazil v. Dole Packaged*

-23-

1    *Foods, LLC*, 2014 WL 6901867 (N.D. Cal. Dec. 8, 2014) nor *Jones v. ConAgra Foods, Inc.*,

2    2014 WL 2702726 (N.D. Cal. Jun. 13, 2014) will provide definitive guidance or alter the

3    parties rights or obligations in this action.  In *Brazil*, the trial court granted summary judgment

4    for the defendant because it concluded that the plaintiff had submitted no evidence showing

5    whether reasonable consumers would be misled by the contested labeling representations (e.g.,

6    consumer surveys).  *Id.* at *5.  And in *Jones* the trial court denied class certification because

7    one of the plaintiffs testified that she actually did not find the labels misleading and did not care

8    whether the products were unlawfully labeled, *id.* at *4, and again because the plaintiffs did not

9    make any showing that the materiality of the challenged labeling statements could be

10   determined based on common proof (e.g., consumer surveys).  *Id.* at *15.  The court also

11   faulted the damages model for failing to consider potential variables affecting the purchase

12   price and failing to propose a method to calculate the price premium attributable to the alleged

13   misrepresentations.  *Id.* at * 20-22.  (The court noted that its ascertainability analysis was not

14   dispositive. *Id.* at *10.)

15          An appellate review of these rulings would change nothing about the discovery Plaintiff

16   needs and to which she is entitled, nor the showing Plaintiff intends to make at class

17   certification, summary judgment, or trial.  Either Plaintiff does or does not testify that she was

18   misled, and no appellate ruling will change that.  As for reliance, Plaintiff intends to adduce on

19   consumer-marketing surveys and Defendant's own marketing analysis to prove the materiality

20   of the labeling representations classwide.  *Cf. In re ConAgra Foods, Inc.*, 2015 WL 1062756, at

21   *63-64 (C.D. Cal., Feb. 23, 2015).  Finally, Plaintiff's damages analysis may include the design

22   and implementation of a rigorous consumer survey and use of conjoint and regression analysis

23   to isolate the price premium attributable to Defendant's misrepresentations.  *Id.* at *66-67.

24          Therefore although the Ninth Circuit may promulgate a more lenient permissible

25   standard for certifying mislabeling classes and proving liability and damages, Plaintiff will

26   nevertheless be entitled to proffer a more rigorous showing as demanded by the courts in *Brazil*

27   and *Jones* and along the lines approved in *In re ConAgra Foods, Inc.*  Defendant fails to

28   identify any discovery that Plaintiff would not be entitled to after the Ninth Circuit decides

-24-

1  *Jones* and *Brazil*, nor does Defendant specifically identify any issues that would be mooted by

2  the eventual opinions in those cases.  On the contrary, any clarity provided by the Ninth Circuit

3  in *Jones* or *Brazil* will have no effect on the showing the parties are entitled to make and the

4  discovery they are entitled to conduct.

5  Consequently, Defendant will face no hardship from proceeding with this action now.

6  Defendant will endure nothing more than the normal costs and effort of litigation of defending

7  this action on its merits.  *See Dependable Highway Exp. v. Navigators Ins. Co.*, 498 F. 3d 1059,

8  1066 (9th Cir. 2007) ("'being required to defend a suit … does not constitute a 'clear case of

9  hardship or inequity' within the meaning of *Landis*'").   Defendant will suffer no extraordinary

10 costs or be forced to undertake any additional action that would be rendered unnecessary after

11 the Ninth Circuit decides *Jones* and *Brazil*.  Because the parties' discovery obligations and the

12 evidence they may proffer at certification, summary judgment, and trial will remain unchanged

13 notwithstanding *Jones* and *Brazil*, nothing should prevent this action from proceeding to the

14 next stage.  The appeal of these two matters simply does not justify an indefinite and lengthy

15 appeal that will have little to no effect on the parties' rights and obligations in this litigation.

16 By Defendant's logic, every product mislabeling case in the Ninth Circuit should be

17 stayed for an indefinite period that could amount to several years merely because the Ninth

18 Circuit may or may not issue published opinions in *Jones* and *Brazil* that in some manner

19 touches upon similar issues.  The Court should not grant a stay in these circumstances.[12]

20                                  **CONCLUSION**

21 The Court should deny the motion to dismiss or stay or grant leave to amend.

22 DATED: September 8, 2015                    Respectfully submitted,

23                                     By:_____*/s/ Anthony J. Orshansky*_____

24                                          Anthony J. Orshansky

25                                          Alexandria R. Kachadoorian
                                            Justin Kachadoorian

26                                          Attorneys for Plaintiff KELLY ROMERO

27 _____

28 [12] The Court should distinguish its ruling in *Leonhart v. Nature's Path Foods, Inc.*, 2015 WL 3548212 (N.D. Cal. Jun. 5, 2014), where the Court had already stayed the plaintiff's ECJ claims and hence the litigation could not be fully resolved pending the FDA's determination on that issue.