UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KELLY ROMERO,<br><br>                 Plaintiff,<br><br>         v.<br><br>FLOWERS BAKERIES, LLC,<br><br>                 Defendant. | Case No.  14-cv-05189-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; GRANTING MOTION TO STAY**<br><br>[Re:  ECF 44] |

Plaintiff Kelly Romero purchased four of Defendant's "Nature's Own" breads, allegedly under the false assumptions that they were "all natural;" free from artificial preservatives, colors, and flavors; and/or largely made of whole-wheat. Plaintiff alleges that, had she known the truth about the breads, she would not have purchased or paid as much for them. As a result, Plaintiff is suing Defendant Flowers Bakeries, LLC for misrepresenting its baked goods to consumers.

This Order considers Defendant's second attempt to dismiss the lawsuit. In the alternative, Defendant asks the Court to stay the case pending the Ninth Circuit's resolution of two food-mislabeling cases. For the reasons discussed below, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART and Defendant's Motion to Stay is GRANTED.

## I.    BACKGROUND

Defendant, a Georgia corporation doing business as "Nature's Own," produces packaged pre-sliced breads and other baked goods. First Amended Compl. ("FAC"), ECF 41, ¶¶ 4,7. Plaintiff, a California resident who "is concerned about her health and wants to consume foods that are all natural and have no artificial preservatives or colors" and "is part of a growing demographic of consumers that recognizes the nutritional benefits of whole g[r]ains," alleges that she purchased Defendant's products because they were deceptively labeled. *Id.* ¶¶ 5, 9-10, 55.

United States District Court<br>Northern District of California

The Court dismissed Plaintiff's original Complaint for, among other things, failure to plead her claims with particularity, failure to plead actual reliance on the alleged misrepresentations, and failure to establish standing for the products she challenges but did not purchase. ECF 35 ("Prior Dismissal Order"). Essentially, the Court found that Plaintiff had "identif[ied] a list of products, allege[d] a slew of problems with Defendant's labeling of those products, and then ask[ed] Defendant and the Court to mix and match." *Id.* at 7. The Court dismissed two of Plaintiff's claims with prejudice but granted leave to amend the remaining claims.

Plaintiff now re-asserts the remaining claims, listed in full below, and additionally claims that Defendant breached an express warranty. In contrast to the original Complaint, the FAC alleges that Defendant misrepresented specific, identified products in three distinct ways.

**A.  ADA Products**

First, Plaintiff alleges that Defendant labeled breads as containing "no artificial preservatives, colors and flavors" when they in fact contain azodicarbonamide ("ADA"), citric acid, sodium citrate, and/or ascorbic acid ("ADA Products"). *Id.* ¶ 11. Plaintiff alleges that the four breads she purchased—Nature's Own Honey Wheat, Whitewheat, 100% Whole Wheat, and 100% Whole Wheat with Honey—are all ADA Products, as are 28 additional baked goods produced by Defendant. *Id.* ¶¶ 8, 11, 28.

Plaintiff alleges that she saw the "no artificial preservatives, colors and flavors" label and read it to mean that the products contained neither manmade substances meant to protect against deterioration or discoloration nor substances intended to impart color to the product. *Id.* ¶ 13. Plaintiff alleges that she would not have purchased or paid as much for the breads had she known that they contain artificial and chemical preservatives and artificial colors. *Id.* ¶ 14.

Plaintiff is particularly concerned by the presence of ADA, which she refers to as the "yoga mat" chemical because it is used to manufacture rubber products, but serves as a color additive and chemical preservative in baked goods. *Id.* ¶¶ 15-16, 19. Plaintiff alleges that ADA has been linked to asthma and skin irritation and that it may reduce to other chemicals that have been shown to increase the incidence of tumors in mice. *Id.* ¶¶ 17-18.

Plaintiff alleges that Defendant mischaracterizes the presence of ADA and the three other

chemicals in three ways: first, by labeling the fronts and sides of its bread products "no artificial preservatives, colors and flavors;" second, by failing to conspicuously label the products that contain ADA as "bleached;" and third, by shirking its responsibility to affirmatively inform consumers of the presence of chemical preservative and artificial coloring. *Id.* ¶¶ 12, 21-24, 29-31.

**B.  All Natural Products**

Plaintiff next challenges Defendant's "All Natural" or "100% Natural" labeling on and advertising for six bread products ("All Natural Products"). *Id.* ¶ 32, 54. These products include the All Natural 100% Whole Wheat and All Natural Honey Wheat that Plaintiff allegedly purchased. *Id.* ¶ 33. Plaintiff alleges that she read the statements to mean that the products were "free of" and "contain absolutely no" artificial, synthetic, chemical, or highly-processed ingredients. *Id.* ¶¶ 34, 44. As with the ADA Products, Plaintiff alleges that she would not have purchased the products or paid as much for them had she known what they actually contain, including flour enriched with thiamin mononitrate, riboflavin, folic acid, niacin, and reduced iron, as well as soybean oil, soy lecithin, calcium sulfate, and enzymes. *Id.* ¶¶ 35, 46-53.

**C.  Wheat Products**

Finally, Plaintiff alleges that nine of Defendant's bread products falsely "lead consumers to believe they contain a significant amount of whole wheat and are thus healthier than other white breads" ("Wheat Products"). *Id.* ¶¶ 62-64. This includes the Honey Wheat and Whitewheat breads Plaintiff purchased. *Id.* ¶ 89. Plaintiff alleges that, when she purchased these breads, she read their names and back labels, which led her to conclude that the breads "contained a significant amount of whole wheat." *Id.* As with the ADA and All Natural Products, she alleges that, had she known that they do not, she would not have bought or paid as much for these breads. *Id.*

Plaintiff alleges that Defendant leads consumers to this false conclusion through unlawfully using the word "wheat" in the product names of white or enriched breads. *Id.* ¶ 65. Plaintiff asserts that, under federal regulation, bread made from flour that is not entirely whole wheat must be called "bread," "white bread," or "enriched bread." *Id.* ¶ 68. Plaintiff alleges that, by "inject[ing] the word 'wheat' into the name of its products," Defendant violates federal statutes and intends to deceive consumers.  *Id.* ¶¶ 69-70.

3

United States District Court
Northern District of California

1    Plaintiff alleges that Defendant completes this deception for its Whitewheat bread—which

2    contains no whole wheat flour—by additionally labeling it "Healthy White." *Id.* ¶¶ 84, 88. She

3    alleges that many consumers will read "Healthy White" as a reference to white or albino wheat. *Id.*

4    ¶ 84, 88. With regard to Honey Wheat bread—which Plaintiff alleges includes more white flour,

5    honey, and sugar than whole wheat flour—Plaintiff challenges language on the label and

6    Defendant's website describing the bread as containing "wholesome wheat" and "healthy grains,"

7    defined elsewhere as whole grains. *Id.* ¶¶ 85-88.

8    Based on these allegations, Plaintiff asserts claims on behalf of a putative nationwide class

9    of consumers as well as a subclass of California consumers. *Id.* ¶ 90. Specifically, Plaintiff seeks

10   to represent California consumers on claims for: unlawful, unfair, and fraudulent business

11   practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §

12   17200, *et seq.* (First, Second, and Third Causes of Action, or "COA"); false and misleading

13   advertising in violation of the False Advertising Law ("FAL"), California Business and

14   Professions Code § 17500, *et seq.* (Fourth and Fifth COAs); violation of California's Consumer

15   Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.* (Sixth COA). Plaintiff seeks to

16   represent a broader nationwide class of consumers on claims for: restitution based on quasi-

17   contract/unjust enrichment (Seventh COA); common law fraud (Eighth COA); negligent

18   misrepresentation (Ninth COA); and breach of warranty (Tenth COA) (together "Common Law

19   Claims").

20   Defendant has again moved to dismiss Plaintiff's claims, reasserting its arguments

21   regarding particularity, reliance, pre-emption, and standing. In addition, Defendant argues that the

22   Common Law Claims should be dismissed for Plaintiff's failure to assert which state's law

23   governs. And, if the Court does not dismiss the case, Defendant asks for a stay pending the Ninth

24   Circuit's resolution of *Jones v. ConAgra Foods, Inc.* and *Brazil v. Dole Packaged Foods*.

25   ## II.    REQUESTS FOR JUDICIAL NOTICE

26   Before turning to the substantive arguments, the Court considers the parties' requests for

27   judicial notice (RJN). Under Federal Rule of Evidence 201, facts appropriate for judicial notice are

28   those "not subject to reasonable dispute in that [they are] either (1) generally known within the

1    territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort

2    to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While the

3    Court may take judicial notice of the requested exhibits, they will not be noticed "for the truth of

4    the matter asserted therein." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067

5    (N.D. Cal. 2010); *see also M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483,

6    1491 (9th Cir. 1983).

7    **A. Plaintiff's Request**

8    In support of her Opposition, Plaintiff requests judicial notice of the following nine

9    exhibits, each from the docket of *The National Consumers League v. Flowers Bakeries, LLC,*

10   *Superior Court of the District of Columbia*, Case No. 2013-CA-006550 B ("D.C. Litigation"): 1)

11   Complaint filed on September 26, 2013 (Exh. A), 2) First Amended Complaint filed on June 28,

12   2014 (Exh. B), 3) Motion to Dismiss or Stay filed on July 18, 2014 (Exh. C), 4) Opposition to

13   Motion to Dismiss or Stay filed on September 10, 2014 (Exh. D), 5) Reply Brief in Support of

14   Motion to Dismiss or Stay filed on October 1, 2014 (Exh. E), 6) Sur-Reply in Opposition to

15   Motion to Dismiss or Stay filed on October 15, 2014 (Exh. F), 7) docket entry of minute order

16   denying Motion to Dismiss or Stay (Exh. G), and 8) the litigation's complete docket (Exh. H).

17   Pl.'s RJN, ECF 49. Plaintiff offers these exhibits to support her argument that the D.C. Litigation

18   precludes Defendant from challenging Plaintiff's Wheat Product allegations.

19   Defendant objects to Plaintiff's RJN, arguing that courts do not judicially notice irrelevant

20   facts. Def's Opp. to Pl.'s RJN, ECF 52 at 1 (citing *Cybersitter, LLC v. People's Republic of*

21   *China*, 805 F. Supp. 2d 958, 964 (C.D. Cal. 2011)). As discussed below, however, Defendant

22   engages with these exhibits in order to combat Plaintiff's preclusion argument and the Court finds

23   the exhibits relevant to its analysis.

24   Because the exhibits are court records, which are judicially noticeable, *see Bovarie v.*

25   *Giurbino*, 421 F. Supp. 2d 1309, 1313 (S.D. Cal. 2006) (citing *U.S v. Author Svcs.*, 22 Inc., 804

26   F.2d 1520, 1522 (9th Cir. 1986)), and Defendant contests neither their authenticity nor their

27   accuracy, the Court GRANTS Plaintiff's request for judicial notice of Exhibits A through H.

28   **B. Defendant's Request**

United States District Court
Northern District of California

1    Defendant requests judicial notice of two exhibits in support of its Reply: 1) Excerpts of

2    Judicial Council of the Ninth Circuit 2014 Annual Report (Exh. 1) and 2) Excerpts of Appellee's

3    Answering Brief Filed in *Brazil v. Dole Packaged Foods, LLC*, Ninth Circuit Case No. 14-17480

4    (Exh. 2). ECF 51. Plaintiff does not oppose Defendant's RJN.

5    The Court may take judicial notice of statistics published in Judicial Council reports. *See*

6    *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1403 n. 2 (9th Cir. 1989)

7    (taking judicial notice of statistics on state court trial delays prepared by California Judicial

8    Council) *overruled on other grounds in Armendariz v. Penman,* 75 F.3d 1311 (9th Cir. 1996). As

9    noted above, court records are also noticeable. Accordingly, the Court GRANTS Defendant's

10   request for judicial notice of Exhibits 1 and 2.

**III.    MOTION TO DISMISS**

12   The Court now turns to Defendant's motion to dismiss. *See* ECF 44. "A motion to dismiss

13   under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can

14   be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d

15   1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

16   When determining whether a claim has been stated, the Court accepts as true all well-pled factual

17   allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP*

18   *Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not

19   accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

20   unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

21   (internal quotation marks and citations omitted). Nor must the Court "accept as true allegations

22   that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State*

23   *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). While a complaint need not contain detailed factual

24   allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

25   that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

26   *v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to

27   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

28   **A.  Wheat Products**

Defendant argues that all claims based on Plaintiff's Wheat Product allegations must be dismissed because Plaintiff cannot establish her own reliance on the labeling, cannot satisfy the "reasonable consumer" standard, and makes claims that federal law preempts. Mot. at 9-15.

### i.  Offensive Collateral Estoppel

Plaintiff first responds that the D.C. Litigation precludes Defendant from making these arguments. Opp., ECF 48 at 6-9. Plaintiff contends that the D.C. Litigation, filed in D.C. Superior Court by the National Consumers League ("NCL") against Defendant, involved "nearly identical allegations regarding [Defendant's] use of wheat representations" and that Defendant similarly moved to dismiss on the bases of preemption, failure to satisfy the jurisdiction's fraud standard, and failure to satisfy the reasonable consumer standard. *Id.* at 6-7. Plaintiff argues that because the D.C. Superior Court denied Defendant's motion to dismiss, Defendant is estopped from litigating the same arguments here. *Id.*

"In determining the preclusive effect of . . . a state court judgment, we follow the state's rules of preclusion." *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012). Thus, D.C. law governs the question of whether preclusion applies here. Plaintiff specifically invokes the doctrine of offensive non-mutual collateral estoppel, which "arises when a plaintiff seeks to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Ali Baba Co. v. WILCO, Inc.*, 482 A.2d 418, 421-22 (D.C. 1984) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)).[1] An issue is actually litigated when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined . . . An issue may be submitted and determined on a motion to dismiss for failure to state a claim." *Id.* at 422.

The Supreme Court analyzed offensive collateral estoppel in *Parklane Hosiery Co. v. Shore* and concluded that district courts have broad discretion in determining when to allow it—an approach that the D.C. Court of Appeals endorsed in *Ali Baba. Id.* at 422. The Supreme Court

---

[1] The parties both rely on *Davis v. Davis*, 663 A.2d 499 (D.C. 1995) for the applicable elements of estoppel. *See* Opp. at 7, Reply at 3. However, *Davis* reflects the District of Columbia's approach to defensive, rather than offensive, collateral estoppel. The Court instead relies on *Ali Baba*, which focuses on the unique attributes of offensive use.

United States District Court
Northern District of California

United States District Court
Northern District of California

identified two dangers unique to offensive collateral estoppel. First, while defensive collateral estoppel "gives a plaintiff a strong incentive to join all potential defendants in the first action" by preventing the plaintiff from asserting a claim that s/he has previously litigated and lost against another defendant, offensive collateral estoppel instead gives a plaintiff "every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Parklane*, 439 U.S. at 329-30. (internal citations omitted). Second, offensive use "may be unfair to a defendant," particularly if a defendant had little incentive to litigate the initial suit vigorously, other judgments have been entered in favor of the defendant, or the second action afforded the defendant different procedural opportunities. *Id.* at 330.

The Supreme Court therefore concluded that "the preferable approach . . . in federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Id.* at 331. "The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Id.*

The Court finds that both dangers are present here and therefore exercises its broad discretion to disallow the use of offensive collateral estoppel. With regard to the first danger, Plaintiff admits that "the instant complaint draws largely upon the complaint in the NCL action" and provides no reason why she could not have joined that action or had her interests represented by it. Opp. at 6. To the extent that Plaintiff would respond that the earlier suit raised different issues, the Court finds that this argument highlights how applying offensive collateral estoppel here would be unfair to Defendant.

Issue preclusion would also be unfair because the issues in this case differ too substantially from those in the D.C. case. *See* Reply at 4. In the D.C. Litigation, the plaintiff brought one claim—violation of the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Official Code §§ 28-3901 *et seq*—which the plaintiff alleged was violated "whether or not any consumer is in fact misled, deceived or damaged" and for which "reliance is not required." Pl.'s RJN Exh. B at 5, 16-17 ¶¶ 5, 64, 71. In contrast, here, Plaintiff brings ten causes of action, each of which,

United States District Court
Northern District of California

Defendant argues, requires a showing of reliance. As a result, Defendant would have had little incentive to litigate its Motion to Dismiss in the D.C. Litigation as it does here. *See* Reply at 4 ("The parties did not address the element of reasonable and justifiable reliance at all.").

The Court's determination that applying offensive collateral estoppel here would be unfair is bolstered by the fact that the D.C. Superior Court's ruling appears in a minute entry stating no more than the fact of denial of the motion to dismiss. *See* Pl.'s RJN Exh. G ("Oral arguments heard in full from both sides on Defendant's Motion to Dismiss or Stay. Defendant's Motion to Dismiss or Stay is DENIED."). The D.C. Superior Court did not issue a written order explaining the denial. As a result, the Court cannot determine which of Defendant's arguments the D.C. court considered and whether any circumstances unique to this case would have led to a different result. Thus, Defendant is not estopped from raising its arguments against the Wheat Product allegations, considered in turn below.

### ii.      *Reasonable Consumer*

Defendant argues that no reasonable consumer could have interpreted its Wheat Product labeling as Plaintiff purportedly did and that the California statutory violations based on the Wheat Product allegations should therefore be dismissed. Mot. at 12-13.

Plaintiff's statutory claims under the UCL, FAL, and CLRA are "governed by the reasonable consumer test." *Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008) (internal citation omitted). "The false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer." *Id.* (internal citation omitted). Plaintiff must allege "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (citing *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003)).

Plaintiff alleges that Defendant labels its Whitewheat and Honey Wheat products "to lead consumers to believe that they contain a significant amount of whole wheat and are thus healthier than other white breads." *Id.* ¶ 64. Plaintiff alleges that Defendant achieves this effect by combining the word "wheat" with the words "Healthy White" on Whitewheat packaging, and

1  "wheat" with the following statement on Honey Wheat packaging: "Nature's Own Honey Wheat

2  offers the perfect blend of *wholesome wheat* and a touch of sweet honey. A slice or two of this

3  bread each day is a delicious way to add *healthy grains* to your diet." FAC ¶¶ 64-65, 83-86, 89

4  (emphasis in FAC). In her Opposition, Plaintiff argues that this deception is furthered by the

5  "Nature's Own" brand name placed alongside "images depicting stalks of wheat and pots of

6  honey." Opp. at 11; *see also* FAC ¶ 12.

7         Defendant argues that this understanding is not reasonable as a matter of law. Instead,

8  Defendant contends, each of the challenged statements conveys accurate information: Nature's

9  Own Whitewheat and Honey Wheat breads, like nearly all breads, contain wheat; Whitewheat is a

10  "healthy" version of white bread because it is enriched with added vitamins and minerals; and

11  Honey Wheat is comprised of a "blend of wholesome wheat" and "healthy grains"—specifically,

12  enriched flour, whole wheat, rye flour, and wheat bran. Mot. at 6-7.

13        Defendant relies on *Red v. Kraft Foods, Inc.* to argue that Plaintiff's allegations do not

14  reflect a reasonable consumer's understanding of its packaging. In *Red*, the plaintiffs similarly

15  challenged a phrase—"Made with Real Vegetables" on cracker packaging—that they conceded to

16  be true. *Red v. Kraft Foods, Inc.,* No. CV 10-1028-GW, 2012 WL 5504011, at *2 (C.D. Cal. Oct.

17  25, 2012). The court concluded that no reasonable consumer would read "packaging [that] boasts

18  that the crackers are made with real vegetables and depicts vegetables" to mean that the crackers

19  are "*healthy* and contain[] a *significant amount* of vegetables." *Id.* at *3 (emphasis in original).

20  The court explained, "the product is a box of crackers, and a reasonable consumer will be familiar

21  with the fact of life that a cracker is not composed of primarily fresh vegetables." *Id.*

22        Similarly, here, the Court cannot agree with Plaintiff that the word "wheat" combined with

23  "wholesome wheat" and "healthy grains" or "Healthy White" alongside images of wheat stalks

24  and honey pots could lead a reasonable consumer to conclude that the breads "contain a *significant*

25  *amount* of whole wheat and are thus healthier than other white breads." FAC ¶ 64 (emphasis

26  added). Instead, it is more plausible that the packaging would lead a reasonable consumer to

27  believe that the bread contains wheat and is enriched with added vitamins and minerals—all of

28  which is true and uncontested.

10

United States District Court
Northern District of California

1    The Court further agrees with *Red*'s reading of *Williams v. Gerber Prods. Co*, a case upon

2    which Plaintiff relies. In *Williams*, the Ninth Circuit held that the district court improperly

3    dismissed claims challenging fruit snack packaging as a matter of law because "a number of

4    features of the packaging . . . could likely deceive a reasonable consumer," including "pictures [of]

5    a number of different fruits, potentially suggesting (*falsely*) that those fruits or their juices are

6    contained in the product." 552 F.3d at 939 (emphasis added). *Red* distinguished *Williams* on the

7    basis that "*Williams* involved an affirmative misrepresentation." 2012 WL 5504011, at *2. Here,

8    as in *Red* and unlike in *Williams*, no affirmative misrepresentation is alleged.

9    The same point distinguishes this case from *Miller v. Ghirardhelli Chocolate Co*., the other

10   case upon which Plaintiff relies. In *Miller*, the plaintiff claimed that the defendant misled

11   consumers into believing that its "Premium Baking Chips—Classic White" contained white

12   chocolate by stating that the "luxuriously deep flavor and smooth texture of Ghirardhelli Premium

13   Baking Chocolate delivers the ultimate chocolate indulgence" and that the defendant "hand-

14   select[s] the world's finest cocoa beans and roast[s] them to perfection and then blend[s] the purest

15   ingredients to achieve [its] award-winning chocolate." 912 F. Supp. 2d 861, 865 (N.D. Cal. 2012).

16   In other words, the defendant affirmatively represented the product, which was not chocolate, as

17   chocolate. In contrast, here, Defendant does not even use the phrase "whole wheat" in its

18   packaging, much less refer to its world-class crop and perfected process for producing award-

19   winning whole wheat bread. In other words, Defendant does not affirmatively represent its

20   Whitewheat and Honey Wheat products as whole wheat breads.

21   The Court finds that, of the cases provided by the parties, this case is most reminiscent of

22   *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033-H DHB, 2012 WL 1512106 (S.D. Cal.

23   Apr. 16, 2012). In *Rooney*, the plaintiff alleged that the defendant misleadingly promoted Sugar in

24   the Raw as "nothing other than raw, unprocessed, and unrefined sugar." *Id.* at *1. The court

25   concluded that "a reasonable consumer could not be led to believe that Sugar in the Raw contains

26   unprocessed and unrefined sugar" because the box "repetitively and clearly indicates that the

27   product contains pure natural cane turbinado sugar." *Id.* at *4. Furthermore, "[n]owhere on the box

28   do the words 'unprocessed' or 'unrefined' appear." *Id.* Similarly, here, the packaging of the

11

challenged bread clearly states "ENRICHED BREAD" and Plaintiff does not allege that the words "whole wheat" appear anywhere on the packaging. *See* FAC, Exh. B. Just as *Rooney* found "in the Raw" to be insufficient to convey "raw, unprocessed, and unrefined," the Court concludes that "wheat" does not convey "whole wheat."

While Plaintiff correctly argues that a representation need not be false to mislead a reasonable consumer, the representation must nevertheless be "misleading or ha[ve] the capacity, likelihood or tendency to deceive or confuse members of the public." *See* Opp. at 10 (citing *Kasky v. Nike*, *Inc.,* 27 Cal. 4th 939, 951 (2002)). The Court agrees with Defendant that the representations at issue here have no such capacity: no reasonable consumer would understand the packaging, taken as a whole, to mean that the breads "contains a significant amount of whole wheat." Thus, to the extent that Plaintiff's UCL, FAL, and CLRA claims are based on the Wheat Allegations, they fail for this reason.

### iii.    Reliance

Defendant additionally argues that all of Plaintiff's wheat-based claims, including the common law claims, fail because Plaintiff has not "allege[d] a 'coherent, plausible theory of reliance.'" Mot. at 9 (quoting *Kane v. Chobani, Inc*., 973 F. Supp. 2d 1120, 1132 (N.D. Cal. 2014)). Plaintiff argues that she has articulated a plausible theory of reliance, explaining what representations she relied upon and why.

The parties essentially collapse the reliance inquiry with the "reasonable consumer" standard discussed above. *See* Mot. at 10 (discussing *Red,* 2012 WL 5504011, at *3 and *Rooney*, 2012 WL 1512106, at *3-4); Opp. at 14 ("Plaintiff's reliance on Defendant's wheat representations was reasonable, as no facts distinguish her from the average consumer."). The Court agrees that, just as a reasonable consumer could not read the wheat statements to mean that the products "contain a significant amount of whole wheat," Plaintiff could not plausibly have relied on the statements to convey that same meaning. The alleged reading is neither reasonable nor plausible.

If anything, as Defendant argues, Plaintiff's argument on reliance is even weaker than her argument for reasonableness. Mot at 9-12. For example, Defendant argues that the alleged wheat

1  misrepresentations are too vague or generalized to serve as a basis for reliance.

2     "The common theme that seems to run through cases . . . is that consumer reliance will be

3  induced by specific rather than general assertions." *Cook, Perkiss & Liehe, Inc. v. N. California*

4  *Collection Serv. Inc.,* 911 F.2d 242, 246 (9th Cir. 1990); *see also Glen Holly Entm't, Inc. v.*

5  *Tektronix, Inc.,* 352 F.3d 367, 379 (9th Cir. 2003) (consumer cannot rely on "generalized, vague

6  and unspecific assertions").

7     Plaintiff responds that "wheat" is a specific assertion because it necessarily means "whole

8  wheat." As discussed in depth below, this is a misreading of the FDCA. The Court therefore

9  agrees with Defendant that the labeling of bread as "wheat" and "Healthy White" or "wheat" and

10  containing "wholesome wheat" and "healthy grains" is too general to provide a basis for reliance.

11  A consumer could read these descriptions to refer to anything from enriched white bread to whole

12  wheat bread. Thus, to the extent that any of Plaintiff's claims are based on the Wheat Products,

13  they fail for this reason.

14     *iv.     Preemption*

15     Defendant finally argues that the claims based on Plaintiff's Wheat Product allegations are

16  preempted because they seek to impose requirements that are "not identical" to those required by

17  the Federal Food, Drug, and Cosmetic Act ("FDCA"). As the Court explained in its prior Order,

18  the Nutrition Labeling and Education Act ("NLEA") amendments to the FDCA contain an explicit

19  preemption clause. Prior Dismissal Order at 9. No state can establish any "requirement for a food

20  which is the subject of a standard of identity" that is "not identical" to those required by the

21  FDCA. *Id.* (citing 21 U.S.C. § 343-1(a)(1)). The FDCA therefore "bars states from imposing new

22  or additional labeling 'requirements.'" *Astiana v. Hain Celestial Grp, Inc.*, 783 F. 3d 753, 757 (9th

23  Cir. 2015).

24     While Plaintiff's original complaint was too vague for the Court to ascertain whether the

25  Wheat Product allegations are pre-empted, Plaintiff has amended her complaint to allege that

26  "bread that is made from flour and is not made entirely from whole wheat flour *must* be called

27  simply 'bread' or 'white bread.'" FAC ¶ 68 (citing 21 C.F.R. § 136.110(c)(1), (e)(1)) (emphasis in

28  original). "If the bread is enriched with added vitamins and minerals, then the 'name of the food'

United States District Court
Northern District of California

1   is simply 'enriched bread.'" *Id.* (citing 21 C.F.R. § 136.115(b)). Plaintiff alleges that by not using

2   these "simple[] and obligatory[] names" Defendant "violates 21 U.S.C. § 343(g) because its breads

3   do not bear the name of the food specified in the definition and standard of identity that has been

4   prescribed by the federal regulations." *Id.* ¶ 69. Plaintiff refers to Defendant's alleged "use of the

5   word 'wheat' in the product name" as "unlawful on its face."

6        Plaintiff argues that these claims are not preempted because the Court can either interpret

7   the names Whitewheat and Honey Wheat as violations of the FDCA's standard of identity, thereby

8   enforcing the FDCA as written, or find that Defendant complies with the FDCA but uses

9   unnecessary, misleading brand names to deceive consumers who are therefore entitled to

10  restitution. Plaintiff asserts that neither outcome would require the Court to impose a new or

11  additional labeling requirement.

12       Plaintiff is correct that the name of breads comprised of flour, bromated flour, phosphated

13  flour, or some combination of those is "bread" or "white bread;" when such food is enriched with

14  a certain level of vitamins and minerals, it is named "enriched bread." 21 C.F.R. §§ 136.110(c)(1),

15  (e)(1), 136.115. A food purporting to be one defined by the FDCA "[must] bear[] the name of the

16  food specified in the definition and standard" on its label. 21 U.S.C. § 343(g). However, Plaintiff

17  does not—and cannot, in light of Exhibit B of the FAC—contest the fact that Defendant labels the

18  challenged bread "enriched bread." Thus, Defendant has not violated § 343(g).

19       Nor has Defendant violated 21 C.F.R. §§ 136.180 or 136.115. As the Court predicted in its

20  prior Order, Plaintiff's allegations are based on a misreading of the applicable standards of

21  identity. *See* Prior Dismissal Order at 10. Plaintiff asserts that "the only time the federal

22  regulations allow the word 'wheat' to appear in the product name is when the bread is made

23  exclusively with whole wheat flour and has absolutely no ordinary flour." FAC n. 24 (citing 21

24  C.F.R. § 136.180(a)(1), (b)). This misinterprets § 136.180, which defines "whole wheat,"

25  "graham," and "entire wheat" bread, rolls, and buns as products made exclusively from whole

26  wheat or bromated whole wheat flour. The regulation precludes the use of flour, bromated flour, or

27  phosphate flour in such products, but it does *not* preclude use of the word "wheat" to label bread

28  not made entirely of whole wheat flour. In fact, such a reading would make the words "whole" or

United States District Court
Northern District of California

14

United States District Court
Northern District of California

"entire" in the identity of the food superfluous. Thus, the regulations do not bar Defendant's use of the word "wheat" on the label of food that does, in fact, contain wheat.

As Defendant argues, because Plaintiff nevertheless challenges the labels as misleading, her claims suggest that the FDCA regulation is inadequate to prevent consumer confusion. Mot. at 15. Plaintiff is, in effect, "imposing new or additional labeling 'requirements'" by asking the Court to order Defendant to pay restitution for failing to do more than the FDCA requires. As such, any claims based on the Wheat Allegations are pre-empted.

Accordingly, Defendant's Motion to Dismiss any claims based on the Wheat Allegations is GRANTED without leave to amend.

### B.  ADA and All Natural Allegations

#### i.    *Rule 9(b)*

Defendant argues that Plaintiff's remaining allegations lack the particularity that Rule 9(b) requires because she seeks to challenge unspecified products and ingredients depending upon what, if anything, she uncovers in discovery. Mot. at 15-17. Plaintiff responds that her allegations satisfy Rule 9(b) because she has clearly linked each class of products to the three contested representations. Opp. at 18.

When a party pleads a cause of action for fraud or mistake, it is subject to the heightened pleading requirements of Rule 9(b). Specifically, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The circumstances must be pled "specific[ally] enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Defendant argues that, because of  ¶¶ 11, 28, 32, and 54, the FAC fails this standard. Having reviewed those paragraphs, the Court agrees with Plaintiff: the ADA and All Natural Product allegations comply with Rule 9(b). Paragraphs 11 and 54 list the challenged products and then state that "Plaintiff will seek leave to amend" to challenge additional products with similarly misleading labels. And, while ¶ 28 alleges that Defendant "also uses other [unidentified] chemical

preservatives in the subject products," Plaintiff limits her claim to "each of the bread products listed in paragraph 11." Thus, the products at issue are clearly identified: they are only those listed by name in ¶¶ 11 and 54; should Plaintiff seek to challenge any other products, she will request leave to amend. Given these lists, Defendant has notice of the particular misconduct at issue.

### ii.    Standing

Defendant asserts that Plaintiff lacks standing to challenge the ADA and All Natural Products she did not purchase. In the previous Order, the Court determined that Plaintiff may "assert claims regarding unpurchased products in the ADA and All Natural classes that are 'substantially similar' to the products she actually bought only if she has adequately alleged those similarities." Prior Dismissal Order at 8 (citing *Wilson v. Frito–Lay North America, Inc.*, 961 F. Supp. 2d 1134, 1141 (N.D. Cal. 2013)); *see also Ang v. Bimbo Bakeries USA, Inc.,* No. 13-CV-01196-WHO, 2014 WL 1024182, at *4-8 (N.D. Cal. Mar. 13, 2014) (collecting cases in this district considering "substantially similar" products in class actions at the pleading stage).

Defendant argues that Plaintiff has failed to adequately allege the similarities. Defendant's first version of this argument—that Plaintiff cannot plead substantial similarity because she has not even identified the products she challenges—fails because, as discussed above, Plaintiff challenges only those products listed in ¶¶ 11 and 54. The second version of Defendant's standing argument applies only to the ADA Products: Defendant argues that the breads Plaintiff purchased—Honey Wheat, Whitewheat, 100% Whole Wheat, and 100% Whole Wheat with Honey—are insufficiently similar to the other products she lists in ¶ 11, including hot dog buns, cinnamon raisin bagels, English muffins, and low-calorie white bread.

The Ninth Circuit has held that in "determining what constitutes the same type of relief or the same kind of injury, we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001). In *Armstrong*, the court found that the named plaintiffs had standing to represent a class of disabled persons because they established the same injury—discrimination that resulted in the denial of a service—even though the disabilities and exact harm were different. *Id.* Applying

1  that standard in the context of food mislabeling, courts in this district generally look at "similarity

2  in products, similarity in claims, [and] similarity in injury to consumers." *Ang*, 2014 WL 1024182,

3  at \*6.

4    Defendant argues that the fact that the unpurchased products and the purchased ones are all

5  baked goods is not enough to satisfy this standard. Defendant relies on *Lanovaz v. Twinings N.*

6  *Am., Inc*, No. C-12-02646-RMW, 2013 WL 2285221 (N.D. Cal. May 23, 2013). In *Lanovaz,* the

7  plaintiff alleged that 53 Twinings teas were inaccurately labeled "natural source of antioxidants."

8  *Id.* at \*1. The court held that the plaintiff had standing to challenge 51 of the teas because they

9  each came from the same plant as the teas the plaintiff had purchased, but lacked standing for the

10  other two because they were made from a different plant. *Id.* at \*3. Defendant argues that, if the

11  *Lanovaz* court drew a line between various teas, this Court can even more easily draw a line

12  between breads, bagels, and buns.

13    However, in *Lanovaz,* the court presumably drew a line between the different teas because

14  the antioxidant properties of tea vary by plant. *Id.*; *see also Ang*, 2014 WL 1024182, at \*6. In other

15  words, whether or not the challenged statement in *Lanovaz* constituted a misrepresentation

16  depended on the type of plant and the plaintiff's claim was therefore dissimilar across those two

17  classes of tea.

18    In contrast, here, Plaintiff has clearly articulated that, like the products she purchased, the

19  unpurchased ADA Products she challenges all "bear labels stating that they contain 'no artificial

20  preservatives, colors and flavors'" but in fact "contain[] the chemical ingredients [ADA], citric

21  acid, sodium citrate, and/or ascorbic acid." FAC ¶ 11. Thus not only, as the Court previously

22  determined, are all of the products at issue here "of the same kind: bread," but the purchased and

23  unpurchased products are also alleged to contain the same relevant ingredients—unlike the

24  different plants in *Lanovaz*. In addition, as long as a bread product is labeled "no artificial

25  preservative, colors and flavors" but contains one of the listed chemical ingredients, a consumer

26  who purchases the product relying on that label suffers the same injury, regardless of whether the

27  product is whole wheat bread or a cinnamon raisin bagel. Thus, the purchased and unpurchased

28  products are sufficiently similar for Plaintiff to have standing to challenge the products listed in ¶¶

1   11 and 54.

2       ***iii.    Reliance***

3           Finally, Defendant argues that the claims based on the All Natural Products fail because

4   Plaintiff does not allege that she saw and relied on the "All Natural" labeling when making her

5   purchase decision. Mot. at 19-20. Defendant notes that, while Plaintiff expressly alleges that she

6   saw the challenged labeling for the Wheat and ADA Products, she fails to allege that she saw the

7   "All Natural" label. *Id.* at 19. Plaintiff responds that she clearly alleges that she saw the label. Opp.

8   at 21-22. Both parties point to ¶¶ 33-35 of the FAC.

9           The Court again finds the actual language of the FAC most instructive. In ¶ 33, Plaintiff

10  alleges that she purchased bread that "bore the 'All Natural' representation on the front label," but

11  she does not allege that she saw that label. She additionally alleges that she "believed that the 'All

12  Natural' claim meant that she was purchasing a product that was free of artificial, synthetic, or

13  highly processed ingredients" and that she "would not have purchased [the All Natural products]

14  or paid as much for them if she had known that they actually contained artificial, synthetic, or

15  highly processed ingredients." *Id.* ¶¶ 34-35. Nevertheless, Plaintiff does not allege that she

16  purchased the "All Natural" breads having seen the label. In fact, in her Opposition, Plaintiff states

17  that she "purchased Honey Wheat bread with and without the all-natural statement." Opp. at 22.

18  Accordingly, Defendant's Motion to Dismiss the claims based on the All Natural Product

19  allegations is GRANTED with leave to amend the allegations regarding reliance.

20      **C.  Common Law Claims**

21          Defendant also argues that Plaintiff's Common Law Claims should be dismissed in their

22  entirety—regardless of whether they are based on the Wheat, ADA, or All Natural Products—

23  because Plaintiff does not allege under which state's laws she asserts those claims.

24          Plaintiff responds that addressing choice of law at this stage is premature and that this issue

25  should instead be considered at class certification. However, each of the cases Plaintiff relies upon

26  to support this argument considers not whether a plaintiff needs to assert the state law under which

27  s/he brings a common law claim, but rather whether, given the chosen state, a nationwide class is

28  appropriate. *See Valencia v. Volkswagen,* 2015 WL 4760707, at *1 (N.D. Cal. 2015)*; In re Clorox*

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012); *Forcellati v. Hyland's,* 876

2  F.Supp. 2d 1155, 1159-60 (C.D. Cal. 2012). Furthermore, Plaintiff states in her Opposition that

3  "there is no reason why the Court should not apply California law." Opp. at 23.

4  Defendant is correct that courts in this district have held that, due to variances among state

5  laws, failure to allege which state law governs a common law claim is grounds for dismissal. *See,*

6  *e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.,* 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011)

7  ("Several other courts in this district have similarly held that a plaintiff must specify the state

8  under which it brings an unjust enrichment claim"). In order for the Court to determine whether a

9  claim has been adequately pled, Plaintiff must allege the applicable law.

10  Accordingly, the Court GRANTS Defendant's Motion to Dismiss the Common Law

11  Claims with leave to amend to assert which state's law applies.

12  **IV.     MOTION TO STAY**

13  Finally, Defendant moves to stay this litigation pending the Ninth Circuit's resolution of

14  *Jones v. ConAgra Foods, Inc.* and *Brazil v. Dole Packaged Foods*. Mot. at 22-24. Plaintiff

15  opposes the stay. Opp. at 23-25.

16  As here, the plaintiffs in *Jones* claim that "100% Natural" labels are unlawful and

17  misleading because the products contain allegedly artificial ingredients. *Jones v. ConAgra Foods,*

18  *Inc.,* No. C 12–01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) (appeal filed July 15,

19  2014). The *Jones* plaintiffs appeal the district court's denial of their motion for certification of

20  three separate classes. In particular, the plaintiffs challenge the district court's application of the

21  ascertainability and predominance requirements of Federal Rule of Civil Procedure 23 and the

22  standing requirements under California's UCL, FAL, and CLRA.

23  In *Brazil*, too, the plaintiff challenges "all natural" labels as unlawful and misleading

24  because the products contain artificial and synthetic ingredients. *Brazil v. Dole Packaged Foods,*

25  *LLC*, Case No. 12–CV–01831–LHK, 2014 WL 6901867 (N.D.Cal. Dec. 8, 2014) (appeal filed

26  Dec. 18, 2014). The plaintiff appeals, among other things, the district court's finding that his

27  unjust enrichment claim is duplicative of his statutory claims, its application of the standing

28  requirements under California's UCL, and its rejection of his damages model.

1    District courts have the "discretionary power to stay proceedings*." Lockyer v. Mirant*

2    *Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. North American Co.,* 299 U.S. 248,

3    254 (1936)). In determining whether to grant a stay, "the competing interests which will be

4    affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d

5    265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55). "Among these competing interests

6    are [1] the possible damage which may result from the granting of a stay, [2] the hardship or

7    inequity which a party may suffer in being required to go forward, and [3] the orderly course of

8    justice measured in terms of the simplifying or complicating of issues, proof, and questions of law

9    which could be expected to result from a stay." *Id.*

10    Plaintiff does not argue that damage may result from granting the stay. Accordingly, the

11    Court gives no weight to the first factor.

12    The bulk of the parties' disagreement focuses on the second factor. Defendant argues that

13    both parties would benefit from a stay because the Ninth Circuit is likely to provide substantial

14    guidance—and potentially new law—in *Jones* and *Brazil*. Defendant asserts that a stay will allow

15    both parties to conserve resources they would otherwise spend on discovery and class certification

16    without this guidance. Plaintiff responds that *Jones* and *Brazil* will have no effect on discovery or

17    class certification in this case because, regardless of the outcomes, she will use consumer-

18    marketing surveys and Defendant's own marketing analysis to prove reasonable reliance.

19    The Court finds Defendant's argument persuasive: while Plaintiff may not change her

20    approach to reasonable reliance, the other issues pending in *Jones* and *Brazil* are likely to impact

21    both parties' strategies for class certification and related discovery, as discussed further below.

22    Given the significant overlap between the issues presented here and in *Jones* and *Brazil*, the Court

23    finds that the second factor weighs in favor of a stay, consistent with its prior rulings and those of

24    other courts in this district. *See, e.g., Leonhart v. Nature's Path Foods, Inc.,* No. 13–cv–00492–

25    BLF, 2015 WL 3548212 (N.D. Cal. June 5, 2015); *Gustavson v. Mars, Inc.,* No. 13–cv–04537–

26    LHK, 2014 WL 6986421, at *2 (N.D. Cal. Dec. 10, 2014).

27    With regard to the third factor, Defendant persuasively argues that *Brazil* and *Jones* will

28    clarify issues bound to arise in this litigation, including (1) ascertainability requirements for class

United States District Court
Northern District of California

20

certification, (2) class-wide proof of damages, (3) class-wide presumptions of reliance and materiality, and (4) whether unjust enrichment claims are duplicative of California statutory actions. Plaintiff does not argue that *Jones* and *Brazil* will not clarify these issues, arguing only that the results are unlikely to alter its discovery plan. The Court agrees with Defendant. Like *Jones* and *Brazil,* the present case involves food labeling claims under California's UCL, FAL, and CLRA. The present case is nearly through the pleading stage, which means that the class certification issues raised in the *Jones* appeal quickly will become relevant. Thus the third factor weighs heavily in favor of a stay.

Accordingly, the Court GRANTS Defendant's Motion to Stay pending the Ninth Circuit's resolution of *Jones* and *Brazil.*

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Stay is GRANTED and Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART:

1. The case is STAYED pending the Ninth Circuit's resolution of *Jones* and *Brazil.*

2. To the extent that they are based on the Wheat Products, Plaintiff's Causes of Action are DISMISSED without leave to amend.

3. To the extent that they are based on the All Natural Products, Plaintiff's Causes of Action are DISMISSED with leave to amend the allegations regarding reliance.

4. Plaintiff's Common Law Causes of Action are DISMISSED with leave to amend which state's law applies.

Any amended pleading shall be filed within 30 days of the Ninth Circuit issuing an opinion in *Brazil* or *Jones*, whichever is later.

Dated: February 8, 2016

BETH LABSON FREEMAN
United States District Judge